**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CHRISTINA R. PAOLI, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 06-462-GMS |
| | : | |
| THE STATE OF DELAWARE, and | : | |
| DELAWARE TECHNICAL AND | : | |
| COMMUNITY COLLEGE, | : | |
| | : | |
| Defendants. | : | |

## STATE'S OPENING BRIEF

## IN SUPPORT  OF

## JUDGMENT ON THE PLEADINGS

**STATE OF DELAWARE**
**Department of Justice**

/s/ Marc P. Niedzielski
Marc P. Niedzielski (# 2616)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302)  577-8324
marc.niedzielski@state.de.us

DATED:  October 31, 2006

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...............................................................................................3

NATURE AND STAGE OF PROCEEDINGS .................................................................4

SUMMARY OF THE ARGUMENT ................................................................................5

STATEMENT OF THE FACTS .......................................................................................6

### <u>ARGUMENT I.</u>

DEFENDANT IS ENTITLED TO JUDGMENT ON PLAINTIFF'S
CLAIMS AS THE CLAIMS ARE BARRED BY THE ELEVENTH
AMENDMENT TO THE CONSTITUTION ............................................................8

### <u>ARGUMENT II.</u>

PLAINTIFF'S CLAIMS FAIL TO STATE A LEGAL CLAIM AGAINST
THE STATE ...........................................................................................................12

### <u>ARGUMENT III.</u>

PLAINTIFF COMPLAINT SHOULD BE DISMISSED AS THE COURT
LACKS PERSONAL JURISDICTION OVER THE STATE AS
PLAINTIFF HAS FAILED TO EFFECT PROPER SERVICE OF
PROCESS ...............................................................................................................13

CONCLUSION .................................................................................................................15

## **TABLE OF AUTHORITIES**

*Alden v. Maine*, 527 U.S. 706 (1999) ........................................................9

*Ayres v. Jacobs & Crumplar*, 99 F.3d 563 (3d Cir. 1996)................................13, 14

*Board of Trustees v. Garrett*, 531 U.S. 356 (2001) ...................................................10

*Cimino v. Del. Depar't of Labor*, 2002 WL 265095,
    C.A.No. 01-458-GMS (D.Del. Feb. 25, 2002) ............................................10

*City of Boerne v. Flores*, 521 U.S. 507 (1997) ........................................................10

*Edelman v. Jordan*, 415 U.S. 651 (1974) .................................................................9

*Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000) ........................................10

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) .....................................10

*Society Hill Civic Assoc  v. Harris,* 632 F.2d 1045 (3d Cir. 1980) ..........................8

## **Other Authorities**

Eleventh Amendment to U.S. Constitution......................................5, 8, 9, 10, 11, 12

Fourteenth Amendment to U.S. Constitution ...........................................................9

31 U.S.C. §3730(h) ...................................................................................................8

42 U.S.C. §§1981, 1983............................................................................................8

Fed.R.Civ.P. 4 .............................................................................................4, 5, 13, 14

Fed.R.Civ. P. 4(j)(2)................................................................................................13

Fed.R.Civ.P. 8(a)(2) ................................................................................................12

Fed.R.Civ.P. 12(b)(6).................................................................................................8

Fed. R. Civ. P. 12(c)...........................................................................................4, 15

## <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

On July 28, 2006, plaintiff filed a complaint and sent a copy by mail to the Governor of Delaware and President of the Delaware Technical and Community College [hereafter "College"]. When plaintiff filed the lawsuit she signed an acknowledgement of receipt for Federal Rule of Civil Procedure 4. (D.I. 1)

On September 29, 2006, a summons for the State of Delaware was issued to plaintiff. (docket)

On October 3, 2006, the summons was returned as being served by the plaintiff's sister Carol on that same day. (D.I. 3)

On October 26, 2006, the State of Delaware filed and served an answer to the complaint which asserted its defenses including lack of jurisdiction, personal and subject matter, and improper service of process.

On this day, the State filed a motion for judgment on the pleadings and this is the State's Opening Brief in support of its motion under Rule 12(c).

## SUMMARY OF THE ARGUMENT

### I.

Plaintiff's claims are barred by the Eleventh Amendment of the United States Constitution which divests the Court of jurisdiction of lawsuits by citizens against a State.

