# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

CHRISTINA R. PAOLI,                          :
                                             :
                    Plaintiff,               :
                                             :
          v.                                 :    C. A. NO. 06-462 (GMS)
                                             :
THE STATE OF DELAWARE and DELAWARE           :    TRIAL BY JURY OF 12 DEMANDED
TECHNICAL AND COMMUNITY COLLEGE,             :
                                             :
                    Defendants.              :


**APPENDIX TO THE RESPONSE BY DELAWARE TECHNICAL AND COMMUNITY COLLEGE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**


Respectfully submitted:


WHITE AND WILLIAMS LLP


BY: _____
    Marc S. Casarino (ID #3613)
    824 N. Market Street, Suite 902
    P.O. Box 709
    Wilmington, DE 19899-0709
    Phone: (302) 467-4520
    Facsimile: (302) 467-4550
    Attorneys for Defendant,
    *Delaware Technical and Community College*

Dated: December 18, 2007

## TABLE OF CONTENTS

March 30, 2006 Memorandum from Dennis LaFazia to Regan Hicks-Goldstein ........................B1

March 13, 2006 Letter from Christina R. Paoli to Ron Burgess..................................................B3

March 16, 2006 Notes of Susan Pacheco re: Interview of Chris Paoli .........................................B4

March 21, 2006 Notes of Susan Pacheco re: Interview of Keri LaRocca ....................................B7

March 21, 2006 Notes of Susan Pacheco re: Interview of Stacie Burris......................................B9

March 22, 2006 Notes of Susan Pacheco re: Interviews of Erica Basara, Lacy Vible,
Robin Ganderson, Nicole Tiberi, and Stacie Burris ............................................................B11

April 4, 2006 Notes of Susan Pacheco re: Interview of Len McCartney ...................................B13

March 24, 2006 Memorandum from Ron Burgess to Regan Hicks-Goldstein...........................B14

April 13, 2006 Letter from Regan Hicks-Goldstein to Christina R. Paoli..................................B15

April 24, 2006 Letter from Regan Hicks-Goldstein to Christina R. Paoli..................................B17

April 22, 2006 Letter from Stacie Lynn Burris to Regan Hicks-Goldstein ...............................B19

April 24, 2006 Initial Report of Delaware Technical & Community College's Public
Safety Department ...............................................................................................................B22

May 4, 2006 Letter from Brian D. Shirey to Christina Paoli......................................................B29

Delaware Technical & Community College's Drug-Free School and Workplace Policy..........B30

May 1, 2006 Medical Note from Christiana Care Health Services .............................................B36

May 19, 2006 Letter from Brian D. Shirey to Regan Hicks-Goldstein ......................................B37

June 23, 2006 Letter from Regan Hicks-Goldstein v. Christina Paoli........................................B39

November 30, 2006 Letter from Glen D. Greenberg, Ph.D........................................................B40

# M E M O R A N D U M

TO:       Regan Hicks-Goldstein
          Dean of Student Services
          Stanton/Wilmington Campus

FROM:     Dennis LaFazia
          S/W Athletic Review Committee

DATE:     March 30, 2006

RE:       Athletic Review for S/W Softball Team involving Chris Paoli (Player)

On Thursday, March 16, the S/W Athletic Review Committee convened to investigate the allegations presented by Chris Paoli, a member of the S/W Campus Softball Team, concerning a hand written message addressed to Ron Burgess ( S/W Athletic Director) dated 3/13/06. The members of the Committee consisted of me, Susan Pacheco, Catt Houser and Rodney Reeves (Chair of the Committee).

Chris Paoli was present at this meeting and was allowed to explain to the Committee what the contents of the message sent to Mr. Burgess meant. She went into a long and detailed explanation about how there is a lack of communication between the softball coaches and the players. She mentioned that on several occasions she left messages, either by phone or written notes to the Athletic Department, asking a coach to get back to her without ever receiving a returned call. She also mentioned that she felt the health of the players was not taken into consideration on several occasions. She told the Committee that during the past weekend at a softball tournament, she felt that Stacey, the DTCC pitcher, was injured (her pitching arm). The coaches ignored this fact and continued to allow her to continue with the game. She also said the DTCC shortstop was not feeling well, but the coaches also continued to allow her to play the game. Chris also explained what she meant in her message about "broken promises". She stated that she was in line to get an athletic scholarship from DTCC to play softball. It didn't come fast enough as far as she was concerned (I understand that she is currently under scholarship). She also didn't play in some games. She stated over and over again that she was a better player than several players on the team, and that should be good enough reason to play more than she playing now.

She then told us of an incident that also happened during the past weekend tournament. She heard Emily (Asst. Coach) tell the DTCC pitcher (Stacey) to hit the batter that she was currently pitching to. The batter was brushed back by one or two of her pitches, but not hit. Upon returning to the dugout when the inning had ended, Emily yelled and used a few "four letter words" at Stacey for not hitting the opposing batter.

B1

Rodney Reeves on several occasions during this meeting tried to keep Chris on track and stick to comments that she had made in the letter to Ron. She went into a lot of other issues that I felt didn't have anything to do with the letter presented to Ron. At the end of the meeting, she was asked if any other team member could collaborate on the issues she presented during the Committee Review. She gave us the names of two players (Keri and Stacey).

On Tuesday, March 21, the Committee met with both Keri and Stacey. Keri did give us similar facts about lack of communication and health issues with the team. She also gave us a similar story about Emily asking Stacey to hit an opposing batter at the weekend tournament. Keri did say that Chris does bring some of the problems she thinks she has upon herself. Keri stated that at the weekend tournament, Chris did start an argument in the dugout with Matt, the Head Coach, about not playing enough. Keri didn't feel that was the appropriate place to confront Matt with this issue.

When we spoke to Stacey about the same issues, she put a lot of blame with team problems with Chris' attitude toward the coaches and other team members. She did back up Keri's comment about Chris confronting several coaches about not playing enough and used inappropriate language in doing so. Stacey's own son was in ear shot and could hear what was being said. This did upset Stacey about the way Chris handled herself. Stacey never did say anything to us about the issue of Emily asking her to hit an opposing player during the weekend tournament.
Stacey then told us something that Chris had done at a practice the previous Thursday. She stated that Chris had offered her and several other team members the prescription pain killing drug "Perchacet". There was no rhyme or reason why Chris offered this drug to other players. It came out of the "blue"! Rodney asked what other players who could have heard this offer of drugs by Chris.
She gave us the names of Erica Basara, Lacy Vible, Robin Gonderton and Nicole Tiberi.

On Wednesday, March 22, the Committee met with the above named players. We asked each player if they heard Chris Paoli offer them the drug Perchacet at practice. Here are the responses from each player: (1) Erica Basara – Yes; (2) Lacy Vible – Yes; (3) Robin Gonderton – No; (4) Nicole Tiberi – No. We also had a "Yes" from Stacey Burris who first broke the story about the drugs to us.

Dear Ben,

Hi. I once heard the phrase "If you don't confront wrong, you condone it." I have been struggling over my allegiance & loyalty to the team versus my obligation to disclose information to you which may detrimentally affect Del Tech College as a school.

I apologize for not trusting you (until now enough to take action. I felt as if I was caught in a catch 22 situation. I'd like to talk to you prior to practice today if possible. I am afraid that I will suffer negative repercussions from Del Tech as a school, the coaches and or the team members after I meet with you. Therefore, I would like you to promise me that you will <u>not</u> use my name during your investigation of related events. Maybe you could call in each team member individually to obtain additional info.

After we meet, if you want me to remain quiet about all aspects of this, I will. I am speaking to you because you are the athletic director. Therefore, I will take your advice and do what you feel is best for the college and its reputation. In conclusion, my concerns relate to lack of communication, broken promises and the physical health of players.

260-1036 (cell)                Thank you,

                                        Chris Parti

Disposition:  Chris Paoli
March 16, 2006
(Susan Pacheco's Notes)

Present:  Chris Paoli and the Athletic Review Committee (comprised of: Rodney Reeves, Dennis LaFazia, Catt Houser, Susan Pacheco)

Rodney Reeves, as chair of the committee, opened the meeting with an explanation of the purpose of the committee – to explore and investigate the allegations leveled in the letter that Ms. Paoli had sent to Ron Burgess, Athletic Director, on March 13, 2006. Mr. Reeves stated that the committee had read the letter and that there would be no personal reprisals toward Ms. Paoli for sending the letter to Mr. Burgess' attention.

Ms. Paoli stated that she had emailed Alan Lavallee requesting his attendance at the meeting because she was concerned over what could transpire during the meeting.

Ms. Paoli had several concerns to discuss.  She made mention of the following points:

- Lack of communication from the coaching staff:

    a)  Made 23 calls to head coach, Matt Sholl, which went unreturned.

    b)  She drove to practice 3 times and had not been informed by the coaching staff that it had been cancelled (stated that one practice was cancelled so the team could go bowling - not sure of the date).

    c)  Coaches made comments but didn't follow up (told that she was getting a scholarship back in the fall, but she had to continue to question Matt before the scholarship was finally issued).

    d)  College of Southern MD Tournament:  was made aware of a team breakfast meeting at 8:30 a.m. and waited but wasn't told that meeting was cancelled or changed.

