# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

CHRISTINA R. PAOLI,                          :
                                             :
                    Plaintiff,               :
                                             :
        v.                                   :    C. A. NO. 06-462
                                             :
THE STATE OF DELAWARE and                    :    JURY TRIAL DEMANDED
DELAWARE TECHNICAL AND                       :
COMMUNITY COLLEGE,                           :
                                             :
                    Defendants.              :


**DEFENDANT DELAWARE TECHNICAL AND
COMMUNITY COLLEGE'S OPENING BRIEF IN SUPPORT
OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**


                            WHITE AND WILLIAMS LLP

                    BY: _____
                        Marc S. Casarino (ID #3613)
                        824 N. Market Street, Suite 902
                        P.O. Box 709
                        Wilmington, DE  19899-0709
                        Phone: (302) 467-4520
                        Facsimile:  (302) 467-4550
                        Attorneys for Defendant,
                        *Delaware Technical and Community
                        College*

Dated:  December 18, 2006

## TABLE OF CONTENTS

Table of Citations...................................................................................................... ii

Nature and Stage of the Proceedings ........................................................................1

Summary of the Argument...........................................................................................2

Statement of the Facts ...............................................................................................3

Arguments....................................................................................................................4

    I.        Standard of Review...........................................................................4

    II.      Defendant is Entitled to Judgment on Plaintiff's Claims as the
            Claims are Barred by the Eleventh Amendment to the Constitution....................4

    III.     Plaintiff's Complaint Should be Dismissed for Failure to State a
            Claim...........................................................................................................6

Conclusion .................................................................................................................15

# TABLE OF CITATIONS

## Cases

Alden v. Maine, 527 U.S. 706 (1999)...........................................................................5

Barna v. City of Perth Amboy, 42 F.3d 809 (3d Cir. 1994) .......................................7

Board of Trustees v. Garrett, 531 U.S. 356 (2001)..................................................5, 6

Bradley v. United States, 299 F.3d 197 (3d Cir. 2002) ..............................................7

Brown v. Philip Morris, Inc., 250 F.3d 789 (3d Cir. 2001) .........................................6

Cimino v. Del. Depar't of Labor, 2002 WL 265095 (D. Del. Feb. 25, 2002)................6

City of Boerne v. Flores, 521 U.S. 507 (1997) ..........................................................5

Dixon v. Alabama State Bd. of Education, 294 F.2d 150 (5th Cir. 1961)......................8

Edelman v. Jordan, 415 U.S. 651 (1974).....................................................................5

Flaim v. Medical College of Ohio, 418 F.3d 629 (6th Cir. 2005) .............................8, 9

Foo v. Ind. Univ., 88 F. Supp. 2d 937 (S.D. Ind. 1999) .............................................8

Gomes v. University of Maine System, 304 F. Supp. 2d 117 (D. Me. 2004)............9, 10

Gonzaga University v. John Doe, 536 U.S. 273 (2002) ..............................................12

Goss v. Lopez, 419 U.S. 565 (1975)............................................................................8

Hammock v. Keys, 93 F. Supp. 2d 1222 (S.D. Ala. 2000)..........................................10

Hill v. Board of Trustees of Mich. State Univ., 182 F. Supp. 2d 621 (W.D. Mich. 2001)............10

Kimel v. Florida Board of Regents, 528 U.S. 62 (2000) ..............................................5

Lewis v. Williams, 2006 WL 538546 (D. Del. Mar. 6, 2006)......................................12

Mitchell v. Bd. of Trustees of Oxford Mun. Separate Sch. Dist., 625 F.2d 660 (5th Cir. 1980)............................................................................................................10

Nicholas v. Pennsylvania State University, 227 F.3d 133 (3d Cir. 2000) .......................9

Nichols v. Bennett Detective & Protective Agency, Inc., 2006 WL 1530223 (D. Del. May 31, 2006) ..............................................................................................................12

ii

Ratner v. Loudon County Public Schools, 16 Fed. Appx. 140 (4th Cir. 2001) ............................10

Rochin v. California, 342 U.S. 165 (1952) .................................................................................9

San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1 (1973) ...................................................10

Seal v. Morgan, 229 F.3d 567 (6th Cir. 2000) .............................................................................10

Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996).............................................................5

Shipley v. B&F Towing Company, 2006 WL 1652787 (D. Del. June 13, 2006) ..........................7

Society Hill Civic Assoc. v. Harris, 632 F.2d 1045 (3d Cir. 1980).................................................4

Toyota Motor Manufacturing Kentucky, Inc. v. Williams, 534 U.S. 184 (2002) ........................13

West v. Atkins, 487 U.S. 42 (1988).................................................................................................7

Yelverton v. Lehman, 1996 WL 296551 (E.D. Pa. June 3, 1996)...................................................6

## Statutes

31 U.S.C. § 3730(h) .....................................................................................................................4, 11

42 U.S.C. § 1981.........................................................................................................................2, 4, 6

42 U.S.C. § 1983.....................................................................................................................2, 4, 7, 12

29 C.F.R. §§ 1630.2(j)(2)(ii)-(iii) (2001)......................................................................................13

Americans With Disabilities Act of 1990, 104 Stat. 328, 42 U.S.C. § 12101 *et seq*.....................13

False Claims Act, 31 U.S.C. § 3729 ..............................................................................................11

Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g.....................................12

## Other Authorities

Federal Rule of Civil Procedure 4 ..................................................................................................1

## NATURE AND STAGE OF THE PROCEEDINGS

On July 28, 2006, Plaintiff filed a complaint and sent a copy by mail to the Governor of Delaware and President of Delaware Technical and Community College (hereafter "**Delaware Tech**"). When Plaintiff filed the lawsuit she signed an acknowledgement of receipt for Federal Rule of Civil Procedure 4. (D.I. 1)

On October 30, 2006, Delaware Tech filed and served an answer to the complaint which asserted its defenses including lack of jurisdiction, personal and subject matter, and improper service of process.

On this day, Delaware Tech filed a motion for judgment on the pleadings and this is Delaware Tech's Opening Brief in support of its motion under Rule 12(c).

1

## SUMMARY OF THE ARGUMENT

I.      Plaintiff's claims are barred by the Eleventh Amendment of the United States Constitution which divests the Court of jurisdiction of lawsuits by citizens against a State.

II.     Plaintiff's claims under 42 U.S.C. §§ 1981 and 1983 fail as a matter of law.

III.    Plaintiff's claim for violating the Equal Protection Clause fails as a matter of law because Plaintiff asserts no adverse action taken on account of her membership in a protected class.

IV.     Plaintiff's claims for violation of the whistleblower protections affiliated with the False Claim Act and for retaliation related thereto fail as a matter of law because the False Claims Act is inapplicable in this case.

V.      Plaintiff's claim for violation of the Family Education Rights and Privacy Act of 1974 fails as a matter of law because no private cause of action exists under that statutory scheme.

VI.     Plaintiff's claim for defamation fails for lack of defamatory statement.  To the extent a defamatory statement was made, no such statement was published to a third-party.

VII.    Plaintiff's claim for violation of the Americans with Disabilities Act of 1990 fails for lack of a qualifying disability.

WILDMS 138336v.2

## STATEMENT OF THE FACTS

In her complaint, Plaintiff alleges that: she was a student at Delaware Tech from September 2004 to July 2005. (D.I. 1, Complaint, ¶ 6)  She further contends that she was an above average student and above average softball player. (Id. ¶¶ 7, 8, 10, 11)

All this ended when Plaintiff received a letter that she was no longer allowed to attend Delaware Tech or be on its property.  She claims that her dismissal as a student was due to her reporting coaches and students drinking alcoholic beverages after softball games.  Plaintiff retained a private investigator to investigate her claims. (Id. ¶¶ 6, 13, 14, 16)

Plaintiff alleges that Delaware Tech engaged in a course of conduct designed to punish, intimidate and harass her due to her complaint of students and coaches drinking after softball games. (Id. ¶ 15)

As part of the effort to intimidate and harass her, Plaintiff contends that Delaware Tech scheduled a hearing for May 10, 2006. (Id. ¶ 17)  Thereafter, Plaintiff sent a physician's note purporting to excuse her attendance and requested that the hearing be rescheduled. (Id. ¶ 18)

Plaintiff contends that Delaware Tech violated her rights by not granting her request for rescheduling, it convened the hearing in her absence and thereafter advised her that the hearing panel had decided to terminate her attendance at Delaware Tech. (Id. ¶ 19)  Plaintiff contends that Delaware Tech is a state actor for purposes of this action. (Id. ¶ 20)

3

## ARGUMENTS

### I.    STANDARD OF REVIEW

Judgment on the pleadings is appropriate when the movant establishes, on the fact of the pleadings alone, that it is entitled to judgment as a matter of law and "that no material issue of fact remains to be resolved." Society Hill Civic Assoc. v. Harris, 632 F.2d 1045, 1054 (3d Cir. 1980). The court must review a Rule 12(c) motion under the same standard as a motion under Rule 12(b)(6), by accepting the non-movant's well-plead averment of facts as true and viewing all inferences in the light most favorable to the non-moving party. Id.

For the reasons that follow, Delaware Tech is entitled to judgment as a matter of law based on the pleadings alone as all of the Complaint's allegations are barred by the Eleventh Amendment. Additionally, Plaintiff's complaint fails to state a claim upon which relief can be granted.

### II.    DEFENDANT IS ENTITLED TO JUDGMENT ON PLAINTIFF'S CLAIMS AS THE CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT TO THE CONSTITUTION

Plaintiff claims that due to Delaware Tech's tortious acts she is not able to play softball or attend Delaware Tech. In her complaint, Plaintiff asserts violations of 42 U.S.C. §§ 1981, 1983, the Equal Protection clause, Due Process clause, 31 U.S.C. § 3730(h) (Whistleblower Employee Protection Act) and retaliation related thereto, Family Educational Rights and Privacy Act of 1974, defamation of character and discrimination based on disability under the ADA. All of her claims are as a citizen of this State against the State.

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

4

The Supreme Court in describing the immunity of states from suit observed that "Eleventh Amendment immunity . . . is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by, the terms of the Eleventh Amendment." Alden v. Maine, 527 U.S. 706, 713 (1999). Instead, "the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today except as altered by the plan of the Convention or certain constitutional Amendments." Id.

While Plaintiff claims to be a citizen of Delaware, the Supreme Court has held that lawsuits by a State's own citizens are also barred by the Eleventh Amendment. Edelman v. Jordan, 415 U.S. 651, 662-663 (1974) ("While the [Eleventh] Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by its own citizens as well as by citizens of another State." (citations omitted)). Congress's sole constitutional authority to subject States to suit by individuals must arise under section 5 of the Fourteenth Amendment and not its Article I powers.[1] Board of Trustees v. Garrett, 531 U.S. 356, 364 (2001) (striking claims under the ADA against the States); Kimel v. Florida Board of Regents, 528 U.S. 62, 79 (2000) (striking claims of age discrimination under the ADEA against the States); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55 (1996) (striking claims under the Indian Gaming Act against the States). Additionally, the legislative enactment waiving the State's immunity must be remedial, congruent and proportional "to the injury to be prevented and the means adopted to that end." City of Boerne v. Flores, 521 U.S. 507, 520 (1997) (striking claims under the Religious Rights

---

[1] Since the Eleventh Amendment was enacted after Article I of the Constitution.

5

Restoration Act against state actors). <u>Cimino v. Del. Depar't of Labor</u>, 2002 WL 265095, at

pages 3-4, C.A. No. 01-458-GMS (D.Del. Feb. 25, 2002) (attached).

In <u>Garrett</u>, the Supreme Court repeated the analysis as to whether the Congress has

validly abrogated the States' Eleventh Amendment immunity from suit. The first part of the

inquiry is to determine if the Congress "unequivocally intended to do so" and the second part is

whether Congress "act[s] pursuant to a valid grant of constitutional authority." 531 U.S. at 363.

However, there are no factual allegations in the complaint that would suggest a waiver of

Eleventh Amendment immunity as to any of Plaintiff's claims. All of Plaintiff's claims are

barred by the terms of the Eleventh Amendment and Plaintiff does not allege a waiver of

Delaware Tech's immunity. Delaware Tech is entitled to judgment on the pleadings in its favor

and against the Plaintiff.

### III.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

#### A.    Plaintiff Fails to State a Claim for Violation of 42 U.S.C. §§ 1981 and 1983

Plaintiff fails to state a claim for violation of 42 U.S.C. § 1981. Derived from the Civil

Rights Act of 1866 and from the reenactment of Section 1 of the 1866 Act in 1870, section 1981

prohibits racial discrimination in the making and enforcement of contracts and property

transactions. In order to state a claim under section 1981, a plaintiff "must allege facts in support

of the following elements: (1) [that plaintiff] is a member of a racial minority; (2) intent to

discriminate on the basis of race by the defendant; and (3) discrimination concerning one or

more of the activities enumerated in the statute[,] which includes the right to make and enforce

contracts...." <u>Brown v. Philip Morris, Inc.</u>, 250 F.3d 789, 796-97 (3d Cir. 2001) (quoting

<u>Yelverton v. Lehman</u>, 1996 WL 296551, at *7 (E.D. Pa. June 3, 1996), <i>aff'd. mem.</i>, <u>175 F.3d</u>

<u>1012 (3d Cir. 1999)</u>) (attached). Plaintiff cannot satisfy the elements of a section 1981 claim

6

because she is not a member of a racial minority and has not been deprived of a contractual right or property interest.

Plaintiff fails to state a claim for violation of 42 U.S.C. § 1983. In order to state a claim under section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Barna v. City of Perth Amboy, 42 F.3d 809, 815 (3d Cir. 1994) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)). Thus, there is no independent cause of action afforded by section 1983. Instead, a section 1983 claim derives only from an underlying violation of federal statute or Constitutional rights. As set forth herein, there is no violation of a federal statute or Constitutional right upon which Plaintiff can base a section 1983 claim. As such, Plaintiff's section 1981 and 1983 claims must be dismissed.

### B.     Plaintiff Fails to State a Claim for Violation of the Equal Protection Clause

Plaintiff fails to state a claim for violation of the Equal Protection Clause. To prevail on an equal protection claim, Plaintiff must demonstrate that her expulsion had a discriminatory effect and was motivated by discriminatory purpose. Shipley v. B&F Towing Company, 2006 WL 1652787 at *3 (D. Del. June 13, 2006) (attached) (quoting Carrasca v. Pomeroy, 313 F.3d 828, 834 (3d Cir. 2002)). To show discriminatory effect, Plaintiff would have to put forth facts showing that she "is a member of a protected class and that [she] was treated differently from similarly situated individuals in an unprotected class." Id. (quoting Bradley v. United States, 299 F.3d 197 (3d Cir. 2002)). There is no allegation nor support for a claim that Plaintiff was expelled because of her membership in a protected class. Accordingly, Plaintiff's Equal Protection claim must be dismissed.

C.    **Plaintiff Fails to State a Claim for Violation of Due Process Rights**

1.    **Procedural Due Process**

There are two basic due process requirements: (1) notice, and (2) an opportunity to be heard.  See e.g., Goss v. Lopez, 419 U.S. 565, 575 (1975).  In cases of expulsion from an institution of higher education, courts generally require written notice.  Dixon v. Alabama State Bd. of Education, 294 F.2d 150 (5th Cir. 1961).  Such written notice should typically inform the accused of the charge and provide the accused with information about the policies or regulations that the accused has allegedly violated, the possible penalties, and the evidence that may be presented against her.  See e.g., Flaim v. Medical College of Ohio, 418 F.3d 629, 638 (6th Cir. 2005); Dixon, 294 F.2d at 158.

With respect to the hearing requirement, due process is satisfied if the accused is provided the opportunity to respond, explain and defend herself.  Flaim, 418 F.3d at 633-636 (discussing details of due process requirements in higher education disciplinary proceedings and collecting cases).  Courts have also recognized that the hearing need not be open to the public and that counsel or a campus advocate need not generally be appointed, unless the procedures are overly complex or the student faces criminal charges stemming from the incident in question.  Id. at 635-636.  Courts have also concluded that due process is satisfied when the accused is given the right to make a statement and present evidence and witnesses at the hearing.  Id. at 636.  However, courts have also held that the right to appeal the school's decision is not required to satisfy the Due Process Clause.  Id. at 636 (citing Foo v. Ind. Univ., 88 F.Supp.2d 937, 952 (S.D. Ind. 1999)).

It is indisputable that Plaintiff was given written notice of the charges against her, informed of her right to present witnesses, and given the opportunity to present evidence and

8

make a statement. Plaintiff was also given the right to an appeal and did pursue such appellate rights. Plaintiff's complaint that she was disabled from coming to campus for the hearing is disingenuous because such request was not made in a timely manner and the medical note Plaintiff provided does not indicate that Plaintiff could not attend the hearing. In any event, it is not enough for Plaintiff to complain that the hearing procedure was not ideal as the procedures need only be fundamentally fair to satisfy due process. Id. at 637.

## 2.    Substantive Due Process

There are two inquiries used for purposes of the substantive due process analysis. Under the first test, Plaintiff need not prove a violation of a specific liberty or property interest, however, the state's conduct must "shock the conscience." Rochin v. California, 342 U.S. 165, 172-73 (1952). Under the second test, Plaintiff must demonstrate a violation of an identified liberty or property interest protected by the Due Process Clause. See Nicholas v. Pennsylvania State University, 227 F.3d 133, 139 (3d Cir. 2000) (holding that property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are "arbitrary, irrational, or tainted by improper motive").

Courts considering suspension and expulsion for disciplinary violations have declined to find that such suspensions or expulsions rise to the level of conscious shocking behavior. Flaim, 418 F.3d at 643 (holding that medical school student's expulsion for conviction of felony drug crime did not shock the conscience); Gomes v. University of Maine System, 304 F.Supp.2d 117, 125 (D. Me. 2004) (requiring extreme or intrusive physical conduct by state to rise to the level of conscience shocking behavior and concluding that suspension for alleged sexual assault did not violate substantive due process). In addition, the Supreme Court has recognized that the pursuit

9

of an education is not a fundamental right for purposes of due process[2], and courts that have found a property interest in continued enrollment in schools have assumed its existence. Gomes, 304 F.Supp.2d at 125-26 (collecting cases, including Supreme Court cases, in which the right to continued enrollment has been assumed to be a property or liberty interest). Even if Plaintiff could identify a sufficient property or liberty interest, she has no chance of successfully showing a substantive due process violation.

