# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

CHRISTINA R. PAOLI,　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　　　Plaintiff,　　　　:
　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　　: 　C. A. NO. 06-462 GMS
　　　　　　　　　　　　　　　　:
THE STATE OF DELAWARE and　　　: 　JURY TRIAL DEMANDED
DELAWARE TECHNICAL AND　　　　:
COMMUNITY COLLEGE,　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　　　Defendants.

**DEFENDANT DELAWARE TECHNICAL AND
COMMUNITY COLLEGE'S REPLY BRIEF IN SUPPORT
OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

**WHITE AND WILLIAMS LLP**
Marc S. Casarino (ID #3613)
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE  19899-0709
Phone: (302) 467-4520
Facsimile:  (302) 467-4550
Attorneys for Defendant,
*Delaware Technical and Community College*

Dated:  September 6, 2007

## <u>TABLE OF CONTENTS</u>

Table of Citations ....................................................................................................... ii

ARGUMENTS

    I. Preliminary Statement.......................................................................................... 1

    II. The Complaint is Barred by the Eleventh Amendment................................................ 2

    III.  The Complaint Fails to State a Claim upon which Relief can be Granted.................. 3

        A.  The Complaint Fails to State a Claim for Relief Under
            Sections 1981 and 1983 ...................................................................... 3

        B.  The Complaint Fails to State a Claim for Violation of the
            Equal Protection Clause....................................................................... 3

        C.  The Complaint Fails to State a Claim for Violations of
            Certain Whistleblower Protections ........................................................ 4

        D.  The Complaint's Claim of Retaliation for Making
            Whistleblower Allegations Fails as a Matter of Law ...................................... 4

        E.  The Complaint's Claim for Violation of Family Educational
            Rights and Privacy Act Fails as a Matter of Law............................................ 4

        F.  The Complaint's Defamation Claim Fails as a Matter of Law ........................ 5

        G.  The Complaint's Claim for Violation of the Americans
            with Disabilities Act Fails as a Matter of Law................................................ 5

        H.  Plaintiff was Afforded Adequate Due Process................................................ 6

Conclusion ................................................................................................................ 8

## <u>TABLE OF CITATIONS</u>

<u>CASES</u>                                                                                          <u>PAGE</u>

<u>Barna v. City of Perth Amboy</u>, 42 F.3d 809 (3d Cir. 1994) ....................................... 3

<u>Brown v. Philip Morris, Inc.</u>, 250 F.3d 789 (3d Cir. 2001).......................................... 3

<u>Edelman v. Jordan</u>, 415 U.S. 651 (1974)................................................................ 2

<u>Hurst v. City of Rehoboth Beach</u>, 2006 WL 416864 (D. Del. Feb. 21, 2006) ............................ 1

<u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410 (3d Cir. 1997) .................................... 1

<u>Miree v. DeKalb County, GA.</u>, 433 U.S. 25 (1977)........................................................ 1

<u>Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 113
    S. Ct. 684, 121 L. Ed. 2d 605 (1993)................................................................... 2

<u>West v. Atkins</u>, 487 U.S. 42 (1988) ..................................................................... 3

### **STATUTES**

Eleventh Amendment to U.S. Constitution ........................................................1, 2, 8

31 U.S.C. § 3730(h)................................................................................... 4

42 U.S.C. § 1981 ..................................................................................... 3

42 U.S.C. § 1983 ..................................................................................... 3

Family Education Rights and Privacy Act................................................................. 4

Americans with Disabilities Act ........................................................................ 5

## ARGUMENTS

### I.     Preliminary Statement

Plaintiff's Answering Brief to Delaware Technical and Community College's Motion for Judgment on the Pleadings ("**Answering Brief**") fails to refute that the Complaint is barred by the Eleventh Amendment immunity afforded Delaware Technical and Community College ("**Delaware Tech**").  The Answering Brief also fails to demonstrate that a *prima facie* claim for any relief is alleged in the Complaint.  Instead, the Answering Brief simply regurgitates and embellishes the allegations of the Complaint.

While the Court can accept well-pleaded allegations as true for the purposes of Delaware Tech's motion, it cannot accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  Hurst v. City of Rehoboth Beach, 2006 WL 416864 (D. Del. Feb. 21, 2006) (attached hereto as Exhibit "A") (citing, In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997); Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n. 2 (1977)).  Both the Complaint and Answering Brief constitute nothing more than unsupported conclusions, unwarranted inferences and sweeping legal conclusions to which the Court should pay no regard.[1] [2]  As such, the Answering Brief does not offer a basis why judgment on the Complaint should not be entered in favor of Delaware Tech.

---

[1] For example, with no factual support, the Answering Brief claims that Plaintiff was assaulted by members of Delaware Tech's softball team and that Delaware Tech softball coaches and/or administrators directed the assault. Moreover, Plaintiff misrepresents that Delaware Tech "fired" a softball coach and that its softball team was "disbanded." None of these allegations are accurate. Mindful of the Plaintiff's *pro se* status, at this time Delaware Tech seeks only that the Court ignore the Plaintiff's misrepresentations, which are entirely irrelevant to the instant motion. To the extent Plaintiff continues to put such baseless and defamatory statements in documents filed as a public record, Delaware Tech reserves the right to pursue all available remedies including, but not limited to, relief pursuant to Fed.R.Civ.P. 11.

[2] Plaintiff also makes reference to "sanctions" for disclosure of her several representations about having undisclosed legal counsel and reminder that Plaintiff is prohibited from entering any Delaware Tech campus. First, disclosure about Plaintiff's legal counsel were not made in the context of F.R.E. 408 and, therefore, are not confidential. Second, Plaintiff's May 8, 2006 email to Dean Goldstein and Brian Shirey, Esquire, attached as an exhibit to the Answering Brief, indicates at ¶ 3 that Plaintiff has a "representative." Delaware Tech understood Plaintiff to indicate her representative was legal counsel. Third, for various reasons, including safety concerns, Plaintiff

1

## II.     The Complaint is Barred by the Eleventh Amendment

The Answering Brief incorrectly asserts that because the Plaintiff seeks relief under certain federal statutes the Complaint should proceed in a federal court.  See Answering Brief at pp. 5-6.   This argument entirely misunderstands the immunity afforded by the Eleventh Amendment.  Plaintiff is a resident of the State of Delaware and concedes that Delaware Tech is an entity of the State of Delaware.  See Answering Brief at pp. 2 and 12.  Accordingly, the Complaint is barred by the Eleventh Amendment.   See e.g., Edelman v. Jordan, 415 U.S. 651, 662-663 (1974) ("While the [Eleventh] Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by its own citizens as well as by citizens of another State." (citations omitted)).

"Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court." Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (citations omitted).  There has been no waiver of Delaware Tech's Eleventh Amendment immunity.  The Answering Brief's suggestion that the Complaint can proceed against Delaware Tech because it asserts federal claims is plainly wrong. This lawsuit is precisely the type of action to which a State and its agencies are immune.

---

remains prohibited from entering a Delaware Tech campus or attending Delaware Tech events, such as off-campus softball games.  Plaintiff has represented to Delaware Tech's counsel on several occasions that she intended to disregard these prohibitions and go to campus with representatives from the news media who would publicize Plaintiff's anticipated confrontation with Delaware Tech security if it attempted to remove her from campus. Plaintiff admits having a private investigator follow members of the softball team both on and off campus and suggests that she intends to continue to do so.  Delaware Tech's counsel reminded Plaintiff that (i) she will be considered a trespasser if she makes good on her threat to enter a Delaware Tech campus and (ii) her threat to follow Delaware Tech personnel or students either in person or through a surrogate stalker, such as her private investigator, will be considered a threat to the safety of such persons.  Again, Delaware Tech considers these extraneous issues irrelevant to the instant motion, but wanted the Court to have a complete understanding of the context in which Plaintiff's allegations are made.

Accordingly, the Complaint must be dismissed as to Delaware Tech pursuant to the Eleventh Amendment.

### III.    The Complaint Fails to State a Claim Upon Which Relief Can be Granted

#### A.    The Complaint Fails to State a Claim for Relief Under Sections 1981 and 1983

Relief under 42 U.S.C. § 1981 is available only to members of a racial minority.  See e.g., Brown v. Philip Morris, Inc., 250 F.3d 789, 796-97 (3d Cir. 2001).   The Answering Brief suggests that the Complaint states a viable section 1981 claim because Plaintiff is a female and older than other students at Delaware Tech.  See Answering Brief at p. 6.  Plaintiff's gender and age certainly do not categorize her as a racial minority.  Plaintiff is Caucasian and not a member of a racial minority.   Accordingly, section 1981 relief is unavailable to Plaintiff as a matter of law.

There is no independent cause of action under 42 U.S.C. § 1983.  Section 1983 claims derive only from an underlying violation of federal statute or Constitutional right.  See e.g., Barna v. City of Perth Amboy, 42 F.3d 809, 815 (3d Cir. 1994) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).  As set forth by Delaware Tech, there has been no violation of federal rights or Constitutional rights and, therefore, no section 1983 claim arises.

#### B.    The Complaint Fails to State a Claim for Violation of the Equal Protection Clause

To maintain a claim for violation of the Equal Protection Clause, the Complaint must demonstrate that Plaintiff was treated in a discriminatory manner because of her association with a protected class.  While Plaintiff's several lengthy pleadings reference generically that she is a female and older than most students at Delaware Tech, nowhere does Plaintiff claim that she was treated in an unlawful manner because of her gender or age.  No other legitimate protected class

is referenced by Plaintiff's pleadings. Indeed, the Answering Brief does not appear to address the Equal Protection Clause issue at all. The Complaint fails to state a viable claim for violation of the Equal Protection Clause and dismissal of that claim is appropriate.

### C. The Complaint Fails to State a Claim for Violation of Certain Whistleblower Protections

The Answering brief incorrectly argues that Plaintiff's alleged reporting of wrongdoing by certain members of the Delaware Tech softball program to Delaware Tech administrators makes Plaintiff a "whistleblower" subject to the protection afforded by 31 U.S.C. § 3730(h). Section 3730(h) applies only to circumstances where an employee reports its employers misappropriation of federal funds. Taking Plaintiff's allegations at face value, she did not report misappropriation of federal funds and certainly did not do so as an employee of Delaware Tech. Section 3730(h) is simply inapplicable and this claim must be dismissed.

### D. The Complaint's Claim of Retaliation for Making Whistleblower Allegations Fails as a Matter of Law

Since section 3730(h) is not applicable, there can be no claim of retaliation for making a claim under that statute. For the reasons set forth in Delaware Tech's opening brief in support of its motion for judgment on the pleadings, there was a legitimate, non-discriminatory, non-retaliatory basis for Delaware Tech to dismiss Plaintiff. Accordingly, the retaliation claim must be dismissed.

### E. The Complaint's Claim for Violation of Family Educational Rights and Privacy Act Fails as a Matter of Law

The Answering Brief does not appear to refute Delaware Tech's request for dismissal of the claim under the Family Educational Rights and Privacy Act. For the reasons set forth in Delaware Tech's opening brief in support of its motion for judgment on the pleadings, there is no

-4-

private cause of action under the Family Educational Rights and Privacy Act and this claim must be dismissed.

### F.      The Complaint's Defamation Claim Fails as a Matter of Law

The Answering Brief does not appear to refute Delaware Tech's request for dismissal of the defamation claim.  For the reasons set forth in Delaware Tech's opening brief in support of its motion for judgment on the pleadings, there is no viable defamation claim set forth in the Complaint and this claim must be dismissed.