### II.

Apart for the State's immunity in federal court, most of plaintiff's claims failed to state a legal claim upon which relief could be granted.

### III.

The Court lacks personal jurisdiction over the State as Plaintiff failed to serve the complaint and summons in accordance with Fed.R.Civ.P. 4.

## **STATEMENT OF THE FACTS**

In her complaint, plaintiff alleges that: she was a student at Delaware Technical and Community College ["College'] from September 2004 to July 2005[she probably means 2006]. (D.I. 1, complaint, ¶ 6)  She further contends that she was an above average student and above average softball player. (*Id.*  ¶¶ 7, 8, 10, 11)

All this ended when plaintiff received a letter that she was no longer allowed to attend the College or be on its property.  She claims that her dismissal as a student was due to her reporting coaches and students drinking alcoholic beverages after softball games.  Plaintiff retained a private investigator to investigate her claims.  (*Id.*  ¶¶ 6, 13, 14, 16)

Plaintiff alleges that the College engaged in a course of conduct designed to punish, intimidate and harass her due to her complaint of students and coaches drinking after softball games.  (*Id.*  ¶ 15)

As part of the effort to intimidate and harass her, plaintiff contends that the College scheduled a hearing for May 10, 2006. (*Id.*  ¶ 17) Thereafter, plaintiff sent a valid physician's note, presumably to College officials,  excusing her attendance as she was hospitalized due to "her being brutally beaten.." [the complaint does not identity who brutally beat her] and requested that the hearing be rescheduled. (*Id.*  ¶ 18)

Plaintiff contends that the College violated her rights by not granting her request for rescheduling, it convened the hearing in her absence and thereafter

advised her that the hearing panel had decided to terminate her attendance at the College.  (*Id.*  ¶ 19)

## ARGUMENT I.

DEFENDANT IS ENTITLED TO JUDGMENT ON PLAINTIFF'S CLAIMS AS THE CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT TO THE CONSTITUTION.

### Introduction:

Judgment on the pleadings is appropriate when the movant establishes, on the face of the pleadings alone, that it is entitled to judgment as a matter of law and "that no material issue of fact remains to be resolved." *Society Hill Civic Assoc v. Harris,* 632 F.2d 1045, 1054 (3d Cir. 1980)  The court must review a Rule 12(c) motion under the same standard as a motion under Rule 12(b)(6), by accepting the nonmovant's well-plead averment of facts as true and viewing all inferences in the light most favorable to the nonmoving party. *Id.*

For the reasons that follow, the defendant is entitled to judgment as a matter of law based on the pleadings alone as all the allegations are barred by the Eleventh Amendment.

### (a)    The Eleventh Amendment:

Plaintiff claims that due to Delaware Technical and Community College's tortious acts she is not able to play softball or attend the College.   In her complaint, plaintiff asserts violations of 42 U.S.C.§§ 1981, 1983, the Equal Protection clause, Due Process clause, 31 U.S.C. § 3730(h) [Whistleblower Employee Protection Act], retaliation discrimination, Family Educational Rights and Privacy Act, defamation of character and discrimination based on disability under the ADA and Section 504 of the Rehabilitation Act.  All of her claims are as

a citizen of this State against the State.

The Eleventh Amendment to the United States Constitution provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Supreme Court in describing the immunity of states from suit observed that "Eleventh Amendment immunity ... is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by, the terms of the Eleventh Amendment." *Alden v. Maine*, 527 U.S. 706, 713 (1999). Instead, "the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today except as altered by the plan of the Convention or certain constitutional Amendments." *Id*.

While plaintiff claims to be a citizen of Delaware, the Supreme Court has held that lawsuits by a State's own citizens are also barred by the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 662-663 (1974) ["While the [Eleventh] Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by its own citizens as well as by citizens of another State." (citations omitted)]

Congress's sole constitutional authority to subject States to suit by individuals must arise under section 5 of the Fourteenth Amendment and not its

Article I powers[1].  *Board of Trustees v. Garrett*, 531 U.S. 356, 364 (2001)[striking claims under the ADA against the States];  *Kimel v. Florida Board of Regents*, 528 U.S. 62, 79 (2000)[striking claims of age discrimination under the ADEA against the States]; *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996)[striking claims under the Indian Gaming Act against the States].   Additionally, the legislative enactment waiving the State's immunity must be remedial, congruent and proportional "to the injury to be prevented and the means adopted to that end." *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997)[striking claims under the Religious Rights Restoration Act against state actors].  *Cimino v. Del. Depar't of Labor*, 2002 WL 265095, at pages 3-4, C.A.No. 01-458-GMS (D.Del. Feb. 25, 2002)(attached)