- Favoritism of certain players

    a)  Some players went unpunished for making errors (the rule is if errors are made, it results in running laps).

Disposition:  Chris Paoli
March 16, 2006
(Susan Pacheco's Notes)

- No structure or follow through of rules

  a)  Players missed practice with no repercussions, whereas Ms. Paoli had written excuses for every missed practice.

  b)  Players were told during the fall season that they would play according to ability, attitude and attendance, but that this is not the case.

  c)  Felt that coaches are too lenient with players – perhaps due to age (referenced asst. Emily Evans)

- Safety concerns for players

  a)  Ms. Paoli was injured at the batting cages (eye injury) and felt that the coaches should have made the players wear helmets while batting–stated that she made a comment to Emily Evans, Asst. Coach, about all players wearing helmets in the batting cage.  Mr. Reeves then asked why Ms. Paoli didn't wear a helmet before she was hit. Ms. Paoli stated that the helmets did not fit appropriately (covered her eyes) and admitted that she was 'in the wrong' for not wearing one.

  b)  College of Southern MD tournament:  Stacie Burris appeared to be ill and continued to pitch all games.  Robin Ganderton had an injured arm and continued to play. Ms. Paoli felt that the coaches should have removed injured/sick players from game. Mr. Reeves then asked Ms. Paoli if players were forced to play even if they were injured. Ms. Paoli responded that even if asked, the players would continue on injured "because that's what players do". Ms. Paoli also stated that Ron Burgess did ask Stacie if she was ok to play.

  c)  College of Southern MD tournament:  Pitcher, Stacie Burris, directed by Asst. Coach, Emily Evans, to "hit the f*cking batter with the ball".  States that this exchange occurred in front of the team.

- Penalized for speaking up

- No team cohesiveness

Disposition:  Chris Paoli
March 16, 2006
(Susan Pacheco's Notes)

- Head Coach not at 50% of the practices

- No professionalism – Coaches "made fun of" and/or made derogatory remarks about players

  a)  Teri Mangini (about being gay; about holding catcher's equipment)

- Penalized at Southern MD tournament

  a)  For driving alone and not with team on bus.

  b)  For staying in hotel room with boyfriend.

  c)  Stated that Matt Sholl told her that she would not be playing in the tournament because she missed the arrival curfew. Ms. Paoli denied being late.

- Felt held to a different standard

  a)  Had to get a second physical because the first was allegedly lost by Matt in the fall.  Stated that she wasn't allowed to practice because of the physical issue and that she was sure that there were other players who didn't have completed physicals and were practicing (didn't give any names).

  b)  Was required to get an eye exam.

As she spoke, it appeared that Ms. Paoli had difficulty remaining focused on one topic since she tended to digress while speaking and needed to be reminded by Mr. Reeves to please address the issues that she raised in her letter.  Additionally, at a later point of the meeting, Catt Houser asked Ms. Paoli to verify her points of contention. Ms. Houser then read a list of items that she had written and Ms. Paoli confirmed that Ms. Houser was correct.  Ms. Paoli had additional commentary that was not related to the letter that she had sent to Mr. Burgess. Ms. Paoli recommended that we interview Keri LaRocca, contending that she would be able to support her statements.

Disposition: Keri LaRocca
March 21, 2006
(Susan Pacheco's Notes)

Present: Keri LaRocca and the Athletic Review Committee (comprised of: Rodney Reeves, Dennis LaFazia, Susan Pacheco)

Rodney Reeves opened the meeting by asking Ms. LaRocca to share her opinions/thoughts/concerns about incidents at the College of Southern MD tournament.

Ms. LaRocca asked if we wanted her to discuss specific things and Mr. Reeves replied that it was open for her opinions and concerns about anything that may have occurred during the tournament.

Regarding the College of Southern MD Tournament:

Ms. LaRocca referred to an incident where Ms. Paoli wasn't playing in the tournament since she missed the arrival curfew. Also stated that Ms. Paoli said that she had gotten permission to drive to the tournament by Mr. Burgess. Ms. LaRocca mentioned that she was bothered by the fact that she didn't get to play either. Ms. LaRocca said that her son was ill and that she drove to the tournament the next day (Saturday) and that if she knew that she wasn't needed, she would have stayed home with her son.

Ms. LaRocca also referred to an incident in the dugout between Ms. Paoli and Matt Sholl, Head Softball Coach. Ms. LaRocca stated that Ms. Paoli had been confrontational with Mr. Sholl in the dugout about not playing and stated that she was better than a specific player who had started in the game. Ms. LaRocca felt that Ms. Paoli's comments were inappropriate and that others present had heard her. Ms. LaRocca also stated that she believes that Ms. Paoli brings some of the problems she encounters on herself.

Ms. LaRocca stated that Asst. Coach, Emily Evans, told pitcher, Stacie Burris, to hit the opposing batter with the ball ('if I tell you to hit the f*cking player, hit the player').

Other Concerns – Coaches:

* No leadership, poor management/communication.

* Favoritism of players (assistant coaches with certain players – not penalized with running laps when errors are made, or when cell phone policy is violated).

* Miscommunication (nothing clear, mixed signals).

Disposition: Keri LaRocca
March 21, 2006
(Susan Pacheco's Notes)

- Felt use of text messaging to communicate was inappropriate (felt that phone communication is more direct and secure).

- Feels that assistant coaches are too immature for their positions (Ex: Emily Evans sat in car during practice on 3/20/06).

Safety Concerns:

- Coaches continued to use players who are ill or injured during tournament (Stacie Burris, ill; Robin Ganderton, arm injury).

- Coaches appear unaware of illness/injury or appear unconcerned over illness/injury of players during tournament (Stacie sick on Saturday, but played all 3 games regardless). Mr. Reeves asked if players made the decision to continue playing or were they coerced by coaches? Ms. LaRocca stated that it was the players' decisions, but that they may have been pushed by assistant coach, Emily Evans, to play. Ms. LaRocca stated that she felt that a player's health is more important than the game.

Mr. Reeves asked if there were any other concerns that Ms. LaRocca had and she stated no.

Disposition: Stacie Burris
March 21, 2006
(Susan Pacheco's Notes)

Present: Stacie Burris and the Athletic Review Committee (comprised of: Rodney Reeves, Dennis LaFazia, Susan Pacheco)

Rodney Reeves opened the meeting by stating that the reason the committee asked Ms. Burris here was to discuss any incidents or concerns encountered at the College of Southern MD Tournament.

Ms. Burris' concerns included:

- Team met at the college and traveled together to the tournament minus Chris Paoli and Keri LaRocca.

- Stated that Ms. Paoli didn't want to leave early to travel with team due to her class. Stated that Ms. Paoli arrived late on Friday with her boyfriend and stayed in her own room vs. staying with the team. She stated that Ms. Paoli made comments about 'having to drive up alone and pay for her own room'.

- Game day - Ms. Paoli was not dressed in her uniform when Stacie arrived with socks. Stacie informed Ms. Paoli that the team was having a breakfast meeting and Ms. Paoli confirmed that Emily Evans had told her but that she wanted to have breakfast with her boyfriend because it was his birthday.

- Ms. Paoli showed up late to the field and was asked by the team to 'come on' but was delayed because she was talking to her boyfriend.

- Game day - After the team warmed up, they returned to the dugout. Ms. Burris saw Ms. Paoli throw something down and heard her yelling/cursing about not playing (heard a partial statement that Ms. Paoli made – 'better than Mary Alice'). Ms. Burris stated that Head Coach, Matt Sholl, cautioned Ms. Paoli about changing her attitude. Observed Ms. Paoli trying to talk to Asst. Coach, Christy Ganderton, who was positioned at the first base line, but was told by the umpire to leave. Ms. Paoli then sought Mr. Burgess and was animatedly speaking to him.

Ms. Burris then spoke about an issue that occurred with the opposing team (Camden CC). She stated that the opponents were 'talking trash' and that she could handle it, but saw that DTCC players, Lauren McCartney and Nicole Tiberi, were struggling with the commentary. Ms. Burris stated that one opposing player was ejected from the game for trying to hit the umpire (she relates that

Disposition: Stacie Burris
March 21, 2006
(Susan Pacheco's Notes)

prior to the ejection, the player had been crowding the plate and Stacie threw inside pitches). No mention from Ms. Burris about any demand from our coaching staff to pitch the ball <u>at</u> the opposing player.

Mr. Reeves asked if Ms. Burris had any personal problems playing at the tournament. Ms. Burris replied that she had a cold, but didn't feel really sick during the game. Stated that she saw no reason why she couldn't have played. Mr. Reeves then asked if Ms. Burris could think of anything else about that weekend. Ms. Burris replied no, but that otherwise she had concerns about Chris Paoli.

<u>Concerns about Chris Paoli:</u>

- Feels that Ms. Paoli takes every opportunity to make the coaching staff feel inferior.