This Court should not become embroiled in the wisdom of and the manner in which Delaware Tech applies its policies. See Ratner v. Loudon County Public Schools, 16 Fed. Appx. 140, 142 (4th Cir. 2001) ("However harsh the result in this case, the federal courts are not properly called upon to judge the wisdom of a zero tolerance policy of the sort alleged to be in place at Blue Ridge Middle School or of its application to Ratner."); Mitchell v. Bd. of Trustees of Oxford Mun. Separate Sch. Dist., 625 F.2d 660, 664-65 (5th Cir. 1980). Rather courts examining substantive due process violations in this context have only considered whether the punishment imposed is rationally related to a legitimate purpose. Seal v. Morgan, 229 F.3d 567, 575 (6th Cir. 2000). Courts considering expulsions in the context of drugs and weapons charges have concluded that such punishment is rationally related to the legitimate goals of maintaining safe and drug-free schools. See e.g., Hammock v. Keys, 93 F.Supp.2d 1222, 1231 (S.D. Ala. 2000) (denying motion to enjoin expulsion and concluding that student failed to state a substantive or procedural due process claim); Mitchell, 625 F.2d at 664-65.

Delaware Tech has a legitimate goal of maintaining a drug-free and safe school. Its expulsion of persons violating the anti-drug and anti-violence policies is rationally related to that

---

[2] San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1 (1973); see also Hill v. Board of Trustees of Mich. State Univ., 182 F.Supp.2d 621, 626-27 (W.D. Mich. 2001) (holding that right to public college education is not a fundamental right and assuming without deciding that continued enrollment in university is a protected property interest).

10

goal.  It is not for this Court to second-guess the wisdom of the decisions rendered with respect to furtherance of that goal.  However, even if this Court were to consider this point, it is apparent from the record that Plaintiff was afforded sufficient procedural and substantive due process with respect to her violations of Delaware Tech's policies.

> **D.  Plaintiff's Claim for Violation of Whistleblower Protection Fails as a Matter of Law**

Plaintiff is not a "whistleblower" subject to the protections of 31 U.S.C. § 3730(h). Section 3730(h) affords a private claim to employees against whom an employer takes adverse action because of the employee's reporting of misappropriation of United States' governmental property pursuant to the False Claims Act, 31 U.S.C. § 3729.  Plaintiff did not report any such misappropriation of United States' governmental property and, therefore, the whistleblower protections of the False Claims Act are not implicated.  Therefore, Plaintiff's whistleblower claim must be dismissed.

> **E.  Plaintiff's Claim of Retaliation for Making Whistleblower Allegations Fails as a Matter of Law**

Plaintiff claims that Delaware Tech retaliated against her in violation of her whistleblower protection afforded under 31 U.S.C. § 3730(h).  As stated herein above, the whistleblower protection afforded under 31 U.S.C. § 3730(h) is not applicable in this matter.  In any event, Plaintiff has failed to allege any fact supporting the inference that Delaware Tech's investigation and decision to expel Plaintiff for violation of the school's anti-drug and anti-violence policies were retaliatory.  Ironically, Delaware Tech learned of Plaintiff's violations of the anti-drug and anti-violence policies while investigating Plaintiff's allegations about the softball program.  Thus, the school took Plaintiff's allegations seriously and conducted a thorough investigation of her claims.  Plaintiff's violation of the anti-drug and anti-violence

WILDMS 138336v.2

policies were unexpectedly disclosed in the course of that investigation. Plaintiff's violations are well-supported and formulated the legitimate basis for Delaware Tech's expulsion decision. As such, Plaintiff's retaliation claim must be dismissed.

**F.      Plaintiff's Claim for Violation of Family Educational Rights and Privacy Act Fails as a Matter of Law**

Plaintiff purports to make a claim under the Family Educational Rights and Privacy Act of 1974 ("**FERPA**"), 20 U.S.C. § 1232g, because allegedly incorrect statements are included in her records at Delaware Tech. Plaintiff has no right to a private cause of action under FERPA. Gonzaga University v. John Doe, 536 U.S. 273, 287-90 (2002). Thus, Plaintiff cannot possibly succeed on her claim for violation of FERPA and such claim must be dismissed.

**G.      Plaintiff's Defamation Claim Fails as a Matter of Law**

Plaintiff's defamation claim fails for several reasons. First, defamation claims are not properly included in a civil rights action under 42 U.S.C. § 1983. Lewis v. Williams, 2006 WL 538546 *5 (D. Del. Mar. 6, 2006) (attached) (citing Daniels v. Williams, 474 U.S. 327, 332 (1986) (quoting Paul v. Davis, 424 U.S. 693, 701 (1976))). To the extent Plaintiff brings her defamation claim under section 1983, it is improper and must be dismissed.

To the extent Plaintiff brings her defamation claim under Delaware state law, she must show that Delaware Tech (1) made a false and defamatory statement of fact concerning Plaintiff, (2) in an unprivileged publication to a third party, (3) that harmed Plaintiff's reputation in the community. Nichols v. Bennett Detective & Protective Agency, Inc., 2006 WL 1530223 *10 (D. Del. May 31, 2006) (attached) (quoting Ramunno v. Cawley, 705 A.2d 1029, 1035 (Del. 1998)). Plaintiff's defamation claim appears to be based upon information gathered and discussions held internally at Delaware Tech concerning Plaintiff's violation of the school's anti-drug and anti-violence policies. There are no specific statement(s) made by Delaware Tech or its personnel

12

identified by Plaintiff as defamatory. Plaintiff's broadly sweeping and speculative allegation that something defamatory must have been stated during the investigation of her offenses fails to state a claim for defamation. To the extent there was an offensive statement made with respect to Plaintiff, there is no allegation that such statement was published to a third party. At no time has the information gathered in Delaware Tech's investigation been shared outside of the school. There being no basis for Plaintiff's defamation claim to proceed, such claim must be dismissed.

### H.    Plaintiff's Claim for Violation of the Americans With Disabilities Act Fails as a Matter of Law

Plaintiff misapprehends the protections afforded by the Americans With Disabilities Act of 1990 ("**ADA**"), 104 Stat. 328, 42 U.S.C. § 12101 *et seq.* (1994 ed. and Supp. V), and fails to state a cognizable claim under that statutory scheme. Plaintiff complains that she is disabled as defined in the ADA and that Delaware Tech failed to reasonably accommodate her disability with respect to the May 10, 2006 hearing. It is unclear whether Plaintiff's allegations are within the context of her vague reference to previous employment as a tutor at Delaware Tech or merely as a student of Delaware Tech. Regardless, under either scenario Plaintiff cannot set forth even a *prima facie* case for violation of the ADA.

First, Plaintiff's claimed disability does not qualify for protection under the ADA. At most, Plaintiff was temporarily restricted from attending classes due to her vaguely described assault. The Supreme Court has held that only those impairments constituting permanent or long-term restrictions of functions of daily living constitute a disability governed by the ADA. See Toyota Motor Manufacturing Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002) (citing 29 CFR §§ 1630.2(j)(2)(ii)-(iii) (2001)). Plaintiff's condition is neither permanent, long-term nor preclusive of her ability to perform functions of daily living. For this reason alone, Plaintiff's ADA claim fails as a matter of law.

13

Additionally, there is neither an allegation nor evidence suggesting that Delaware Tech's decision to expel Plaintiff was on account of any perceived or real disability. Indeed, Delaware Tech expelled Plaintiff for violation of the school's anti-drug and anti-violence policies. This legitimate basis for Plaintiff's expulsion cannot rationally be tied to her temporary, non-debilitating injuries. Accordingly, Plaintiff's claim for violation of the ADA must be dismissed.

14

## CONCLUSION

Plaintiff's claims are barred by the Eleventh Amendment and must be dismissed. Alternatively, Plaintiff's claims fail to state a claim upon which relief can be granted and for that reason said claims must be dismissed.

WHITE AND WILLIAMS LLP

BY: _____
    Marc S. Casarino (ID #3613)
    824 N. Market Street, Suite 902
    P.O. Box 709
    Wilmington, DE 19899-0709
    Phone: (302) 467-4520
    Facsimile: (302) 467-4550
    Attorneys for Defendant,
    *Delaware Technical and Community College*

Dated: December 18, 2006

15

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

CHRISTINA R. PAOLI,                        :
                                           :
            Plaintiff,                     :
                                           :
    v.                                     :    C. A. NO. 06-462
                                           :
THE STATE OF DELAWARE and                  :    JURY TRIAL DEMANDED
DELAWARE TECHNICAL AND                     :
COMMUNITY COLLEGE,                         :
                                           :
            Defendants.                    :

## CERTIFICATE OF SERVICE

I, Marc S. Casarino, Esquire do hereby certify that on this 18th day of December, 2006,

two copies of the foregoing **Defendant, Delaware Technical and Community College's**

**Opening Brief in Support of Its Motion for Judgment on the Pleadings** were served upon the

following via First Class Mail, postage prepaid:

Ms. Christina R. Paoli                     Marc P. Niedzielski, Esquire
600 Third Street                           Department of Justice
Rehoboth, DE 19971                         820 N. French Street, 6th Floor
                                           Wilmington, DE 19801

                          WHITE AND WILLIAMS LLP

                    BY: _____
                          Marc S. Casarino (ID #3613)
                          824 N. Market Street, Suite 902
                          P.O. Box 709
                          Wilmington, DE 19899-0709
                          Phone: (302) 467-4520
                          Facsimile: (302) 467-4550
                          Attorneys for Defendant,
                          *Delaware Technical and Community*
                          *College*

WILDMS 138336v.2

Westlaw.

Not Reported in F.Supp.2d                                              Page 1
Not Reported in F.Supp.2d, 2002 WL 265095 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

C

<u>Briefs and Other Related Documents</u>
Cimino v. Delaware Dept. of LaborD.Del.,2002.Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Francis H. CIMINO, et al., Plaintiffs,
v.
DELAWARE DEPARTMENT OF LABOR, et al., Defendants.
**No. CIV.A.01-458-GMS.**

Feb. 25, 2002.

MEMORANDUM AND ORDER

<u>SLEET</u>, District J.

## I. INTRODUCTION

**\*1** The plaintiffs, Francis H. Cimino ("Cimino") and his wholly-owned corporation, Professional Consulting Solutions ("PCS"), filed the above-captioned action against the Delaware Department of Labor, Division of Unemployment Insurance and W. Thomas MacPherson ("MacPherson"), Director of the Division of Unemployment Insurance (the "state defendants"), in both his personal and official capacities. Cimino also named David Castetter ("Castetter"), Cork Screw Willow, Ltd. ("Cork Screw") and FuturTech Consulting LLC ("FuturTech") as defendants. In his complaint, Cimino alleges civil rights violations of <u>42 U.S.C. § § 1981</u>, <u>1983</u> and <u>1985(3)</u>. He also alleges state law claims.

Presently before the court are the defendants' motions to dismiss under <u>Federal Rule of Civil Procedure 12(b)(6)</u>. For the reasons that follow, the court will grant these motions in part and deny them in part.

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz,* 1 F.3d 183 (3d Cir.1993). Thus, in deciding a motion to dismiss pursuant to <u>Rule 12(b)(6) of the Federal Rules of Civil Procedure,</u> the court must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). In particular, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Colburn v. Upper Darby Tp.,* 838 F.2d 663, 666 (3d Cir.1988). However, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3rd Cir.1997). The court will only dismiss a complaint if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." ' *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)). Thus, in order to prevail, a moving party must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

## III. BACKGROUND

On October 5, 1998, the state defendants contracted with FuturTech for computer programming services until June 30, 1999. FuturTech entered into a subcontract with Cork Screw, which would allow Cork Screw's employee Castetter to work on FuturTech's computer programming services contract with the state. Castetter was assigned to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                       Page 2
Not Reported in F.Supp.2d, 2002 WL 265095 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

work on the Department of Labor's Y2K project. Cimino alleges that Castetter had the power to hire and fire the employees he supervised on that project. In accordance with that alleged power, Castetter hired Cimino, and PCS to work on the Y2K project until September 1999. However, Castetter terminated Cimino and PCS on August 6, 1999. Castetter also laid off three additional subcontractors on August 6, 1999. Two of these individuals were black and the other white. Cimino is also white.

**\*2** In his complaint, Cimino alleges that the defendants terminated him solely because of his race. Specifically, he alleges that the state defendants delegated the job of terminating the two black employees to Castetter. The state defendants, including MacPherson, then allegedly conspired to terminate Cimino and the other white employee because the state defendants feared that the two black employees would sue them.

FuturTech filed a motion to dismiss on August 22, 2001. The state defendants filed a motion to dismiss on November 5, 2001. Cork Screw and Castetter filed a motion to dismiss on November 30, 2001. The court will now address each of these motions in turn.

## IV. DISCUSSION

### A. FuturTech's Motion to Dismiss

Cimino's complaint does not allege any active role on FuturTech's part in depriving him of his rights. Rather, the complaint alleges liability on FuturTech's part based on actions taken by its subcontractor, Castetter.

For the following reasons, the court will grant FuturTech's motion with regard to the <u>Section 1983</u>, <u>1985(3)</u> and Third-Party Beneficiary claims. It will deny the motion with regard to the <u>Section 1981</u> and breach of an implied covenant of good faith and fair dealing claims.

### 1. Section 1981 Liability

The first issue the court must address with respect to FuturTech is whether <u>Section 1981</u> supports a respondeat superior theory of liability for non-government defendants.

The Supreme Court has suggested that, in order to impose liability on a defendant under <u>Section 1981</u> for the actions of a third party, an agency relationship between the defendant and the third party must exist. *See <u>General Building Contractors Assoc. v. Pennsylvania United Engineers and Constructors,</u> 458 U.S. 375, 394 (1982)*; *see also <u>Blair v. Philadelphia Housing Authority,</u> 609 F.Supp. 276, 279 (E.D.Pa.1985)*; *Choice v. Easton Hospital* 1988 U .S. Dist. LEXIS 1319, at \*2 (E.D. Pa. Feb. 22 1988); *<u>Malone v. Schenk,</u> 638 F.Supp. 423, 425 (C.D.Ill.1985)*. Agency is a fiduciary relationship which results in the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control. *See <u>General Building Contractor's Assoc.,</u> 458 U.S. at 391*. Therefore, to establish an agency relationship between Castetter and FuturTech, Cimino must allege that FuturTech gave its consent for Castetter to act on its behalf, and that Castetter is in FuturTech's control.

Cimino has alleged that FuturTech paid Castetter directly, and that Castetter had full authority to manage personnel for FuturTech.[FN1] Based on these allegations, the court concludes that Cimino has alleged sufficient information to establish the possibility of an agency relationship. Accordingly, it will not grant FuturTech's motion to dismiss the 1981 claim.

> <u>FN1.</u> The court recognizes that FuturTech denies that Castetter was their agent. However, when deciding a motion to dismiss, the court will not examine the merits of the claims.

### 2. Section 1983 Liability

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 3
Not Reported in F.Supp.2d, 2002 WL 265095 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Cimino's complaint purports to hold FuturTech liable for <u>Section 1983</u> violations as well. However, in defending his <u>Section 1981</u> claims, Cimino acknowledges that the theory of respondeat superior cannot support a <u>Section 1983</u> claim. *See <u>Gibbs v. Hargett,</u>* 1986 WL 12129, at *2 (D.Del. Oct. 27, 1986) (noting that <u>Section 1983</u> claims require "willful participation or joint action."); *see also <u>Powell v. Shopco Laurel Co.,</u>* 678 F.2d 504, 506 (4th Cir.1982) (holding that neither municipal nor private corporations may be held liable on the theory of respondeat superior under <u>Section 1983</u>). Thus, because Cimino has not alleged any active role that FuturTech played in the alleged discrimination, the court will dismiss the <u>Section 1983</u> claim against it.

### 3. <u>Section 1985(3)</u> Liability

**\*3** Cimino finally alleges that FuturTech violated <u>Section 1985(3)</u>. While the Third Circuit has not addressed this issue, district courts in this Circuit have held that <u>Section 1985(3)</u> liability may not be premised on a respondeat superior theory. *See <u>Hankins v. City of Philadelphia,</u>* 1998 WL 175600, at *14 (E.D. Pa. April 9, 1998); *see also <u>Gant v. Aliquippa Borough,</u>* 612 F.Supp. 1139, 1142 (W.D.Pa.1985) (holding that "an employer may not be subject to a conspiracy claim by the doctrine of respondeat superior."). Nor may an employer be held to conspire with one of its own employees acting in his official capacity. *See <u>Gant,</u>* 612 F.Supp. at 1142. Moreover, even to the extent that Cimino could argue that there was a conspiracy between Castetter and the other named defendants in which FuturTech acquiesced, this argument must also fail. Cimino has clearly stated that, "Castetter testified that he complained to a FuturTech employee ... that there had been this racially motivated layoff." Thus, while FuturTech may have had knowledge of the alleged conspiracy after the fact, that is insufficient to hold it responsible for the actual conspiracy.

Accordingly, the court will dismiss Cimino's <u>Section 1985(3)</u> claim against FuturTech.

### 4. State Law Claim: Breach of the Covenant of Good Faith and Fair Dealing

Cimino argues that the defendants breached his contract with them by engaging "in fraud, deceit and misrepresentation in their administration of and termination of [his] employment [ ] contract."