### G.      The Complaint's Claim for Violation of the Americans With Disabilities Act Fails as a Matter of Law

The second sentence of the Answering Brief states "The assault which occurred is/was secondary and happened AFTER the denied civil right violations which plaintiff endured as a citizen of the United States, and is protected under such statutes."  See Answering Brief at p. 1. To the extent Plaintiff alleges that she has an ADA-qualifying disability as a result of injuries sustained in an assault, it is clear from Plaintiff's own statements that any such disability did not arise until "after the denied civil rights violations which plaintiff endured…".  Given the timing, Delaware Tech certainly did not consider any such disability in its decision to terminate Plaintiff since that decision predated that onset of the alleged disability.

Regardless, there is neither an allegation nor evidence suggesting that Delaware Tech's decision to expel Plaintiff was on account of any perceived or real disability.  Delaware Tech expelled Plaintiff for violation of the school's anti-drug and anti-violence policies.  This legitimate basis for Plaintiff's expulsion cannot rationally be tied to her temporary, non-debilitating injuries.  Accordingly, Plaintiff's claim for violation of the ADA must be dismissed.

### H.     Plaintiff Was Afforded Adequate Due Process

Plaintiff raises two alleged due process deficiencies.  First, she alleges that she did not receive adequate notice of the charges against her.  Attached to the Answering Brief is Delaware Tech's in-house counsel Brian Shirey, Esquire's May 4, 2006 letter to Plaintiff wherein he confirms that Plaintiff received April 13, 2006 and April 24, 2006 letters from Dean Regan Hicks-Goldstein, which respectively included the complaints against Plaintiff for violating Delaware Tech's drug-free and violence-free campus policies.   Copies of Dean Hicks-Goldstein's April 13, 2006 and April 24, 2006 letters are attached hereto as Exhibits "B" and "C", respectively.

Second, Plaintiff alleges that she had inadequate time to prepare for a hearing.  Plaintiff was on notice by Dean Hicks-Goldstein's April 13th and April 24th letters of the charges against Plaintiff and, therefore, had sufficient time to prepare a response for the May 10, 2006 hearing. Third, Plaintiff alleges that she could not appear on campus for the May 10th hearing due to a medical condition.  At 8:55 a.m. on the morning of May 10th, Plaintiff provided Delaware Tech a generic doctor's note dated May 1, 2006 and indicating that Plaintiff was to be off work and school until May 14, 2006.  Despite the literally last minute request for a continuance, Delaware Tech considered Plaintiff's alleged medical excuse before starting the hearing.

Plaintiff was on campus participating in classes during the time period she was supposedly medically disabled from attending work or school.   For example, Plaintiff participated in a course taught by Michael Terranova and was in such class on May 4, 2006.  See Affidavit of Michael Terranova attached hereto as Exhibit "D".  Plaintiff's presence on campus during the time when she was supposedly medically unable to get to campus is also confirmed by the Public Safety report attached hereto as Exhibit "E" wherein the investigating officer

documents that Plaintiff left her dog unattended on campus while Plaintiff was in a class on May 4, 2006.[3]  Because Plaintiff was able to attend classes during her period of alleged medical inability to come to campus, Delaware Tech considered Plaintiff's request for a continuance disingenuous and proceeded with the May 10th hearing.  For the reasons set forth in Delaware Tech's opening brief in support of its motion for judgment on the pleadings, Plaintiff was afforded fair and adequate procedural and substantive due process under the circumstances.

---

[3] Delaware Tech respectfully suggests that review of the exhibits appended hereto and to the Answering Brief does not transform this motion to a request for summary judgment pursuant to Fed.R.Civ.P. 56.  Delaware Tech refers the Court to the documents referenced herein solely to demonstrate how the Answering Brief mischaracterizes or misrepresents the factual record.  The point being that for purposes of the instant motion the Court may accept well-plead allegations of the Complaint but is under no obligation to accept mischaracterizations or misrepresentations of the record.

## <u>CONCLUSION</u>

The Eleventh Amendment bars Plaintiff's Complaint against Delaware Tech. Additionally, Plaintiff's Complaint fails to state a claim upon which relief can be granted and judgment thereon in favor of Delaware Tech is appropriate.

Respectfully submitted,
**WHITE AND WILLIAMS LLP**


BY:  /s/ *Marc S. Casarino*
Marc S. Casarino (ID #3613)
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE  19899-0709
Phone: (302) 467-4520
Facsimile:  (302) 467-4550
Attorneys for Defendant,
*Delaware Technical and Community College*


Dated:  September 6, 2007

Exhibit A

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1

Not Reported in F.Supp.2d, 2006 WL 416864 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H** Hurst v. City of Rehoboth Beach
D.Del.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Jerry A. HURST, Plaintiff,
v.
CITY OF REHOBOTH BEACH, et al., Defendants.
**No. Civ.A.03-362-KAJ.**

Feb. 21, 2006.

Jerry A. Hurst, Arlington, Virginia, pro se.
Colin M. Shalk, Casarino, Christman & Shalk, P.A., Wilmington, Delaware, for defendants City of Rehoboth Beach and Walter Speakman.
Kevin J. Connors, and Thomas J. Gerard, Marshall, Dennehey, Warner, Coleman & Groggin, Wilmington, Delaware, for defendants Keith Banks, Paul Parsons, Jaime Riddle, Michael Armstrong, Collette Sutherland, Bonnie Ladd, Eric Glasco, Nicole Reynolds, John Bushey, and Frances Bucci.
Roger D. Landon, Murphy, Spadaro & Landon, Wilmington, Delaware, for defendant John Wothers.
Roger D. Landon, Murphy, Spadaro & Landon, Wilmington, Delaware and Philip Thomas Edwards, Philip Thomas Edwards, Wilmington, Delaware, for defendant Tammie Morrison.
Bruce C. Herron, Akin & Herron, P.A., Wilmington, Delaware, for defendants Sussex County, R.N. Whittle, Dr. Bums, Two Unknown Correctional Officers, P. Harrison, B.A. Gunter, M.D., and Hubert Pey.
Bruce C. Herron, Akin & Herron, P.A., Wilmington, Delaware and Stuart B. Drowos, Department of Justice, Wilmington, Delaware, for defendants Sussex Correctional Institution and Rick Kearney.
Louis J. Rizzo, Jr., Reger & Rizzo, LLP, Wilmington, Delaware, for defendants Atlantic Sands Hotel and Conference Center, Rick Perez, and Sean Miller.

MEMORANDUM OPINION
JORDAN, J.

### I. INTRODUCTION

**\*1** Plaintiff Jerry A. Hurst ("Hurst"), who proceeds *pro se,* brings this civil rights action pursuant to 42 U.S.C. § 1983. He also invokes 18 U.S.C. § 242, a criminal statute that establishes criminal liability for certain deprivations of civil rights under color of law. Hurst brings this suit against a number of defendants, many of whom have now been dismissed. (*See* Docket Item [D.I. 118, 119.) He seeks compensatory and punitive damages, attorney's fees, an award of his costs of suit, and other relief as the Court deems appropriate.

The defendants remaining in the case are the City of Rehoboth Beach, Paul Parson, Jaime Riddle, Michael Armstrong, Tammie Morrison, and the Department of Correction's Sussex Correctional Institution. Now before me is a motion to dismiss pursuant to Fed.R.Civ.P. 12(c) filed by the defendant Department of Correction's Sussex Correctional Institution ("SCI") (D.I.124), Hurst's response (D.I.125), and SCI's reply (D.I.126).

### II. STANDARD OF REVIEW

A motion for a Rule 12(c) judgment on the pleadings is governed by the same standard that governs Rule 12(b)(6) motions to dismiss. *See Spruill v. Gillis,* 372 F.3d 218, 223 n. 2 (3d Cir.2004); *Leamer v. Fauver,* 288 F.3d 532, 535 (3d Cir.2002). "A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Rockefeller Center Properties Inc.,* 311 F.3d 198 (3d Cir.2002). The Court will accept well-pleaded allegations as true for the purposes of the motion, but will not accept legal or unsupported

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 416864 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429 (3d Cir.1997); *Miree v. DeKalb County, Ga.,* 433 U.S. 25, 27 n. 2 (1977).

### III. DISCUSSION

SCI moves for judgment on the pleadings on the basis that it is immune from liability under the Eleventh Amendment. (D.I.124.) Hurst contends that SCI has abrogated and/or waived its Eleventh Amendment immunity, and is, therefore, amenable to suit. (D.I.125.) In his reply Hurst also contests my March 31, 2005, order that dismissed several State defendants and claims. I shall not discuss here any of Hurst's arguments that do not pertain to the issue raised in SCI's motion to dismiss, that issue being whether SCI is immune from suit based upon the Eleventh Amendment.

The Eleventh Amendment shields states from suits by individuals absent their consent. *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54 (1996). The Eleventh Amendment, however, permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Ex parte Young,* 209 U.S. 123 (1908). "This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief." *Frew v. Hawkins,* 540 U.S. 431, 437 (2004) (internal citations omitted). "Federal courts may not award retrospective relief, for instance money damages or its equivalent, if the State invokes its immunity." *Id.* (citations omitted).

*2 The Delaware Department of Corrections is an agency of the State of Delaware. The complaint seeks only monetary damages, and the State of Delaware has not waived its sovereign immunity under the Eleventh Amendment. *See Ospina v. Department of Corrections,* 749 F.Supp. 572, 579 (D.Del.1991). Hence, as an agency of the State of Delaware, the Department of Corrections is entitled to immunity under the Eleventh Amendment. *See e.g. Evans v. Ford,* C.A. No. 03-868-KAJ, 2004 WL 2009362, *4 (D.Del. Aug. 25, 2004) (dismissing claim against DOC, because DOC is

state agency and DOC did not waive Eleventh Amendment immunity).

Hurst's position that SCI waived and/or abrogated its Eleventh Amendment immunity is not-well taken. The law is clear that under the Eleventh Amendment SCI is immune from suit for monetary damages.

### IV. CONCLUSION

Accordingly, SCI's motion to dismiss pursuant to Fed.R.Civ.P. 12(c) (D.I.124) will be granted. An appropriate order will follow.

D.Del.,2006.
Hurst v. City of Rehoboth Beach
Not Reported in F.Supp.2d, 2006 WL 416864 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit B



**DELAWARE TECH**

♦ *Dover* ♦ *Georgetown* ♦ *Stanton* ♦ *Wilmington*

April 13, 2006

 Registered Mail



Ms. Christina Paoli
34363 Summerlyn Dr.
Apt. 204
Lewes, DE 19958

Dear Ms. Paoli:

This letter is written to inform you that you have been accused of violating Delaware Tech's Student Rights and Standards of Student Conduct Policy. Ron Burgess, Athletic Director, indicated in a letter dated March 24, 2006, that based on a report submitted by the Athletic Review Committee, that you had allegedly violated the College's Drug-Free School and Workplace Policy by offering a controlled substance (percocet) to members of the softball team. A copy of the complaint and the Student Rights and Standards of Student Conduct Policy are attached.

On March 30, 2006, you attended a meeting with Rodney Reeves, Assistant Athletic Director, where he attempted to explain the charges against you and inform you that you were suspended from the team, pending further investigation of the charges. He was also prepared to explain the steps of the resolution process, as outlined in the Student Handbook. However, you abruptly left the meeting without allowing him to finish.

After reviewing the documentation given to me by Ron Burgess, I feel that a suspension from the team, as recommended by the Athletic Review Committee, from March 30, 2006 to April 14, 2006, would be an appropriate sanction (see Sanctions for Violation of Student Conduct Standards in the Student Rights and Standards of Student Conduct). Now that the suspension is completed, you will be allowed to participate in all activities associated with the softball team after April 14, 2006. If you choose to have a hearing before the Campus Judicial Committee, the investigation into the charges will continue. Whatever your decision, you will be allowed to participate in all activities associated with the softball team.