In *Garrett*, the Supreme Court repeated the analysis as to whether the Congress has validly abrogated the States' Eleventh Amendment immunity from suit.  The first part of the inquiry is to determine if the Congress "unequivocally intended to do so", and the second part is whether Congress "act[s] pursuant to a valid grant of constitutional authority."  531 U.S. at 363.  However, there are no factual allegations in the complaint that would suggest a waiver of Eleventh Amendment immunity as to any of plaintiff's claims.

---

[1] Since the Eleventh Amendment was enacted after Article I of the Constitution.

All of plaintiff's claims are barred by the terms of the Eleventh Amendment and plaintiff does not allege a waiver of the State's immunity.  The State is entitled to judgment on the pleadings in its favor and against the plaintiff.

## ARGUMENT II.

PLAINTIFF'S CLAIMS FAIL TO STATE A LEGAL CLAIM AGAINST THE STATE.

Apart from Eleventh Amendment immunity, plaintiff's claims do not state a legal claim against the State. In fact, the entire complaint is focused solely on plaintiff's interaction with the College. There is not a single allegation of wrongdoing alleged against the State itself. While plaintiff does state that the College is a "Delaware State Educational Institution" (D.I. 1, complaint ¶5), there are is no allegation of how the State in its sovereign capacity is a tortfeasor regarding her claims or how any relief she is requesting is available through the State in that same sovereign capacity.

Fed.R.Civ.P. 8(a)(2) requires that a complaint shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief. There is not a single paragraph of the complaint that contains such a statement against the State, and accordingly, the State of Delaware is entitled to judgment on the pleadings.

### ARGUMENT III.

PLAINTIFF COMPLAINT SHOULD BE DISMISSED AS THE COURT LACKS PERSONAL JURISDICTION OVER THE STATE AS PLAINTIFF HAS FAILED TO EFFECT PROPER SERVICE OF PROCESS.

As set out is the Nature and Stage of the Proceedings, the complaint in this matter was mailed to the Governor at her Wilmington office and then more than a month later a summons was served on the same office by plaintiff's sister. (D.I. 1, 3, and docket entries that appear between those items)  In its answer, the State asserted the defense of lack of personal jurisdiction and improper service. (Answer ¶ 65; D.I. 6)

"Fed.R.Civ.P. 4 sets forth the procedure by which a court obtains personal jurisdiction over the defendant."  *Ayres v. Jacobs & Crumplar*, 99 F.3d 563, 569 (3d Cir. 1996).  Rule 4(j)(2) provides that:

> Service upon a state, municipal corporation, or other governmental organization subject to suit shall be effected by **delivering a copy of the summons and of the complaint to its chief executive officer** or by serving the summons and complaint in the manner prescribed by the law of that state for the service of summons or other process upon any such defendant. (emphasis added)

The record provides that the complaint was not served with the summons.  That rather serving them together, the complaint was not served, but mailed, which does not comply with the Rule. Only the summons, without a complaint, was attempted to be served as required under Rule 4.  Serving the complaint with the summons is not simply a "technical nicet[y]" as required under Rule 4, but the

very basis of the Court assertion of jurisdiction over a defendant.  *Ayres,*  at 568.

*Id.* at 570["We further hold that a summons when properly issued is not effective in conferring personal jurisdiction upon [a party defendant] if it is not served in accordance with Rule 4 …"]  Moreover, plaintiff signed the acknowledgement of receipt of Rule 4 from the Clerk's office when she filed the complaint.

Accordingly, the Court lacks personal jurisdiction over the State.

## <u>CONCLUSION</u>

For the above reasons, the State of Delaware requests the Court enter judgment in its favor pursuant to Rule 12(c).