- Violates the no cell phone policy in the dugout.

- Calls and/or pulls people aside to talk about coaching staff.

- Offered players Percocet during practice on 3/16/06 (Heard Ms. Paoli say that she had extra Percocet left over from her surgery if anyone needed it). States that besides herself, Nicole Tiberi, Erica Basara, Lacy Vible, and Robin Ganderton heard the comment.

- Feels that Ms. Paoli's attitude is hurting the team because she tries to play people against each other.

- Concerning Teri Mangini, stated that Teri Mangini confirmed to Ms. Burris that Ms. Paoli had reported negative comments to her (team talking about her, calling her names) and that Ms. Mangini quit team because of the comments. Ms. Burris spoke with Ms. Mangini and tried to assure her that there weren't any negative comments being made by the team about her, and that the team only questioned why Ms. Mangini wasn't present at practice. Ms. Burris stated that the loss of Ms. Mangini hurt the team.

Mr. Reeves asked Ms. Burris if there was anything else she could think of and Ms. Burris replied there was nothing else.

Disposition: Erica Basara, Lacy Vible, Robin Ganderton, Nicole Tiberi, Stacie Burris (Each student was met with individually)
March 22, 2006
(Susan Pacheco's Notes)

Present: Students listed above and the Athletic Review Committee (comprised of: Rodney Reeves, Dennis LaFazia, Catt Houser, Susan Pacheco).

Rodney Reeves opened the meetings with each student by stating that the Athletic Review Committee was looking into situations that allegedly occurred during the College of Southern MD tournament and that during the course of that investigation, it was brought to our attention by one of the players that Ms. Paoli had offered Percocet to team members.

Mr. Reeves stated that this infraction was a serious offense that needed to be acted on. He stated that the Dean of Student Services wanted written/signed statements from those players who had heard the offer. He assured that those who signed would remain anonymous. Mr. Reeves stated that Susan Pacheco would provide the statement for signature prior to the start of softball practice later in the afternoon. All persons interviewed were asked to keep the nature of this investigation confidential.

Erica Basara:

Erica Basara confirmed that she had heard Ms. Paoli make the offer of Percocet to players.

Mr. Reeves asked if Ms. Basara was willing to sign a statement of confirmation. Ms. Basara agreed.

Lacy Vible:

Lacy Vible confirmed that she had heard Ms. Paoli make the offer of Percocet to players.

Mr. Reeves asked if Ms. Vible was willing to sign a statement of confirmation. Ms. Vible agreed.

Robin Ganderton:

Robin could not confirm that she heard the statement directly. She was told by another player about the situation.

Disposition: Erica Basara, Lacy Vible, Robin Ganderton, Nicole Tiberi, Stacie Burris
(Each student was met with individually)
March 22, 2006
(Susan Pacheco's Notes)

### Stacie Burris:

Mr. Reeves explained to Ms. Burris that this was a follow-up to the original meeting and that the committee was investigating Ms. Paoli's offer of Percocet to players on 3/16/06. Mr. Reeves stated that the Dean of Student Services was requiring written/signed statements regarding this circumstance and that all who signed would remain anonymous.

Mr. Reeves asked Ms. Burris if she was willing to sign the statement and Ms. Burris agreed.

### Nicole Tiberi

Nicole Tiberi did not have any knowledge of the incident of Chris Paoli/Percocet offer.

Disposition: Len McCartney (Father of player Lauren McCartney)
April 4, 2006
(Susan Pacheco's Notes)

Via telephone call to Susan Pacheco on April 4, 2006:

Susan Pacheco stated that she was following up with Mr. McCartney regarding a phone call that he had received from Ms. Christine Paoli. Ms. Pacheco asked Mr. McCartney what the nature of the phone call was from Ms. Paoli.

Mr. McCartney stated that he received the call from Ms. Paoli on Friday evening, March 31, 2006. He commented that he wasn't sure why Ms. Paoli had called him. He felt that perhaps she called because she needed someone to 'vent' to. Mr. McCartney stated that it was a 'rambling call that went from A to Z'. Ms. Paoli's statements to Mr. McCartney included:

- Wasn't sure why she wasn't playing
- Made most practices, but couldn't understand why others who missed practices started games
- Missed a curfew at the tournament – stated that she had permission to be late due to a class (Mr. McCartney interjected that he had heard conflicting stories about this situation from Ms. Paoli, players, and the coach)

Mr. McCartney commented to Ms. Paoli that he didn't know what Ms. Paoli wanted him to do about the situation. He stated that he was not the head coach and that he had only been involved in some practices and one game – at Mr. Burgess' request and at the request of the assistant coaches/team.

Susan Pacheco asked Mr. McCartney at the conclusion of their telephone conversation if Ms. Paoli's call was offensive in any way or if any negative comments were made by Ms. Paoli to Mr. McCartney about his daughter, Lauren. Mr. McCartney stated that he wasn't offended and that no negative comments were made about Lauren. He also reiterated that he felt that Ms. Paoli just needed to vent.

March 24, 2006

MEMORANDUM

TO:       Regan Hicks-Goldstein
          Dean of Student Services

FROM:     Ron Burgess  *Reb*
          Athletic Director

RE:       Athletic Review Committee Investigation – Christine Paoli

I am writing to advise you of the outcome of the Athletic Review Committee investigation. As you are aware, Christine Paoli wrote a letter concerning specific issues with the women's softball team. Upon receipt of the letter, I convened the committee to investigate the charges.

Based on the findings of the committee, it was felt that the coaching staff should focus on their methods of communication with the team. As a consequence of this, I have met with the coaching staff to develop an ongoing process that addresses appropriate decorum for the coaching staff. Additionally, it was determined that many of the issues that were presented resided within the area of coaching decisions.

During the process of this investigation, an allegation was made that there was an offer to provide a controlled substance to the team members by Christine Paoli. The committee found that this is a violation of the Athletic Code of Conduct and the Drug-Free Schools & Workplace Policy. Summarily, they have recommended that Christine Paoli be suspended from the women's softball team pending a full investigation of these charges.

As Athletic Director, I concur with the committee's recommendation until such time that a complete investigation has been completed.



◆ *Dover* ◆ *Georgetown* ◆ *Stanton* ◆ *Wilmington*

April 13, 2006

RECEIVED                           Registered Mail

2006

DELAWARE TECH
DE

*Brian*
**FYI**

RHG
4/21/06

Ms. Christina Paoli
34363 Summerlyn Dr.
Apt. 204
Lewes, DE 19958

Dear Ms. Paoli:

This letter is written to inform you that you have been accused of violating Delaware Tech's Student Rights and Standards of Student Conduct Policy. Ron Burgess, Athletic Director, indicated in a letter dated March 24, 2006, that based on a report submitted by the Athletic Review Committee, that you had allegedly violated the College's Drug-Free School and Workplace Policy by offering a controlled substance (percocet) to members of the softball team. A copy of the complaint and the Student Rights and Standards of Student Conduct Policy are attached.

On March 30, 2006, you attended a meeting with Rodney Reeves, Assistant Athletic Director, where he attempted to explain the charges against you and inform you that you were suspended from the team, pending further investigation of the charges. He was also prepared to explain the steps of the resolution process, as outlined in the Student Handbook. However, you abruptly left the meeting without allowing him to finish.

After reviewing the documentation given to me by Ron Burgess, I feel that a suspension from the team, as recommended by the Athletic Review Committee, from March 30, 2006 to April 14, 2006, would be an appropriate sanction (see Sanctions for Violation of Student Conduct Standards in the Student Rights and Standards of Student Conduct). Now that the suspension is completed, you will be allowed to participate in all activities associated with the softball team after April 14, 2006. If you choose to have a hearing before the Campus Judicial Committee, the investigation into the charges will continue. Whatever your decision, you will be allowed to participate in all activities associated with the softball team.

**B15**

You have five (5) working days to respond in writing to the accusations against you. In addition, you are hereby advised of the following:

- You have the right to a hearing before a Campus Judicial Committee in accordance with the hearing process outlined in Section VI.
- You have the right to be represented by an advisor or an attorney in a hearing before the Campus Judicial Committee. The name of the advisor or attorney must be submitted to the Campus Judicial Committee at least twenty-four (24) hours prior to the hearing.
- You have the right to waive a hearing before the Campus Judicial Committee and to accept the disposition of the matter as determined by me. If a hearing is waived, I intend to impose a suspension from the team from March 30, 2006 to April 14, 2006.
- That waiving the right to a hearing includes waiving the right to an appeal.
- That you will be deemed to have waived your right to a hearing before the Campus Judicial Committee unless a written request is received by me within seven (7) working days after the date of this notice.
- You have the right to appeal the decision of the Campus Judicial Committee to me in my capacity as Dean of Student Services.

If you have any further questions about the process, please do not hesitate to contact me at 454-3998 or 571-5360.