The Delaware Supreme Court has strictly limited the application of the implied covenant in the employment context, holding that a plaintiff must establish that he or she falls into one of four exclusive categories. *See <u>Lord v. Souder,</u>* 748 A.2d 393, 401 (Del.2000). The four categories are: (1) where the termination violates public policy and no other remedial scheme exists; (2) where the employer misrepresented an important fact and the employee relied thereon to either accept a new position or remain in a present one; (3) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation earned through the employee's past service; and (4) where the employer falsified or manipulated employment records to create fictitious grounds for termination. *See <u>E.I. duPont de Nemours & Co. v. Pressman,</u>* 679 A .2d 436, 442-44 (Del.1996). The implied covenant of good faith and fair dealing does, however, permit a cause of action against an employer for the deceitful acts of its agent when the latter manufactures false grounds to cause an employee's dismissal. *See <u>id. at 437.</u>*

Finally, irrespective of the category implicated, a claim for the breach of duty of good faith and fair dealing requires employer conduct amounting to fraud, deceit, or misrepresentation. *See <u>Peterson v. Beebe Med. Ctr., Inc.,</u>* 1992 WL 354087, at *5 (Del. Nov. 13, 1992), *aff'd,* 623 A.2d 142 (Del.1993). Thus, the traditional elements of fraud must be present in a claim for breach of an implied covenant of good faith. *See <u>Hudson v. Wesley College, Inc.,</u>* 1998 WL 939712, at *13 (Del. Ch. Dec. 23, 1998) *aff'd* <u>734 A.2d 641 (Del.1999).</u>

**\*4** As discussed *supra* in Section IVA1, the court concludes that Cimino has alleged sufficient facts demonstrating that Castetter may have been FuturTech's agent. Cimino further points to the deposition testimony of Nicholas P. Marica ("Marica"). In that deposition, Marica testified that Castetter admitted to firing Cimino due to his race. Accordingly, the court declines to dismiss this state law claim against FuturTech.

### 5. State Law Claim: Third-Party Beneficiary Rights

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 4
Not Reported in F.Supp.2d, 2002 WL 265095 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Cimino finally alleges that he and PCS were third-party beneficiaries of the contract between the Division of Unemployment Insurance and FuturTech.

The Delaware Supreme Court has noted that is it axiomatic that either party to an agreement may enforce its terms if it is breached. *See Triple C Railcar Service v. Wilmington,* 630 A.2d 629, 633 (Del.1993). "Equally well-settled is the principle that a third-party who is, in effect, a stranger to the agreement, may enforce a contractual promise in his own right if the contract has been made for his benefit." *Id.* However, essential to a third-party's right of enforceability, is the contracting parties' intention to view the stranger as either a creditor or donee beneficiary. *See id.* Thus, a third party has no rights under a contract that did not, by itself, manifest an intention to benefit the third party. *See id.*

In the present case, Cimino has failed to allege any language in the Division of Unemployment Insurance/FuturTech contract that manifests an intention to benefit strangers to their contract. As the court cannot assume that Cimino will prove facts which he has not alleged, it will dismiss this count as to all the named defendants. *See City of Pittsburgh v. West Penn Power Co.,* 147 F .3d 256 (3d Cir.1998).

### B. The State Defendants' Motion to Dismiss

Cimino's complaint also names the Delaware Department of Labor, the Division of Unemployment Insurance and W. Thomas MacPherson (MacPherson), Director of the Division of Unemployment Insurance, in his official, as well as individual, capacity, as defendants.

### 1. Eleventh Amendment Immunity Against Damages

The state defendants, including MacPherson in his official capacity, assert that the Eleventh Amendment deprives the court of jurisdiction to adjudicate Cimino's civil rights claims for damages pursuant to 42 U.S.C. § § 1981, 1983, and 1985(3). The court agrees.

Cimino's complaint alleges that the Delaware Department of Labor, Division of Unemployment Insurance, a state agency, violated his civil rights. As a result, he requests both monetary and injunctive relief. However, under the Eleventh Amendment, private parties cannot sue states in federal court for monetary damages. *See Board of Trustees of University of Alabama v. Garrett,* 121 S.Ct. 955, 962 (2001). A state is not entitled to this immunity if it has waived its immunity or if Congress has abrogated the state's immunity through a valid exercise of its power. *See Lavia v. Comm. of Pennsylvania,* 224 F.3d 190, 195 (3d Cir.2000).

*5 Neither of the two above conditions are met here. First, the state has not waived its Eleventh Amendment immunity. A waiver will be found only where it has been stated "by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Space Age Products, Inc. v. Gilliam,* 488 F.Supp. 775, 780 (D.Del.1980) (citing *Edelman v. Jordan,* 415 U.S. 651, 673 (1974)). Such an express waiver may be made through clear constitutional or statutory language. *See Lavia,* 224 F.3d at 195 Neither the constitution nor the code of Delaware expressly waives Delaware's Eleventh Amendment sovereign immunity. *See Ospina v. Department of Corrections,* 749 F.Supp. 572, 579 (D.Del.1990). Therefore, Delaware has not clearly waived its immunity.

Moreover, Congress has not abrogated the states' immunity for claims under Sections 1981, 1983 and 1985(3). *See Quern v. Jordan,* 440 U.S. 332, 345 (1979); *Henry v. Texas Tech Univ.,* 466 F.Supp. 141, 146 (N.D. Texas 1979); *Carmen v. San Francisco Unified School Dist.,* 982 F.Supp. 1396, 1404 (N.D.Cal.1997). Since Delaware's immunity has not been waived or abrogated, Cimino cannot sue the State agency for money damages.

Furthermore, Cimino may not assert a claim for injunctive relief against the state. In *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy,* the Supreme Court noted that, although prospective (injunctive) relief is available against state officials, it is not available against state agencies. 506 U.S. 139, 146 (1993). Since the Delaware

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 265095 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Department of Labor, Division of Unemployment Insurance, is a state agency, it cannot be sued for injunctive relief under the Eleventh Amendment.

It is clear, however, that a claim for injunctive relief would be available against MacPherson. *See Green v. Mansour, 474 U.S. 64, 68-69 (1985).* The state defendants do not dispute this.

Accordingly, the court will dismiss each of the claims against the Delaware Department of Labor, Division of Unemployment Insurance and MacPherson in his official capacity.

### 2. MacPherson's Individual Liability Under Section 1981

MacPherson claims that he cannot be individually liable under Section 1981 because he was not a party to a contract with Cimino and PCS. The court finds this argument unpersuasive.

A third party may be liable under Section 1981 if that party "intentionally interferes, on the basis of race, with another's right to make and enforce contracts, regardless of whether the employer or anyone else may also be liable." *Olumuyiwa v. Harvard Protection Servs, Inc.,* 2000 U.S. Dist. LEXIS 6364, at * 14 (E.D.N .Y. May 12, 2000); *see also Daniels v. Pipefitters' Ass'n Local Union No. 597,* 945 F.2d 906, 914 (7th Cir.1991) (holding that "[t]his kind of race-based impediment to contract formation constitutes exactly the sort of racially discriminatory interference with the right to contract that remains actionable under § 1981."); *Pryor v. National Collegiate Athletic Ass'n,* 153 F.Supp.2d 710, 718 (E.D.Pa.2001).

*6 In the present action, Cimino has alleged that MacPherson was directly involved with the decision to terminate Cimino because of his race. He further alleges that MacPherson's intentional involvement actually resulted in Cimino's termination, thus interfering with his employment contract. Accordingly, the court will not dismiss the Section 1981 claim against MacPherson in his individual capacity.

### 3. MacPherson's Individual Liability Under Section 1983

To establish personal liability in a Section 1983 action, the plaintiffs must show that MacPherson: (1) was acting under color of state law; and (2) caused the deprivation of a federal constitutional right enjoyed by the plaintiffs. *See Kentucky v. Graham, 473 U.S. 159, 166 (1985).* The state defendants argue that Cimino was an at-will employee, and thus could be fired at any time. Thus, they contend that he has failed to allege any constitutional deprivation.[FN2] However, Cimino clearly alleges that he was denied equal protection of the laws due to discrimination. Accordingly, the court will not dismiss the Section 1983 claim against MacPherson in his individual capacity.

FN2. MacPherson does not state that he takes exception with a finding that he was acting under color of state law. Accordingly, the court will not discuss this element.

### 4. MacPherson's Individual Liability Under Section 1985(3)

In order to establish a claim under Section 1985(3), the Supreme Court requires the following elements: (1) that two or more defendants conspired; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the law; (3) that one or more of the conspirators acted in furtherance of the conspiracy; and (4) that such an act injured a person or his property or deprived him of exercising any right or privilege of a citizen of the United States. *See Griffin v. Breckenridge, 403 U.S. 88, 102-103 (1971).*

In his complaint, Cimino pled that "McPherson [sic] and Castetter agreed to fire the two white employees ... to make it look like the terminations [of the two black employees] were not because of the race of the black employees." Cimino further alleges that Castetter subsequently terminated him.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 265095 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Based on these allegations, the court concludes that dismissal for failure to state a claim would be inappropriate.

### 5. State Law Claim: Breach of Implied Covenant of Good Faith and Fair Dealing

Castetter, perhaps as an agent of FuturTech, entered into a contract with Cimino. MacPherson was not a party to this contract. Accordingly, his actions could not have breached an implied covenant of good faith and fair dealing in the Castetter/Cimino contract. This claim will be dismissed.

### C. Castetter's and Cork Screw's Motion to Dismiss

As an initial matter, the court will dismiss all of Cimino' claims against Cork Screw. Cimino has alleged only that FuturTech subcontracted with Castetter, through Castetter's employer Cork Screw. Cork Screw was not a party to the FuturTech/Division of Unemployment Insurance contract. It had no involvement with the type of work Castetter performed, how he performed the work, the hours he worked, or the amount he was paid for his work. Indeed, Cork Screw's only involvement was to receive a set payment from FuturTech for the number of hours that Castetter worked. Cimino has not alleged any facts from which the court can assume the existence of an agency relationship,[FN3] or that Cork Screw itself engaged in any intentional discrimination, or a conspiracy to commit intentional discrimination. Accordingly, as Cimino's complaint alleges nothing more, there can be no basis under any of the theories he has advanced for Cork Screw's liability.

> FN3. Notably, Cimino has failed to allege facts demonstrating that Cork Screw in any way controlled Castetter.

*7 Cimino does not state that he is suing Castetter in an official capacity as a representative of the state. The following analysis thus addresses only Castetter's personal liability.

### 1. Castetter's Section 1981 Liability

Cimino alleges that Castetter terminated his employment due to his race. These allegations are sufficient to withstand a motion to dismiss for failure to state a claim. Accordingly, the court will not dismiss Cimino's Section 1981 claim.

### 2. Castetter's Section 1983 Liability

Cimino next alleges that Castetter acted at the "express direction of the Department and the Division through MacPherson" when Castetter terminated him due to his race. The court thus concludes that, for the purposes of a motion to dismiss, Cimino has alleged that Castetter was acting under color of state law when he deprived him of a constitutional right. See _Kentucky v. Graham,_ 473 U.S. 159, 166 (1985).

### 3. Castetter's Section 1985(3) Liability

Cimino's complaint alleges that Castetter and MacPherson conspired to terminate Cimino due to his race, and that they did in fact terminate him. As discussed above in conjunction with MacPherson's individual liability, this allegation will suffice for the purpose of a motion to dismiss.

### 4. State Law Claim: Breach of Implied Covenant of Good Faith and Fair Dealing

It is undisputed that Cimino and Castetter entered into an employment contract. Cimino now alleges that Castetter

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 265095 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

fired him because of his race, and falsified the reasons for that termination. Accordingly, the court declines to dismiss this claim against Castetter.

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. FuturTech's motion to dismiss (D.I.9) is GRANTED with respect to the Section 1983, 1985(3) and Third-Party Beneficiary claims. It is DENIED with respect to all other claims;

2. The Department of Labor, Division of Unemployment Insurance, and MacPherson's motion to dismiss (D.I.24) is GRANTED on all claims with respect to the Department of Labor, Division of Unemployment Insurance and MacPherson in his official capacity. It is GRANTED with respect to MacPherson in his individual capacity as to both of the state law claims. It is DENIED with respect to MacPherson in his individual capacity as to all other claims, including claims for injunctive relief;

3. Cork Screw's and Castetter's motion to dismiss (D.I.30) is GRANTED with respect to Cork Screw on all claims. It is GRANTED with respect to Castetter on the Third-Party Beneficiary claim. It is DENIED with respect to Castetter as to all other claims.

D.Del.,2002.
Cimino v. Delaware Dept. of Labor
Not Reported in F.Supp.2d, 2002 WL 265095 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:01CV00458 (Docket) (Jul. 03, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 296551 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

Page 1

**H**
Briefs and Other Related Documents
Yelverton v. LehmanE.D.Pa.,1996.Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
James Z. YELVERTON, Jr, Plaintiff,
v.
Joseph LEHMAN, et al. Defendants.
**No. CIV. A. 94-6114.**

June 3, 1996.

MEMORANDUM AND ORDER

HUYETT, J.
*1 Commonwealth Defendants former Commissioner Lehman and former Deputy Commissioner Reid, and Commissioner Martin F. Horn, in his official capacity, have filed a Motion for Summary Judgment. *Pro se* plaintiff, James Z. Yelverton, Jr. filed a complaint alleging violations of his due process and equal protection rights and 42 U.S.C. § § 1981, 1982 and 1983 as a result of his non-acceptance to a pre-release program.

*I. Background*

Plaintiff, who is African-American, was convicted of rape and eight counts of burglary. *Yelverton v. Kooker*, No. 89-7951, 1990 WL 131362 (E.D.Pa. Sept. 10, 1990), *aff'd*, 925 F.2d 421 (3d Cir.1991). Plaintiff has been incarcerated at the State Correctional Institution at Graterford and Huntington, and recently has been transferred to the State Correctional Institution in Dallas.FN1 Plaintiff's minimum incarceration date is July 28, 1999 and his maximum incarceration date is July 28, 2020. On August 17, 1994, when plaintiff had approximately five (5) years remaining to serve on his minimum sentence, he applied for pre-release/furlough status. The guidelines governing pre-release at that time were set forth in Administrative Directive DC-ADM 805 (effective 2/18/84). Administrative Directive DC-ADM 805 allowed inmates who had served at least one half of their minimum sentence and at least nine (9) months in a state institution, and who had a clear prison record to be considered for pre-release status. It is undisputed that at the time plaintiff submitted his pre-release application, he met these requirements. Administrative Directive DC-ADM 805 was revised, effective November, 15, 1994, to require inmates to be within nine (9) months of their minimum sentence to be considered for pre-release status. *See* Administrative Directive DC-ADM 805 (effective 11/15/94), Bulletin, Policy and Procedure for Obtaining Pre-Release Transfer.

> FN1. In Plaintiff's Motion in Opposition to the Defendant's Motion for Summary Judgment, plaintiff raises a retaliatory transfer issue which was not alleged in plaintiff's complaint in this action and the complaint was never amended to include a retaliatory transfer claim. Thus, this issue will not be

Plaintiff's pre-release application was disapproved because he needed to serve more time. *See* Plaintiff's Cumulative Adjustment Record. As a result of his non-acceptance to the pre-release program, plaintiff filed a complaint alleging various violations of his due process and equal protection rights and 42 U.S.C. § § 1981, 1982 and 1983. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

*II. Discussion*

*A. Summary Judgment Standard*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 2
Not Reported in F.Supp., 1996 WL 296551 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

Summary judgment is proper when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court's role is to determine "whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Josev v. John R. Hollingsworth Corp.,* 996 F.2d 632, 637 (3d Cir.1993). The moving party has the burden of demonstrating that no genuine issue of fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Further, all reasonable inferences that can be drawn from the record must be viewed in the light most favorable to the non-moving party. *Connors v. Fawn Min. Corp.,* 30 F.3d 483, 489 (3d Cir.1994); *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038 (1977). However, if the non-moving party fails to adduce sufficient evidence in connection with an essential element of the case for which it has the burden of proof, the moving party is entitled to summary judgment as a matter of law. *Celotex,* 477 U.S. at 322-23.

## B. *Due Process*

**\*2** Plaintiff claims that his due process rights have been violated because he was denied pre-release status. Federal courts have consistently held that inmates do not have a right to participation in the pre-release program under the United States Constitution. *See, e.g., Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7-11 (1979); *Coffield v. Dragovich,* No. Civ. A.94-2521, 1994 WL 171348, at *1 (E.D.Pa. May 4, 1994) (dismissing plaintiff's claim that his constitutional rights had been violated when his pre-release program privileges were revoked reasoning that plaintiff did not have a constitutional right to access to a pre-release program); *Winsett v. McGinnes,* 617 F.2d 996, 1004-05 (3d Cir.1980) (United States Constitution does not create liberty interest in participation in pre-release program), *cert. denied,* 449 U.S. 1093 (1981). States may under certain circumstances create a liberty interest which is protected by the Due Process Clause by adopting prison regulations which mandate a particular outcome if certain criteria have been met. *See Sandin v. Conner,* 115 S.Ct. 2293, 2297-2300 (1995); *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 461-62 (1989). However, Pennsylvania's pre-release regulations do not have the requisite language which would create a liberty interest in participation in pre-release programs. *See Wright v. Cuyler,* 517 F.Supp. 637, 641 (E.D.Pa.1981) (Pennsylvania pre-release regulation does not create liberty interest in inmates' participation in pre-release program); *Carter v. Zimmerman,* Civ. A. No. 88-1211, 1989 WL 64581, at *2-3 (E.D. Pa. June 12, 1989) (same). Indeed, the pre-release regulation at issue vests the decision makers with broad discretion in deciding whether an inmate is eligible for pre-release. The pre-release regulation provides, in relevant part: "[s]atisfying the eligibility criteria for Pre-Release Transfer does *not* mean the inmate will automatically be permitted to participate in Pre-Release Programs...." Administrative Directive DC-ADM 805 (effective 2/18/84). Absent a constitutionally protected or state created interest to participate in the pre-release program, plaintiff has no cause of action for violation of due process as a result of his non-acceptance to that program. Thus, the Commonwealth Defendants' motion for summary judgment will be granted with respect to plaintiff's asserted violation of his due process rights.

## C. *Equal Protection*

Under a liberal reading of plaintiff's complaint and Motion in Opposition to Commonwealth Defendants' Motion for Summary Judgment, it appears that plaintiff makes three equal protection claims: first, applying the new pre-release policy, rather than the old pre-release policy, to his application is discriminatory because he is denied the same rights and privileges enjoyed by inmates whose applications were governed by the old pre-release policy; [FN2] second, the Commonwealth Defendants discriminated against him when they denied him pre-release status by applying the new pre-release policy to him even though the old pre-release policy was in effect at the time he submitted his application, while at the same time they granted pre-release status to a white inmate presumably under the old pre-release policy; [FN3] and third, the new pre-release policy is discriminatory because the new pre-release policy affects more minority inmates than white inmates as there are more minority inmates in prison than white inmates.[FN4] Because no genuine issue of material fact exists with respect to any of plaintiff's equal protection claims, the Commonwealth Defendants' motion for summary judgment on all of plaintiff's equal protection claims will be granted.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                Page 3
Not Reported in F.Supp., 1996 WL 296551 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

FN2. *See* Plaintiff's Motion in Opposition to the Defendant's Motion for Summary Judgment, at ¶ 3.