---

You have five (5) working days to respond in writing to the accusations against you. In addition, you are hereby advised of the following:

- You have the right to a hearing before a Campus Judicial Committee in accordance with the hearing process outlined in Section VI.
- You have the right to be represented by an advisor or an attorney in a hearing before the Campus Judicial Committee. The name of the advisor or attorney must be submitted to the Campus Judicial Committee at least twenty-four (24) hours prior to the hearing.
- You have the right to waive a hearing before the Campus Judicial Committee and to accept the disposition of the matter as determined by me. If a hearing is waived, I intend to impose a suspension from the team from March 30, 2006 to April 14, 2006.
- That waiving the right to a hearing includes waiving the right to an appeal.
- That you will be deemed to have waived your right to a hearing before the Campus Judicial Committee unless a written request is received by me within seven (7) working days after the date of this notice.
- You have the right to appeal the decision of the Campus Judicial Committee to me in my capacity as Dean of Student Services.

If you have any further questions about the process, please do not hesitate to contact me at 454-3998 or 571-5360.

Sincerely,

Regan Hicks-Goldstein
Dean of Student Services

cc. Lawrence H. Miller
    Vice-President & Campus Director

    Ron Burgess
    Athletic Director

March 24, 2006

MEMORANDUM

TO:        Regan Hicks-Goldstein
           Dean of Student Services

FROM:      Ron Burgess  *Reb*
           Athletic Director

RE:        Athletic Review Committee Investigation – Christine Paoli

I am writing to advise you of the outcome of the Athletic Review Committee investigation. As you are aware, Christine Paoli wrote a letter concerning specific issues with the women's softball team. Upon receipt of the letter, I convened the committee to investigate the charges.

Based on the findings of the committee, it was felt that the coaching staff should focus on their methods of communication with the team. As a consequence of this, I have met with the coaching staff to develop an ongoing process that addresses appropriate decorum for the coaching staff. Additionally, it was determined that many of the issues that were presented resided within the area of coaching decisions.

During the process of this investigation, an allegation was made that there was an offer to provide a controlled substance to the team members by Christine Paoli. The committee found that this is a violation of the Athletic Code of Conduct and the Drug-Free Schools & Workplace Policy. Summarily, they have recommended that Christine Paoli be suspended from the women's softball team pending a full investigation of these charges.

As Athletic Director, I concur with the committee's recommendation until such time that a complete investigation has been completed.

Approved by President's Council 2/14/06

Delaware Technical & Community College
Policy regarding
**Student Rights and Standards of Student Conduct**

Delaware Technical & Community College has the responsibility and duty to establish and deliver a comprehensive educational program to the citizens of the State of Delaware as defined in the law through the General Assembly. The College is committed to providing a learning environment for students in which they may grow both as students and citizens.

As members of the College community, students have an obligation to participate in the life of the College in a responsible manner. Students have the freedoms of speech, peaceful assembly and petition, as well as the right to due process. However, students also have responsibilities and duties commensurate with their rights and privileges.

**II.    Purpose**

The purpose of this policy is to state and uphold rules and regulations deemed necessary for the orderly administration and operation of the College, for the orderly resolution of conflicts and disputes, and for the protection of the College community against misconduct and unlawful acts. Additionally, this policy identifies the type of conduct encompassed, the procedures to be used when infractions are alleged, and the sanctions for policy violations.

**III.    Scope**

A. Delaware Technical & Community College's jurisdiction for student discipline purposes shall include conduct that occurs on campus and at College-sponsored activities held off College premises that may adversely affect the College community and/or the pursuit of its objectives.

B. Conduct involving allegations of academic dishonesty will be handled under the College Policy on Academic Dishonesty.

C. A student who wishes to challenge an academic grade given in any course must proceed in accordance with the Academic Grade Challenge Policy.

D. Allegations concerning behavior in the academic setting will be handled under this Student Rights and Standards of Student Conduct Policy.

E. The Vice President for Academic Affairs, in consultation with the College-wide Deans of Student Services, may develop forms and procedures for the administration of this Student Rights and Standards of Student Conduct Policy.

F. The College will administer disciplinary action and, if necessary, initiate criminal or civil actions consistent with constitutional safeguards accorded by law. Any questions about the College's jurisdiction will be resolved by Delaware Technical & Community College's Chief Legal Counsel.

**IV.    Student Rights**

Approved by President's Council 2/14/06

A.  Students enrolled in any program or course at any campus of the College have the right to pursue their educational goals and may expect:

1.  A description of the course to include the measurable objectives, course requirements and evaluation procedures.
2.  A fair performance evaluation based on measurable objectives and course requirements.
3.  The opportunity to discuss, inquire and express their views in the classroom or in conference.
4.  Protection against improper disclosure concerning data which is confidential, in accordance with state and federal guidelines.  (See the Family Educational Rights and Privacy Act – FERPA)
5.  To be treated with dignity and respect.

B.  Procedure For The Resolution of Complaints By a Student

**Step 1** - A student who feels that any of his/her rights, as identified above, have been violated is encouraged to first meet with the person accused of violating the students' rights to seek satisfactory resolution in an informal manner through discussion.

**Step 2** - In the opinion of the student, if satisfactory resolution is not achieved at Step 1, the student shall meet with his/her program counselor or advisor to discuss and facilitate a resolution of the complaint. The facilitator (counselor or advisor) may include other individuals as appropriate.

**Step 3** - In the opinion of the student, if a satisfactory resolution is not accomplished at Step 2, the student shall file a written complaint with the Dean of Student Services.  The written complaint shall be submitted within five (5) working days after all meetings with the facilitator have concluded.  The complaint shall include the name of the person accused of violating one or more of the rights as set forth above, a statement of the specific right or rights alleged to have been violated by the accused, the manner in which the right or rights is alleged to have been violated, the identity of any person who has knowledge of any fact supporting the charge(s) and a summary of all facts of which the person is alleged to have knowledge, a summary of efforts to resolve the matter to date and the relief sought by the complaining party.

2

Approved by President's Council 2/14/06

**Step 4** - The Dean of Student Services, after reviewing the complaint to ensure that the resolution process has been properly followed, will forward a copy of the written complaint to the accused, who will be given an opportunity to respond to the accusations against him/her. The response shall be written and shall be submitted within 10 working days from the date the complaint is forwarded by the Dean of Student Services. If the accused is an employee, his or her immediate supervisor shall be notified by the Dean of Student Services that a complaint has been filed. The Dean of Student Services shall thereafter conduct such investigation into the allegations as he/she deems necessary and shall notify the student and the accused in writing of his/her determination. In the event that the Dean of Student Services determines that a students' rights have been violated by an employee of Delaware Technical & Community College, then the Dean of Student Services shall also provide a copy of his or her decision to the appropriate dean or director, the Director of Human Resources of the campus where the employee is employed, or to the Assistant Vice President for Human Resources if the employee is employed in the Office of the President, who shall administer such discipline, if any, as he/she deems appropriate. Any disciplinary action and/or corrective action taken, or appeals thereof, will be in accordance with section XII, Conduct and Corrective Action Policy of the Personnel Policy Manual.

**V.    Standards of Student Conduct**

Students enrolled in any program or course at any campus of the College have the responsibility to conduct themselves in a manner conducive to the orderly operation of the College and will be expected to:

1. Attend classes on a regular basis in order to have the maximum opportunity to complete the measurable objectives and meet the requirements of each course.
2. Respect the rights of staff members and students as they participate in College courses, programs and activities.
3. Satisfy all financial obligations to the College.
4. Comply with all published Delaware Technical & Community College policies, rules and/or regulations included in the Student Handbook and elsewhere.
5. Comply with all federal, state and local laws.
6. Treat others with dignity and respect.

3

Approved by President's Council 2/14/06

A.    Unacceptable Student Conduct

The College has determined that the following student actions are unacceptable and subject to disciplinary action under the procedures set forth in this policy.  Such behavior shall include, but not be limited to:

1.  The incitement or acts of force, assault, offensive touching, coercion, harassment, violence, intimidation or any interference with the free movement of others upon the College premises, or any act which endangers the mental or physical health or safety, or any act which is in violation of the Delaware Technical & Community College Violence-Free College Policy.
2.  Disruption or obstruction of the orderly operation of Campus activities, on or off College premises.  Disruptive behaviors may include, but are not limited to, profane or vulgar statements or gestures, personal habits, personal appearance, slanderous or libelous statements, speech-oriented activities or publications.
3.  Gambling.
4.  Possession, consumption and/or abuse of illegal drugs and/or alcohol or any violation of the Delaware Technical & Community College Drug-Free School And Workplace Policy.
5.  Forgery, bribery, perjury, making a false statement, and/or other behavior indicating dishonesty.
6.  Cheating, plagiarism or other violation on the College's Policy on Academic Dishonesty.
7.  Theft, robbery, criminal trespass and/or burglary.
8.  Intentional destruction of College property or the property of another or damaging public or private real or personal property without the permission of the owner by knowingly, purposely or recklessly drawing, painting or making any significant mark or inscription thereon.
9.  Sexual assault, stalking or other violation of the Delaware Technical & Community College Sexual Assault Policy.
10. Violation of the Delaware Technical & Community College Policy Prohibiting Weapons and Dangerous Instruments or Devices.
11. Violation of the Delaware Technical & Community College Sexual Harassment Policy which will be handled according to the Procedure for the Resolution of Sexual Harassment Complaints as published in the Student Handbook.
12. Violation of the Delaware Technical & Community College Acceptable Use of Electronics Networks Policy.
13. Violation of any other published Delaware Technical & Community College policy, rule and/or regulation included in the Student Handbook and elsewhere.
14. Any other violation of federal, state or local law.

4

Approved by President's Council 2/14/06

B.    Procedure for the Resolution of a Complaint Against a Student

Any member of the College community who has reason to believe that a student has violated the Standards of Student Conduct should report the alleged violation to one of the following College officials:

- Members of the Public Safety Department
- Dean of Student Services
- Dean of Instruction
- Director of Corporate and Community Programs (for non-credit students)
- Evening Coordinator/Evening Operations Manager

The Vice President and Campus Director and each of the College officials designated above shall have the authority to immediately remove from campus any student who is accused of violating the Standards of Student Conduct when, in the opinion of the Vice President and Campus Director or other designated College official, the student's continued presence on campus creates an unreasonable risk to the health, safety and/or welfare of any member of the College community or is disruptive to the learning environment. This action may include calling the local law enforcement officers as necessary. In addition, after review with the respective Vice President/Campus Director, the Dean of Student Services shall have the authority to suspend a student pending a hearing in cases when, in the opinion of the Dean of Student Services, the welfare of the College community is endangered or jeopardized by the student's continued presence on campus or to place such conditions on the student's presence on campus as he/she determines in his/her discretion to be in the best interest of the College, its students and staff.

In cases where the initial report of alleged student misconduct is reported to a Dean of Instruction or a Public Safety Officer, he/she shall report the complaint to the Dean of Student Services as soon thereafter as is reasonably practicable.

The following procedure shall apply to all complaints against a student unless another procedure and/or process has been established by another College Policy or by agreement for students in non-credit courses.

Upon receipt of notice that a violation of the Standards of Student Conduct is believed to have occurred, the Dean of Student Services shall utilize the following procedure to resolve the matter:

**Step 1** – If appropriate, the Dean of Student Services shall encourage the complaining party to first meet with the student accused of violating the Standards of Student Conduct in an effort to seek a satisfactory resolution in an informal manner through discussion.