Respectfully submitted,

**STATE OF DELAWARE**
**Department of Justice**

<u>/s/ Marc P. Niedzielski</u>
Marc P. Niedzielski (# 2616)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302)  577-8324
marc.niedzielski@state.de.us

- 15 -

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CHRISTINA R. PAOLI, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 06-462-GMS |
| | : | |
| THE STATE OF DELAWARE, et al., | : | |
| Defendants. | : | |

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on the date indicated he caused a copy of the attached State's Opening Brief in Support of Judgment on the Pleadings to be served as indicated on the following:

<u>*Via U.S. Mail*</u>
Christina R. Paoli
34363 Summerlyn Drive
No. 204
Lewes, DE  19958

<u>*Via Electronic Delivery*</u>
Marc Stephen Casarino
White & Williams LLP
824 Market Street, Suite 902
P.O. Box 709
Wilmington, DE  19899-0709
casarinom@whiteandwilliams.com

<u>/s/ Marc P. Niedzielski</u>
Marc P. Niedzielski (# 2616)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302)  577-8324
marc.niedzielski@state.de.us

DATED: October 31, 2006

Not Reported in F.Supp.2d                                                                                            Page 1
Not Reported in F.Supp.2d, 2002 WL 265095 (D.Del.)
**(Cite as: 2002 WL 265095 (D.Del.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
Francis H. **CIMINO,** et al., Plaintiffs,
v.
**DELAWARE** DEPARTMENT OF **LABOR**, et al.,
Defendants.
No. CIV.A.01-458-GMS.

Feb. 25, 2002.

MEMORANDUM AND ORDER

SLEET, District J.

I. INTRODUCTION

 **\*1** The plaintiffs, Francis H. Cimino ("Cimino") and his wholly-owned corporation, Professional Consulting Solutions ("PCS"), filed the above-captioned action against the Delaware Department of Labor, Division of Unemployment Insurance and W. Thomas MacPherson ("MacPherson"), Director of the Division of Unemployment Insurance (the "state defendants"), in both his personal and official capacities. Cimino also named David Castetter ("Castetter"), Cork Screw Willow, Ltd. ("Cork Screw") and FuturTech Consulting LLC ("FuturTech") as defendants. In his complaint, Cimino alleges civil rights violations of 42 U.S.C. § § 1981, 1983 and 1985(3). He also alleges state law claims.

 Presently before the court are the defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the court will grant these motions in part and deny them in part.

II. STANDARD OF REVIEW

 The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz,* 1 F.3d 183 (3d Cir.1993). Thus, in deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). In particular, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Colburn v. Upper Darby Tp.,* 838 F.2d 663, 666 (3d Cir.1988). However, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3rd Cir.1997). The court will only dismiss a complaint if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." ' *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)). Thus, in order to prevail, a moving party must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

III. BACKGROUND

 On October 5, 1998, the state defendants contracted with FuturTech for computer programming services until June 30, 1999. FuturTech entered into a subcontract with Cork Screw, which would allow Cork Screw's employee Castetter to work on FuturTech's computer programming services contract with the state. Castetter was assigned to work on the Department of Labor's Y2K project. Cimino alleges that Castetter had the power to hire and fire the employees he supervised on that project. In accordance with that alleged power, Castetter hired Cimino, and PCS to work on the Y2K project until September 1999. However, Castetter terminated Cimino and PCS on August 6, 1999. Castetter also laid off three additional subcontractors on August 6, 1999. Two of these individuals were black and the other white. Cimino is also white.

 **\*2** In his complaint, Cimino alleges that the defendants terminated him solely because of his race. Specifically, he alleges that the state defendants delegated the job of terminating the two black employees to Castetter. The state defendants, including MacPherson, then allegedly conspired to terminate Cimino and the other white employee because the state defendants feared that the two black employees would sue them.

 FuturTech filed a motion to dismiss on August 22, 2001. The state defendants filed a motion to dismiss on November 5, 2001. Cork Screw and Castetter filed a motion to dismiss on November 30, 2001. The court will now address each of these motions in turn.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2002 WL 265095 (D.Del.)
**(Cite as: 2002 WL 265095 (D.Del.))**

IV. DISCUSSION

A. FuturTech's Motion to Dismiss

Cimino's complaint does not allege any active role on FuturTech's part in depriving him of his rights. Rather, the complaint alleges liability on FuturTech's part based on actions taken by its subcontractor, Castetter.

For the following reasons, the court will grant FuturTech's motion with regard to the Section 1983, 1985(3) and Third-Party Beneficiary claims. It will deny the motion with regard to the Section 1981 and breach of an implied covenant of good faith and fair dealing claims.