Sincerely,

Regan Hicks-Goldstein
Dean of Student Services

cc. Lawrence H. Miller
　　Vice-President & Campus Director

　　Ron Burgess
　　Athletic Director

# DELAWARE TECH ◆

◆ *Dover* ◆ *Georgetown* ◆ *Stanton* ◆ *Wilmington*

April 24, 2006

Ms. Christina Paoli
34363 Summerlyn Dr.
Apt. 204
Lewes, DE  19958

Dear Ms. Paoli:

This letter is written to inform you that you have been accused of violating Delaware Tech's Student Rights and Standards of Student Conduct Policy in the manner set forth in the attached complaint.  A copy of the complaint (consisting of an April 22, 2006 letter from Stacie Lynn Burris and a Stanton Campus Public Safety Report dated April 24, 2006) and the Student Rights and Standards of Student Conduct Policy are attached. After consultation with the Vice-President & Campus Director, I have determined that the welfare of the College community is endangered or jeopardized by your continued presence at athletic events. Therefore, you are hereby suspended from all sports-related extra-curricular activities, including games and the Athletic Banquet, until the complaint has been resolved.

You have five (5) working days to respond in writing to the accusations against you.  In addition, you are hereby advised of the following:

- You have the right to a hearing before a Campus Judicial Committee in accordance with the hearing process outlined in Section VI.
- You have the right to be represented by an advisor or an attorney in a hearing before the Campus Judicial Committee.  The name of the advisor or attorney must be submitted to the Campus Judicial Committee at least twenty-four (24) hours prior to the hearing.
- You have the right to waive a hearing before the Campus Judicial Committee and to accept the disposition of the matter as determined by me. If the allegations against you are substantiated, then the sanction I may impose could include a rehabilitative referral, suspension from the team or from classes, or dismissal from the College for a definite amount of time.

**B17**

---

- That waiving the right to a hearing includes waiving the right to an appeal.
- That you will be deemed to have waived your right to a hearing before the Campus Judicial Committee unless a written request is received by me within seven (7) working days after the date of this notice.
- You have the right to appeal the decision of the Campus Judicial Committee to me in my capacity as Dean of Student Services.

If you have any further questions about the process, please do not hesitate to contact me at 454-3998 or 571-5360.

Sincerely,

Regan Hicks-Goldstein
Dean of Student Services


cc. Lawrence H. Miller
     Vice-President & Campus Director

     Ron Burgess
     Athletic Director

B18

April 22, 2006
148 Woodside Drive
Chesapeake City, MD 21915

Ms. Regan Hicks-Goldstein
Dean of Student Services
Delaware Technical & Community College
Stanton Campus
400 Stanton-Christiana Road
Newark, DE 19713

Dear Dean Goldstein:

I would like to inform you of the events that have occurred over spring vacation. First of all, we, the Delaware Tech 2006 Softball team and I, are being followed by a private investigator named **Hugh Craig from FYI Detectives**. Craig drives a silver Chrysler Sebring with a Delaware license plate tag of 161630 but he has also been seen in a pick-up truck. We contacted the state police and Corporal Fox from troop six investigated him for us. He was not only watching us at games, but also in our personal time. A few of my teammates left from practice on Wednesday, April 19, 2006 and went to one girl's house to get ready for college night at the Phillies stadium, and from there they went straight to the Phillies game and Hugh Craig followed and video taped them the entire night. Hugh Craig was hired by **Chris Paoli** to **"legally stalk"** us. In my opinion Chris Paoli is not mentally stable and if she has hired Craig to stalk us without just cause than whom else might she hire? A hit man?! What is next? I do not feel safe at Delaware Tech or anywhere else. I am very afraid of what Chris might do to me, my family, my teammates, and my coaches.

Chris confirmed my fears on Thursday, April 20, 2006 when she **verbally harassed me, threatened bodily injury** to me, and **attempted to physically attack** me several times. I was instructed to come back to school and make a report with the security guard which I did immediately as well as my parents, my teammates (apart from Chris Paoli), and my coaches. I am terrified of Chris Paoli and what she might do to me or my loved ones. I do not understand why **Delaware Tech is not protecting me** and why **Delaware Tech is protecting a habitual rule violator.** In the section of the Delaware Tech student handbook about *Student Rights and Standards of Student Conduct Section V Group A* under the heading unacceptable student conduct there are many regulations that Chris Paoli has violated and she should have been subject to disciplinary action under the procedures set forth in this policy. First of all, in Section V, Group A, Number 1 it reads:
> *"The incitement or acts of force, assault, offensive touching, coercion, harassment, violence, intimidation or any interference with the free movement of others upon the College premises, or any act which endangers the mental or physical health or safety, or any act which is in violation of the Delaware Technical & Community College Violence-Free College Policy."*

Chris Paoli has **harassed and intimidated me** and other members of the 2006 Delaware Tech softball team. Paoli endangered my mental health and physical safety when she threatened to harm me. Furthermore, I have been mentally stressed to the point of my

B19

performance in school and on the field falling below my ability due to her constant harassment and the fact that she hired a stalker.

In Section V, Group A, Number 2 it reads:

*"Disruption or obstruction of the orderly operation of Campus activities, on or off College premises. Disruptive behaviors may include, but are not limited to, profane or vulgar statements or gestures, personal habits, personal appearance, slanderous or libelous statements, speech-oriented activities or publications."*

Beginning at the College of Southern Maryland Tournament and continuing up to this point, Chris Paoli has aggressively screamed at the coaches, as well as Ron Burgess and the players, in public with very vulgar language and using the F*** word countless times. My 19 month old son, 5 year old niece, and 73 year old grandmother along with my parents come to every game and it is ludicrous that they have to be subject to this type of language at a school event. At the College of Southern Maryland Tournament Saturday, March 11 – Sunday, March 12, 2006 the umpires had to stop the game and ask Paoli to leave the field of play because she was ranting and raving to the first base coach. This was not only disruptive to our team but the umpires and the other team had already judged from this episode. At the Mercer County College game on Thursday, April 20, 2006 the batter had to step out and scream from the batters box because Chris was angrily exploding in her teammates faces in the last inning of the game.

At the Delaware Tech spirit game against Gloucester Community College on Wednesday, April 18, 2006 Paoli hired a few people for $50.00 each to hold signs insinuating that she was above other players. Also, at the Delaware Tech Owens away game on Thursday, April 13, 2006 she caused a big scene while talking to you very loudly on the phone. She was standing next to the umpire at the fence distracting both teams. Our fans and my teammates were very embarrassed because the other team kept yelling over asking her to stop and saying we were being rude. A few of our parents asked her to stop as well and when they did Chris Paoli initiated a verbal confrontation with one of them. **Paoli is a player representing our school and our state every time she puts her jersey on.** Are Chris Paoli's vulgar outbursts the kind of representation that you want Delaware Tech to be characterized with?

In Section V, Group A, Number 4 it states:

*"Possession, consumption, and/or abuse of illegal drugs and/or alcohol or any violation of the Delaware Technical & Community College Drug-Free School and Workplace Policy."*

Chris Paoli has offered several girls on the team percocet as well as alcohol. The most recent **proposal for alcohol to an underage teammate** was on the way back from the County College of Morris game on Saturday, April 15, 2006.

In Section V, Group A, Number 5 it reads:

*"Forgery, bribery, perjury, making a false statement, and/or other behavior indicating dishonesty."*

I was told that Chris Paoli made false statements to Teri, our returning catcher, which made her feel unwanted and as a result Teri quit the team. After Teri quit Chris said that she wanted to catch and made it seem like Paoli was after Teri's position.

Chris Paoli has hired three people to hold signs and a private investigator, who knows if Paoli would hire someone to break in cars or **hire someone to carry out her threats**.  I am very worried about what might happen to me or my family if something is not done soon. I know that **you have been aware of these incidences** every step of the way, but I do not know why **you have not taken action to protect your athletes**.  I want to know **what you plan to do to keep me safe** and I would like it in writing with the dates and actions you expect to take for my safety.