FN3. *See* Plaintiff's Motion in Opposition to the Defendant's Motion for Summary Judgment, at ¶ ¶ 6, 14, 15.

FN4. *See* Complaint, ¶ ¶ 5, 10; Plaintiff's Motion in Opposition to the Defendant's Motion for Summary Judgment, at ¶ 4.

### 1. Plaintiff's first equal protection claim

**\*3** Plaintiff's first equal protection claim-which is simply that it is discriminatory to assess inmates' pre-release program applications under successive pre-release policies which have different eligibility requirements-does not implicate a fundamental right or a suspect class. Plaintiff does not have a fundamental right to application of the old pre-release eligibility requirements. In addition, although plaintiff belongs to a suspect class, the basis of his first equal protection claim has nothing to do with race. In the absence of fundamental rights or suspect classification, equal protection only requires that a classification resulting in unequal treatment bear a rational relationship to a legitimate state purpose. *See Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312-14 (1976); *Wright,* 517 F.Supp. at 643. Clearly, the Commonwealth has a legitimate interest in enacting a policy to govern the reintegration of inmates into the community. The change in pre-release policy is rationally related to this legitimate interest because the new pre-release policy which requires inmates to serve a greater part of their minimum sentence promotes the purposes set forth in Administrative Directive DC-ADM 805, and the Bulletin revising Administrative Directive DC-ADM 805, such as consistency in the pre-release/furlough program and public safety. *See also* Declaration of Raymond Clymer, Jr. (the revised pre-release policy "promote[s] public safety by protecting society from convicted felons, serving their sentences."). Thus, plaintiff's first equal protection claim is dismissed.

### 2. Plaintiff's second equal protection claim

Plaintiff's second equal protection claim essentially contends that the Commonwealth Defendants violated his civil rights because they assessed his application under the new pre-release policy prior to its effective date and denied him pre-release status, but they assessed the application of a caucasian inmate, who also submitted his application prior to the effective date of the new pre-release policy, under the old pre-release policy and granted him pre-release status. In support of this argument, plaintiff merely alleges that the Commonwealth Defendants granted a furlough to Carl Law, a caucasian male inmate, even though he had more than nine (9) months remaining on his minimum sentence. *See* Plaintiff's Motion in Opposition to the Defendant's Motion for Summary Judgment, at ¶ 14.

Under the summary judgment standard established by the Supreme Court in *Celotex,* the entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. Because the plaintiff has failed to adduce sufficient evidence in connection with an essential element of the case for which he has the burden of proof, the Commonwealth Defendants are entitled to summary judgment on this claim as a matter of law. *Celotex,* 477 U.S. at 322-23.

**\*4** As the moving party, the Commonwealth Defendants had the initial burden of identifying evidence which shows the absence of a genuine issue of material fact. *Id.* at 322-23. The Commonwealth Defendants have satisfied this burden. The Commonwealth Defendants deny that plaintiff's non-acceptance to the pre-release program was based on application of the new pre-release eligibility requirements which they acknowledge did not become effective until November 1994. *See* Reply of Commonwealth Defendants to Plaintiff's Motion in Opposition to Their Motion for Summary Judgment. Rather, the Commonwealth Defendants assert that their denial of plaintiff's application was pursuant to the old pre-release policy and that such denial was a proper exercise of discretion and was not because of any racial discrimination. *Id.* The Commonwealth Defendants do not dispute that plaintiff met certain eligibility requirements for the pre-release program under the old pre-release policy which was in effect when he submitted his pre-release application: plaintiff had completed one half of his minimum sentence, served at least nine

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                                          Page 4
Not Reported in F.Supp., 1996 WL 296551 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

(9) months in a state institution, and had clear prison record. However, the Pennsylvania pre-release regulations vest correctional officials with very broad discretion in determining which prisoners should be admitted. *See Jamieson v. Robinson,* 641 F.2d 138, 143 (3d Cir.1981); *Rowe v. Cuyler,* 534 F.Supp. 297, 299 (E.D.Pa.1982), *aff'd,* 696 F.2d 885 (3d Cir.1983). Administrative Directive DC-ADM 805 specifically stated,
"[s]atisfying the eligibility criteria for Pre-Release Transfer does *not* mean the inmate will automatically be permitted to participate in Pre-Release Programs. Other considerations such as the staff's evaluations of the inmate's progress, the relevancy of the particular Pre-Release Program to the inmate's reintegration, the safety of the community and the victim of the inmate's crime, and the availability of space will be taken into consideration."

Moreover, the stated reason for denying plaintiff access to the pre-release program-that he needed to serve more time-is not inconsistent with the Commonwealth Defendant's usual application of the old pre-release policy. Indeed, the plaintiff concedes in his complaint that, even under the old pre-release policy, the Department of Corrections never released anyone on furlough at half their minimum sentence but would release some inmates on furlough with *two* years left on their minimum sentence. Complaint, at ¶ 4. Plaintiff had approximately five (5) years remaining on his minimum sentence when he applied to the pre-release program. In addition, the Commonwealth Defendants have attested by way of sworn declaration that the old and new pre-release policies applied to all inmates equally irrespective of their race. *See* Declaration of Raymond Clymer, Jr. Thus, the Commonwealth Defendants have met their burden of establishing that they denied plaintiff's application to the pre-release program under the old pre-release policy and that such denial was not inconsistent with the usual application of the old pre-release policy and was a valid exercise of prison officials' discretion.

**\*5** The burden then shifts to the plaintiff who must go beyond his pleading and designate specific facts by use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue for trial regarding whether the Commonwealth Defendants discriminated against him by assessing his application under the new pre-release policy, and white inmate's application under the old pre-release policy. *Celotex,* 477 U.S. at 324. Plaintiff asserts that the Commonwealth Defendants granted a furlough to Carl Law, a caucasian male inmate, even though he had more than nine (9) months remaining on his minimum sentence. This bare assertion is not sufficient to create a genuine issue for trial.

Plaintiff has offered no evidence whatsoever to support the assertion that his application was considered under the new pre-release policy and that Carl Law's application was considered under the old pre-release policy. In fact, plaintiff hurt his argument that his application must have been considered under the new pre-release policy by conceding that, even under the old pre-release policy, the Department of Corrections never released anyone on furlough at half their minimum sentence but would release some inmates on furlough with *two* years left on their minimum sentence. Complaint, at ¶ 4.

Plaintiff also failed to establish that he and Carl Law are similarly situated such that treatment of Mr. Law's application could serve as basis of comparison for treatment of his application. In *Rowe,* the court rejected a claim similar to plaintiff's second equal protection claim and stated:
No two prisoners, being different human beings will possess identical backgrounds and characters. Indeed, it is difficult to believe that any two prisoners could ever be considered "similarly situated" for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decision may legitimately be informed by a broad variety of an individual's characteristics. Furthermore, whether or not an inmate is able to benefit from participation in pre-release is inherently a subjective determination not susceptible of mathematically precise analysis. The grounds articulated for denial may only be highlights of a catalogue of valid objections, any one of which might support the decision.

*Rowe,* 534 F.Supp. at 301; *see also Shaw v. Zimmerman,* Civ. A. No. 85-6036, 1986 WL 10812, at \*2 (E.D.Pa. Sept. 30, 1986). Plaintiff has not supplied the Court with any information which would have been considered by prison officials in deciding to grant Carl Law pre-release status, such as his criminal history, background, minimum and maximum sentences, prison behavior, counselor's notes etc.[FN5] Assuming two inmates could even be "similarly situated," it is impossible to determine whether Carl Law and plaintiff are similarly situated given the lack of information about Carl Law. Plaintiff does not compare his treatment with respect to pre-release to any other inmate. Thus, the Commonwealth Defendants' motion for summary judgment on plaintiff's second equal protection claim is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                                    Page 5
Not Reported in F.Supp., 1996 WL 296551 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

granted.

> FN5. Plaintiff has not offered any evidence to prove that Carl Law has, in fact, been granted furlough status or that Carl Law actually submitted his application when the old pre-release policy was in effect. These are essential elements of plaintiff's claim and he would have the burden of proof with respect to these facts at trial.

### 3. Plaintiff's third equal protection claim

**\*6** Plaintiff's third equal protection claim based on the assertion that the new pre-release policy is discriminatory because it affects more minority inmates than white inmates must also be dismissed. Plaintiff's second equal protection claim raises a disparate impact analysis. In assessing the sufficiency of an equal protection claim based on disparate racial impact, the Supreme Court has held that a facially neutral law does not violate the Equal Protection Clause solely because it results in a racially disproportionate impact; instead, the disproportionate impact must be traced to a purpose to discriminate based on race. *See Washington v. Davis,* 426 U.S. 229, 2047-51 (1976) (upholding a job-related employment test that white people passed in proportionately greater numbers than blacks, as there had been no showing that racial discrimination entered into the establishment or formulation of the test); *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 264-71 (1977) (upholding a zoning board decision that tended to perpetuate racially segregated housing patterns since, other than its effect, the board's decision was shown to be nothing more than an application of a constitutionally neutral zoning policy). Absent a racially discriminatory purpose, explicit or inferable, on the part of the lawmaker or law enforcer, the statutory distinction is subject only to rational basis review. *See Personnel Administrator v. Feeney,* 442 U.S. 256, 272-74 (1979). However, a classification that is facially neutral but is an obvious pretext for racial discrimination violates the Equal Protection Clause. *Yick Wo v. Hopkins,* 118 U.S. 356 (1886).

In this case, the new pre-release program policy is facially neutral as it does not establish any classification based on race or any other constitutionally impermissible factors. Thus, the disproportionate racial impact which this new pre-release policy allegedly causes will only violate the Equal Protection Clause if such impact can be traced to a specific purpose to discriminate on the basis of race. Plaintiff has identified no such purpose.

Thus, if the Commonwealth Defendants' action in adopting the new pre-release policy is rationally related to a legitimate state purpose, the change in pre-release policy does not violate the Equal Protection Clause. *See Massachusetts Board of Retirement v. Murgia,* 427 U.S. at 312-14. The new pre-release policy requires inmates to serve more of their minimum sentence before they can qualify for the pre-release program. The reasons for the change in pre-release policy is set forth in the Bulletin which provides, in relevant part:
The purpose of this bulletin is to set forth a time frame within which Temporary Home Furloughs would normally occur. This will both establish consistency in the furlough program throughout the Department, and ensure that this program is being used for the intended purpose. It also establishes a process to be utilized when there are reasons to approve temporary home furloughs outside of the established time frame.

**\*7** Administrative Directive DC-ADM 805, Bulletin, Policy and Procedure for Obtaining Pre-Release Transfer (effective 11/15/94). This revision is rationally related to the legitimate state interest of enacting a policy to govern the reintegration of inmates into the community. Thus, the Commonwealth Defendants' motion for summary judgment with respect to plaintiff's second equal protection claim will be granted.

### D. *Section 1981*

To establish a claims under 42 U.S.C. § 1981, plaintiff must allege facts in support of the following elements: 1) plaintiff is a member of a racial minority; 2) intent to discriminate on the basis of race by the defendant; and 3) discrimination concerned one or more of the activities enumerated in the statute which includes the right to make and enforce contracts, to sue, be parties, and give evidence. *See Thomas v. St. Luke's Health Systems, Inc.,* 869 F.Supp. 1413 (N.D.Iowa 1994), *aff'd,* 61 F.3d 908 (8th Cir.1995); *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085 (2d Cir.1993); *Baker v. McDonald's Corp.,* 686 F.Supp. 1474 (S.D.Fla.1987), *aff'd,* 865 F.2d 1272

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                           Page 6
Not Reported in F.Supp., 1996 WL 296551 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

(11th Cir.1988), *cert. denied,* 493 U.S. 812 (1989).    All of the plaintiff's equal protection claims have been dismissed.    Consequently, plaintiff cannot establish that the Commonwealth Defendants intended to discriminate on the basis of race.    Moreover, plaintiff has not alleged any discrimination concerning one or more of the activities enumerated in the statute.    Therefore, the Commonwealth Defendants' motion for summary judgment will be granted with respect to this claim.

### E. *Section 1982*

By its terms, 42 U.S.C. § 1982 bars racial discrimination in the purchase, sale and lease of real and personal property.    Plaintiff has not alleged any racial discrimination with respect to the purchase, sale or lease of real or personal property, and therefore, he has failed to allege facts which can support his Section 1982 claim.    *See City of Memphis v. Greene,* 451 U.S. 100 (1981).    Thus, the Commonwealth defendants' motion for summary judgment with respect to plaintiff's Section 1982 claim is granted.

### F. *Section 1983*

To establish a claim under section 1983, a plaintiff must show that he or she was deprived of a right secured by the federal constitution or federal law by a person acting under color of state law.    42 U.S.C. § 1983.    *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978).    Because plaintiff's due process and equal protection claims have been dismissed on the Commonwealth Defendants' motion for summary judgment, plaintiff cannot show that he was deprived a right secured by the federal Constitution or federal law.    The Commonwealth Defendants' motion for summary judgment on this claim is, therefore, appropriate.

### III. *Conclusion*

For the foregoing reasons, the Commonwealth Defendants' motion for summary judgment as to all of plaintiff's claims is granted.

An appropriate Order follows.

### ORDER

**\*8** HUYETT, J.

Upon consideration of the Motion of Commonwealth Defendants for Summary Judgment, Plaintiff's Motion in Opposition to the Defendant's Motion for Summary Judgment, and the Reply of Commonwealth Defendants to Plaintiff's Motion in Opposition to their Motion for Summary Judgment, for the reasons stated in the foregoing Memorandum, the Commonwealth Defendants' motion is GRANTED as to plaintiff's equal protection and due process claims and plaintiff's claims pursuant to 42 U.S.C. § § 1981, 1982, and 1983.    Judgment is entered in favor of Commonwealth Defendants and against Plaintiff.

IT IS SO ORDERED. addressed here.    If plaintiff wants to pursue this claim, he should file a separate complaint setting forth the facts in support of such claim.

E.D.Pa.,1996.
Yelverton v. Lehman
Not Reported in F.Supp., 1996 WL 296551 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:94cv06114 (Docket) (Oct. 06, 1994)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 296551 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

END OF DOCUMENT

Westlaw.

Slip Copy                                                                                                                    Page 1
Slip Copy, 2006 WL 1652787 (D.Del.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents

Shipley v. B & F Towing Co.D.Del.,2006.Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
John S. SHIPLEY, Plaintiff,
v.
B & F TOWING COMPANY and Owners, Defendants.
**No. Civ.A. 04-1530-JJF.**

June 13, 2006.

John S. Shipley, Plaintiff, pro se.
Etta R. Wolf, and Laurence V. Cronin, of Smith, Katzenstein, & Furlow, Wilmington, Delaware, for Defendants.

*MEMORANDUM OPINION*

FARNAN, J.

**\*1** Pending before the Court is Defendant B & F Towing Company's Motion For Summary Judgment (D.I.24). For the reasons discussed, the Motion will be granted.


## I. BACKGROUND

On October 15, 2004, New Castle County Code Enforcement Inspector Orndorff went to Plaintiff's home due to a complaint received about the condition of Plaintiff's property. While there, Inspector Orndorff discovered two unregistered vehicles in the driveway, surrounded by weeds and covered with tree limbs, in violation of the New Castle County Code. Inspector Orndorff posted a notice of the violation on Plaintiff's property, which gave Plaintiff seven days to remedy the violations. The notice contained a phone number that Plaintiff could call if he had any questions or concerns.

On October 22, 2004, when Inspector Orndorff returned to the property, he found that the violations had not been remedied, and he tagged the vehicles for towing. Two days later, Plaintiff's 1990 Lincoln Continental was towed from his driveway. Inspector Orndorff subsequently filed a complaint with the State of Delaware Justice of the Peace Court 11. Plaintiff was found guilty of the Code violations and fined $988.

On December 20, 2004, Plaintiff filed his Complaint, alleging violations of the Thirteenth and Fourteenth Amendments, the Privileges and/or Immunities Clauses, and 42 U.S.C. § § 1981, 1982, 1983, 1985(3), and 1986. Plaintiff's Complaint further alleges malicious prosecution.


## II. PARTIES' CONTENTIONS

By its Motion, Defendant contends that the Court should grant summary judgment in its favor on Plaintiff's procedural due process claim because it is not the party responsible for providing procedural safeguards. Second, Defendant contends that Plaintiff has failed to adduce any fact in support of his claims of racial discrimination. Finally, Defendant contends that there is no evidence that it conspired with New Castle County to deprive Plaintiff of his rights. In response, Plaintiff contends that there are issues of material fact as to all of his claims, and therefore, summary judgment is inappropriate.


## III. LEGAL STANDARD

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                          Page 2
Slip Copy, 2006 WL 1652787 (D.Del.)
**(Cite as: Slip Copy)**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c)*. In determining whether there are triable issues of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976)*.

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)* (citations omitted). However, the mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)*.

### IV. DISCUSSION

A. *Whether The Court Should Grant Summary Judgment On Plaintiff's Claims For Racial Discrimination Under Sections 1981 and 1982*

**\*2** Plaintiff contends that Defendant has racially discriminated against him in violation of 42 U.S.C. § § 1981 and 1982. Sections 1981 and 1982 derive from the Thirteenth and Fourteenth Amendments and permit causes of action against state and private actors.

Claims brought pursuant to Sections 1981 and 1982 follow the burden shifting analysis of *McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)*. Under this analysis, a plaintiff must first establish a prima facie case of discrimination. *Green, 411 U.S. at 802*. If the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant, and the defendant must "articulate some legitimate, nondiscriminatory reason" for the treatment. *Id.*

A prima facie case under Section 1981 requires a plaintiff to demonstrate: "(1) [that the plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute." *Brown v. Philip Morris, Inc., 250 F.3d 789, 797 (3d Cir.2001)*. Furthermore, a prima facie case under Section 1982 requires a plaintiff to point to specific facts, sufficient to give rise to an inference "(1) [of] the defendant's racial animus; (2)[of] intentional discrimination; and (3) that the defendant deprived plaintiff of his rights because of his race." *Brown, 250 F.3d at 797*.