Approved by President's Council 2/14/06

**Step 2** - In the opinion of the complaining party, if a satisfactory resolution is not accomplished at Step 1, or if informal discussions with the accused would jeopardize the health, safety or welfare of the complaining party, the Dean of Student Services shall request a formal written complaint from the complaining party. The written complaint shall be received within five (5) days after the request from the Dean of Student Services and shall include the name of the person accused of violating the Standards of Student Conduct, a statement of the specific Standards of Student Conduct alleged to have been violated by the accused, the manner in which the Standards of Student Conduct are alleged to have been violated, the identity of any person who has knowledge of any fact supporting the charge(s) and a summary of all facts of which the person has knowledge, a summary of efforts to resolve the matter to date and the relief sought by the complaining party.

The Dean of Student Services, after reviewing the complaint to ensure that all required information has been provided and the resolution process has been properly followed, will forward a copy of the written complaint to the accused, who will be given an opportunity to respond in writing to the accusations against him or her within five (5) working days. The Dean of Student Services shall include a copy of The Student Rights and Standards of Student Conduct and shall advise the accused of the following:

- That the accused violator has the right to a hearing before a Campus Judicial Committee in accordance with the hearing process outlined in Section VI.
- That the accused violator has a right to be represented by an advisor or an attorney in a hearing before the Campus Judicial Committee. The name of the advisor or attorney must be submitted to the Campus Judicial Committee at least twenty-four (24) hours prior to the hearing.
- That the accused violator has a right to waive a hearing before the Campus Judicial Committee and to accept the disposition of the matter as determined by the Dean of Student Services, including the possible sanctions to be imposed.
- That waiving the right to a hearing includes waiving the right to an appeal.
- That the accused violator will be deemed to have waived his/her right to a hearing before the Campus Judicial Committee unless a written request is received by the Dean of Student Services within seven (7) working days after the date of the notice advising the accused violator of his/her rights as contained herein.
- That the accused violator has the right to appeal the decision of the Campus Judicial Committee to the Dean of Student Services.

In the event the accused elects to have a hearing, the Dean of Student Services shall notify the Vice President and Campus Director of the need to appoint a Campus Judicial Committee. Upon receipt of the names of the Campus Judicial Committee appointments, the Dean of Student Services will notify all parties, in writing, of the date, time and place of the scheduled hearing. The hearing shall be conducted in accordance with Section VI.

Approved by President's Council 2/14/06

Either party has the right to appeal the decision of the Judicial Committee to the Dean of Student Services within seven (7) working days after receipt of the decision.

In the event that the accused student waives his/her right to a hearing or withdraws a request that was previously made, the Dean of Student Services shall conduct such investigation into the allegations as he/she deems necessary and shall notify the complainant and the accused student in writing of his/her determination. The investigation of the alleged violation and the subsequent decision of the Dean of Student Services shall be final. The Dean shall notify the accused violator and the complaining party, in writing, of the final determination.

C.    Sanctions for Violation of Student Conduct Standards

Sanctions applied for violations of Student Conduct Standards may include any one or more of the following:

1. Written Reprimand - A written notice to the student that his or her actions violated the Standards of Student Conduct and that future incidents of misconduct may be cause for further disciplinary action.
2. Disciplinary Probation - A specified period of time during which the student is expected to demonstrate appropriate conduct as a member of the academic community.
3. Academic or Social Restriction - Exclusion from stated classes, facilities, services or activities for a specified period of time.
4. Restitution - Payment for damages to College property or the property of another.
5. Rehabilitative Referral - Referral to an accepted physician or mental health counselor for evaluation and, if indicated, treatment for a physical, mental or psychological condition or disorder.
6. Suspension - Temporary (5 days or less) withdrawal of the student's right to attend classes or otherwise be present on College premises or to attend College functions, whether on campus or off campus.
7. Dismissal - Withdrawal of the privilege of registration, class attendance or activities on any campus of the College for an indefinite period of time.

The College reserves the right to refer a student for criminal prosecution, which may be in addition to any sanction set forth above.

7

Approved by President's Council 2/14/06

**VI.    The Hearing Process**

Written charges of Violations of Student Conduct Standards in which judicial proceedings are elected, will be referred to and heard by a Campus Judicial Committee composed of:

Two (2) students of the campus appointed by the Student Government Association.

Two (2) staff members, one (1) each appointed by the Dean of Instruction and the Dean of Student Services.

Delaware Technical & Community College's Chief Legal Counsel, or his/her designee, who shall serve as the chairperson.

No member of the Campus Judicial Committee may be a party to the case for which he/she is sitting in judgment.  In the event that Chief Legal Counsel is a party or potential witness, then the chairperson shall be appointed by the College President.  Pending final decision of the complaint, the status of the accused will not change as to his/her continued presence on campus and participation in scheduled assignments or classes, except where his/her presence constitutes a real and present danger to himself/herself, to others or to the orderly operation of the College.

The accused will be advised by the Dean of Student Services of possible sanctions or disciplinary action with sufficient detail to enable him/her to prepare properly for the hearing.  The accused may withdraw his/her request for a hearing at any time.

The complaining party may withdraw charges at any time.  Once charges are withdrawn, they may not be reintroduced unless sufficient new evidence is brought forth.  A written request to withdraw charges must be submitted to the Dean of Student Services who will notify all parties of the action.

The chairperson shall preside over the hearing and shall make all rulings concerning the admissibility of evidence.  The hearing will be upon sworn or affirmed testimony and the proceedings will be tape-recorded for the preservation of the record.  The Delaware Uniform Rules of Evidence shall be used as a guide to the admissibility of evidence.  All documents submitted as evidence and the tape-recording of the hearing will be kept for not less than one (1) year.  Since the hearing will be audio tape-recorded, it will be necessary for each person to state his or her identity when speaking.  The parties may submit relevant factual data, documents, testimony and argument.  Only evidence and argument presented at the hearing or presented to the Campus Judicial Committee and opposing parties before the hearing may be taken into consideration by the Judicial Committee in making its findings and rendering its decision.  All members of the Judicial Committee must be present to proceed to hearing and must remain for the duration of the proceedings.

Approved by President's Council 2/14/06

To begin the hearing, the chairperson of the Judicial Committee will read the statement of charges.  The person bringing the charges may present evidence, call witnesses in his/her own behalf, and confront and cross-examine witnesses called by the accused.  The accused shall have the right to present evidence, to call witnesses in his/her own behalf, and to confront and cross-examine witnesses called by the person bringing the charges.  The Campus Judicial Committee may also call witnesses to give testimony, who shall also be subject to cross-examination by either party.  The person bringing the charges will be required to attend the hearing.  The hearing will be open only to members of the Campus Judicial Committee, the accused and his/her advisor or attorney, the person bringing the charges and his/her advisor or attorney, and witnesses called to testify.  All witnesses shall be sequestered.

Upon conclusion of the hearing, the Judicial Committee will make findings of fact and conclusion as to innocence or guilt which will be established by a preponderance of evidence and by a majority vote of the Campus Judicial Committee.  The burden of proof rests with the person bringing the charges.  The chairperson will cast a vote only in case of a tie vote.  The Campus Judicial Committee will submit a written decision to the Dean of Student Services within seven (7) working days, setting forth its findings and, if applicable, the disciplinary action to be imposed where a finding of guilt is rendered upon the student.  The Dean of Student Services will forward a copy of the Campus Judicial Committee's decision to the accused student and to the person bringing the charges within five (5) working days after his or her receipt thereof.

In cases where a violation of the Standards of Student Conduct is found, the Dean of Student Services shall advise the student of his or her right to submit an appeal, in writing, within seven (7) working days from the receipt of the written notice.  The appeal shall be to the Dean of Student Services and shall be based on the record before the Campus Judicial Committee.  Upon review and examination of the Campus Judicial Committee's findings, the Dean may either affirm or reverse the Committee's decision.  The decision by the Dean of Student Services shall be in writing and shall be the final disposition of the complaint.

Exhibit C

# DELAWARE TECH ◆

**◆ Dover ◆ Georgetown ◆ Stanton ◆ Wilmington**

FILE COPY

April 24, 2006

Ms. Christina Paoli
34363 Summerlyn Dr.
Apt. 204
Lewes, DE 19958

Dear Ms. Paoli:

This letter is written to inform you that you have been accused of violating Delaware Tech's Student Rights and Standards of Student Conduct Policy in the manner set forth in the attached complaint. A copy of the complaint (consisting of an April 22, 2006 letter from Stacie Lynn Burris and a Stanton Campus Public Safety Report dated April 24, 2006) and the Student Rights and Standards of Student Conduct Policy are attached. After consultation with the Vice-President & Campus Director, I have determined that the welfare of the College community is endangered or jeopardized by your continued presence at athletic events. Therefore, you are hereby suspended from all sports-related extra-curricular activities, including games and the Athletic Banquet, until the complaint has been resolved.

You have five (5) working days to respond in writing to the accusations against you. In addition, you are hereby advised of the following:

- You have the right to a hearing before a Campus Judicial Committee in accordance with the hearing process outlined in Section VI.
- You have the right to be represented by an advisor or an attorney in a hearing before the Campus Judicial Committee. The name of the advisor or attorney must be submitted to the Campus Judicial Committee at least twenty-four (24) hours prior to the hearing.
- You have the right to waive a hearing before the Campus Judicial Committee and to accept the disposition of the matter as determined by me. If the allegations against you are substantiated, then the sanction I may impose could include a rehabilitative referral, suspension from the team or from classes, or dismissal from the College for a definite amount of time.

- That waiving the right to a hearing includes waiving the right to an appeal.
- That you will be deemed to have waived your right to a hearing before the Campus Judicial Committee unless a written request is received by me within seven (7) working days after the date of this notice.
- You have the right to appeal the decision of the Campus Judicial Committee to me in my capacity as Dean of Student Services.

If you have any further questions about the process, please do not hesitate to contact me at 454-3998 or 571-5360.

Sincerely,

Regan Hicks-Goldstein
Dean of Student Services

cc. Lawrence H. Miller
    Vice-President & Campus Director

    Ron Burgess
    Athletic Director

April 22, 2006
148 Woodside Drive
Chesapeake City, MD 21915

Ms. Regan Hicks-Goldstein
Dean of Student Services
Delaware Technical & Community College
Stanton Campus
400 Stanton-Christiana Road
Newark, DE 19713

Dear Dean Goldstein:

I would like to inform you of the events that have occurred over spring vacation. First of all, we, the Delaware Tech 2006 Softball team and I, are being followed by a private investigator named **Hugh Craig from FYI Detectives**. Craig drives a silver Chrysler Sebring with a Delaware license plate tag of 161630 but he has also been seen in a pick-up truck. We contacted the state police and Corporal Fox from troop six investigated him for us. He was not only watching us at games, but also in our personal time. A few of my teammates left from practice on Wednesday, April 19, 2006 and went to one girl's house to get ready for college night at the Phillies stadium, and from there they went straight to the Phillies game and Hugh Craig followed and video taped them the entire night. Hugh Craig was hired by **Chris Paoli** to "**legally stalk**" us. In my opinion Chris Paoli is not mentally stable and if she has hired Craig to stalk us without just cause than whom else might she hire? A hit man?! What is next? I do not feel safe at Delaware Tech or anywhere else. I am very afraid of what Chris might do to me, my family, my teammates, and my coaches.