1. Section 1981 Liability

The first issue the court must address with respect to FuturTech is whether Section 1981 supports a respondeat superior theory of liability for non-government defendants.

The Supreme Court has suggested that, in order to impose liability on a defendant under Section 1981 for the actions of a third party, an agency relationship between the defendant and the third party must exist. *See General Building Contractors Assoc. v. Pennsylvania United Engineers and Constructors, 458 U.S. 375, 394 (1982)*; *see also Blair v. Philadelphia Housing Authority, 609 F.Supp. 276, 279 (E.D.Pa.1985)*; *Choice v. Easton Hospital* 1988 U .S. Dist. LEXIS 1319, at *2 (E.D. Pa. Feb. 22 1988)*; *Malone v. Schenk, 638 F.Supp. 423, 425 (C.D.Ill.1985)*. Agency is a fiduciary relationship which results in the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control. *See General Building Contractor's Assoc., 458 U.S. at 391*. Therefore, to establish an agency relationship between Castetter and FuturTech, Cimino must allege that FuturTech gave its consent for Castetter to act on its behalf, and that Castetter is in FuturTech's control.

Cimino has alleged that FuturTech paid Castetter directly, and that Castetter had full authority to manage personnel for FuturTech. [FN1] Based on these allegations, the court concludes that Cimino has alleged sufficient information to establish the possibility of an agency relationship. Accordingly, it will not grant FuturTech's motion to dismiss the 1981 claim.

FN1. The court recognizes that FuturTech denies that Castetter was their agent. However, when deciding a motion to dismiss, the court will not examine the merits of the claims.

2. Section 1983 Liability

Cimino's complaint purports to hold FuturTech liable for Section 1983 violations as well. However, in defending his Section 1981 claims, Cimino acknowledges that the theory of respondeat superior cannot support a Section 1983 claim. *See Gibbs v. Hargett, 1986 WL 12129, at *2 (D.Del. Oct. 27, 1986)* (noting that Section 1983 claims require "willful participation or joint action."); *see also Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir.1982)* (holding that neither municipal nor private corporations may be held liable on the theory of respondeat superior under Section 1983). Thus, because Cimino has not alleged any active role that FuturTech played in the alleged discrimination, the court will dismiss the Section 1983 claim against it.

3. Section 1985(3) Liability

*3 Cimino finally alleges that FuturTech violated Section 1985(3). While the Third Circuit has not addressed this issue, district courts in this Circuit have held that Section 1985(3) liability may not be premised on a respondeat superior theory. *See Hankins v. City of Philadelphia, 1998 WL 175600, at * 14 (E.D. Pa. April 9, 1998)*; *see also Gant v. Aliquippa Borough, 612 F.Supp. 1139, 1142 (W.D.Pa.1985)* (holding that "an employer may not be subject to a conspiracy claim by the doctrine of respondeat superior."). Nor may an employer be held to conspire with one of its own employees acting in his official capacity. *See Gant, 612 F.Supp. at 1142*. Moreover, even to the extent that Cimino could argue that there was a conspiracy between Castetter and the other named defendants in which FuturTech acquiesced, this argument must also fail. Cimino has clearly stated that, "Castetter testified that he complained to a FuturTech employee ... that there had been this racially motivated layoff." Thus, while FuturTech may have had knowledge of the alleged conspiracy after the fact, that is insufficient to hold it responsible for the actual conspiracy.

Accordingly, the court will dismiss Cimino's Section 1985(3) claim against FuturTech.

4. State Law Claim: Breach of the Covenant of Good Faith and Fair Dealing

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 3
Not Reported in F.Supp.2d, 2002 WL 265095 (D.Del.)
**(Cite as: 2002 WL 265095 (D.Del.))**

Cimino argues that the defendants breached his contract with them by engaging "in fraud, deceit and misrepresentation in their administration of and termination of [his] employment [ ] contract."

The Delaware Supreme Court has strictly limited the application of the implied covenant in the employment context, holding that a plaintiff must establish that he or she falls into one of four exclusive categories. *See Lord v. Souder,* 748 A.2d 393, 401 (Del.2000). The four categories are: (1) where the termination violates public policy and no other remedial scheme exists; (2) where the employer misrepresented an important fact and the employee relied thereon to either accept a new position or remain in a present one; (3) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation earned through the employee's past service; and (4) where the employer falsified or manipulated employment records to create fictitious grounds for termination. *See E.I. duPont de Nemours & Co. v. Pressman,* 679 A .2d 436, 442-44 (Del.1996). The implied covenant of good faith and fair dealing does, however, permit a cause of action against an employer for the deceitful acts of its agent when the latter manufactures false grounds to cause an employee's dismissal. *See id.* at 437.