Sincerely,

Stacie Lynn Burris



# DELAWARE TECHNICAL & COMMUNITY COLLEGE

## STANTON CAMPUS
## PUBLIC SAFETY DEPARTMENT



TYPE OF REPORT: **INITIAL**    Investigating Officer: PSO. MURRAY, ERNEST

| DATE: | April 24, 2006 | | PAGE 1 | COMPLAINT NO: | Supplement Code |
|---|---|---|---|---|---|
| | | | | **Z4-06-0057** | |

| | RELATIONSHIP TO CAMPUS: STUDENT | | | | | |
|---|---|---|---|---|---|---|
| NAME: | CHRISTINA R. PAOLI | | DOB: | SEE BELOW Female 06 /05 /1962 | TELEPHONE: CELL  (302) 260-1036 NONE | |

| ADDRESS: CITY/STATE: | 34363 SUMMERLYN DRIVE APT. 204 LEWES, DELAWARE 19958 |
|---|---|

| LOCATION OF INCIDENT | DELAWARE TECHNICAL AND COMMUNTIY COLLEGE IN LOT #1 AND MERCER COUNTY COMMUNITY COLLEGE WOMENS SOFTBALL GAME |
|---|---|
| OCCURRED DAY/DATE/TIME | Thursday  April  20  2006  Time Incident Occurred  1230HRS-1830 HRS |
| REPORTED DAY/DATE/TIME | Thursday  April  20  2006  Time Incident Was Reported 1830 HRS |

| TYPE OF INCIDENT(S) | DISORDERLY CONDUCT MISDEMEANER  Cleary Act Violation?: NO |
|---|---|

**Emergency Services Used:** NONE
**College Official Notified of incident?** CAMPUS DIRECTOR

## PROPERTY SECTION: N/A    OWNER OF PROPERTY: COLLEGE

List Stolen/Damaged Property Include Value of Property

Investigators Signature: _____
        Date: 4/24/06

Supervisor Signature: _____
        Date: _____

B22

**COMPLAINT NUMBER Z4-06-0057**

**DATE OF REPORT:** April 24, 2006

In all statements include day-date-time-place of contact, name-Address-Telephone.

| STATEMENT BY:<br>WITNESS | STACIE LYNN BURRIS #7<br><br>AT APPROX. 2015HRS THIS WRITER INTERVIEWED MRS. BURRIS IN ROOM A-117. MRS. BURRIS STATED THAT IT ALL STARTED AT APPROX. 1230HRS WHILE LOADING UP THE VAN TO GO TO AN AWAY GAME AT MERCER COUNTY COMMUNITY COLLEGE IN NEW JERSY. MRS. PAOLI CAME UP TO THE VAN AND IT WAS LOCKED , SO SHE BEGAN POUNDING ON THE DOOR. ONE OF THE LADIES IN THE VAN UNLOCKED THE DOOR. THEN OUT OF THE BLUE MRS. PAOLI SAID TO EVERYONE ON THE VAN "YOU GUYS ARE A BUNCH OF FUCKING IDIOTS AND ASSHOLES." THEN AT THE GAME OUT OF THE BLUE MRS. PAOLI STATED TO ALL THE TEAM IN THE DUG-OUT "SHUT UP BITCH" AT EVERYONE. THEN MRS. PAOLI GOT UP INTO MRS. BURRIS'S FACE AND STARTED YELLING AND CURSING AT HER AND MRS. BURRIS IGNORED HER AND STILL CONTINUED TO PACK UP TO LEAVE. MRS. BURRIS STATED THAT AS SHE WAS LEAVING WITH HER PARENTS WHEN  MRS. PAOLI RAN UP BACK INTO HER FACE AND THEN TRIED TO KNOCK INTO HER WITH MRS. PAOLI'S SHOULDER AND MISSED. MRS. PAOLI FINALLY GOT ON HER CELL PHONE AND CONTACTED SOMEONE AND STATED "DID YOU GET THAT?" AND "COME AND PICK ME UP". A MAN PULLED UP IN A VEHICLE THAT WAS EARLIER IN THE WEEK IDENTIFIED AS A PRIVATE INVESTIGATOR WHOM MRS. PAOLI HIRED THAT HAS BEEN HANGING AROUND THE CAMPUS VIDEO TAPING THE LADIES PRACTICES AND THEIR GAMES. THIS MAN GAVE MRS. PAOLI A RIDE BACK TO HER CAR HERE AT DELAWARE TECHNICAL AND COMMUNITY COLLEGE. THIS INTERVIEW WAS COMPLETED AT 2026HRS. |
| --- | --- |

Investigators Signature: _____     Supervisor Signature: _____
Date: _____     Date: _____

B23

PAGE 3

| STATEMENT BY: WITNESS | CAROL SMITH, MOTHER OF STACIE BURRIS<br><br>AT APPROX. 2026HRS THIS WRITER INTERVIEWED MRS. SMITH IN ROOM A-117. MRS. SMITH STATED THAT SHE WAS SEATED ON THE BLEACHERS BEHIND HOME PLATE. SHE STATED THAT SHE HEARD THE COMMOTION OCCURING IN THE DUG-OUT AND SEEN MRS. PAOLI IN MRS. BURRIS'S FACE MRS. SMITH YELLED OUT TO MRS. PAOLI "LEAVE HER ALONE". MRS. PAOLI REPLIED THAT "I CAN SUE YOU FOR THAT COMMENT". MRS. PAOLI WAS TRYING TO PROVOKE A FIGHT WITH MRS. BURRIS BUT MRS. BURRIS JUST WALKED AWAY. THIS INTERVIEW WAS COMPLETED AT 2036HRS. |
| --- | --- |
| STATEMENT BY: WITNESS | NICOLE TIBERI #2<br><br>AT APPROX. 2037HRS THIS WRITER INTERVIEWED MRS. TIBERI IN ROOM A-117. MS. TIBERI STATED THAT SHE WAS AWAY FROM THE DUG-OUT. SHE ONLY HEARD MRS. PAOLI STATE "ITS ALL RIGHT, YOU'LL GET PAY BACK COMING TO YOU" TOWARDS MS. STACIE BURRIS. THIS INTERVIEW WAS COMPLETED AT 2040HRS. |
| STATEMENT BY: WITNESS | GARY SMITH, FATHER OF STACIE BURRIS<br><br>AT APPROX. 2040HRS THIS WRITER INTERVIEWED MR. SMITH IN ROOM A-117. MR SMITH STATED THAT HE POSITIONED AT THE FAR LEFT FIELD. HE SEEN COMMOTION IN THE DUG-OUT AND PROCEEDED TOWARDS THE AREA. MR. SMITH STATED THAT HE HEARD MRS. SMITH TELL MRS. PAOLI TO LEAVE HER ALONE AND MRS. PAOLI'S REPLY OF I'LL SUE YOU FOR THAT COMMENT. MR. SMITH THEN STATED THAT HE OBSERVED MRS. PAOLI SURROUNDING MRS. BURRIS AND TRYING TO PROVOKE A FIGHT WITH HER BUT MRS. BURRIS JUST WALKED AWAY. THIS INTERVIEW WAS COMPLETED AT 2048HRS. |

**INVESTIGATIVE ACTION BY THE OFFICER:** This section is a chronological synopsis of the action taken by the Officer(s) during the investigation.

AT APPROX. 1830HRS. THIS WRITER WAS NOTIFIED BY RON BURGESS (ATHLETIC DIRECTOR) THAT MRS. CHRISTINA PAOLI HAS ACTED INAPPROPRIATELY I.E. CURSING OUT TEAM MATES, HEAD COACH AND PARENTS OF TEAM MATES AND EVEN TRYING TO CAUSE PHYSICAL INJURY TO ONE OF THE TEAM MATES AT AN AWAY GAME FOR DTCC IN MERCER COUNTY COMMUNITY COLLEGE IN NEW JERSEY. AT APPROX. 2015HRS. THIS WRITER STARTED INTERVIEWING ALL THE TEAM MATES AND PARENTS OF TEAM MATES THAT WERE ALL WITNESSES TO THIS INCIDENT IN ROOM A-117 (CAFETERIA). THIS INTERVIEWING WAS COMPLETED AT APPROX. 2235HRS.

Investigators Signature: _E. ____/_    Supervisor Signature: _W___

Date: _4/24/06_    Date: _____

B24

PAGE 4

DESCRIPTION OF SUSPECT: GENDER:          FEMALE      RACE: WHITE   APPROX.
AGE/D.O.B.  06/05/1962, 43YOA       HEIGHT:5'4-5'6   WEIGHT: 160-180LBS    BUILD: MEDIUM
COLOR OF HAIR: LONG STRAIGHT BRUNETTE
COLOR OF EYES: BROWN       CLOTHING DESCRIPTION: BLUE AND WHITE JERSEY W/ #10
ON BACK, BLUE SHORTS, WHITE BASEBALL CLEATS

DISPOSITION:  PENDING (ACTIVE)

COMPLAINT NUMBER: Z4-06-0057          DATE OF REPORT: April 24, 2006

ADDITIONAL INFORMATION:
JESSICA TORTEROTOT #18

AT APPROX. 2103HRS THIS WRITER INTERVIWED MS. TORTEROTOT IN ROOM A-117. MRS.
TORTEROTOT STATED THAT EVERYTHING WAS CALM LIKE NORMAL AT THE GAME.
THEN ALL OF A SUDDEN MRS. PAOLI OBSERVED RON BURGESS LEAVE THE GAME AND
THEN MRS. PAOLI STARTED CURSING AND YELLING AT TEAM MATES AND HEAD COACH
MATT SCHOLL. IT WAS ALL LIKE A MOVIE. IT SEEMED LIKE SHE PLANNED OUT THE
WHOLE THING. THIS INTERVIEW WAS COMPLETED AT 2108HRS.