The Court concludes that Plaintiff has failed to demonstrate intentional discrimination or racial animus, elements central to Section 1981 and 1982 claims. Plaintiff contends that white homeowners are treated differently than black homeowners because black homeowners' cars are towed, while white homeowners' are not. (D.I. 29 at 5, 8). Plaintiff further contends that he has proven this "through the interrogatories and other pleadings." (*Id.* at 4). However, the Court has reviewed all documents before it and concludes that Plaintiff has adduced no evidence of intentional discrimination or racial animus. The Court cannot, on summary judgment, accept Plaintiff's bald assertions of racial discrimination. Accordingly, the Court will grant Defendant's Motion For Summary Judgment as it pertains to Plaintiff's claims under Sections 1981 and 1982.

B. *Whether The Court Should Grant Summary Judgment On Plaintiff's Claims For Conspiracy Under Sections 1985(3) and 1986*

Plaintiff contends that Defendant and New Castle County conspired to take his vehicle and the vehicles of other black residents. (D.I. 29 at 6). In order to sustain a claim under Section 1985, a plaintiff must show:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

**\*3** _Lake v. Arnold,_ 112 F.3d 682, 685 (3d Cir.1997) (citing _United Bhd. of Carpenters and Joiners of Am., Local 610,_ 463 U.S. 825, 828-29 (1983)).

Plaintiff's claim under Section 1985 must fail. As discussed above, Plaintiff has not adduced any evidence of a discriminatory animus. Additionally, Plaintiff has failed to put forth evidence of a conspiracy between the New Castle County and Defendant. As such, Plaintiff's claim under Section 1986, for neglect to prevent conspiracy, must also fail. Accordingly, the Court will grant Defendant's Motion For Summary Judgment as it pertains to Plaintiff's Section 1985 and 1986 claims.

### C. Whether The Court Should Grant Summary Judgment On Plaintiff's Section 1983 Claim

To establish a claim under Section 1983, a plaintiff must show: (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived plaintiff of a federally-secured right. _Moore v. Tartler,_ 986 F.2d 682, 685 (3d Cir.1993). Plaintiff contends that Defendant violated the equal protection, due process, and privileges and immunities clauses. Even assuming, _arguendo,_ that Defendant is a state actor for the purposes of Section 1983, the Court concludes that Plaintiff's Section 1983 claim cannot withstand Defendant's Motion For Summary Judgment.

### 1. Equal Protection

To prevail on his equal protection claim, Plaintiff would have to demonstrate that the challenged practice "had a discriminatory effect and was motivated by a discriminatory purpose." _Carrasca v.. Pomeroy,_ 313 F.3d 828, 834 (3d Cir.2002). To show discriminatory effect, Plaintiff would have to put forth facts showing that he "is a member of a protected class and that [he] was treated differently from similarly situated individuals in an unprotected class." _Bradley v. United States,_ 299 F.3d 197 (3d Cir.2002).

Plaintiff has failed to adduce any evidence demonstrating that similarly situated persons were treated differently than him. Furthermore, as discussed above, Plaintiff has failed to put forth any facts showing that the towing of his car was motivated by a discriminatory purpose. Accordingly, Plaintiff's Section 1983 claim must fail as it relates to a violation of his rights to equal protection.

### 2. Due Process

The due process clause prohibits the states from depriving "any person of life, liberty, or property without due process of law." _U.S. Const. amend. XIV § 1._ Plaintiff contends Defendants violated his due process rights, when they towed his car without notice and without an opportunity for Plaintiff to defend himself. However, "[i]t is the responsibility of the law enforcement agency that directed the tow to provide the procedural safeguards mandated by the Fourteenth Amendment; the tower is not the party in the tripartite relationship of tower, city, and vehicle owner to provide [the safeguards]." _Mays v. Scranton City Police Dep't,_ 503 F.Supp. 1255, 1264 (M.D.Pa.1980).

**\*4** There appears to be a factual dispute as to whether any procedural safeguards were provided to Plaintiff, however, summary judgment is appropriate, because the omission of procedural safeguards, if any, would be the responsibility of New Castle County, not the private towing company. Accordingly, Plaintiff's Section 1983 claim must fail as it relates to a violation of Plaintiff's rights to due process.

### 3. Privileges And Immunities

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                        Page 4
Slip Copy, 2006 WL 1652787 (D.Del.)
**(Cite as: Slip Copy)**

Plaintiff contends that Defendant violated the privileges and/or immunities clauses of Article IV and the Fourteenth Amendment. Plaintiff's claim under Article IV must fail because Plaintiff has not any adduced any evidence that he was treated differently based on his citizenship in another state. *Saenz v. Roe,* 526 U.S. 489, 501-02 (1999) (Article IV § 2 "removes from the citizens of each State the disabilities of alienage in other States."). Plaintiff's claim under the Fourteenth Amendment also must fail because Plaintiff has not adduced evidence that the state has eliminated any of Plaintiff's uniquely federal rights or restricted any of his civil liberties. 2 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 14.3 (3d ed. Supp.2006). Having found no other violation of Plaintiff's constitutional or federally-secured rights, the Court concludes that summary judgment is appropriate on Plaintiff's Section 1983 claim.

### D. *Malicious Prosecution*

Finally, Plaintiff contends that Defendant has engaged in malicious prosecution.[FN1] In order to sustain a claim for malicious prosecution, a plaintiff must establish each of the following elements:

> FN1. It is unclear from the papers before the Court whether Plaintiff's malicious prosecution claim stems from this lawsuit (D.I. 1 at 3) ("Plaintiff was forced to defend himself in this lawsuit [amounting to] malicious prosecution")) or the proceedings initiated against Plaintiff for violations of the New Castle County Code. Plaintiff cannot maintain a malicious prosecution claim against Defendant for a suit that Plaintiff initiated. Accordingly, the Court will consider Plaintiff's claim in the context of the state proceedings brought for Plaintiff's violation of the Code.

(1) prior institution or continuation of some regular judicial proceedings against plaintiff in this action;
(2) such former proceedings must have been by, or at the insistence, of the defendant in this action;
(3) the former proceedings must have terminated in favor of the plaintiff herein;
(4) there must have been malice in instituting the former proceedings;
(5) there must have been a lack of probable cause for the institution of the former proceedings; and
(6) there must have been injury or damage to plaintiff from the former proceedings.

*Wiers v. Barnes,* 925 F.Supp. 1079, 1093 (D.Del.1996) (citing *Megenhardt v. Nolan,* 583 A.2d 660 (Del.1990)).

The Court concludes that there are no triable issues of material fact relating to Plaintiff's malicious prosecution claim. New Castle County, and not Defendant, instituted the former proceedings against Plaintiff. Furthermore, the proceedings were not terminated in favor of Plaintiff; Plaintiff was found guilty on all charges. Accordingly, the Court will grant Defendant's Motion as it pertains to Plaintiff's malicious prosecution claim.

### V. CONCLUSION

For the reasons discussed, Defendant B & F Towing Company's Motion For Summary Judgment (D.I.24) will be granted.

An appropriate Order will be entered.

### *ORDER*

At Wilmington, the *13* day of June 2006, for the reasons set forth in the Memorandum Opinion issued this date;

**\*5 IT IS HEREBY ORDERED** that Defendant B & F Towing Company's Motion For Summary Judgment (D.I.24) is *GRANTED.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1652787 (D.Del.)
**(Cite as: Slip Copy)**

D.Del.,2006.
Shipley v. B&F Towing Co.
Slip Copy, 2006 WL 1652787 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1435888 (Trial Motion, Memorandum and Affidavit) Defendant's Opening Brief in Support of its Motion for Summary Judgment (Apr. 17, 2006) Original Image of this Document (PDF)
• 1:04cv01530 (Docket) (Dec. 20, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                           Page 1
Not Reported in F.Supp.2d, 2006 WL 538546 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**


Briefs and Other Related Documents

Lewis v. WilliamsD.Del.,2006.Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Jimmie LEWIS, Plaintiff,
v.
Warden Rafael WILLIAMS, et al., Defendants.
**No. Civ. 05-013-GMS, Civ. 05-051-GMS, Civ. 05-052-GMS.**

March 6, 2006.


Jimmie Lewis, Smyrna, DE, pro se.

MEMORANDUM

SLEET, J.

**\*1** The plaintiff Jimmie Lewis ("Lewis"), SBI # 506622, a prisoner incarcerated at Delaware Correctional Center, Smyrna, Delaware, brings this lawsuit pursuant to 42 U.S.C. § 1983. He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I.4.) The court now proceeds to review and screen the complaint pursuant to 28 U.S.C. § 1915 and § 1915A.


I. THE COMPLAINT

A. The Amendments


The plaintiff brings this consolidated action against a legion of defendants, raising a number of claims.[FN1] On April 8, 2005, an amended complaint was filed pursuant to Fed.R.Civ.P. 15(a), adding new allegations. (D.I.8.) Thereafter, Lewis sought, and was granted, leave to amend the complaint adding new defendants. (D.I.17.) A second motion to amend was filed on November 10, 2005. (D.I.18.) The amended complaint adds even more defendants and also contains additional allegations.


> FN1. The court consolidated case Nos. 05-13-GMS, 05-51-GMS and 05-52-GMS on December 20, 2005. (D.I.22.)

"After amending once or after an answer has been filed, the plaintiff may amend only with leave of the court or the written consent of the opposing party, but 'leave shall be freely given when justice so requires.' " *Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir.2000) (quoting Fed.R.Civ.P. 15(a)). Inasmuch as the complaint has yet to be screened, the court will grant Lewis' motion to amend the complaint. (D.I.18.) The newly named defendants are Lise Merson, Dr. Rogers, Donald Napolin, Capt. Berggrun, Nurse Jeromy, April Lyonns and Dr. Arumburo.


B. The Allegations

Lewis seeks injunctive relief to obtain medical treatment and a transfer to North Carolina. He also seeks compensatory and punitive damages. Lewis makes many complaints, alleging a panoply of constitutional violations. He also alleges that the defendants conspired to violate his constitutional rights. The majority of Lewis' complaints center around his custody with the Delaware Department of Correction ("DDOC") and his placement at the Howard R. Young Correctional Institution ("HRYCI"), particularly when housed in the infirmary's psychiatric closed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 2
Not Reported in F.Supp.2d, 2006 WL 538546 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

observation rooms. The court will address the claims raised in the complaint, the amended complaint, and the second amended complaint. In most instances each successive filing contains the same allegations, albeit the newer filings are more descriptive.

Lewis makes allegations regarding his conditions of confinement, medical treatment and care, and access to the courts. Lewis takes exception to the way inmates are classified. He contends that he was subjected to excessive force and that correction officials failed to protect him. He challenges his conviction and confinement. He also alleges a violation of his right to privacy. Further, he contends that an officer slandered him and that other correction officers used harsh or threatening words when speaking to him. Lewis alleges violations of his right to due process in the filing, investigation, and resolution of grievances, and in the procedures used in conducting disciplinary proceedings. Lewis complains that while housed in maximum security he was deprived of certain activities and rights. Finally, he alleges that virtually all correction officials in a supervisory position failed to properly train, supervise, and/or control their subordinates.

## II. STANDARD OF REVIEW

**\*2** When a litigant proceeds *in forma pauperis*, 28 U.S.C. § 1915 provides for dismissal under certain circumstances. When a prisoner seeks redress in a civil action, 28 U.S.C. § 1915A provides for screening of the complaint by the court. Both 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) provide that the court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant immune from such relief. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

The court must "accept as true factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996)(citing *Holder v. City of Allentown,* 987 F.2d 188, 194 (3d Cir.1993)). Additionally, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim when "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Haines v. Kerner,* 404 U.S. 519, 520-521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## III. ANALYSIS

### A. Pleading Deficiency

Other than naming them as defendants, Lewis provides no details regarding the alleged actions of defendants Betty Burris, Evelyn Steven, and Collen Bell. Additionally, the complaint alleges that Lewis was assaulted by fellow inmates due to the negligence of Pod Officers, but Lewis fails to provide the names of these officers. (D .I. 8, para. 15.) Finally, Lewis names as defendants, First Correctional Medical ("FCM") Staff and Internal Affairs Supervisor but provides no specific names.

There is no heightened pleading requirement when filing civil rights complaints. *Alston v. Parker,* 363 F.3d 229, 233 (3d Cir.2004)(citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). The plaintiff's complaint, however, "lack[s] enough detail to ... serv[e] its function as a guide to discovery." *Alston v. Parker,* 363 F.3d at 253 (internal citations omitted). As currently presented, the claims against Betty Burris, Evelyn Steven, Collen Bell, the unnamed Pod Officers, the FCM Staff, and the Internal Affairs Supervisor have no arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. at 325. As such, the claims are frivolous and are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### B. Failure to State a Claim

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 538546 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Lewis raises a number of claims against defendant Warden Rafael Williams ("Warden Williams") which do not sufficiently allege a deprivation of a right secured by the constitution. They are: a) use of an intercom system that causes Lewis' ears to ring (D.I.8, para.37); b) transfer of Lewis to the DDOC without obtaining a court order; c) allowing Michael Knight ("Knight") to serve Lewis pork products without providing a pork substitute and to serve juice containing saccharin (D.I.8, para.40, 41); d) for allowing persons who are not "medically clear" to serve food (D.I.8, para.42); and, e) providing Lewis an inadequate inmate handbook (D.I.8, para.43). Lewis also brings a claim against Knight for serving pork products without providing a pork substitute.

*3 In order to state a claim under § 1983, Lewis must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. 42 U.S.C. § 1983; See Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.1996).

None of the foregoing claims rise to the level of a constitutional violation. The claims are frivolous and are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## C. Access to Courts

Lewis alleges he was denied access to a paralegal to assist him in the filing of an application to the Supreme Court, and that while housed in segregation he was prohibited from receiving or sending legal mail. (D.I.18, para.5.) He also alleges that FCM denied him permission to telephone his attorney. Lewis alleges that this deprivation caused him a "legal dilemma" concerning his Superior Court Case.

Prisoners must be allowed "adequate, effective and meaningful" access to the courts. Bounds v. Smith, 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (holding that prisons must give inmates access to law libraries or direct legal assistance). In order to state a claim that he was denied his right of access to the courts, Lewis must show that he was actually injured by such interference. Lewis v. Casey, 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); Oliver v. Fauver, 118 F.3d 175, 178 (3d Cir.1997).

Lewis alleges that defendants C/O Talenti ("Talenti"), Capt. Emig ("Emig"), Donald Napolin ("Napolin"), Mr. Fish ("Fish"), Department of Correction Commissioner Stanley Taylor ("Commissioner Taylor"), Warden Williams, Georgia Sutton ("Sutton"), Dr. Boston ("Dr.Boston"), and FCM all had involvement in the denial of his access to the courts. The allegations in the complaint, however, indicate that rather than deny access to the courts, defendants Talenti, Emig and Napolin actually assisted Lewis in his requests for legal access. Therefore, the access to the court claim raised against them is dismissed. The court recognizes the existence of a cognizable denial of access to the court claim against defendants Fish, Commissioner Taylor, Warden Williams, Sutton, FCM and Dr. Boston.

## D. Respondeat Superior

Lewis alleges that while he was housed in administrative segregation Commissioner Taylor and Warden Williams denied him religious services and counseling, visits, telephone calls to attorney or family, receipt of literature, outdoor recreation, haircuts, law library access, clean uniforms, warm clothing, proper grievance procedure, hygiene products, cleaning supplies, and meals served in a sanitary manner. (D.I.8, para.19.)

He also makes general allegations of denial of access to the commissary, complains of the procedure used for cell extractions, complains that persons who are not medically trained serve food and that he is subjected to acts of reprisals by these individuals. (D.I.2.) Lewis raises additional claims regarding the grievance system, telephone rights, mailing rights, outdoor recreation, and the intercom system, specifically alleging that Warden Williams does not provide a mailing system to assure the proper handling of inmate mail. (D.I.8, para.45.)

*4 Lewis seeks to hold Commissioner Taylor and Warden Williams liable on the basis of their supervisory positions. Supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Rizzo v.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 538546 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

_Goode_, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). In order for a supervisory public official to be held liable for a subordinate's constitutional tort, the official must either be the "moving force [behind] the constitutional violation" or exhibit "deliberate indifference to the plight of the person deprived." _Sample v. Diecks_, 885 F.2d 1099, 1118 (3d Cir.1989) (citing _City of Canton v. Harris_, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

There is nothing in the complaint to indicate that either Commissioner Taylor or Warden Williams were the "driving force [behind]" the foregoing list of alleged violations. Additionally, the complaint does not indicate that these defendants were aware of the plaintiff's allegations and remained "deliberately indifferent" to his plight. _Sample v. Diecks_, 885 F.2d at 1118. Thus, these claims against Commissioner Taylor and Warden Williams are dismissed inasmuch as they have no arguable basis in law or in fact.

### E. Conspiracy

Lewis makes a vague allegation that the defendants conspired to deprive him of his rights. For a conspiracy claim, there must be evidence of (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by defendants with the specific intent to violate that right. _Williams v. Fedor_, 69 F.Supp.2d 649, 665-66 (M.D.Pa.), _aff'd_, 211 F.3d 1263 (3d Cir.2000) (citing _Kerr v. Lyford_, 171 F.3d 330, 340 (5th Cir.1999)). _See also Parkway Garage, Inc. v. City of Phila._, 5 F.3d 685, 700 (3d Cir.1993) (plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law); _Kelley v. Myler_, 149 F.3d 641, 648-49 (7th Cir.1998) (an agreement or an understanding to deprive the plaintiff of constitutional rights must exist).

The complaint does not contain sufficient allegations that indicate how the defendants acted in concert to deprive Lewis of his constitutional rights. Therefore, the conspiracy claim is dismissed pursuant to 28 U.S.C. § § 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### F. Verbal Abuse

Lewis alleges that in October 2003 when he was taken to the infirmary, Lt. Chudzik and Corporal Chapel shouted offensive, obscene remarks at him. (D.I. 8 para. 13.) He also alleges that in May 2004 Nurse Kimberly Johnson and Lt. S. Farmer ("Farmer") both shouted slanderous remarks at him and both pointed capstun spray at him. (D.I.18, para.23.) He does not allege that he actually was sprayed. During the May 2004 incident, Farmer was accompanied by Lt. Patrick Sheets and Lt. Joseph Sabato. Later Lt. Sabato and Officer D. Carlock investigated the situation. Lewis alleges that at a later time Farmer threatened him that he would be beaten upon his transfer to Administrative Segregation. Finally, Lewis alleges that he was a victim of slander and libel when Lt. Patrick Sheets spread vicious rumors about him. (D.I.18, para.22.) Lewis alleges that he wrote to Commissioner Taylor, Warden Williams, and Emig regarding the foregoing, they failed to act or respond, and that he filed a grievance, to no avail.