Chris confirmed my fears on Thursday, April 20, 2006 when she **verbally harassed** me, **threatened bodily injury** to me, and **attempted to physically attack** me several times. I was instructed to come back to school and make a report with the security guard which I did immediately as well as my parents, my teammates (apart from Chris Paoli), and my coaches. I am terrified of Chris Paoli and what she might do to me or my loved ones. I do not understand why **Delaware Tech is not protecting me** and why **Delaware Tech is protecting a habitual rule violator**. In the section of the Delaware Tech student handbook about *Student Rights and Standards of Student Conduct Section V Group A* under the heading unacceptable student conduct there are many regulations that Chris Paoli has violated and she should have been subject to disciplinary action under the procedures set forth in this policy. First of all, in Section V, Group A, Number 1 it reads:

> *"The incitement or acts of force, assault, offensive touching, coercion, harassment, violence, intimidation or any interference with the free movement of others upon the College premises, or any act which endangers the mental or physical health or safety, or any act which is in violation of the Delaware Technical & Community College Violence-Free College Policy."*

Chris Paoli has **harassed and intimidated me** and other members of the 2006 Delaware Tech softball team. Paoli endangered my mental health and physical safety when she threatened to harm me. Furthermore, I have been mentally stressed to the point of my

performance in school and on the field falling below my ability due to her constant harassment and the fact that she hired a stalker.

In Section V, Group A, Number 2 it reads:

> "*Disruption or obstruction of the orderly operation of Campus activities, on or off College premises. Disruptive behaviors may include, but are not limited to, profane or vulgar statements or gestures, personal habits, personal appearance, slanderous or libelous statements, speech-oriented activities or publications.*"

Beginning at the College of Southern Maryland Tournament and continuing up to this point, Chris Paoli has aggressively screamed at the coaches, as well as Ron Burgess and the players, in public with very vulgar language and using the F*** word countless times. My 19 month old son, 5 year old niece, and 73 year old grandmother along with my parents come to every game and it is ludicrous that they have to be subject to this type of language at a school event. At the College of Southern Maryland Tournament Saturday, March 11 – Sunday, March 12, 2006 the umpires had to stop the game and ask Paoli to leave the field of play because she was ranting and raving to the first base coach. This was not only disruptive to our team but the umpires and the other team had already judged from this episode. At the Mercer County College game on Thursday, April 20, 2006 the batter had to step out and scream from the batters box because Chris was angrily exploding in her teammates faces in the last inning of the game.

At the Delaware Tech spirit game against Gloucester Community College on Wednesday, April 18, 2006 Paoli hired a few people for $50.00 each to hold signs insinuating that she was above other players. Also, at the Delaware Tech Owens away game on Thursday, April 13, 2006 she caused a big scene while talking to you very loudly on the phone. She was standing next to the umpire at the fence distracting both teams. Our fans and my teammates were very embarrassed because the other team kept yelling over asking her to stop and saying we were being rude. A few of our parents asked her to stop as well and when they did Chris Paoli initiated a verbal confrontation with one of them. **Paoli is a player representing our school and our state every time she puts her jersey on.** Are Chris Paoli's vulgar outbursts the kind of representation that you want Delaware Tech to be characterized with?

In Section V, Group A, Number 4 it states:

> "*Possession, consumption, and/or abuse of illegal drugs and/or alcohol or any violation of the Delaware Technical & Community College Drug-Free School and Workplace Policy.*"

Chris Paoli has offered several girls on the team percocet as well as alcohol. The most recent **proposal for alcohol to an underage teammate** was on the way back from the County College of Morris game on Saturday, April 15, 2006.

In Section V, Group A, Number 5 it reads:

> "*Forgery, bribery, perjury, making a false statement, and/or other behavior indicating dishonesty.*"

I was told that Chris Paoli made false statements to Teri, our returning catcher, which made her feel unwanted and as a result Teri quit the team. After Teri quit Chris said that she wanted to catch and made it seem like Paoli was after Teri's position.

Chris Paoli has hired three people to hold signs and a private investigator, who knows if Paoli would hire someone to break in cars or **hire someone to carry out her threats**.  I am very worried about what might happen to me or my family if something is not done soon. I know that **you have been aware of these incidences** every step of the way, but I do not know why **you have not taken action to protect your athletes**.  I want to know **what you plan to do to keep me safe** and I would like it in writing with the dates and actions you expect to take for my safety.

Sincerely,

*Stacie Lynn Burris*

Stacie Lynn Burris




## DELAWARE TECHNICAL & COMMUNITY COLLEGE
## STANTON CAMPUS
## PUBLIC SAFETY DEPARTMENT

**TYPE OF REPORT: INITIAL     Investigating Officer: PSO. MURRAY, ERNEST**

| DATE: April 24, 2006 | PAGE 1 | COMPLAINT NO: Z4-06-0057 | Supplement Code |
|---|---|---|---|

| NAME: | RELATIONSHIP TO CAMPUS: STUDENT CHRISTINA R. PAOLI | DOB: | SEE BELOW Female 06 /05 /1962 | TELEPHONE: CELL (302) 260-1036 NONE |
|---|---|---|---|---|

**ADDRESS: CITY/STATE:** 34363 SUMMERLYN DRIVE APT. 204 LEWES, DELAWARE 19958

| LOCATION OF INCIDENT | DELAWARE TECHNICAL AND COMMUNTIY COLLEGE IN LOT #1 AND MERCER COUNTY COMMUNITY COLLEGE WOMENS SOFTBALL GAME |
|---|---|
| OCCURRED DAY/DATE/TIME | Thursday  April  20  2006  Time Incident Occurred  1230HRS-1830  HRS |
| REPORTED DAY/DATE/TIME | Thursday  April  20  2006  Time Incident Was Reported 1830 HRS |

| TYPE OF INCIDENT(S) | DISORDERLY CONDUCT MISDEMEANER<br><br>Cleary Act Violation?: NO |
|---|---|

**Emergency Services Used:** NONE
**College Official Notified of incident?** CAMPUS DIRECTOR

| PROPERTY SECTION: N/A     OWNER OF PROPERTY: COLLEGE |
|---|

List Stolen/Damaged Property Include Value of Property

Investigators Signature: _____     Supervisor Signature: _____
Date: 4/24/06                                   Date: _____

PAGE 2

**COMPLAINT NUMBER Z4-06- 0057**            **DATE OF REPORT:** April 24, 2006

In all statements include day-date-time-place of contact, name-Address-Telephone.

| STATEMENT BY: WITNESS | STACIE LYNN BURRIS #7 |
|---|---|
| | AT APPROX. 2015HRS THIS WRITER INTERVIEWED MRS. BURRIS IN ROOM A-117. MRS. BURRIS STATED THAT IT ALL STARTED AT APPROX. 1230HRS WHILE LOADING UP THE VAN TO GO TO AN AWAY GAME AT MERCER COUNTY COMMUNITY COLLEGE IN NEW JERSY. MRS. PAOLI CAME UP TO THE VAN AND IT WAS LOCKED , SO SHE BEGAN POUNDING ON THE DOOR. ONE OF THE LADIES IN THE VAN UNLOCKED THE DOOR. THEN OUT OF THE BLUE MRS. PAOLI SAID TO EVERYONE ON THE VAN "YOU GUYS ARE A BUNCH OF FUCKING IDIOTS AND ASSHOLES." THEN AT THE GAME OUT OF THE BLUE MRS. PAOLI STATED TO ALL THE TEAM IN THE DUG-OUT "SHUT UP BITCH" AT EVERYONE. THEN MRS. PAOLI GOT UP INTO MRS. BURRIS'S FACE AND STARTED YELLING AND CURSING AT HER AND MRS. BURRIS IGNORED HER AND STILL CONTINUED TO PACK UP TO LEAVE. MRS. BURRIS STATED THAT AS SHE WAS LEAVING WITH HER PARENTS WHEN  MRS. PAOLI RAN UP BACK INTO HER FACE AND THEN TRIED TO KNOCK INTO HER WITH MRS. PAOLI'S SHOULDER AND MISSED. MRS. PAOLI FINALLY GOT ON HER CELL PHONE AND CONTACTED SOMEONE AND STATED "DID YOU GET THAT?" AND "COME AND PICK ME UP". A MAN PULLED UP IN A VEHICLE THAT WAS EARLIER IN THE WEEK IDENTIFIED AS A PRIVATE INVESTIGATOR WHOM MRS. PAOLI HIRED THAT HAS BEEN HANGING AROUND THE CAMPUS VIDEO TAPING THE LADIES PRACTICES AND THEIR GAMES. THIS MAN GAVE MRS. PAOLI A RIDE BACK TO HER CAR HERE AT DELAWARE TECHNICAL AND COMMUNITY COLLEGE. THIS INTERVIEW WAS COMPLETED AT 2026HRS. |

Investigators Signature: _____    Supervisor Signature: _____
Date: _____    Date: _____

PAGE 3

| STATEMENT BY: WITNESS | CAROL SMITH, MOTHER OF STACIE BURRIS<br><br>AT APPROX. 2026HRS THIS WRITER INTERVIEWED MRS. SMITH IN ROOM A-117. MRS. SMITH STATED THAT SHE WAS SEATED ON THE BLEACHERS BEHIND HOME PLATE. SHE STATED THAT SHE HEARD THE COMMOTION OCCURING IN THE DUG-OUT AND SEEN MRS. PAOLI IN MRS. BURRIS'S FACE MRS. SMITH YELLED OUT TO MRS. PAOLI "LEAVE HER ALONE". MRS. PAOLI REPLIED THAT "I CAN SUE YOU FOR THAT COMMENT". MRS. PAOLI WAS TRYING TO PROVOKE A FIGHT WITH MRS. BURRIS BUT MRS. BURRIS JUST WALKED AWAY. THIS INTERVIEW WAS COMPLETED AT 2036HRS. |
|---|---|
| STATEMENT BY: WITNESS | NICOLE TIBERI #2<br><br>AT APPROX. 2037HRS THIS WRITER INTERVIEWED MRS. TIBERI IN ROOM A-117. MS. TIBERI STATED THAT SHE WAS AWAY FROM THE DUG-OUT. SHE ONLY HEARD MRS. PAOLI STATE "ITS ALL RIGHT, YOU'LL GET PAY BACK COMING TO YOU" TOWARDS MS. STACIE BURRIS. THIS INTERVIEW WAS COMPLETED AT 2040HRS. |
| STATEMENT BY: WITNESS | GARY SMITH, FATHER OF STACIE BURRIS<br><br>AT APPROX. 2040HRS THIS WRITER INTERVIEWED MR. SMITH IN ROOM A-117. MR SMITH STATED THAT HE POSITIONED AT THE FAR LEFT FIELD. HE SEEN COMMOTION IN THE DUG-OUT AND PROCEEDED TOWARDS THE AREA. MR. SMITH STATED THAT HE HEARD MRS. SMITH TELL MRS. PAOLI TO LEAVE HER ALONE AND MRS. PAOLI'S REPLY OF I'LL SUE YOU FOR THAT COMMENT. MR. SMITH THEN STATED THAT HE OBSERVED MRS. PAOLI SURROUNDING MRS. BURRIS AND TRYING TO PROVOKE A FIGHT WITH HER BUT MRS. BURRIS JUST WALKED AWAY. THIS INTERVIEW WAS COMPLETED AT 2048HRS. |

**INVESTIGATIVE ACTION BY THE OFFICER:** This section is a chronological synopsis of the action taken by the Officer(s) during the investigation.

AT APPROX. 1830HRS. THIS WRITER WAS NOTIFIED BY RON BURGESS (ATHLETIC DIRECTOR) THAT MRS. CHRISTINA PAOLI HAS ACTED INAPPROPRIATELY I.E. CURSING OUT TEAM MATES, HEAD COACH AND PARENTS OF TEAM MATES AND EVEN TRYING TO CAUSE PHYSICAL INJURY TO ONE OF THE TEAM MATES AT AN AWAY GAME FOR DTCC IN MERCER COUNTY COMMUNITY COLLEGE IN NEW JERSEY. AT APPROX. 2015HRS. THIS WRITER STARTED INTERVIEWING ALL THE TEAM MATES AND PARENTS OF TEAM MATES THAT WERE ALL WITNESSES TO THIS INCIDENT IN ROOM A-117 (CAFETERIA). THIS INTERVIEWING WAS COMPLETED AT APPROX. 2235HRS.