Finally, irrespective of the category implicated, a claim for the breach of duty of good faith and fair dealing requires employer conduct amounting to fraud, deceit, or misrepresentation. *See Peterson v. Beebe Med. Ctr., Inc.,* 1992 WL 354087, at *5 (Del. Nov. 13, 1992), *aff'd,* 623 A.2d 142 (Del.1993). Thus, the traditional elements of fraud must be present in a claim for breach of an implied covenant of good faith. *See Hudson v. Wesley College, Inc.,* 1998 WL 939712, at *13 (Del. Ch. Dec. 23, 1998) *aff'd* 734 A.2d 641 (Del.1999).

**\*4** As discussed *supra* in Section IVA1, the court concludes that Cimino has alleged sufficient facts demonstrating that Castetter may have been FuturTech's agent. Cimino further points to the deposition testimony of Nicholas P. Marica ("Marica"). In that deposition, Marica testified that Castetter admitted to firing Cimino due to his race. Accordingly, the court declines to dismiss this state law claim against FuturTech.

5. State Law Claim: Third-Party Beneficiary Rights

Cimino finally alleges that he and PCS were third-

party beneficiaries of the contract between the Division of Unemployment Insurance and FuturTech.

The Delaware Supreme Court has noted that is it axiomatic that either party to an agreement may enforce its terms if it is breached. *See Triple C Railcar Service v. Wilmington,* 630 A.2d 629, 633 (Del.1993). "Equally well-settled is the principle that a third-party who is, in effect, a stranger to the agreement, may enforce a contractual promise in his own right if the contract has been made for his benefit." *Id.* However, essential to a third-party's right of enforceability, is the contracting parties' intention to view the stranger as either a creditor or donee beneficiary. *See id.* Thus, a third party has no rights under a contract that did not, by itself, manifest an intention to benefit the third party. *See id.*

In the present case, Cimino has failed to allege any language in the Division of Unemployment Insurance/FuturTech contract that manifests an intention to benefit strangers to their contract. As the court cannot assume that Cimino will prove facts which he has not alleged, it will dismiss this count as to all the named defendants. *See City of Pittsburgh v. West Penn Power Co.,* 147 F . 3d 256 (3d Cir.1998).

B. The State Defendants' Motion to Dismiss

Cimino's complaint also names the Delaware Department of Labor, the Division of Unemployment Insurance and W. Thomas MacPherson (MacPherson), Director of the Division of Unemployment Insurance, in his official, as well as individual, capacity, as defendants.

1. Eleventh Amendment Immunity Against Damages

The state defendants, including MacPherson in his official capacity, assert that the Eleventh Amendment deprives the court of jurisdiction to adjudicate Cimino's civil rights claims for damages pursuant to 42 U.S.C. § § 1981, 1983, and 1985(3). The court agrees.

Cimino's complaint alleges that the Delaware Department of Labor, Division of Unemployment Insurance, a state agency, violated his civil rights. As a result, he requests both monetary and injunctive relief. However, under the Eleventh Amendment, private parties cannot sue states in federal court for monetary damages. *See Board of Trustees of University of Alabama v. Garrett,* 121 S.Ct. 955, 962 (2001). A state is not entitled to this immunity if it has waived its immunity or if Congress has abrogated

Not Reported in F.Supp.2d                                                                                                    Page 4
Not Reported in F.Supp.2d, 2002 WL 265095 (D.Del.)
**(Cite as: 2002 WL 265095 (D.Del.))**

the state's immunity through a valid exercise of its power. *See Lavia v. Comm. of Pennsylvania,* 224 F.3d 190, 195 (3d Cir.2000).