Investigators Signature: _____    Supervisor Signature: _____
                  Date: 4/24/06                          Date: _____

B25

**MARYALICE SMILEY #13**

AT APPROX. 2108HRS THIS WRITER INTERVIEWED MS. SMILEY IN ROOM A-117. MS. SMILEY STATED THAT SHE SEEN MRS. PAOLI IN MRS. BURRIS'S FACE AND THEN MS. TORTEROTOT GOT IN BETWEEN THE TWO AND PULLED MRS. BURRIS AWAY FROM MRS. PAOLI. MS. SMILEY ALSO STATED THAT SHE HEARD MRS. PAOLI STATE TO MS. BURRIS THAT "THIS IS NOT OVER" AND THEN CONTACTED SOMEONE ON MRS. PAOLI'S CELL PHONE AND STATE "DID YOU GET THAT". THIS INTERVIEW WAS COMPLETED AT 2119HRS.

**ERICA BASARA # 4, TEAM CAPTAIN**

AT APPROX. 2121HRS THIS WRITER INTERVIEWED MS. BASARA IN ROOM A-117. MS. BASARA STATED THAT SHE WAS UP TO BAT ON HOME PLATE WHEN SHE HEARD ARGUING IN THE DUG-OUT. MS. BASARA FINALLY HAD TO CALL TIME OUT AND STATE TO THE DUG-OUT "SHUT AND QUIT IT". SOON AFTER SHE WAS DONE ON HOME PLATE MS. BASARA WENT INTO THE DUG-OUT AND LAUREN MCCARTNEY, STACIE BURRIS AND CHRSTINA PAOLI WAS IN THERE ARGUING. MS. BASARA BROKE THEM APART AND TOLD THEM ALL TO COOL IT. THIS INTERVIEW WAS COMPLETED AT 2125HRS.

**LISA TODD #3**

AT APPROX. 2125HRS THIS WRITER INTERVIEWED MS. TODD IN ROOM A-117. MS. TODD STATED THAT WHEN EVERYONE WAS IN THE VAN READY TO LEAVE MRS. PAOLI CAME UP TO THE VAN STARTED BANGING ON THE DOOR UNTIL SOMEONE OPENED IT UP FOR HER. UPON ENTERING THE VAN MRS. PAOLI STATED "ALL OF YOU ARE FUCKING IDIOTS AND ASSHOLES" TO ALL THE GIRLS IN THE VAN. THEN AT THE GAME MRS. PAOLI GOT INTO MRS. BURRRIS'S FACE AND WAS CURSING HER OUT. MS. TODD THEN STATED ABOUT HOW MRS. PAOLI LIKES TO REPEATEDLY SAY IM NOT GAY WHILE SHE GETS INTO EVERYONES FACE, CORNERING THEM AND MAKING BODILY CONTACT THAT MAKES HER AND OTHER TEAM MATES FEEL VERY UNCOMFORTABLE. THIS INTERVIEW WAS COMPLETED AT 2134HRS.

**MELISSA BLACKARD #11**

AT APPROX. 2134HRS THIS WRITER INTERVIEWED MS. BLACKARD IN ROOM A-117. MS. BLACKARD STATED THAT SHE HEARD MRS. PAOLI TELL LACY VIBALE TO SHUT UP. MS. BLACKARD ALSO STATED THAT WITH NO CONNECTION WITH THE SOFTBALL GAME INCIDENT, THAT SHE IS VERY UNCOMFORTABLE WITH MRS. PAOLI AROUND. MS. BLACKARD CONTINUED BY STATING THAT MRS. PAOLI HAS A HABITT OF VOLUNTARLY DISCUSSING HER SURGERY ON HER BREASTS AND EVEN EXPOSING THEM TO HER. THIS SHE INCLUDED MADE HER FEEL VERY UNCOMFORTABLE. THIS INTERVIEW WAS COMPLETED AT 2140HRS.

Investigators Signature: _____     Supervisor Signature: _____
Date: _____                              Date: _____

B26

PAGE 6

Z4-06-0057

## KELLY MCCORMICK #19

AT APPROX. 2141HRS THIS WRITER INTERVIEWED MS. MCCORMICK IN ROOM A-117. MS. MCCORMICK STATED THAT MRS. PAOLI SAID TO HER THAT "I HAVE NOT TRIED TO GIVE OR SELL ANY PERCASET OR MIDOL TO ANYONE. DON'T BELIEVE THEM." THEN DURING THE GAME MS. MCCORMICK STATED THAT SHE HEARD MRS. PAOLI STATE TO LACY VIBALE THAT "YOU HAVE BEEN ON MY ASS ALL GAME". THEN AFTER THE GAME, MS. MCCORMICK SEEN MRS. PAOLI TRYING TO STRIKE MRS. BURRIS WITH HER SHOULDER AND MISSED. THIS INTERVIEW WAS COMPLETED AT 2147HRS.
Z4-06-0057

## ROBIN GANDERTON #12

AT APPROX. 2147HRS THIS WRITER INTERVIEWED MS. GANDERTON IN ROOM A-117. MS. GANDERTON STATED THAT SHE ALSO SEEN MRS. PAOLI TRYING TO STRIKE MRS. BURRIS WITH HER SHOULDER AND MISSED. MS. GANDERTON ALSO STATED THAT SHE AS WELL HEARD MRS. PAOLI STATE TO LACY VIBALE THAT "YOU HAVE BEEN ON MY ASS ALL GAME". THIS INTERVIEW WAS COMPLETED AT 2151HRS.

## LAUREN MCCARTNEY #24

AT APPROX. 2151HRS THIS WRITER INTERVIEWED MS. MCCARTNEY IN ROOM A-117. MS. MCCARTNEY STATED THAT OBSERVED MRS. PAOLI YELLING AT HEAD COACH MATT SCHOLL AND STATING "DO YOU SEE WHATS GOING ON ? WHAT ARE YOU GOING TO DO ABOUT IT?" THEN MS. MCCARTNEY OBSERVED MRS. PAOLI GO UP TO ONE OF THE UMPIRES AFTER THE GAME AND ASK HIM FOR HIS NAME AND PHONE. MS. MCCARTNEY ASSUMED THAT MRS. PAOLI WAS TRYING TO GET THE UMPIRES ON HER SIDE. THEN WHILE THE TEAM WAS PACKING UP EVERYTHING TO LEAVE, MRS. PAOLI STATED TO EVERYONE THAT "I'M NOT GOING TO QUIT AND YOUR NOT GONNA CHASE ME AWAY BECAUSE I KNOW THAT'S WHAT YOU WANT." THIS INTERVIEW WAS COMPLETED AT 2201HRS.

## LACY VIBALE, TEAM MANAGER

AT APPROX. 2201HRS THIS WRITER INTERVIEWED MS. VIBALE IN ROOM A-117. MS. VIBALE STATED THAT SHE IS UNSURE WHY MRS. PAOLI HAS TO DISRUPT PRACTICES AND GAMES ALL THE TIME. MS. VIBALE STATED THAT MRS. PAOLI HAS A HABIT OF TALKING DOWN TO OTHER PLAYERS AND TELLING THEM THAT SHE DOES NOT KNOW WHY THEY PLAY THAT CERTAIN TEAM MATE AND NOT HERSELF. MRS. PAOLI THINKS SHE IS BETTER THEN EVERYONE ON THE TEAM. MS. VIBALE DOES AGREE THAT MRS. PAOLI HAS A HABIT OF GETTING TOO CLOSE TO THE OTHER TEAM MATES EITHER IT BE FROM TALKING TOO CLOSELY AND CORNERING THEM TO ACTUAL BODILY CONTACT. OTHER TEAM MATES HAS VOICED THEIR CONCERN IN THIS MATTER. THIS INTERVIEW WAS COMPLETED AT 2208HRS.

Investigators Signature: _____    Supervisor Signature: _____
Date: 4/24/06    Date: _____

B27

Z4-06-0057

**CHRISTY GANDERTON, ASSISTANT COACH**

AT APPROX. 2208HRS THIS WRITER INTERVIEWED MS. GANDERTON IN ROOM A-117. MS. GANDERTON STATED THAT WHEN EVERYONE WAS IN THE VAN READY TO LEAVE MRS. PAOLI CAME UP TO THE VAN STARTED BANGING ON THE DOOR UNTIL SOMEONE OPENED IT UP FOR HER. UPON ENTERING THE VAN MRS. PAOLI STATED "ALL OF YOU ARE FUCKING IDIOTS AND ASSHOLES" TO ALL THE GIRLS IN THE VAN. THIS INTERVIEW WAS COMPLETED AT 2213HRS.

**EMILY EVANS, ASSISTANT COACH**

AT APPROX. 2213HRS THIS WRITER INTERVIEWED MS. EVANS IN ROOM A-117. MS. EVANS STATED THAT MRS. PAOLI HAS A HABIT OF DOING WHAT SHE WANTS TO DO. MRS. PAOLI HAS BROKEN THE RULES AND THE REGULATIONS THAT ALL PLAYERS HAVE TO FOLLOW. MRS. PAOLI HAS BROKEN CURFEW, CAME IN EARLY IN THE MORNING WHEN LIGHTS OUT WAS 10:00PM AT AN AWAY GAME, HAVING A GUY STAY THE NIGHT IN HER ROOM WHEN SHE KNOWS THAT'S WAS AGAINST POLICY AND CURSING AROUND AND CURSING OUT OTHER TEAM MATES. MRS PAOLI DOES NOT FOLLOW ANY OF THE RULES THAT DTCC HAS CREATED FOR ALL ATHLETIC TEAMS AND MS. EVANS STATED IN HER OPINION, SHE WOULD LIKE TO HAVE MRS. PAOLI REMOVED FROM THE TEAM FOR GOOD. SHE IS NOT A TEAM PLAYER, SHE IS ALWAYS TALKING BAD ABOUT OTHER TEAM MATES AND IS BREAKING ALL THE TEAMS SPIRIT. THIS INTERVIEW WAS COMPLETED AT 2235HRS.