*5 Verbal harassment does not rise to the level of a constitutional violation. _See Murray v. Woodburn_, 809 F.Supp. 383, 384 (E.D.Pa.1993); _see also McBride v. Deer_, 240 F.3d 1287, 1291 (10th Cir.2001) (taunts and threats are not an Eighth Amendment violation); _Prisoners' Legal Ass'n v. Roberson_, 822 F.Supp. 185, 189 (D.N.J.1993) (verbal harassment does not violate inmate's constitutional rights). Similarly, allegations that prison personnel have used threatening language and gestures are not cognizable claims under § 1983. _Collins v. Cundy_, 603 F.2d 825 (10th Cir.1979) (defendant laughed at prisoner and threatened to hang him).

Additionally, Lewis' claims of slander and libel against Sheets are not cognizable under § 1983. Tort claims such as defamation of character are not properly included in a civil rights action under 42 U.S.C. § 1983. _Daniels v. Williams_, 474 U.S. 327, 332 (1986) (quoting _Paul v. Davis_, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)) ("We have previously rejected reasoning that 'would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.' " _See also Hernandez v. Hunt_, Civ.A. No. 89-4448, 1989 WL 66634 (E.D.Pa. Jun 16, 1989).

Lewis' claims of verbal abuse, verbal harassmsent, slander and libel are not cognizable under § 1983. Therefore,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 5
Not Reported in F.Supp.2d, 2006 WL 538546 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

they are dismissed as frivolous pursuant to 28 U.S.C. § § 1915(e)(2)(B)(ii) and 1915A(b)(1).

### G. Conviction/Sentence

Lewis alleges that on October 6, 2003, the actions of Warden Williams and the policies of FCM denied him a fair trial. (D.I.2.) Lewis alleges this occurred when for security reasons, Warden Williams would not transfer Lewis' civilian clothing to the court where Lewis' trial was taking place. Lewis alleges this deprived him of a full and fair opportunity to present himself in front of a jury.

Lewis also alleges that the actions of Farmer caused him to be placed in Administrative Segregation and then transferred to the Delaware Psychiatric Center. He alleges that Farmer instructed that his records indicate he was transferred after assaulting a corrections officer, and that Lt. Philip Parker ("Parker") documented same. Lewis alleges that this conduct caused an atypical and significant hardship because the erroneous information contained in the psychiatric evaluation was used for his competency determination. Lewis also alleges that this erroneous information was used by the Superior Court Judge to sentence him to the maximum term, and he was denied immediate release.

In essence Lewis challenges his conviction and confinement and seeks damages for alleged harm caused by Warden Williams, FCM, Farmer, and Parker as it relates to his conviction and sentence. Such a claim is not cognizable under § 1983 unless and until the conviction is invalidated. *Heck v. Humphrey,* 512 U.S. 477, 486-87, 489, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Indeed, to the extent that Lewis attempts to challenge his conviction and/or sentence, his sole federal remedy for challenging the fact or duration of his confinement is by way of habeas corpus. *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

**\*6** Lewis has not alleged that his conviction or sentence was reversed or invalidated as required by *Heck.* To the extent Lewis seeks damages for his conviction and sentence, his claim rests on an "inarguable legal conclusion," is frivolous, and is dismissed.

### H. Privacy

Lewis alleges that Debra Muskarelli ("Muskarelli") used the intercom system to eavesdrop and/or spy on him during his pretrial confinement at the mental health pod. (D.I.18, para.8.) He alleges that the spying caused him to become paranoid, delusional and psychotic. Lewis alleges that he wrote to Commissioner Taylor, Warden Williams, and Dr. Boston regarding Muskarelli's actions but that they failed to act or respond. Also, he filed a grievance, to no avail. Lewis also alleges that Warden Williams and C/O Harriford utilized the intercom system to spy on him. (D.I.8, paras.25, 32.)

"A right to privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer,* 468 U.S. 517, 527, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Hence, "prisoners retain no legitimate expectation of privacy in their cells for fourth amendment purposes." *Jones/Seymour v. LeFebvre,* 781 F.Supp. 355, 357 (E.D.Pa.1991), *aff'd,* 961 F.2d 1567 (3d Cir.1992) (TABLE); *Proudfoot v. Williams,* 803 F.Supp. 1048, 1051 (E.D.Pa.1992); *Csizmadia v. Fauver,* 746 F.Supp. 483, 490 (D.N.J.1990). Lewis makes no allegations that the defendants' alleged actions involved listening in or spying upon constitutionally protected conversations. He simply claims that they were eavesdroppers and spies. The claim is frivolous and is dismissed as such pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

### I. Grievances

Lewis makes several allegations relative to grievances he filed. He alleges that defendant Napolin did not process his grievances and refused to acknowledge them. (D.I.18, para.30.) Lewis alleges that he wrote to Commissioner Taylor and Dr. Boston about the actions of Napolin, but they failed to act or respond. As with other claims, Lewis

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 6
Not Reported in F.Supp.2d, 2006 WL 538546 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

filed a grievance, to no avail.

Lewis further alleges that Sgt. Marg Moody ("Moody"), denied him the right to have his grievances properly addressed by sabotaging, hindering or denying grievances he filed. (D.I.18, para.38, 51.) Lewis alleges that Cpl. Lise M. Merson ("Merson"), the DCC inmate grievance chairperson, deliberately denied him the right to address his non-medical grievances in accordance with the grievance process. (D.I.8, para.39.)

Finally, Lewis alleges that he filed a grievance against Sgt. Fred Way ("Way") for failing to investigate threats Lewis received from an inmate. (D.I.18, para.24.) He contends that Way's failure to act caused him atypical and significant hardship of "psychotic and paranoid delusions" and being confined to the closed observation room. Lewis alleges that he wrote to Commissioner Taylor, Warden Williams, Dave Williams ("D.Williams"), and Emig but they failed to act or respond. He also filed a grievance, to no avail.

**\*7** Prisoners possess the constitutional right of meaningful access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Although prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, "the right is not compromised by the failure of prison officials to address these grievances." *Booth v. King,* 346 F.Supp.2d 751, 761 (E.D.Pa.2004). This is because inmates do not have a constitutionally protected right to a grievance procedure. *Burnside v. Moser,* No. 04-4713, 138 Fed.Appx. 414, 415 (3d Cir.2005). Nor does the existence of a grievance procedure confer prison inmates with any substantive constitutional rights. *Hoover v. Watson,* 886 F.Supp. 410, 418-419 (D.Del.), *aff'd,* 74 F.3d 1226 (3d Cir.1995). Similarly, the failure to investigate a grievance does not raise a constitutional issue. *Brown v. Department of Correction,* No. Civ.A. 05-343-SLR, 2005 WL 344065, at \*3 (D.Del. Dec. 15, 2005) (citing *Hurley v. Blevins,* No. Civ.A. 6:04CV368, 2005 WL 997317 (E.D.Tex. March 28, 2005)).

Lewis cannot maintain a constitutional claim based solely upon his perception that his grievances were not properly processed or investigated. The claims are frivolous and therefore are dismissed.

### J. Failure to Protect

Lewis alleges that Warden Williams failed to classify inmates in a manner that would not present an immediate danger to his safety. (D.I.8, para.34.) Lewis also alleges that Warden Williams failed to install gates to protect him from physical attacks from inmates who have a different classification status. (D.I.8, paras.35, 36.) Finally, he alleges that Warden Williams does not use video cameras during cell extractions, and this policy has subjected Lewis to numerous physical attacks by correction officers. (D.I.8, para.38.)

Prison officials have a duty to take reasonable measures to protect prisoners from attacks by other inmates. *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In order to state a claim against a prison official for failure to protect, the plaintiff must establish (1) "that he is incarcerated under conditions posing a substantial risk of serious harm" and (2) that the prison official was "deliberately indifferent" to the inmate's health or safety. *Id.* at 834. The prison official cannot be found liable "unless the official knows of and disregards an excessive risk to inmate health or safety". *Id.* at 837. He must "both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

The complaint does not allege that Warden Williams was aware or should have been on notice that Lewis was substantially at risk from attack by other inmates. Therefore, Lewis has failed to state a claim against Warden Williams for failure to protect, and the claim is dismissed.

### K. Due Process

Lewis alleges that his placement in maximum security deprived him of the right to obtain work credits and/or work release status. The court construes this as an attempt to raise a due process claim under Fourteenth Amendment. "As long as the conditions or the degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 7
Not Reported in F.Supp.2d, 2006 WL 538546 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

inmate's treatment by prison authorities to judicial oversight." ' _Hewitt v. Helms,_ 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) (citing _Montanye v. Haymes,_ 427 U.S. 236, 242, 96 (1976)). Hence, transfer of a prisoner from one institution to another or from one classification to another is unprotected by "the Due Process Clause in and of itself," even though the change in status involves a significant modification in conditions of confinement. _Hewitt,_ 459 U.S. at 468; _Moody v. Daggett,_ 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); _also see Lott v. Arroyo,_ 785 F.Supp. 508, 509 (E.D.Pa.1991) (plaintiff transferred from group home to correctional facility had no constitutionally enforceable right to participate in a work release program); _Brown v. Cunningham,_ 730 F.Supp. 612 (D.Del.1990) (plaintiff's transfer from the general population to administrative segregation, without being given notice and the opportunity to challenge the transfer, was not a violation of plaintiff's liberty interest).

**\*8** Despite Lewis' allegations that confinement in maximum security involves a change in the condition of confinement, he has no constitutionally protected right to participate in work programs while housed in maximum security. Thus, Lewis fails to state a due process claim. The claim, therefore, is dismissed.

### L. Witnesses

Lewis alleges that Corporal Currington served him with a disciplinary report dated February 17, 2005, and approved by Farmer. (D.I.8, para.57.) Lewis alleges his right to due process was violated because his witnesses were transferred to another facility and he was not able to properly defend himself. The complaint does not state who allegedly violated Lewis' right to due process.

While prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment. _Wolff v. McDonnell,_ 418 U.S. 539, 556-57, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); _Young v. Kann,_ 926 F.2d 1396, 1399 (3d Cir.1991). The requirements of due process in prison disciplinary hearings are that an inmate is entitled to (1) written notice of the charges and not less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." _Wolff,_ 418 U.S. at 563-71.

As mentioned above, Lewis does not state who allegedly violated his constitutional rights. Accordingly, the claim is dismissed as frivolous.

### M. Eleventh Amendment

Throughout his complaint, Lewis alleges that HRYCI violated his constitutional rights. He also alleges that Internal Affairs failed to supervise and/or control DDOC correction officers after being notified on several occasions that Lewis' constitutional rights were being violated. (D.I.8, para.55.)

HRYCI is an agency of the State of Delaware. Internal Affairs, as a division of the Delaware Department of Correction, is also an agency of the State of Delaware. "Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." _Laskaris v. Thornburgh,_ 661 F.2d 23, 25 (3d Cir.1981) (citing _Alabama v. Pugh,_ 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978)). The State of Delaware has not waived its sovereign immunity under the Eleventh Amendment. _See Ospina v. Department of Correction,_ 749 F.Supp. 572, 579 (D.Del.1991). Hence, as an agency of the State of Delaware, the Department of Corrections is entitled to immunity under the Eleventh Amendment. _See e.g._ _Evans v. Ford,_ C.A. No. 03-868-KAJ, 2004 WL 2009362, \*4 (D.Del. Aug.25, 2004) (claim against DOC is dismissed on the basis of Eleventh Amendment immunity).

**\*9** Lewis' claims against HRYCI and Internal Affairs have no arguable bases in law or in fact inasmuch as they are immune from suit. Therefore, the claims are frivolous and are dismissed pursuant to 28 U.S.C. § 1915A(b).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 538546 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

### IV. CONCLUSION

For the above stated reasons, the court finds that certain claims raised by Lewis are factually and legally frivolous making their dismissal appropriate while other claims raised by Lewis are cognizable. An appropriate order will be entered.

### ORDER

At Wilmington this 6th day of March, 2006, for the reasons set forth in the Memorandum issued this date,

1. The plaintiff's motion to amend the complaint (D.I.18) is GRANTED.

2. The following claims are DISMISSED without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1):

a. The plaintiff's claims against defendants Betty Burris, Evelyn Steven, Collen Bell, unnamed Pod Officers, First Correctional Medical Staff, Michael Knight, Internal Affairs, Internal Affairs Supervisor, Nurse Kimberly Johnson, Sgt. Marg Moody, Cpt. Lise M. Merson, HYRCI, and Internal Affairs;

b. The plaintiff's claims against Warden Williams regarding the intercom system, transferring without a court order; pork products, juice containing saccharin, non-medical persons serving food, inadequate inmate handbook, access to the commissary, cell extraction procedure, food service handlers, grievance system, telephone rights, mail rights/system, outdoor recreation, inmate classification, installation of gates, and video cameras use during cell extractions;

c. The plaintiff's claim for denial of access to the courts against defendants Talenti, Emig and Napolin;

d. The plaintiff's claims against Commissioner Taylor and Warden Williams regarding religious services and counseling, visits, telephone calls, literature, outdoor recreation, haircuts, law library access, clean uniforms, warm clothing, proper grievance procedure, hygiene products, cleaning supplies, and meals service;
e. The plaintiff's conspiracy claims;
f. The plaintiff's claims of verbal abuse, verbal harassment, slander, and libel;
g. The plaintiff's claim for damages as a result of his conviction and sentence;
h. The plaintiff's privacy claim;
i. The plaintiff's claims that his grievances were not properly processed;
j. The plaintiff's claim regarding the right to obtain work credits and participate in the work release program; and
k. The plaintiff's due process claim as to the February 17, 2005, disciplinary report.

3. The court has identified several cognizable claims which Lewis may pursue. Lewis may proceed with the following claims:

a. Eighth Amendment conditions of confinement claims against defendants Dr. Joshi, Talenti, Newman, Blue, Warden Williams, Commissioner Taylor, Dr. Boston, Sutton, Fish, Lyonns, Way, Gassner, Hardgrave, Davis, Rodriguez, Cumberback, and Emig;

b. Eighth Amendment medical claims against defendants FMC, Talenti, D. Young, Bordley, Carlock, Armstrong, Sheets, Parker, Richards, Way, Mitchell, Medford, Farmer, Kennedy, Singh, Commissioner Taylor, Warden Williams, Dr. Boston, D. Williams, Lyonns, Sabato Emig, Berggrum, Bamford, Hernandez, Nurse Inna, Nurse Jeromy, Fish, Sutton, Wayman, Dr. Arumburo, Dr. Ali, Dr. Rogers, and Carroll;

**\*10** c. First Amendment access to courts claim against defendants Fish, Commissioner Taylor, Warden Williams, Sutton, First Correctional Medical and Dr. Boston, and the taking of legal property claim against defendants

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 9
Not Reported in F.Supp.2d, 2006 WL 538546 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Commissioner Taylor and Warden Williams;

d. Eighth Amendment excessive force and failure to protect claims against defendants A. Davis, Goins, Presley, C. Johnson, Apa, Harriford, Chapel, Kennedy, Lewis, Talenti, Reynolds, Chudzik and Soul; and

e. Fourteenth Amendment due process claims against defendants Napolin, Muskarelli, Dr. Joshi, Dr. Boston, Commissioner Taylor, Warden Williams, Sheets, Sabato, Parker, Farmer, Mitchell, Polk, Canon, V. Williams, Ince, Chaffer, Way, Cumberback, Reynolds and Mase.

IT IS FURTHER ORDERED that:
1. The Clerk of the Court shall cause a copy of this order to be mailed to the plaintiff.

2. Pursuant to Fed.R.Civ.P. 4(c)(2) and (d)(2), the plaintiff shall complete and return to the Clerk of the Court an original "U.S. Marshal-285" form for each defendant listed in 3.a. through 3.e. above, as well as for the Attorney General of the State of Delaware, 820 N. FRENCH STREET, WILMINGTON, DELAWARE, 19801, pursuant to Del.Code Ann. tit. 10 § 3103(C). Additionally, the plaintiff shall provide the court with one copy of the complaint (D.I.2), the amended complaint (D.I.8) and the second amended complaint (D.I.18) for service upon each defendant listed in 3.a. through 3.e. above. The plaintiff is notified that the United States Marshal will not serve the complaint, the amended complaint and the second amended complaint until all "U.S. Marshal 285" forms have been received by the Clerk of the Court. Failure to provide the "U.S. Marshal 285" forms for the defendant(s) and the attorney general within 120 days from the date of this order may result in the complaint being dismissed or defendant(s) being dismissed pursuant to Federal Rule of Civil Procedure 4(m).

3. Upon receipt of the form(s) required by paragraph 2 above, the United States Marshal shall forthwith serve a copy of the complaint, amended complaint and second amended complaint this order, a "Notice of Lawsuit" form, the filing fee order(s), and a "Return of Waiver" form upon the defendant(s) identified in the 285 forms.

4. Within thirty (30) days from the date that the "Notice of Lawsuit" and "Return of Waiver" forms are sent, if an executed "Waiver of Service of Summons" form has not been received from a defendant, the United States Marshal shall personally serve said defendant(s) pursuant to Fed.R.Civ.P. 4(c)(2) and said defendant(s) shall be required to bear the cost related to such service, unless good cause is shown for failure to sign and return the waiver.

5. Pursuant to Fed.R.Civ.P. 4(d)(3), a defendant who, before being served with process timely returns a waiver as requested, is required to answer or otherwise respond to the complaint within sixty (60) days from the date upon which the complaint, this order, the "Notice of Lawsuit" form, and the "Return of Waiver" form are sent. If a defendant responds by way of a motion, said motion shall be accompanied by a brief or a memorandum of points and authorities and any supporting affidavits.

*11 6. No communication, including pleadings, briefs, statement of position, etc., will be considered by the court in this civil action unless the documents reflect proof of service upon the parties or their counsel.