Investigators Signature: _____    Supervisor Signature: _____
Date: _____    Date: _____

PAGE 4

**DESCRIPTION OF SUSPECT: GENDER:            FEMALE      RACE: WHITE   APPROX. AGE/D.O.B.  06/05/1962, 43YOA       HEIGHT:5'4-5'6   WEIGHT: 160-180LBS     BUILD: MEDIUM COLOR OF HAIR: LONG STRAIGHT BRUNETTE COLOR OF EYES: BROWN        CLOTHING DESCRIPTION: BLUE AND WHITE JERSEY W/ #10 ON BACK, BLUE SHORTS, WHITE BASEBALL CLEATS**

**DISPOSITION:  PENDING (ACTIVE)**

**COMPLAINT NUMBER: Z4-06-0057              DATE OF REPORT: April 24, 2006**

**ADDITIONAL INFORMATION: JESSICA TORTEROTOT #18**

**AT APPROX. 2103HRS THIS WRITER INTERVIWED MS. TORTEROTOT IN ROOM A-117. MRS. TORTEROTOT STATED THAT EVERYTHING WAS CALM LIKE NORMAL AT THE GAME. THEN ALL OF A SUDDEN MRS. PAOLI OBSERVED RON BURGESS LEAVE THE GAME AND THEN MRS. PAOLI STARTED CURSING AND YELLING AT TEAM MATES AND HEAD COACH MATT SCHOLL. IT WAS ALL LIKE A MOVIE. IT SEEMED LIKE SHE PLANNED OUT THE WHOLE THING. THIS INTERVIEW WAS COMPLETED AT 2108HRS.**

Investigators Signature: _____   Supervisor Signature: _____
Date: _4/24/06_                           Date: _____

PAGE 5

**MARYALICE SMILEY #13**

AT APPROX. 2108HRS THIS WRITER INTERVIEWED MS. SMILEY IN ROOM A-117. MS. SMILEY STATED THAT SHE SEEN MRS. PAOLI IN MRS. BURRIS'S FACE AND THEN MS. TORTEROTOT GOT IN BETWEEN THE TWO AND PULLED MRS. BURRIS AWAY FROM MRS. PAOLI. MS. SMILEY ALSO STATED THAT SHE HEARD MRS. PAOLI STATE TO MS. BURRIS THAT "THIS IS NOT OVER" AND THEN CONTACTED SOMEONE ON MRS. PAOLI'S CELL PHONE AND STATE "DID YOU GET THAT". THIS INTERVIEW WAS COMPLETED AT 2119HRS.

**ERICA BASARA # 4, TEAM CAPTAIN**

AT APPROX. 2121HRS THIS WRITER INTERVIEWED MS. BASARA IN ROOM A-117. MS. BASARA STATED THAT SHE WAS UP TO BAT ON HOME PLATE WHEN SHE HEARD ARGUING IN THE DUG-OUT. MS. BASARA FINALLY HAD TO CALL TIME OUT AND STATE TO THE DUG-OUT "SHUT AND QUIT IT". SOON AFTER SHE WAS DONE ON HOME PLATE MS. BASARA WENT INTO THE DUG-OUT AND LAUREN MCCARTNEY, STACIE BURRIS AND CHRSTINA PAOLI WAS IN THERE ARGUING. MS. BASARA BROKE THEM APART AND TOLD THEM ALL TO COOL IT. THIS INTERVIEW WAS COMPLETED AT 2125HRS.

**LISA TODD #3**

AT APPROX. 2125HRS THIS WRITER INTERVIEWED MS. TODD IN ROOM A-117. MS. TODD STATED THAT WHEN EVERYONE WAS IN THE VAN READY TO LEAVE MRS. PAOLI CAME UP TO THE VAN STARTED BANGING ON THE DOOR UNTIL SOMEONE OPENED IT UP FOR HER. UPON ENTERING THE VAN MRS. PAOLI STATED "ALL OF YOU ARE FUCKING IDIOTS AND ASSHOLES" TO ALL THE GIRLS IN THE VAN. THEN AT THE GAME MRS. PAOLI GOT INTO MRS. BURRRIS'S FACE AND WAS CURSING HER OUT. MS. TODD THEN STATED ABOUT HOW MRS. PAOLI LIKES TO REPEATEDLY SAY IM NOT GAY WHILE SHE GETS INTO EVERYONES FACE, CORNERING THEM AND MAKING BODILY CONTACT THAT MAKES HER AND OTHER TEAM MATES FEEL VERY UNCOMFORTABLE. THIS INTERVIEW WAS COMPLETED AT 2134HRS.

**MELISSA BLACKARD #11**

AT APPROX. 2134HRS THIS WRITER INTERVIEWED MS. BLACKARD IN ROOM A-117. MS. BLACKARD STATED THAT SHE HEARD MRS. PAOLI TELL LACY VIBALE TO SHUT UP. MS. BLACKARD ALSO STATED THAT WITH NO CONNECTION WITH THE SOFTBALL GAME INCIDENT, THAT SHE IS VERY UNCOMFORTABLE WITH MRS. PAOLI AROUND. MS. BLACKARD CONTINUED BY STATING THAT MRS. PAOLI HAS A HABITT OF VOLUNTARLY DISCUSSING HER SURGERY ON HER BREASTS AND EVEN EXPOSING THEM TO HER. THIS SHE INCLUDED MADE HER FEEL VERY UNCOMFORTABLE. THIS INTERVIEW WAS COMPLETED AT 2140HRS.

Investigators Signature: _____    Supervisor Signature: _____
            Date: _____                          Date: _____

PAGE 6

Z4-06-0057

**KELLY MCCORMICK #19**

AT APPROX. 2141HRS THIS WRITER INTERVIEWED MS. MCCORMICK IN ROOM A-117. MS. MCCORMICK STATED THAT MRS. PAOLI SAID TO HER THAT "I HAVE NOT TRIED TO GIVE OR SELL ANY PERCASET OR MIDOL TO ANYONE. DON'T BELIEVE THEM." THEN DURING THE GAME MS. MCCORMICK STATED THAT SHE HEARD MRS. PAOLI STATE TO LACY VIBALE THAT "YOU HAVE BEEN ON MY ASS ALL GAME". THEN AFTER THE GAME, MS. MCCORMICK SEEN MRS. PAOLI TRYING TO STRIKE MRS. BURRIS WITH HER SHOULDER AND MISSED. THIS INTERVIEW WAS COMPLETED AT 2147HRS.
Z4-06-0057

**ROBIN GANDERTON #12**

AT APPROX. 2147HRS THIS WRITER INTERVIEWED MS. GANDERTON IN ROOM A-117. MS. GANDERTON STATED THAT SHE ALSO SEEN MRS. PAOLI TRYING TO STRIKE MRS. BURRIS WITH HER SHOULDER AND MISSED. MS. GANDERTON ALSO STATED THAT SHE AS WELL HEARD MRS. PAOLI STATE TO LACY VIBALE THAT "YOU HAVE BEEN ON MY ASS ALL GAME". THIS INTERVIEW WAS COMPLETED AT 2151HRS.

**LAUREN MCCARTNEY #24**

AT APPROX. 2151HRS THIS WRITER INTERVIEWED MS. MCCARTNEY IN ROOM A-117. MS. MCCARTNEY STATED THAT OBSERVED MRS. PAOLI YELLING AT HEAD COACH MATT SCHOLL AND STATING "DO YOU SEE WHATS GOING ON ? WHAT ARE YOU GOING TO DO ABOUT IT?" THEN MS. MCCARTNEY OBSERVED MRS. PAOLI GO UP TO ONE OF THE UMPIRES AFTER THE GAME AND ASK HIM FOR HIS NAME AND PHONE. MS. MCCARTNEY ASSUMED THAT MRS. PAOLI WAS TRYING TO GET THE UMPIRES ON HER SIDE. THEN WHILE THE TEAM WAS PACKING UP EVERYTHING TO LEAVE, MRS. PAOLI STATED TO EVERYONE THAT "I'M NOT GOING TO QUIT AND YOUR NOT GONNA CHASE ME AWAY BECAUSE I KNOW THAT'S WHAT YOU WANT." THIS INTERVIEW WAS COMPLETED AT 2201HRS.

**LACY VIBALE, TEAM MANAGER**

AT APPROX. 2201HRS THIS WRITER INTERVIEWED MS. VIBALE IN ROOM A-117. MS. VIBALE STATED THAT SHE IS UNSURE WHY MRS. PAOLI HAS TO DISRUPT PRACTICES AND GAMES ALL THE TIME. MS. VIBALE STATED THAT MRS. PAOLI HAS A HABIT OF TALKING DOWN TO OTHER PLAYERS AND TELLING THEM THAT SHE DOES NOT KNOW WHY THEY PLAY THAT CERTAIN TEAM MATE AND NOT HERSELF. MRS. PAOLI THINKS SHE IS BETTER THEN EVERYONE ON THE TEAM. MS. VIBALE DOES AGREE THAT MRS. PAOLI HAS A HABIT OF GETTING TOO CLOSE TO THE OTHER TEAM MATES EITHER IT BE FROM TALKING TOO CLOSELY AND CORNERING THEM TO ACTUAL BODILY CONTACT. OTHER TEAM MATES HAS VOICED THEIR CONCERN IN THIS MATTER. THIS INTERVIEW WAS COMPLETED AT 2208HRS.

Investigators Signature: _____    Supervisor Signature: _____
Date: 4/24/06    Date: _____

PAGE 7

Z4-06-0057

**CHRISTY GANDERTON, ASSISTANT COACH**

AT APPROX. 2208HRS THIS WRITER INTERVIEWED MS. GANDERTON IN ROOM A-117. MS. GANDERTON STATED THAT WHEN EVERYONE WAS IN THE VAN READY TO LEAVE MRS. PAOLI CAME UP TO THE VAN STARTED BANGING ON THE DOOR UNTIL SOMEONE OPENED IT UP FOR HER. UPON ENTERING THE VAN MRS. PAOLI STATED "ALL OF YOU ARE FUCKING IDIOTS AND ASSHOLES" TO ALL THE GIRLS IN THE VAN. THIS INTERVIEW WAS COMPLETED AT 2213HRS.

**EMILY EVANS, ASSISTANT COACH**

AT APPROX. 2213HRS THIS WRITER INTERVIEWED MS. EVANS IN ROOM A-117. MS. EVANS STATED THAT MRS. PAOLI HAS A HABIT OF DOING WHAT SHE WANTS TO DO.  MRS. PAOLI HAS BROKEN THE RULES AND THE REGULATIONS THAT ALL PLAYERS HAVE TO FOLLOW. MRS. PAOLI HAS BROKEN CURFEW, CAME IN EARLY IN THE MORNING WHEN LIGHTS OUT WAS 10:00PM AT AN AWAY GAME, HAVING A GUY STAY THE NIGHT IN HER ROOM WHEN SHE KNOWS THAT'S WAS AGAINST POLICY AND CURSING AROUND AND CURSING OUT OTHER TEAM MATES. MRS PAOLI DOES NOT FOLLOW ANY OF THE RULES THAT DTCC HAS CREATED FOR ALL ATHLETIC TEAMS AND MS. EVANS STATED IN HER OPINION, SHE WOULD LIKE TO HAVE MRS. PAOLI REMOVED FROM THE TEAM FOR GOOD. SHE IS NOT A TEAM PLAYER, SHE IS ALWAYS TALKING BAD ABOUT OTHER TEAM MATES AND IS BREAKING ALL THE TEAMS SPIRIT. THIS INTERVIEW WAS COMPLETED AT 2235HRS.