**\*5** Neither of the two above conditions are met here. First, the state has not waived its Eleventh Amendment immunity. A waiver will be found only where it has been stated "by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Space Age Products, Inc. v. Gilliam,* 488 F.Supp. 775, 780 (D.Del.1980) (citing *Edelman v. Jordan,* 415 U.S. 651, 673 (1974)). Such an express waiver may be made through clear constitutional or statutory language. *See Lavia,* 224 F.3d at 195 Neither the constitution nor the code of Delaware expressly waives Delaware's Eleventh Amendment sovereign immunity. *See Ospina v. Department of Corrections,* 749 F.Supp. 572, 579 (D.Del.1990). Therefore, Delaware has not clearly waived its immunity.

Moreover, Congress has not abrogated the states' immunity for claims under Sections 1981, 1983 and 1985(3). *See Quern v. Jordan,* 440 U.S. 332, 345 (1979); *Henry v. Texas Tech Univ.,* 466 F.Supp. 141, 146 (N.D. Texas 1979); *Carmen v. San Francisco Unified School Dist.,* 982 F.Supp. 1396, 1404 (N.D.Cal.1997). Since Delaware's immunity has not been waived or abrogated, Cimino cannot sue the State agency for money damages.

Furthermore, Cimino may not assert a claim for injunctive relief against the state. In *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy,* the Supreme Court noted that, although prospective (injunctive) relief is available against state officials, it is not available against state agencies. 506 U.S. 139, 146 (1993). Since the Delaware Department of Labor, Division of Unemployment Insurance, is a state agency, it cannot be sued for injunctive relief under the Eleventh Amendment.

It is clear, however, that a claim for injunctive relief would be available against MacPherson. *See Green v. Mansour,* 474 U.S. 64, 68-69 (1985). The state defendants do not dispute this.

Accordingly, the court will dismiss each of the claims against the Delaware Department of Labor, Division of Unemployment Insurance and MacPherson in his official capacity.

2. MacPherson's Individual Liability Under Section 1981

MacPherson claims that he cannot be individually liable under Section 1981 because he was not a party to a contract with Cimino and PCS. The court finds this argument unpersuasive.

A third party may be liable under Section 1981 if that party "intentionally interferes, on the basis of race, with another's right to make and enforce contracts, regardless of whether the employer or anyone else may also be liable." *Olumuyiwa v. Harvard Protection Servs, Inc.,* 2000 U.S. Dist. LEXIS 6364, at \* 14 (E.D.N .Y. May 12, 2000); *see also Daniels v. Pipefitters' Ass'n Local Union No. 597,* 945 F.2d 906, 914 (7th Cir.1991) (holding that "[t]his kind of race-based impediment to contract formation constitutes exactly the sort of racially discriminatory interference with the right to contract that remains actionable under § 1981."); *Pryor v. National Collegiate Athletic Ass'n,* 153 F.Supp.2d 710, 718 (E.D.Pa.2001).

**\*6** In the present action, Cimino has alleged that MacPherson was directly involved with the decision to terminate Cimino because of his race. He further alleges that MacPherson's intentional involvement actually resulted in Cimino's termination, thus interfering with his employment contract. Accordingly, the court will not dismiss the Section 1981 claim against MacPherson in his individual capacity.

3. MacPherson's Individual Liability Under Section 1983

To establish personal liability in a Section 1983 action, the plaintiffs must show that MacPherson: (1) was acting under color of state law; and (2) caused the deprivation of a federal constitutional right enjoyed by the plaintiffs. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985). The state defendants argue that Cimino was an at-will employee, and thus could be fired at any time. Thus, they contend that he has failed to allege any constitutional deprivation. [FN2] However, Cimino clearly alleges that he was denied equal protection of the laws due to discrimination. Accordingly, the court will not dismiss the Section 1983 claim against MacPherson in his individual capacity.

> FN2. MacPherson does not state that he takes exception with a finding that he was acting under color of state law. Accordingly, the court will not discuss this element.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 5
Not Reported in F.Supp.2d, 2002 WL 265095 (D.Del.)
**(Cite as: 2002 WL 265095 (D.Del.))**

4. MacPherson's Individual Liability Under Section 1985(3)

In order to establish a claim under Section 1985(3), the Supreme Court requires the following elements: (1) that two or more defendants conspired; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the law; (3) that one or more of the conspirators acted in furtherance of the conspiracy; and (4) that such an act injured a person or his property or deprived him of exercising any right or privilege of a citizen of the United States. See *Griffin v. Breckenridge,* 403 U.S. 88, 102-103 (1971).