**DISPOSITION:** THIS REPORT WAS REFERRED TO THE CAMPUS DIRECTOR AND DEAN OF STUDENT SERVICES IN REFERENCE TO SECOND OCCURRENCE OF WORK PLACE VIOLENCE POLICY VIOLATION.

Investigators Signature: _____
Date: _____

Supervisor Signature: _____
Date: _____

B28



**DELAWARE TECH** ◆

*Dover✦Georgetown✦Stanton✦Wilmington*

May 4, 2006

Ms. Christina Paoli
34363 Summerlyn Drive, Apt. 204
Lewes, DE 19958

Dear Ms. Paoli:

This letter will confirm the e-mail that I sent to you today. A hearing before the Campus Judicial Committee on the initial complaint forwarded to you by a letter dated April 13, 2006, from Dean Hicks-Goldstein and the second complaint forwarded to you under cover of Dean Hicks-Goldstein's April 24, 2006 letter will be held on Wednesday, May 10, 2006. The hearing will be conducted at the Wilmington Campus in Conference Room 202 in the Southeast Building and will begin promptly at 1:00 p.m. The procedure for the hearing will be as set forth in Section VI of the Student Rights and Standards of Student Conduct Policy, a copy of which was sent to you by Dean Hicks-Goldstein with each complaint. Please be prepared to present any witnesses or documents that you would like the committee to consider at that time. I have allotted two hours for the hearing.

Very truly yours,

Brian D. Shirey
Chief Legal Counsel

BDS/nrv

Cc:    Regan Hicks-Goldstein

*Delaware Technical & Community College*
**Office of the President**
P.O. Box 897, Dover, DE 19903
Phone: (302) 739-3737 Fax: (302) 739-3345
*Equal Opportunity/Affirmative Action Institution*

B29

## DRUG-FREE SCHOOL AND WORKPLACE POLICY

Delaware Technical & Community College believes that illegal drugs and abuse of alcohol have no place in the college environment.

Furthermore, Congress passed the Drug-Free Workplace Act of 1988, requiring the certification of federal grantees of a drug-free workplace; and the Drug-Free Schools and Communities Act Amendments of 1989, requiring the certification of adoption and implementation of programs to prevent unlawful possession, use or distribution of illicit drugs and alcohol by students and employees. The College supports these Acts.

For these reasons, the College adopts the following regulations:

A. The unauthorized and/or unlawful manufacture, distribution, dispensing, possession or use of a controlled substance or alcohol is strictly prohibited in all facilities of the College, in all places where its employees/students work/ attend, including all state-owned vehicles, and as any part of the College's activities. A controlled substance is one which appears in Schedules I through V of Section 202 of the Controlled Substances Act (21 U.S.C. 812). As a condition of employment/ enrollment, all employees/students shall abide by this prohibition and notify the College of any criminal drug or alcohol statute conviction for a violation of this policy as provided by Paragraph 2 below. Violation of such prohibition shall result in action against the employee/student, as set out in Section 7 below, which shall include action up to and including termination/expulsion, and/or satisfactory participation in an approved drug or alcohol abuse assistance or rehabilitation program.

Participation in such a program shall not be paid for by the College, but may be covered by a(n) employee's/student's health insurance policy.

Appendix A* contains a description of federal trafficking (distribution) penalties for substances covered by the Controlled Substances Act.

Appendix B* contains examples of state penalties for the unlawful use, possession, or distribution of drugs or alcohol.

All violations of the above policy shall be reported to the College President, or his/her designee, who shall report the violation to the appropriate police authority. Action shall be taken in all cases of a chargeable offense under the provisions of the applicable state law or comparable federal law; however, a conviction of the charged offense shall not be necessary to take action against the employee/student for a violation of the policy. The employee/student against whom such an action is taken shall be entitled to due process through the rules and regulations of Delaware Technical & Community College.

B. All employees/students shall notify the College President in writing of any criminal drug or alcohol statute conviction for a violation occurring in any facility or on the property of the College, or at any College activity, no later than five (5) days after such conviction. Failure of the employee/student to make such a notification shall lead to termination/expulsion from the College. Within ten (10) days of receiving notice of any employee convicted as described above the College shall notify the federal agencies providing grants to and through the College in accordance with the Drug-Free Workplace Act of 1988.

C.  Within thirty (30) days of receiving notice of any
    employee/student convicted as described in section
    B, the College will:

   1.  Take appropriate action against such a(n)
    employee/student, up to and including
    termination/expulsion; or

   2.  Request such a(n) employee/student to
    participate satisfactorily in a drug or alcohol
    abuse assistance or rehabilitation program
    approved for such purposes by a federal, state,
    or local health, law enforcement, or other
    appropriate agency. Such action may be taken
    by the College prior to conviction.

D.  The College shall give each employee/student a copy
    of the statement set out in the sections A, B, and C
    above, and post it prominently throughout the
    College. To meet requirements of the Drug-Free
    Workplace Act of 1988, each employee shall sign a
    copy of the statement; said copy shall be placed in
    the employee's payroll file in the Office of the
    President.

E.  Each campus of the College will develop and implement
    a program to inform employees/students of:

   1. The dangers of drug abuse or alcohol
    consumption
   2. The College policy of maintaining a drug-
    and alcohol-free environment;
   3. Any available drug or alcohol abuse counseling,
    rehabilitation, and employee assistance
    programs; and
   4. The penalties that may be imposed upon
    employees/students for drug or alcohol
    violations occurring in any facility or on the
    property of the College, or at any College activity.

F.  The College shall make a good faith effort to
continue to maintain a drug- and alcohol-free
environment through the implementation of this
policy, and ensuring that all new employees/students
are informed of the policy through the measures set
out in sections D and E.

G.  Delaware Technical & Community College
employees/students who violate this policy shall
be subject, as a minimum, to the following penalties:

VIOLATIONS

1. Unlawful possession, use or consumption of a
controlled substance or a counterfeit controlled
substance, in an amount that is typical of
immediate personal use.
**STUDENT:** Three days' suspension from classes
and/or rehabilitative referral to drug-abuse
program.

2. Unlawful possession or use of a hypodermic
syringe or of drug paraphernalia.
**STUDENT:** Three days' suspension from classes
and/or rehabilitative referral to drug-abuse
program.

3. Second offense of violation 1 or 2 above.
**STUDENT:** One-month suspension from classes
and mandatory participation in drug-abuse
program.

4. Third offense of violations 1 and/or 2.
**STUDENT:** Expulsion

B33

5. Unlawful possession of a controlled substance or a counterfeit controlled substance, in an amount which is beyond that typical for immediate personal use.
STUDENT: One-month suspension from classes and mandatory participation in drug-abuse program.

6. Unlawful delivery or distribution of a hypodermic syringe.
STUDENT: One-month suspension from classes and mandatory participation in drug-abuse program.

7. Unlawful delivery, distribution or manufacture of drug paraphernalia.
STUDENT: One-month suspension from classes and mandatory participation in drug-abuse program.

8. Unlawful delivery or distribution of a controlled substance, of a counterfeit controlled substance or of a non-controlled substance under the representation that the substance is a narcotic or non-narcotic controlled substance in an amount that is typical for immediate personal use.
STUDENT: One-month suspension from classes and mandatory participation in drug-abuse program.

9. Unlawful delivery or distribution of a controlled substance, of a counterfeit controlled substance or of a non-controlled substance under the representation that the substance is a narcotic or non-narcotic controlled substance in an amount beyond that which is typical for immediate personal use.
STUDENT: Three-month suspension from classes and mandatory participation in drug-abuse program.

10. Second offense of violations 5 through 9.
STUDENT: Expulsion.

11. Unlawful delivery or distribution to a minor of a hypodermic syringe, of drug paraphernalia, or of any amount of a controlled substance, a counterfeit controlled substance, or a non-controlled substance under the representation that the substance is a narcotic or non-narcotic controlled substance.
STUDENT: Expulsion.

12. Trafficking, as defined in 16 Del. C. Section 4753A or in a comparable federal law.
STUDENT: Expulsion

13. Failure to report conviction pursuant to Section b of the policy.
STUDENT: Expulsion.

14. Intoxication from use of alcohol.
STUDENT: Up to five days' suspension from classes and/or rehabilitative referral. Subsequent violations may result in expulsion.