7. NOTE: * * * When an amended complaint is filed prior to service, the court will VACATE all previous Service Orders entered, and service will not take place. An amended complaint filed prior to service shall be subject to re-screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(a). * * *

8. NOTE: * * * Discovery motions and motions for appointment of counsel filed prior to service will be dismissed without prejudice, with leave to refile following service. * * *

D.Del.,2006.
Lewis v. Williams
Not Reported in F.Supp.2d, 2006 WL 538546 (D.Del.)

Briefs and Other Related Documents (Back to top)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 538546 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 10

- 1:05cv00051 (Docket) (Jan. 11, 2005)
- 1:05cv00052 (Docket) (Jan. 11, 2005)
- 1:05cv00013 (Docket) (Jan. 11, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2006 WL 1530223 (D.Del.)
(Cite as: Slip Copy)

Page 1

Briefs and Other Related Documents

Nichols v. Bennett Detective & Protective Agency, Inc.D.Del.,2006.Only the Westlaw citation is currently available.

United States District Court,D. Delaware.

Robin D. NICHOLS, Plaintiff,

v.

BENNETT DETECTIVE & PROTECTIVE AGENCY, INC., a Delaware corporation, and Allen's Family Foods, Inc., a Delaware corporation, Defendants.

**No. Civ.A. 05-55-KAJ.**

May 31, 2006.

William D. Fletcher, Jr., Noel E. Primos, Schmittinger and Rodriguez, P.A., Dover, Delaware, for Plaintiff.
Roger D. Landon, Philip T. Edwards, Murphy Spadaro & Landon, Wilmington, Delaware, for Defendant Bennett Detective & Protective Agency, Inc.
Matthew F. Boyer, Connolly Bove Lodge & Hutz, Wilmington, Delaware, for Defendant Allen's Family Foods, Inc.
Arthur M. Brewer, Laura A. Pierson Scheinberg, Shawe & Rosenthal, LLP, Baltimore, Maryland, of counsel.

MEMORANDUM OPINION

JORDAN, J.

I. INTRODUCTION

*1 Before me are two Motions for Summary Judgment, one filed by defendant Bennett Detective & Protective Agency, Inc. ("Bennett") (Docket Item ["D.I."] 43), and the other filed by defendant Allen's Family Foods, Inc. ("Allen") (D.I.45).[FN1] The complaint, filed by plaintiff Robin D. Nichols, alleges that Bennett discriminated against her on the basis of her race and sex, in violation of the Delaware Discrimination Act ("DDA"), 19 Del. C. § 710, et seq. (D.I. 1, Ex. A at ¶¶ 24-25), and that both Defendants discriminated against her on the basis of her race, in violation of 42 U.S.C. § 1981 (id. at ¶¶ 27-28). Nichols also alleges that Allen tortiously interfered with her contract with Bennett (id. at ¶¶ 30-31), and that an agent of Allen, Raymond Miller, made false statements about her that constitute slander per se (id. at ¶¶ 33-38).

> FN1. Bennett and Allen will be referred to collectively herein as "Defendants."

Nichols initially filed her complaint in the Delaware Superior Court, but the case was removed to this court pursuant to 28 U.S.C. § 1441.[FN2] Jurisdiction over the § 1981 claim is appropriate under 28 U.S.C. § 1331. Supplemental jurisdiction over all other claims is proper under 28 U.S.C. § 1367. For the reasons that follow, the Motions for Summary Judgment will be granted.

> FN2. The Notice of Removal was filed only by Bennett, a failing because all defendants must join a petition for removal. Hanrick v.. Hanrick, 153 U.S. 192, 196 (1894) ("the suit could not be removed by one of several plaintiffs or defendants"). However, "a motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the motion of removal." 28 U.S.C. § 1447(c); see also Roe v. O'Donohue, 38 F.3d 298, 301-02 (7th Cir.1994), overruled on other grounds by Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999) (finding that where only one defendant filed a notice of removal, removal was improper, but where plaintiff did not move to remand within 30 days, remand was improper). Thus, jurisdiction can properly be exercised in this case.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## II. BACKGROUND [FN3]

> FN3. The following rendition of background information does not constitute findings of fact and is cast in the light most favorable to the non-moving party.

Bennett is a security business that contracts with various companies, including Allen, to provide security guards and related services. (Deposition of Wayne Keller,[FN4] D.I. 47, Ex. 7 at 7:11-17.) Bennett's contract with Allen provides that Bennett will supply security officers at Allen's plants in Harbeson, Delaware, and Cordova, Maryland. (D.I. 47, Ex. 2 at A003.) The contract further provides that "[i]t is mutually understood that Bennett is an independent contractor and that all guards employed by Bennett to perform the services as herein provided are and shall be employees of Bennett and not employees of [Allen]." (*Id.* at A004.)

> FN4. Wayne Keller is the Vice-President at Bennett. (Keller Deposition, D.I. 47, Ex. 7 at 4:14.)

Nichols, an African-American female, worked as a Bennett security guard at Allen's Harbeson plant from July 30, 2001 until December 13, 2003. (Keller Deposition, D.I. 47, Ex. 7 at 29:4-12.) On beginning her employment with Bennett, Nichols signed a document entitled "Condition of Employment," which provided that "Bennett Security has the right to move any security officer to another job site at any time." (D.I. 47, Ex. 1 at A001.) On December 11, 2003, Nichols, who served as a supervisor of other guards, had an altercation with Joseph Joshua Whiteman, one of her subordinates. (Nichols Deposition, D.I. 47, Ex. 4 at 39:21-40:9.) Nichols had received a call from Raymond Miller [FN5] asking her to send Whiteman to see him. (*Id.* at 39:24-40:2.) According to Nichols, when she told Whiteman to go see Miller, Whiteman argued with her and then pushed her. (*Id.* at 40:3-22.) Nichols pushed him back, and the two continued to push each other back and forth until Whiteman pushed Nichols into a file cabinet and CB radio. (*Id.* at 40:22-41:3.)

> FN5. Raymond Miller is the manager of human resources for Allen's Harbeson, Delaware plant. (Miller Deposition, D.I. 47, Ex. 5 at 4:16-20.)

**\*2** Eventually, Whiteman went to speak with Miller, at which point Nichols called the police to report her altercation with Whiteman. (*Id.* at 41:7-9.) Although Nichols informed her superiors at Bennett, Mark Habicht [FN6] and Wayne Keller, that she had called the police, she did not inform Miller. (*Id.* at 47:19-21.) When the police arrived, Nichols knocked at Miller's office door to inform Whiteman that the police were there and wanted to speak to him.[FN7] (*Id.* at 41:9-19.) The police took a statement from Whiteman. (*Id.* at 41:19-22.) Whiteman later apologized to Nichols, and no charges were filed. (*Id.* at 42:7-17.)

> FN6. Mark Habicht is the Vice-President of Operations at Bennett. (D .I. 47, Ex. 6 at 5:22-24.)

> FN7. Miller asserts that he was alone in his office when he was informed that the State Police were on the premises. (Miller Deposition, D.I. 47, Ex. 5 at 10:16-19.) Miller testified that when he heard about the incident, he went to the security post and spoke to both Nichols and a state trooper about the incident. (*Id.* at 11:10-12:13.) The discrepancy between Miller's and Nichols's recollection in that regard is not material to the outcome of the motions for summary judgment.

Later that same day, Miller called Habicht to discuss the incident. Habicht recalled that Miller stated,
I called out to the guardhouse a couple of times and [Nichols] answered the phone and there was yelling in the background and then she slammed the phone down. And I called back and she did the same thing ... I can't have that out there ... Enough is enough, she's got to go.

(Habicht Deposition, D.I. 47, Ex. 6 at 20:8-15.) The next day, Habicht and Keller went to meet with Miller. (*Id.* at 22:6-18.) Miller "reiterated the fact that [Nichols] had to go, that he couldn't have that kind of activity going on in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1530223 (D.Del.)
**(Cite as: Slip Copy)**

his plant, it was too disruptive." (*Id.* at 23:15-19.) [FN8] Miller had previously requested the transfer of two other Bennett security guards, David Leggins, a black male, and Daniel Steele, a white male. (Habicht Deposition, D.I. 44, Ex. A at 41:3-42:24.)

> FN8. There is a dispute between Allen and Bennett as to who initially suggested that Nichols be transferred. Keller confirms Habicht's testimony, stating that it was Miller who initially suggested that Nichols be transferred. (Keller Deposition, D.I. 47, Ex. 7 at 16:23-17:2.) Miller, however, testified that Keller and Habicht suggested the transfer, and that he simply agreed. (Miller Deposition, D.I. 49, Appendix at B38-39, 39:10-12, 39:24-40:9.) Miller claims that he was upset that the police were called because it "created kind of a disruptive environment. And when you hear about these things out of the blue, you don't know if some act of violence may have taken place or exactly what, if somebody got hurt on the job. You just don't know. And so that was my concern." (Miller Deposition, D.I. 47, Ex. 5 at 15:4-10.) The source of the suggestion that Nichols be transferred, however, is not material, as it has no bearing on the outcome of the motions for summary judgment. *See infra* note 11 and accompanying text.

Miller, Habicht, and Keller agreed that, to avoid further disruption, Nichols could finish her work week, but that she would not return to the plant the following week. (Keller Deposition, D.I. 47 at 22:4-8.) On December 15, Nichols received a message from Bennett telling her not to return to work at Allen the next day. (Nichols deposition, D.I. 47, Ex. 4 at 42:18-23.) Bennett replaced Nichols at the Harbeson Plant with another African-American woman. (D.I. 44, Ex. A at 43-44.)

Bennett did not immediately have another job for her to go to. (D .I. 47, Ex. 4 at 101:24-102:1.) Within days, Bennett offered Nichols a thirty-two hour a week job working at another customer's site, and she was set to start training for that position around December 19, 2003. (Keller Deposition, D.I. 47, Ex. 7 at 32:21-24.) However, she called out sick the first day of training, and, because the customer needed someone to start immediately, Bennett put another officer in that position. (*Id.* at 33:19-34:4.) On December 23 and 24, Nichols filled in for another officer at yet another location, and she worked there again on December 29. (*Id.* at 35:3-22.) When the security guard for whom she was filling in returned to work on December 29, however, Bennett was once more without a position for Nichols. (Nichols Deposition, D.I. 47, Ex. 4 at 106:19-107:1.) On January 5, 2004, Nichols called Bennett and informed them that she was going to resign in two weeks. (*Id.* at 107:15-18.) Nichols last day of employment at Bennett was January 19, 2004. (*Id.* at 29:2-15.)

**\*3** While Nichols says that she cannot "say for a fact" that Whiteman told his version of the incident to Allen employees (*id.* at 54:24-55:4), she nevertheless alleges that someone at Allen questioned Whiteman about the December 11 incident but that no one ever allowed her to tell her side of the story. (*Id.* at 53:24-54:2.) Miller claims, however, that he spoke only to Nichols about the incident, and that he never spoke to Whiteman about it. (Miller Deposition, D.I. 47, Ex. 5 at 11:22-12:24.)

Nichols also alleges that, at some point in the days after the incident, she had a conversation with Valerie Brittingham, an Allen employee who worked for Miller. According to Nichols, their conversation was as follows: [Brittingham said] What in the world happened? ... [Whiteman] talk[ed] to Mr. Miller, and Mr. Miller is down there telling everybody that everything was your [Nichols's] fault, and like, you know, I wasn't capable of doing my job. And I was: Well, why in the world would Mr. Miller say something like that about me? And she was like: Well, you know, he's a racist.

(*Id.* at 58:1-12.) [FN9]

> FN9. Brittingham recalls things differently. She testified at her deposition that she never talked to Nichols about the incident, and that she never told Nichols that Miller was a racist. (Brittingham Deposition, D.I. 47, Ex. 8 at 10:24-11:13.)

On January 19, 2004, Nichols began training to become a certified nursing assistant ("CNA"). (Nichols Deposition, D.I. 47, Ex. 4 at 108:15-18.) During the period of her training, Nichols was paid seven dollars an hour, and when her

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

training was completed, she was paid about nine dollars and thirty-five cents an hour (*id.* at 109:4-19), which was more than the seven dollars an hour she made at Bennett (*id.* at 122:8-16). Nichols worked as a CNA until May 2004. (*Id.* At 20-24.) Nichols subsequently worked as a school bus driver from September 2004 until April 2005, and as a security guard for Allied Security for about two weeks in April 2005. (*Id.* at 110:1-113:14.) She has been unemployed since leaving the job at Allied Security. (*Id.* at 113:15-17.)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Celotex v. Catrett,* 477 U.S. 317, 323 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

## IV. DISCUSSION

A. Discrimination in Violation of 42 U.S.C. § 1981 and the Delaware Discrimination Act

**\*4** Nichols has alleged that both Bennett and Allen discriminated against her based on her race, in violation of § 1981, and that Bennett also discriminated against her based on her race and sex, in violation of the DDA. [FN10] Claims under 42 U.S.C. § 1981 and claims under the DDA, 19 *Del. C.* § 710 et seq., both must be evaluated according to the burden-shifting analysis set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Jones v. Sch. Dist. of Philadelphia,* 198 F.3d 403, 410 (3d Cir.1999) ("disparate treatment race discrimination claims under Title VII[and] section 1981 ... require application of the familiar burden-shifting framework the Supreme Court articulated in *McDonnell Douglas Corp. v. Green*" ); *Giles v. Family Court of Delaware,* 411 A.2d 599, 602 (Del.1980) (applying *McDonnell Douglas* burden-shifting to claim under the DDA). That analysis proceeds in three steps. First, the plaintiff "must carry the initial burden ... of establishing a prima facie case of ... discrimination." *McDonnell Douglas,* 411 U.S. at 802. "The burden then must shift to the [defendant] to articulate some legitimate, nondiscriminatory reason for the [plaintiff]'s rejection ." *Id.* The burden then shifts again to the plaintiff "to show that [the defendant's] stated reason for respondent's rejection was in fact pretext." *Id.* at 804.

> FN10. In her Answering Brief to Allen's Motion for Summary Judgment, Nichols asserts, apparently for the first time, a claim against Allen for discrimination under the DDA. (D.I. 49 at 13-14.) However, Nichols cannot assert a claim against Allen under the DDA for a number of reasons. First, she did not assert such a claim in her complaint. (D.I. 1 at ¶¶ 23-25 ("Defendant Bennett discriminated against Plaintiff with regard to the terms and conditions of her employment on the basis of her race and sex in violation of 19 *Del. C.* § 710 et seq.").) Second, Allen asserts, and Nichols has presented no evidence to the contrary, that Nichols never filed a claim of discrimination with the Delaware Department of Labor, a necessary prerequisite to filing a complaint under the DDA. 19 *Del.Code* § 712(b). Finally, even had she filed a claim of discrimination, Nichols cannot make a claim under § 711(a) of the DDA against Allen, because such claims are cognizable only against an "employer." *See* 19 *Del.Code* § 711(a). Although Nichols argues that Allen was her "joint employer" because Allen exercised control over aspects of her employment and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                Page 5
Slip Copy, 2006 WL 1530223 (D.Del.)
**(Cite as: Slip Copy)**

because she interacted on a daily basis with Miller, her argument is contradicted by Allen's contract with Bennett, which provided that "[i]t is mutually understood that Bennett is an independent contractor and that all guards employed by Bennett to perform the services as herein provided are and shall be employees of Bennett and not employees of [Allen]." (D.I. 47, Ex. 2 at A004.) Accordingly, Nichols has not and cannot state a claim of discrimination against Allen under the DDA, 19 Del. C. § 711(a).

1. § 1981 Claims

42 U.S.C. § 1981 provides that:
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

To establish a prima facie case of racial discrimination under 42 U.S.C. § 1981, Nichols must show "(1) that [she] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts[.]" Brown v. Philip Morris Inc., 250 F.3d 789, 797 (3d Cir.2001); see also Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 569 (3d Cir.2002). The United States Court of Appeals for the Third Circuit has also stated that "the elements of employment discrimination under Title VII are identical to the elements of a section 1981 claim." Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir.1999). Those elements are (1) that the plaintiff is a member of a protected class; (2) that she is qualified for the position; (3) that she suffered an adverse employment action; (4) under circumstances that give rise to an inference of unlawful discrimination. Jones, 198 F.3d at 410-11. It appears that the Third Circuit applies the first standard where there is a claim under § 1981, but not an accompanying claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. See Brown, 250 F.3d at 797; Pryor, 288 F.3d at 569. However, it appears that Court applies the second standard when there is an accompanying Title VII claim. Jones, 198 F.3d at 411-12; Schurr, 196 F.3d at 499. Because Nichols has not made a claim under Title VII here, I will use the standard set out in Brown and Pryor.

*5 A claim under § 1981 requires proof of purposeful or intentional discrimination. General Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982) ("We conclude, therefore, that § 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination."). Additionally, proof of "discrimination concerning one or more of the activities enumerated in the statute" is required to establish a claim under § 1981. Brown v. Philip Morris Inc., 250 F.3d 789, 797 (3d Cir.2001). The statute defines the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

a. Allen

Nichols appears to base her allegation that Allen discriminated against her under § 1981 on her assertion that Miller requested she be transferred. FN11 Nichols cannot show, however, that Allen discriminated against her under § 1981, as Nichols has not shown that Allen's actions interfered with any contract she may have had with Bennett. Nichols's "Condition of Employment" agreement with Bennett provided that Bennett "has the right to move any security officer to another job site at any time." (D.I. 47, Ex. 1 at A001.) Assuming that Miller requested that she be moved, that did not interfere with the performance, modification, or termination of her employment relationship with Bennett. Even if one were to characterize that relationship as being governed by a contract, it specifically provided for her transfer. (D.I. 47, Ex. 1 at A001 ("Bennett Security has the right to move any security officer to another job site at any time.").) In other words, Miller's request that she be transferred could not constitute an interference with her enjoyment of the benefits, privileges, terms or conditions of her contractual relationship since she had no right to remain at Allen. Hence, Nichols fails to establish the third prong of the three-part test for the establishment of a prima facie case.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

>    FN11. Nichols asserts that the disagreement over whether Miller requested that she be transferred, or
>    whether Keller and Habicht suggested it, creates a genuine issue of material fact that precludes summary
>    judgment. However, as I hope will be clear from the analysis here, determining who suggested that Nichols
>    be transferred is not relevant to the outcome of this motion, and thus, there is no genuine issue of material
>    fact.