DISPOSITION: THIS REPORT WAS REFERRED TO THE CAMPUS DIRECTOR AND DEAN OF STUDENT SERVICES IN REFERENCE TO SECOND OCCURRENCE OF WORK PLACE VIOLENCE POLICY VIOLATION.

Investigators Signature: _____    Supervisor Signature: _____
                 Date: _____                    Date: _____

Approved by President's Council 2/14/06

Delaware Technical & Community College
Policy regarding
**Student Rights and Standards of Student Conduct**

Delaware Technical & Community College has the responsibility and duty to establish and deliver a comprehensive educational program to the citizens of the State of Delaware as defined in the law through the General Assembly. The College is committed to providing a learning environment for students in which they may grow both as students and citizens.

As members of the College community, students have an obligation to participate in the life of the College in a responsible manner. Students have the freedoms of speech, peaceful assembly and petition, as well as the right to due process. However, students also have responsibilities and duties commensurate with their rights and privileges.

**II.    Purpose**

The purpose of this policy is to state and uphold rules and regulations deemed necessary for the orderly administration and operation of the College, for the orderly resolution of conflicts and disputes, and for the protection of the College community against misconduct and unlawful acts. Additionally, this policy identifies the type of conduct encompassed, the procedures to be used when infractions are alleged, and the sanctions for policy violations.

**III.   Scope**

A. Delaware Technical & Community College's jurisdiction for student discipline purposes shall include conduct that occurs on campus and at College-sponsored activities held off College premises that may adversely affect the College community and/or the pursuit of its objectives.

B. Conduct involving allegations of academic dishonesty will be handled under the College Policy on Academic Dishonesty.

C. A student who wishes to challenge an academic grade given in any course must proceed in accordance with the Academic Grade Challenge Policy.

D. Allegations concerning behavior in the academic setting will be handled under this Student Rights and Standards of Student Conduct Policy.

E. The Vice President for Academic Affairs, in consultation with the College-wide Deans of Student Services, may develop forms and procedures for the administration of this Student Rights and Standards of Student Conduct Policy.

F. The College will administer disciplinary action and, if necessary, initiate criminal or civil actions consistent with constitutional safeguards accorded by law. Any questions about the College's jurisdiction will be resolved by Delaware Technical & Community College's Chief Legal Counsel.

**IV.    Student Rights**

1

Approved by President's Council 2/14/06

A.  Students enrolled in any program or course at any campus of the College have the right to pursue their educational goals and may expect:

   1.  A description of the course to include the measurable objectives, course requirements and evaluation procedures.
   2.  A fair performance evaluation based on measurable objectives and course requirements.
   3.  The opportunity to discuss, inquire and express their views in the classroom or in conference.
   4.  Protection against improper disclosure concerning data which is confidential, in accordance with state and federal guidelines.  (See the Family Educational Rights and Privacy Act – FERPA)
   5.  To be treated with dignity and respect.

B.  Procedure For The Resolution of Complaints By a Student

**Step 1** - A student who feels that any of his/her rights, as identified above, have been violated is encouraged to first meet with the person accused of violating the students' rights to seek satisfactory resolution in an informal manner through discussion.

**Step 2** - In the opinion of the student, if satisfactory resolution is not achieved at Step 1, the student shall meet with his/her program counselor or advisor to discuss and facilitate a resolution of the complaint. The facilitator (counselor or advisor) may include other individuals as appropriate.

**Step 3** - In the opinion of the student, if a satisfactory resolution is not accomplished at Step 2, the student shall file a written complaint with the Dean of Student Services.  The written complaint shall be submitted within five (5) working days after all meetings with the facilitator have concluded.  The complaint shall include the name of the person accused of violating one or more of the rights as set forth above, a statement of the specific right or rights alleged to have been violated by the accused, the manner in which the right or rights is alleged to have been violated, the identity of any person who has knowledge of any fact supporting the charge(s) and a summary of all facts of which the person is alleged to have knowledge, a summary of efforts to resolve the matter to date and the relief sought by the complaining party.

Approved by President's Council 2/14/06

**Step 4** - The Dean of Student Services, after reviewing the complaint to ensure that the resolution process has been properly followed, will forward a copy of the written complaint to the accused, who will be given an opportunity to respond to the accusations against him/her. The response shall be written and shall be submitted within 10 working days from the date the complaint is forwarded by the Dean of Student Services. If the accused is an employee, his or her immediate supervisor shall be notified by the Dean of Student Services that a complaint has been filed. The Dean of Student Services shall thereafter conduct such investigation into the allegations as he/she deems necessary and shall notify the student and the accused in writing of his/her determination. In the event that the Dean of Student Services determines that a students' rights have been violated by an employee of Delaware Technical & Community College, then the Dean of Student Services shall also provide a copy of his or her decision to the appropriate dean or director, the Director of Human Resources of the campus where the employee is employed, or to the Assistant Vice President for Human Resources if the employee is employed in the Office of the President, who shall administer such discipline, if any, as he/she deems appropriate. Any disciplinary action and/or corrective action taken, or appeals thereof, will be in accordance with section XII, Conduct and Corrective Action Policy of the Personnel Policy Manual.

## V.    Standards of Student Conduct

Students enrolled in any program or course at any campus of the College have the responsibility to conduct themselves in a manner conducive to the orderly operation of the College and will be expected to:

1. Attend classes on a regular basis in order to have the maximum opportunity to complete the measurable objectives and meet the requirements of each course.
2. Respect the rights of staff members and students as they participate in College courses, programs and activities.
3. Satisfy all financial obligations to the College.
4. Comply with all published Delaware Technical & Community College policies, rules and/or regulations included in the Student Handbook and elsewhere.
5. Comply with all federal, state and local laws.
6. Treat others with dignity and respect.

3

Approved by President's Council 2/14/06

A.    Unacceptable Student Conduct

The College has determined that the following student actions are unacceptable and subject to disciplinary action under the procedures set forth in this policy. Such behavior shall include, but not be limited to:

1.  The incitement or acts of force, assault, offensive touching, coercion, harassment, violence, intimidation or any interference with the free movement of others upon the College premises, or any act which endangers the mental or physical health or safety, or any act which is in violation of the Delaware Technical & Community College Violence-Free College Policy.
2.  Disruption or obstruction of the orderly operation of Campus activities, on or off College premises. Disruptive behaviors may include, but are not limited to, profane or vulgar statements or gestures, personal habits, personal appearance, slanderous or libelous statements, speech-oriented activities or publications.
3.  Gambling.
4.  Possession, consumption and/or abuse of illegal drugs and/or alcohol or any violation of the Delaware Technical & Community College Drug-Free School And Workplace Policy.
5.  Forgery, bribery, perjury, making a false statement, and/or other behavior indicating dishonesty.
6.  Cheating, plagiarism or other violation on the College's Policy on Academic Dishonesty.
7.  Theft, robbery, criminal trespass and/or burglary.
8.  Intentional destruction of College property or the property of another or damaging public or private real or personal property without the permission of the owner by knowingly, purposely or recklessly drawing, painting or making any significant mark or inscription thereon.
9.  Sexual assault, stalking or other violation of the Delaware Technical & Community College Sexual Assault Policy.
10. Violation of the Delaware Technical & Community College Policy Prohibiting Weapons and Dangerous Instruments or Devices.
11. Violation of the Delaware Technical & Community College Sexual Harassment Policy which will be handled according to the Procedure for the Resolution of Sexual Harassment Complaints as published in the Student Handbook.
12. Violation of the Delaware Technical & Community College Acceptable Use of Electronics Networks Policy.
13. Violation of any other published Delaware Technical & Community College policy, rule and/or regulation included in the Student Handbook and elsewhere.
14. Any other violation of federal, state or local law.

4

Approved by President's Council 2/14/06

     B.     Procedure for the Resolution of a Complaint Against a Student

     Any member of the College community who has reason to believe that a student has violated the Standards of Student Conduct should report the alleged violation to one of the following College officials:

- Members of the Public Safety Department
- Dean of Student Services
- Dean of Instruction
- Director of Corporate and Community Programs (for non-credit students)
- Evening Coordinator/Evening Operations Manager

     The Vice President and Campus Director and each of the College officials designated above shall have the authority to immediately remove from campus any student who is accused of violating the Standards of Student Conduct when, in the opinion of the Vice President and Campus Director or other designated College official, the student's continued presence on campus creates an unreasonable risk to the health, safety and/or welfare of any member of the College community or is disruptive to the learning environment. This action may include calling the local law enforcement officers as necessary. In addition, after review with the respective Vice President/Campus Director, the Dean of Student Services shall have the authority to suspend a student pending a hearing in cases when, in the opinion of the Dean of Student Services, the welfare of the College community is endangered or jeopardized by the student's continued presence on campus or to place such conditions on the student's presence on campus as he/she determines in his/her discretion to be in the best interest of the College, its students and staff.

     In cases where the initial report of alleged student misconduct is reported to a Dean of Instruction or a Public Safety Officer, he/she shall report the complaint to the Dean of Student Services as soon thereafter as is reasonably practicable.

     The following procedure shall apply to all complaints against a student unless another procedure and/or process has been established by another College Policy or by agreement for students in non-credit courses.

     Upon receipt of notice that a violation of the Standards of Student Conduct is believed to have occurred, the Dean of Student Services shall utilize the following procedure to resolve the matter:

     **Step 1** – If appropriate, the Dean of Student Services shall encourage the complaining party to first meet with the student accused of violating the Standards of Student Conduct in an effort to seek a satisfactory resolution in an informal manner through discussion.

Approved by President's Council 2/14/06

**Step 2** - In the opinion of the complaining party, if a satisfactory resolution is not accomplished at Step 1, or if informal discussions with the accused would jeopardize the health, safety or welfare of the complaining party, the Dean of Student Services shall request a formal written complaint from the complaining party. The written complaint shall be received within five (5) days after the request from the Dean of Student Services and shall include the name of the person accused of violating the Standards of Student Conduct, a statement of the specific Standards of Student Conduct alleged to have been violated by the accused, the manner in which the Standards of Student Conduct are alleged to have been violated, the identity of any person who has knowledge of any fact supporting the charge(s) and a summary of all facts of which the person has knowledge, a summary of efforts to resolve the matter to date and the relief sought by the complaining party.

The Dean of Student Services, after reviewing the complaint to ensure that all required information has been provided and the resolution process has been properly followed, will forward a copy of the written complaint to the accused, who will be given an opportunity to respond in writing to the accusations against him or her within five (5) working days. The Dean of Student Services shall include a copy of The Student Rights and Standards of Student Conduct and shall advise the accused of the following:

- That the accused violator has the right to a hearing before a Campus Judicial Committee in accordance with the hearing process outlined in Section VI.
- That the accused violator has a right to be represented by an advisor or an attorney in a hearing before the Campus Judicial Committee. The name of the advisor or attorney must be submitted to the Campus Judicial Committee at least twenty-four (24) hours prior to the hearing.
- That the accused violator has a right to waive a hearing before the Campus Judicial Committee and to accept the disposition of the matter as determined by the Dean of Student Services, including the possible sanctions to be imposed.
- That waiving the right to a hearing includes waiving the right to an appeal.
- That the accused violator will be deemed to have waived his/her right to a hearing before the Campus Judicial Committee unless a written request is received by the Dean of Student Services within seven (7) working days after the date of the notice advising the accused violator of his/her rights as contained herein.
- That the accused violator has the right to appeal the decision of the Campus Judicial Committee to the Dean of Student Services.

In the event the accused elects to have a hearing, the Dean of Student Services shall notify the Vice President and Campus Director of the need to appoint a Campus Judicial Committee. Upon receipt of the names of the Campus Judicial Committee appointments, the Dean of Student Services will notify all parties, in writing, of the date, time and place of the scheduled hearing. The hearing shall be conducted in accordance with Section VI.