In his complaint, Cimino pled that "McPherson [sic] and Castetter agreed to fire the two white employees ... to make it look like the terminations [of the two black employees] were not because of the race of the black employees." Cimino further alleges that Castetter subsequently terminated him.

Based on these allegations, the court concludes that dismissal for failure to state a claim would be inappropriate.

5. State Law Claim: Breach of Implied Covenant of Good Faith and Fair Dealing

Castetter, perhaps as an agent of FuturTech, entered into a contract with Cimino. MacPherson was not a party to this contract. Accordingly, his actions could not have breached an implied covenant of good faith and fair dealing in the Castetter/Cimino contract. This claim will be dismissed.

C. Castetter's and Cork Screw's Motion to Dismiss

As an initial matter, the court will dismiss all of Cimino' claims against Cork Screw. Cimino has alleged only that FuturTech subcontracted with Castetter, through Castetter's employer Cork Screw. Cork Screw was not a party to the FuturTech/Division of Unemployment Insurance contract. It had no involvement with the type of work Castetter performed, how he performed the work, the hours he worked, or the amount he was paid for his work. Indeed, Cork Screw's only involvement was to receive a set payment from FuturTech for the number of hours that Castetter worked. Cimino has not alleged any facts from which the court can assume the existence of an agency relationship, [FN3] or that Cork Screw itself engaged in any intentional discrimination, or a conspiracy to commit intentional

discrimination. Accordingly, as Cimino's complaint alleges nothing more, there can be no basis under any of the theories he has advanced for Cork Screw's liability.

FN3. Notably, Cimino has failed to allege facts demonstrating that Cork Screw in any way controlled Castetter.

**\*7** Cimino does not state that he is suing Castetter in an official capacity as a representative of the state. The following analysis thus addresses only Castetter's personal liability.

1. Castetter's Section 1981 Liability

Cimino alleges that Castetter terminated his employment due to his race. These allegations are sufficient to withstand a motion to dismiss for failure to state a claim. Accordingly, the court will not dismiss Cimino's Section 1981 claim.

2. Castetter's Section 1983 Liability

Cimino next alleges that Castetter acted at the "express direction of the Department and the Division through MacPherson" when Castetter terminated him due to his race. The court thus concludes that, for the purposes of a motion to dismiss, Cimino has alleged that Castetter was acting under color of state law when he deprived him of a constitutional right. See *Kentucky v. Graham,* 473 U.S. 159, 166 (1985).

3. Castetter's Section 1985(3) Liability

Cimino's complaint alleges that Castetter and MacPherson conspired to terminate Cimino due to his race, and that they did in fact terminate him. As discussed above in conjunction with MacPherson's individual liability, this allegation will suffice for the purpose of a motion to dismiss.

4. State Law Claim: Breach of Implied Covenant of Good Faith and Fair Dealing

It is undisputed that Cimino and Castetter entered into an employment contract. Cimino now alleges that Castetter fired him because of his race, and falsified the reasons for that termination. Accordingly, the court declines to dismiss this claim against Castetter.

V. CONCLUSION

For the foregoing reasons, IT IS HEREBY

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 265095 (D.Del.)
**(Cite as: 2002 WL 265095 (D.Del.))**

ORDERED that:

   1. FuturTech's motion to dismiss (D.I.9) is GRANTED with respect to the Section 1983, 1985(3) and Third-Party Beneficiary claims. It is DENIED with respect to all other claims;

   2. The Department of Labor, Division of Unemployment Insurance, and MacPherson's motion to dismiss (D.I.24) is GRANTED on all claims with respect to the Department of Labor, Division of Unemployment Insurance and MacPherson in his official capacity. It is GRANTED with respect to MacPherson in his individual capacity as to both of the state law claims. It is DENIED with respect to MacPherson in his individual capacity as to all other claims, including claims for injunctive relief;

   3. Cork Screw's and Castetter's motion to dismiss (D.I.30) is GRANTED with respect to Cork Screw on all claims. It is GRANTED with respect to Castetter on the Third-Party Beneficiary claim. It is DENIED with respect to Castetter as to all other claims.

 Not Reported in F.Supp.2d, 2002 WL 265095 (D.Del.)

    **Motions, Pleadings and Filings (Back to top)**

• 1:01CV00458 (Docket) (Jul. 03, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.