**CHRISTIANA CARE**
HEALTH SERVICES

Christiana Hospital          Wilmington Hospital
4755 Ogletown-Stanton Rd     501 W 14th Street
Newark, DE 19716             Wilmington, DE 19801

**DISCHARGE PRESCRIPTION**

Christiana Care Operator 733-1000

Date: _5/1/06_

R# _____

MED Allergies: _____

Circle Refills   Limit 1 yr

1
2
3
4
5

453820

21497 S(36705)(1203)

*PATIENT NAME, ADDRESS, MR#, AND DOB ABOVE*

Paoli Christine

ONE RX PER BLANK

Pt to be off work/school
Unit 5/14
Any questions
CHI 733-4540

Indication for use

Doctor's DEA # _____   Doctor's ID# or Printed Name

In order for a brand name product to be dispensed,
prescriber must hand write "Brand Necessary" or
"Brand Medically Necessary" in the space provided.

SUBSTITUTION PERMITTED

SAHM

**RECEIVED**
DEAN OF STUDENT SERVICES

MAY 1 0 2006

DT&CC
STANTON WILMINGTON CAMPUS

Hand delivered by
Tina Mann @
8:55 AM

B36



Dover◆Georgetown◆Stanton◆Wilmington

May 19, 2006

RECEIVED
DEAN OF STUDENT SERVICES

MAY 2 3 2006

DT&CC
STANTON WILMINGTON CAMPUS

Regan Hicks-Goldstein
Dean of Student Services
Delaware Technical & Community College
400 Stanton-Christiana Road
Newark, DE 19713

Re:    Christina Paoli

Dear Dean Goldstein:

This is the decision of the Campus Judicial Committee regarding the two complaints filed against Ms. Christina Paoli.  A hearing on both complaints was held on Wednesday, May 10, 2006 at the Wilmington Campus.  All members of the Campus Judicial Committee were in attendance.  Witnesses in attendance were Mr. Ron Burgess and PSO Ernest Murray.  Ms. Paoli did not attend.  Each complaint will be addressed separately.

I.        March 24, 2006 Complaint

The March 24, 2006 Complaint involved a claim that Ms. Paoli offered Percocet, a controlled substance, to a member of the girl's softball team in violation of the College's Drug-Free School and Workplace Policy and Section V.A.4 of the Student Rights and Standards of Student Conduct Policy.  A copy of that complaint was sent to Ms. Paoli under cover of correspondence dated April 13, 2006.

By a three to one vote, the Committee finds that Ms. Paoli violated the above referenced policies as alleged in the complaint.  The Committee's decision is based upon the undisputed evidence presented in the complaint and as supplemented at the hearing. The sanction imposed by the Committee for this violation is disciplinary probation for a period of two years, which shall begin following the sanction imposed below.

II.       April 24, 2006 Complaint

The April 24, 2006 Complaint involved allegations that Ms. Paoli violated the Violence-Free College Policy and Section V.A.1 of the Student Rights and Standards of Student Conduct Policy by making threatening, abusive and harassing remarks to members of the softball team and by engaging in aggressive and hostile behavior toward a member of the softball team in a manner designed to intimidate and place the individual in reasonable fear for her safety.  Ms. Paoli is also accused of disruptive behavior in

*Delaware Technical & Community College*
**Office of the President**
P.O. Box 897, Dover, DE 19903
Phone: (302) 739-3737 Fax: (302) 739-3345
*Equal Opportunity/Affirmative Action Institution*

B37

Regan Hicks-Goldstein
May 19, 2006
Page 2

violation of Section V.A. 2 of the Student Rights and Standards of Student Conduct
Policy by making vulgar and profane statements to members of the softball team. All of
the above conduct is alleged to have occurred on April 20, 2006. In addition, Ms. Paoli is
accused of hiring an individual to stalk members of the softball team on April 19, 2006,
thereby causing intimidation and placing the members of the softball team in reasonable
fear for their safety.

By a unanimous (4 to 0) vote, the Committee finds that Ms. Paoli violated the
Violence-Free College Policy and the Student Rights and Standards of Student Conduct
Policy, both individually and through a third party, by engaging in the conduct described
above. The Committee's decision is based upon the undisputed evidence presented in the
complaint and as supplemented at the hearing. The sanction imposed by the Committee
is dismissal from the College for one full academic year, commencing with the Summer
2006 session. During this time, Ms. Paoli will be denied the privilege of registration,
class attendance or participating in or attending any activities on any campus of the
College, either in person or through a surrogate. Ms. Paoli will be permitted to complete
her exams for the current semester in accordance with the deadlines previously
established. In addition, the Committee imposes a rehabilitative referral. Ms. Paoli may
not return to the campus until she provides written certification from a psychiatrist
licensed to practice in the state of Delaware attesting to her mental fitness and ability to
comply in all respects with the Violence –Free College Policy, the Drug-Free School and
Workplace Policy and the standards of student conduct set forth in the Student Rights and
Standards of Student Conduct Policy.

Respectfully submitted,

Brian D. Shirey, Chair
Campus Judicial Committee



June 23, 2006

◆ *Dover* ◆ *Georgetown* ◆ *Stanton* ◆ *Wilmington*

Ms. Christina Paoli
34363 Summerlyn Dr.
Apt. 204
Lewes, DE  19958

Dear Ms. Paoli:

In a letter dated May 24, 2006, you were given a copy of the decision of the Campus Judicial Committee, which met on May 10, 2006, regarding two complaints filed against you.

In accordance with the Student Rights and Standards of Student Conduct Policy, you had seven (7) working days from the receipt of the letter to submit an appeal in writing to me in my capacity as Dean of Student Services.  I received a letter from you on June 2, 2006, dated May 30, 2006, in which you expressed your desire to appeal the Campus Judicial Committee's decision.

According to the Student Rights and Standards of Student Conduct Policy,

> "The appeal shall be to the Dean of Student Services and shall be based on the record before the Campus Judicial Committee.  Upon review and examination of the Campus Judicial Committee's findings, the Dean may either affirm or reverse the Committee's decision.  The decision by the Dean of Student Services shall be in writing and shall be the final disposition of the complaint."

I have carefully examined and reviewed the findings, and I affirm the committee's findings on both charges.  The sanctions imposed will begin immediately.  I have included a copy of the Committee's findings with the sanctions imposed.

Sincerely,

Regan Hicks-Goldstein
Dean of Student Services

RECEIVED

JUN 2 7 2006

DELAWARE TECH
F              E

cc:  Mr. Lawrence H. Miller, VP & Campus Director
     Mr. Brian Shirey, Chief Legal Counsel
     Mr. John Fogelgren, Director of Administrative Services

*Delaware Technical & Community College*
**Stanton/Wilmington Campus**
Stanton Campus:  400 Stanton-Christiana Rd., Newark, DE  19713-2197   Phone: (302) 454-3900   Fax: (302) 368-6620
Wilmington Campus: 333 N. Shipley St., Wilmington, DE  19801-2499   Phone: (302) 571-5300   Fax: (302) 577-2548
Equal Opportunity/Affirmative Action Institution

B39

**GLEN D. GREENBERG, PHD, ABPP**

NEUROPSYCHOLOGY

CLINICAL PSYCHOLOGY

REHABILITATION PSYCHOLOGY

**DELAWARE**
Neuroscience Institute of Delaware
774 Christiana Road
Suite 202
Newark, DE 19713
Phone & Fax 302 738-3331

**PENNSYLVANIA**
280 North Providence Road
Media, PA 19063
Phone: 610 566-0501
Fax 610 566-0502

**MAILING ADDRESS**
Glen D. Greenberg PhD
P.O. Box 594
Westtown, PA 19395-0594

11.30.06

re: Christina Paoli

To Whom It May Concern:

Christina was administered a neuropsychological test battery in my office on November 3 and 15, 2006. The relevant findings from that evaluation were impaired test performances in the areas of processing speed, concentration, verbal fluency, object naming, visuoperceptual ability and executive functions. There also appears to be an adjustment reaction to the trauma she suffered on April 30, 2006.

Given these factors, she has been unable to complete her coursework at the school and her neuropsychological issues should be taken into account in this regard.

Thank you for your understanding,

Glen D. Greenberg, PhD

B40

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHRISTINA R. PAOLI, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C. A. NO. 06-462 |
| | : | |
| THE STATE OF DELAWARE and | : | JURY TRIAL DEMANDED |
| DELAWARE TECHNICAL AND | : | |
| COMMUNITY COLLEGE, | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I, Marc S. Casarino, Esquire do hereby certify that on this 18th ay of December, 2006, two copies of the foregoing **Appendix to Response by Delaware Technical and Community College to Plaintiff's Motion for Preliminary Injunctive Relief** were served upon the following via First Class Mail, postage prepaid:

Ms. Christina R. Paoli
600 Third Street
Rehoboth, DE 19971

Marc P. Niedzielski, Esquire
Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE 19801

WHITE AND WILLIAMS LLP

BY: _____
Marc S. Casarino (ID #3613)
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899-0709
Phone: (302) 467-4520
Facsimile: (302) 467-4550
Attorneys for Defendant,
*Delaware Technical and Community College*