Even if Nichols could establish a prima facie case, however, summary judgment for Allen would still be appropriate.
Had Nichols established a prima facie case of discrimination, the burden would shift to Allen to establish a
legitimate, non-discriminatory reason for requesting her transfer. *See McDonnell Douglas Corp., 411 U.S. at 802.*
Allen asserts that Miller requested Nichols's transfer not because of her race, but "because of the disruptive
environment Ms. Nichols's call to the police caused and her failure to notify [Miller] of the call." (D.I. 46 at 14.)
Miller's statements to Keller and Habicht that "[Nichols] had to go, that he couldn't have that kind of activity going
on in his plant, it was too disruptive" support Allen's assertion that Miller requested Nichols's transfer because she
was disruptive. (Habicht Deposition, D.I. 47, Ex. 6 at 23:15-19.) Nichols bears the burden of showing that this
explanation is merely a pretext for discrimination. *See McDonnell Douglas Corp., 411 U.S. at 804.*

*6 However, Nichols has come forward with no evidence to meet that burden. In support of her claims, Nichols
relies heavily on her own testimony that Brittingham told her that Miller is a racist who "[told] everybody that
everything was [Nichols's] fault, and ... [that she] wasn't capable of doing [her] job." (Nichols Deposition, D.I. 47,
Ex. 4 at 58:1-12.) Assuming that Nichols version of that conversation were true,[FN12] Nichols's testimony about what
Brittingham told her is hearsay and cannot be considered on a motion for summary judgment. *Philbin v. Trans
Union Corp., 101 F.3d 957, 961 (3d Cir.1996)* ("the hearsay statement ... is not capable of being admissible at trial,
and could not be considered on a motion for summary judgment") (internal citations and quotation marks omitted).
Thus, even viewing the facts in the light most favorable to Nichols, I may not consider that hearsay testimony.

>    FN12. Again, Nichols's testimony in that regard is flatly contradicted by Brittingham's own testimony.
>    (*Supra* note 9.)

The only admissible evidence in the record that can be stretched to connect Nichols's transfer, or Miller's other
actions, to her race is the fact that Whiteman, who is a white man, was not transferred while Nichols, an African-
American woman, was. Previously, however, Bennett, at Miller's request, transferred Daniel Steele, a white man,
and David Leggins, a black man from Allen. Thus, the sole fact that Nichols was transferred while Whiteman was
not is insufficient to rebut Allen's proffered reason for requesting Nichols transfer. *Simpson v. Kay Jewelers, Div. of
Sterling, Inc., 142 F.3d 639, 646 (3d Cir.1998)* ("a black plaintiff cannot establish racial discrimination by singling
out one white person who was treated more favorably when there were other white persons who were treated less
favorably than other black persons"). Therefore, Allen's Motion for Summary Judgment on Nichols's claim of
discrimination under 42 U.S.C. § 1981 would be granted, even if Nichols had provided a prima facie case of
discrimination.

#### b. Bennett

Again, viewing the facts in the light most favorable to Nichols, it still appears that Bennett did nothing more than
transfer Nichols to placate an angry client. The transfer, however, raises more complicated issues with respect to
Bennett than it does with respect to Allen. Allen said it wanted her off its site. It said nothing about, and had no
input into, what happened to her next. Bennett did have that control, and though it had the right to transfer Nichols,
and worked to find her a new position, it did not find her one right away, and the two positions it offered her were
part-time positions. Thus, Nichols's transfer, while not an interference with any contractual right Nichols had, could
be seen as an adverse employment action. *See infra* section IV.A.2.

Nevertheless, Nichols cannot show that her transfer was evidence of an intent to discriminate on the basis of race on
the part of Bennett. In fact, in her deposition, Nichols stated that she did not believe that Keller or Habicht intended
to discriminate against her on the basis of her race. (D.I. 47, Ex. 4 at 116:5-14.)[FN13] Again, the only connection
between Nichols race and her transfer is that she was transferred while Whiteman was not. However, Bennett had, in

the past, transferred at least two other employees at Miller's request, a white man and a black man. Moreover, Bennett replaced Nichols with another African-American woman. (D.I. 44, Ex. A at 43-44.) Thus, Nichols has not shown that Bennett intended to discriminate against her on the basis of her race. *Lin v. Rohm and Haas Co., 293 F.Supp.2d 505, 518 (E.D.Pa.2003)* (finding insufficient evidence of intent to discriminate where the defendant identified employees outside of the protected class that were treated similarly to plaintiff). Consequently, Nichols has failed to make out a prima facie case of discrimination against Bennett, and Bennett's Motion for Summary Judgment will be granted as to Nichols's claims under § 1981.

> FN13. Nichols testified as follows:
> Q: Do you believe that Bennett's actions in this matter against you were actions based on their intent to discriminate [against] you on the basis of your race?
> A: Do you mean Mark [Habicht] and Wayne [Keller] or by-
> Q: I mean Bennett, the company.
> A: The company?
> Q: Yes.
> A: Other than Josh [Whiteman] at the time-I don't think Mark [Habicht] and Wayne [Keller]; but Josh [Whiteman] my coworker that I had the incident from or with. (D.I. 47, Ex. 4 at 116:5-14.)

**\*7** Even if Nichols had made out a prima facie case of discrimination, however, Nichols cannot show that Bennett's stated reason for transferring her was a pretext for discrimination. Bennett asserts that Nichols, by calling the police to the plant after her altercation with Whiteman, caused a disruption that caused a potential breakdown in Bennett's client relationship with Allen. (D.I. 44 at 17.) Therefore, in order to maintain that relationship, it was necessary to transfer Nichols. (*Id.*) Nichols has come forward with no evidence to show that that explanation was a pretext for discrimination. Again, the only evidence that connects her transfer to her race is that Whiteman was not transferred, while Nichols was, and again, that fact alone is not sufficient to rebut Bennett's non-discriminatory reason for transferring Nichols. *See Simpson, 142 F.3d 639, 646.* Therefore, summary judgment will be granted to Bennett on Nichols's claim under § 1981.

### 2. DDA Claim Against Bennett

To establish a prima facie case of discrimination under the DDA, a plaintiff must establish the same elements as are required for a claim under Title VII. *Giles, 411 A.2d at 601-02* ("While the *McDonnell Douglas* test was developed in the context of Title VII cases, in our view it is appropriate for a § 711(a) action [under the DDA] as well, because the language of the Delaware statute is substantially the same as the Title VII language defining an unlawful employment practice."). Those elements are (1) that the plaintiff is a member of a protected class; (2) that she is qualified for the position; (3) that she suffered an adverse employment action; (4) under circumstances that give rise to an inference of unlawful discrimination. *Jones, 198 F.3d at 410-11.* The precise elements to be proven, however, will vary with the facts of the case. *McDonnell Douglas, 411 U.S. at 802 n. 13 (1973)* ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.")

Nichols alleges that Bennett discriminated against her on the basis of her race and sex in violation of the DDA. (D.I. 1 at ¶¶ 24-25.) At least for the purposes of this motion, Bennett does not dispute that Nichols is a member of a protected class, and that she was qualified for her position. (D.I. 44 at 16-21.) However, Bennett asserts that Nichols cannot establish a prima facie case of discrimination under the DDA, 19 *Del. C.* § 711(a), because she did not suffer an adverse employment action, and because there can be no inference of discrimination because her position was filled by an African American woman. (D.I. 44 at 10-15.) Additionally, Bennett asserts that even if Nichols can establish a prima facie case of discrimination, her claims must fail because she cannot show that Bennett's legitimate, non-discriminatory reason for transferring her was pretextual. (*Id.* at 16-21.)

**\*8** An "adverse employment action is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir.2001).* A job transfer can be considered an adverse employment action. *Torre v. Casio, Inc., 42 F.3d 825, 831 n.*

Slip Copy                                                                                          Page 8
Slip Copy, 2006 WL 1530223 (D.Del.)
**(Cite as: Slip Copy)**

7 (3d Cir.1994) ("It is clear, however, that a transfer, even without loss of pay or benefits, may, in some circumstances, constitute an adverse job action"). As already noted, *supra* at section IV.A.1.b., Nichols's transfer could be viewed as an adverse employment action. [FN14] When Bennett transferred Nichols, it did not immediately have another position for her. (Nichols deposition, D.I. 47, Ex. 4 at 101:24-102:1.) Further, both of the positions it offered her were part-time positions (Keller Deposition, D.I. 47, Ex. 7 at 32:21-35:22), while her position at Allen was full-time. Thus, for the purposes of this motion, Nichols has provided sufficient evidence to raise a material issue of fact as to whether she suffered an adverse employment action.

> FN14. I emphasize that, at this stage, I am required to view these circumstances in the light most favorable to Nichols.

But Bennett also contends that the circumstances of Nichols's transfer cannot give rise to an inference of discrimination. (D.I. 44 at 15.) Nichols was transferred from Allen after an altercation with Whiteman, which, viewing the facts in the light most favorable to her, was caused by Whiteman. (Nichols Deposition, D.I. 47, Ex. 4 at 40:3-41:3.) Whiteman was not disciplined after this incident, while Nichols, a black female, was transferred and reassigned only to part-time positions. (Habicht Deposition, D.I. 47, Ex. 6 at 29:2-5.) While these circumstances may not be sufficient to show that a business explanation was merely a pretext for discrimination, they may be sufficient at the prima facie stage of the analysis to allow a reasonable jury to infer that unlawful discrimination took place. *See Simpson,* 142 F.3d at 646 (finding that an "inference of discrimination anytime a single member of a non-protected group was allegedly treated more favorably than one member of the protected group ... may be acceptable at the prima facie stage of the analysis").

However, even assuming that Nichols could make out a prima facie case, for the reasons enumerated *supra* in section IV.A.1.b., Nichols cannot show that Bennett's legitimate, non-discriminatory reason for transferring her was a pretext for discrimination. This is true as to discrimination on the basis of both her race and her sex, as Bennett replaced her with an African-American woman and had previously transferred a white male and a black male from Allen. Therefore, summary judgment will be granted to Bennett on Nichols's DDA claim. [FN15]

> FN15. It is noteworthy that Nichols actually resigned her position at Bennett. To establish that her transfer was actually a constructive discharge, Nichols
> must be able to show that [her] former employer deliberately made [her] working conditions intolerable, and thereby forced [her] to quit. Demotion can constitute a constructive discharge, especially where the demotion is essentially a career-ending action or a harbinger of dismissal. However, mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.
> *James v. Booz-Allen & Hamilton, Inc.,* 368 F.3d 371, 378 (4th Cir.2004) (internal citations and quotations omitted). Nichols argues only that the fact that no full-time position was made available to her after her transfer was "a sufficiently undesirable and abhorrent action to cause a reasonable person to feel compelled to terminate her employment." (D.I. 51 at 12.) In her briefing, Nichols has brought nothing to my attention to show that her transfer was "essentially a career-ending action or a harbinger of dismissal" or that the discrimination she experienced made her work situation intolerable.

### B. Tortious Interference with Contract

Allen has also moved for summary judgment on Nichols's claims that Allen tortiously interfered with Nichols's contract with Bennett. (D.I. 46 at 14-17.) A plaintiff alleging a claim for tortious interference with contract must prove: "(1) a valid contract; (2) about which the defendants have knowledge; (3) an intentional act by the defendants that is a significant factor in causing the breach of the contract; (4) done without justification; and (5) by which causes injury." *Gill v. Delaware Park, LLC,* 294 F.Supp.2d 638, 645 (D.Del.2003).

*9 Allen asserts that Nichols cannot make out any of the elements of a prima facie case of tortious interference with contract. Allen claims that Nichols did not have a contract with Bennett, that, even if she did, Miller did not know about it, that Miller committed no intentional act to interfere with any contract, that Miller was justified, and that

Slip Copy                                                                                      Page 9
Slip Copy, 2006 WL 1530223 (D.Del.)
**(Cite as: Slip Copy)**

Nichols was not injured. (D.I. 46 at 14-17.) Nichols claims that she did have a contract with Bennett, even though she was an employee at will, that Miller's actions in asking for her transfer were not justified, and that Miller's demand that she be transferred interfered with her otherwise healthy employment relationship with Bennett. (D.I. 49 at 14-17.) [FN16]

> FN16. Nichols also appears to assert that her tortious interference claim can be maintained because at-will employees are entitled to good faith and fair dealing in their employment relationships, and that the claim is sustainable under 42 U.S.C. § 1981. (*Id.* at 17-18.) However, Nichols has not pleaded a claim for breach of the covenant of good faith and fair dealing. Additionally, she cannot make out a claim for tortious interference with contract based on § 1981 alone; she must establish all of the elements of the tortious interference claim. Thus, neither of those arguments provide a reason to deny summary judgment. Furthermore, she cannot sustain her § 1981 claims against Allen or Bennett and, therefore, even if § 1981 provided a legal basis to make a tortious interference claim, that claim could not be made against Allen here.

The Delaware Supreme Court has not addressed the issue of whether an at-will employee can make a claim of tortious interference with contract. *Nelson v. Fleet Nat. Bank,* 949 F.Supp. 254, 261 (D.Del.1996). However, this court has previously predicted that "the Supreme Court of Delaware would hold an action for tortious interference with contract may be maintained in conjunction with an at-will employment contract." *Id.* Thus, Nichols's action is not subject to summary judgment simply because she is an at-will employee.

However, in *Nelson,* although the employees were employees at-will, they apparently had some sort of employment contract. *Id.* (noting that the plaintiff's manager presented her "with a less favorable employment contract than her previous one, and threatened to fire her if she did not sign it"). To make out a claim that Allen, through Miller, tortiously interfered with her employment contract with Bennett, Nichols must show both that she had some such contract with Bennett and that Allen was aware of that contract. *Gill v. Delaware Park, LLC,* 294 F.Supp.2d at 645. [FN17]

> FN17. Both Nichols and Keller testified that she had no such contract. (D.I. 47, Ex. 4 at 62:1-5; *id.,* Ex. 7 at 39:16-19.)

At that last point, at least, Nichols suffers a failure of proof. Even if Nichols could show that the "Condition of Employment" document she signed (D.I.47, Ex. 1) amounts to an employment contract, she has put forward no facts to show that Miller, or anyone else at Allen, was aware of the "Conditions of Employment." Moreover, Nichols has provided no evidence that Miller committed an intentional act that was a significant factor in causing a breach of her contract with Bennett. The "Conditions of Employment" document explicitly states that "Bennett Security has the right to move any security officer to another job site at any time." (*Id.* at A001 .) Thus, even if this document is considered an employment contract, Miller's request that Nichols be transferred did not cause a breach of that contract, since such a transfer was explicitly allowed by the contract.

Furthermore, Nichols has presented no evidence that she was injured by her transfer, as is required to make out a claim of tortious interference with contact. After being transferred, Nichols resigned from Bennett, and immediately started a new job making more money than she had made while working for Bennett. Nichols leaves it to speculation that she suffered a loss during the brief period between her transfer and resignation. For all of these reasons, summary judgment will be granted to Allen on Nichols's tortious interference with contract claim.

### C. Defamation

\*10 To establish a cause of action for defamation in Delaware, a plaintiff must show that defendant made a "false and defamatory statement of fact concerning the plaintiff ... in an unprivileged publication to a third party. But a statement is not defamatory unless it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Ramunno v. Cawley,* 705 A.2d 1029,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                Page 10
Slip Copy, 2006 WL 1530223 (D.Del.)
**(Cite as: Slip Copy)**

1035 (Del.1998) (internal quotation marks omitted). "[T]he general rule is that oral defamation is not actionable without special damages." *Spence v. Funk,* 396 A.2d 967, 970 (Del.1978). However, where the defamatory oral statement "(1) malign[s] one in a trade, business or profession, (2) impute[s] a crime, (3) impl[ies] that one has a loathsome disease, or (4) impute[s] unchastity to a woman," a cause of action for slander can be maintained without proof of special damages. *Id.*

Here, Nichols alleges that Miller told people that she could not do her job and blamed her for the incident with Whiteman, thus maligning her in her business or profession. (D.I. 49 at 18-19.) However, Nichols's only evidence of Miller's alleged statements is her own hearsay testimony about what Brittingham told her. (*Id.*) As was stated above, that hearsay is inadmissible and cannot be considered in support of her motion. *Philbin,* 101 F.3d at 961. Therefore, Nichols has no evidence to support her claim of slander, and summary judgment on this claim will be granted to Allen.

V. CONCLUSION

Accordingly, Bennett's Motion for Summary Judgment (D.I.43) and Allen's Motion for Summary Judgment (D.I.45) will be granted. An appropriate order will follow.

*ORDER*

For the reasons set forth in the Memorandum Opinion issued in this matter today,

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by defendant Bennett Detective & Protective Agency, Inc., (D.I.43), and the Motion for Summary Judgment filed by defendant Allen's Family Foods, Inc., (D.I.45), are GRANTED.

D.Del.,2006.
Nichols v. Bennett Detective & Protective Agency, Inc.
Slip Copy, 2006 WL 1530223 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 809171 (Trial Motion, Memorandum and Affidavit) Defendant Allen Family Foods, Inc.'s Reply to Plaintiff's Answering Brief in Opposition to Defendant's Motion for Summary Judgment (Feb. 16, 2006) Original Image of this Document (PDF)
• 2006 WL 809172 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Defendant Bennett Detective & Protective Agency, Inc.'s Motion for Summary Judgment (Feb. 16, 2006) Original Image of this Document (PDF)
• 2006 WL 809170 (Trial Motion, Memorandum and Affidavit) Plaintiff's Answering Brief in Opposition to Defendant Allen's Family Foods Inc.'s Motion for Summary Judgment (Feb. 9, 2006) Original Image of this Document (PDF)
• 1:05cv00055 (Docket) (Feb. 2, 2005)
• 2005 WL 3667059 (Trial Motion, Memorandum and Affidavit) Defendant's, Bennett Detective & Protective Agency, Inc., Responses to Plaintiff's First Request for Production (2005) Original Image of this Document (PDF)
• 2004 WL 3750970 (Trial Motion, Memorandum and Affidavit) Plaintiff's Answering Brief in Opposition to Defendant Bennett Detective & Protective Agency, Inc.'s Motion for Summary Judgment (Feb. 9, 2004) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.