6

Approved by President's Council 2/14/06

Either party has the right to appeal the decision of the Judicial Committee to the Dean of Student Services within seven (7) working days after receipt of the decision.

In the event that the accused student waives his/her right to a hearing or withdraws a request that was previously made, the Dean of Student Services shall conduct such investigation into the allegations as he/she deems necessary and shall notify the complainant and the accused student in writing of his/her determination. The investigation of the alleged violation and the subsequent decision of the Dean of Student Services shall be final. The Dean shall notify the accused violator and the complaining party, in writing, of the final determination.

C.    Sanctions for Violation of Student Conduct Standards

Sanctions applied for violations of Student Conduct Standards may include any one or more of the following:

1. Written Reprimand - A written notice to the student that his or her actions violated the Standards of Student Conduct and that future incidents of misconduct may be cause for further disciplinary action.
2. Disciplinary Probation - A specified period of time during which the student is expected to demonstrate appropriate conduct as a member of the academic community.
3. Academic or Social Restriction - Exclusion from stated classes, facilities, services or activities for a specified period of time.
4. Restitution - Payment for damages to College property or the property of another.
5. Rehabilitative Referral - Referral to an accepted physician or mental health counselor for evaluation and, if indicated, treatment for a physical, mental or psychological condition or disorder.
6. Suspension - Temporary (5 days or less) withdrawal of the student's right to attend classes or otherwise be present on College premises or to attend College functions, whether on campus or off campus.
7. Dismissal - Withdrawal of the privilege of registration, class attendance or activities on any campus of the College for an indefinite period of time.

The College reserves the right to refer a student for criminal prosecution, which may be in addition to any sanction set forth above.

7

Approved by President's Council 2/14/06

## VI.    The Hearing Process

Written charges of Violations of Student Conduct Standards in which judicial proceedings are elected, will be referred to and heard by a Campus Judicial Committee composed of:

Two (2) students of the campus appointed by the Student Government Association.

Two (2) staff members, one (1) each appointed by the Dean of Instruction and the Dean of Student Services.

Delaware Technical & Community College's Chief Legal Counsel, or his/her designee, who shall serve as the chairperson.

No member of the Campus Judicial Committee may be a party to the case for which he/she is sitting in judgment. In the event that Chief Legal Counsel is a party or potential witness, then the chairperson shall be appointed by the College President. Pending final decision of the complaint, the status of the accused will not change as to his/her continued presence on campus and participation in scheduled assignments or classes, except where his/her presence constitutes a real and present danger to himself/herself, to others or to the orderly operation of the College.

The accused will be advised by the Dean of Student Services of possible sanctions or disciplinary action with sufficient detail to enable him/her to prepare properly for the hearing. The accused may withdraw his/her request for a hearing at any time.

The complaining party may withdraw charges at any time. Once charges are withdrawn, they may not be reintroduced unless sufficient new evidence is brought forth. A written request to withdraw charges must be submitted to the Dean of Student Services who will notify all parties of the action.

The chairperson shall preside over the hearing and shall make all rulings concerning the admissibility of evidence. The hearing will be upon sworn or affirmed testimony and the proceedings will be tape-recorded for the preservation of the record. The Delaware Uniform Rules of Evidence shall be used as a guide to the admissibility of evidence. All documents submitted as evidence and the tape-recording of the hearing will be kept for not less than one (1) year. Since the hearing will be audio tape-recorded, it will be necessary for each person to state his or her identity when speaking. The parties may submit relevant factual data, documents, testimony and argument. Only evidence and argument presented at the hearing or presented to the Campus Judicial Committee and opposing parties before the hearing may be taken into consideration by the Judicial Committee in making its findings and rendering its decision. All members of the Judicial Committee must be present to proceed to hearing and must remain for the duration of the proceedings.

8

Approved by President's Council 2/14/06

To begin the hearing, the chairperson of the Judicial Committee will read the statement of charges. The person bringing the charges may present evidence, call witnesses in his/her own behalf, and confront and cross-examine witnesses called by the accused. The accused shall have the right to present evidence, to call witnesses in his/her own behalf, and to confront and cross-examine witnesses called by the person bringing the charges. The Campus Judicial Committee may also call witnesses to give testimony, who shall also be subject to cross-examination by either party. The person bringing the charges will be required to attend the hearing. The hearing will be open only to members of the Campus Judicial Committee, the accused and his/her advisor or attorney, the person bringing the charges and his/her advisor or attorney, and witnesses called to testify. All witnesses shall be sequestered.

Upon conclusion of the hearing, the Judicial Committee will make findings of fact and conclusion as to innocence or guilt which will be established by a preponderance of evidence and by a majority vote of the Campus Judicial Committee. The burden of proof rests with the person bringing the charges. The chairperson will cast a vote only in case of a tie vote. The Campus Judicial Committee will submit a written decision to the Dean of Student Services within seven (7) working days, setting forth its findings and, if applicable, the disciplinary action to be imposed where a finding of guilt is rendered upon the student. The Dean of Student Services will forward a copy of the Campus Judicial Committee's decision to the accused student and to the person bringing the charges within five (5) working days after his or her receipt thereof.

In cases where a violation of the Standards of Student Conduct is found, the Dean of Student Services shall advise the student of his or her right to submit an appeal, in writing, within seven (7) working days from the receipt of the written notice. The appeal shall be to the Dean of Student Services and shall be based on the record before the Campus Judicial Committee. Upon review and examination of the Campus Judicial Committee's findings, the Dean may either affirm or reverse the Committee's decision. The decision by the Dean of Student Services shall be in writing and shall be the final disposition of the complaint.

9

Exhibit D

## <u>AFFIDAVIT OF MICHAEL TERRANOVA</u>

STATE OF DELAWARE            :
                             :     SS.
COUNTY OF NEW CASTLE         :

I, Michael Terranova, first being duly sworn according to law, do hereby depose and say as follows:

1.    I am a Criminal Justice instructor at Delaware Technical and Community College.

2.    I am personally familiar with Christina Paoli.

3.    I witnessed Christina Paoli in my class on the Stanton Campus of Delaware Technical and Community College on May 4, 2006.

Signature: _____
           Michael Terranova

SWORN TO AND SUBSCRIBED before me, a Notary Public/Notarial Officer of the County and State aforesaid on this 30th day of August, 2007.

_____
Notary Public/Notarial Officer

Exhibit E

# DELAWARE TECHNICAL & COMMUNITY COLLEGE

## STANTON CAMPUS
## PUBLIC SAFETY DEPARTMENT



**TYPE OF REPORT: INITIAL**    **Investigating Officer: PSO Krzanowski**

| DATE: | May 10, 2006 | PAGE 1 | COMPLAINT NO: | Supplement Code |
|---|---|---|---|---|
| | | | **Z4-06-0063** | |

| NAME: | RELATIONSHIP TO CAMPUS: STUDENT<br>**Christina R. Paoli** | DOB: | SEE BELOW<br>Female<br>06 /05 /1962 | TELEPHONE:<br>CELL    **(302)260-1036**<br>NONE |
|---|---|---|---|---|

| ADDRESS:<br>CITY/STATE: | **400 Stanton-Christiana Rd.**<br>**Newark, DE 19713** |
|---|---|

| LOCATION OF INCIDENT | Lot 1 |
|---|---|
| OCCURRED DAY/DATE/TIME | **Thursday  May  4 2006  Time Incident Occurred  0935  HRS** |
| REPORTED DAY/DATE/TIME | **Thursday  May  4 2006  Time Incident Was Reported 0935  HRS** |

| TYPE OF<br>INCIDENT(s) | **OTHER**<br>**N/A**<br><br>**Cleary Act Violation?:** NO |
|---|---|

Emergency Services Used: NONE
College Official Notified of incident? CHIEF OF PUBLIC SAFETY

| PROPERTY SECTION: N/A    OWNER OF PROPERTY: N/A |
|---|

List Stolen/Damaged Property Include Value of Property

Investigators Signature:_____    Supervisor Signature:_____
           Date:_____                    Date:_____

**COMPLAINT NUMBER Z4-06- 0063**          **DATE OF REPORT:** May 10, 2006

In all statements include day-date-time-place of contact, name-Address-Telephone.

| | |
|---|---|
| **STATEMENT BY: VICTIM** | |
| **STATEMENT BY: WITNESS** | |
| **STATEMENT BY: WITNESS** | |
| **STATEMENT BY: WITNESS** | |

**INVESTIGATIVE ACTION BY THE OFFICER:** This section is a chronological synopsis of the action taken by the Officer(s) during the investigation.

On May 4, 2005 at approximately 0935Hrs while on patrol in Lot 1 writer noticed a blue Ford Taurus with Delaware tags 410176 backed into a parking space with the rear driver side door open and a leash approximately twenty feet in length closed into the trunk and a bowl of water next to the rear tire. Writer then approached the vehicle and noticed a black lab in the back seat and a note in the door jam stating "I am in the DELJIS classroom if you need me 260-1036 The dog is not being neglected. Thank You Chris". Writer then reported this to Lt. Terry, and writer was instructed to go to the DELJIS lab and make contact with the later identifed Christina R Paoli (DOB06.05.1962). Writer went to classroom A213 and made contact with Mrs. Paoli at 0940Hrs and advised her that her dog could not be on campus with the leash in the trunk and the door open because the dog would still be able to approach people even though it was tied up. Writer then asked for the time being if she could just roll the windows down and put the dog in the car. Mrs. Paoli then stated "Off the record I have been receiving threats from the softball team and I brought the dog for my protection." Mrs. Paoli also stated " I talked to people higher up and they said that it was OK." Writer then explained again that there are to be no pets on campus unattended and that for the time being if she could put the dog in the car and roll the windows down, and that Public Safety Officers will keep an eye on the dog during our patrols. Mrs. Paoli then complied with-out incident and put the dog in the car with the windows down.

The dog was then checked on at 1119Hrs and 1222Hrs.
**DESCRIPTION OF SUSPECT: GENDER: FEMALE     RACE: WHT   APPROX. AGE/D.O.B.** 43
**HEIGHT:**N/A   **WEIGHT:** N/A    **BUILD:** N/A    **COLOR OF HAIR:** N/A
**COLOR OF EYES:** N/A     **CLOTHING DESCRIPTION:** Pink shirt, Jean shorts and White shoes

**DISPOSITION:  INACTIVE**

Investigators Signature:_____    Supervisor Signature:_____
         Date:_____           Date:_____

**COMPLAINT NUMBER: Z4-06-0063**          **DATE OF REPORT: May 10, 2006**

**ADDITIONAL INFORMATION:**

vestigators Signature:_____  Supervisor Signature:_____
          Date:_____                    Date:_____

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| CHRISTINA R. PAOLI, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C. A. NO. 06-462 GMS |
| | : | |
| THE STATE OF DELAWARE and | : | JURY TRIAL DEMANDED |
| DELAWARE TECHNICAL AND | : | |
| COMMUNITY COLLEGE, | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I, Marc S. Casarino, Esquire, do hereby certify that on this 6th day of September, 2007,

Defendant Delaware Technical and Community College's Reply Brief in Support of its Motion

for Judgment on the Pleadings was served upon all counsel of record via CM/ECF and upon *pro

se* Plaintiff Christina R. Paoli via U.S. Mail, postage pre-paid, to:

> Christina R. Paoli
> 600 Third Street
> Rehoboth, DE 19971.

**WHITE AND WILLIAMS LLP**

By:   _/s/ Marc S. Casarino_____
Marc S. Casarino (ID #3613)
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE  19899-0709
Phone: (302) 467-4520
Facsimile:  (302) 467-4550
Attorneys for Defendant,
*Delaware Technical and Community
College*