# EXHIBIT A

**Westlaw.**

Not Reported in F.Supp.2d                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 22953179 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

**C**Satterfield v. Brady
D.Del.,2003.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Charles M. SATTERFIELD, III, in his individual
capacity and as Administrator of The Estates of
Daniel Oldroyd, deceased, and Amelia Annie
(Vercoe) Oldroy, deceased, Plaintiff,
v.
M. Jane BRADY, in her individual capacity and as
Attorney General Of the State of Delaware; William
M. Remington, in his individual capacity and as State
Escheator Of the State of Delaware; and J. Patrick
Hurley, in his individual capacity and as Deputy
Attorney General of the State of Delaware,
Defendants.
**No. Civ.A. 03-598-SLR.**

Dec. 9, 2003.

Charles M. Satterfield, III, Houston, Texas. Plaintiff,
pro se.
Allison E. Reardon, Department of Justice,
Wilmington, Delaware, for Defendants.

MEMORANDUM OPINION
ROBINSON, Chief J.

## I. INTRODUCTION

*1 Plaintiff Charles M. Satterfield, III filed this
action on June 25, 2003 against Jane M. Brady in her
individual capacity and as Attorney General of the
State of Delaware ("Brady"), William M. Remington
in his individual capacity and as State Escheator of
the State of Delaware ("Remington"),[FN1] and J.
Patrick Hurley in his individual capacity and as
Deputy Attorney General of the State of Delaware
("Hurley") (hereinafter collectively referred to as
("defendants"). (D.I.1) Plaintiff's complaint asserts
claims under 42 U.S.C. § 1983 for the deprivation of
constitutional rights under color of state law in
violation of the Fourteenth Amendment to the United
States Constitution and for violations of Delaware
escheat laws. (Id.) In response to plaintiff's
complaint, defendants filed a motion to dismiss on
July 10, 2003. (D.I.3) Shortly thereafter, on August 8,
2003, in response to notice of depositions served by
plaintiff, defendants filed a motion to stay discovery

pending the outcome of their motion to dismiss.
(D.I.13) Both defendants' motions are currently
before the court.[FN2]The court has jurisdiction over
this action pursuant to 28 U.S.C. § 1331. For the
reasons that follow, the court grants defendants'
motion to dismiss and denies defendants' motion to
stay discovery as moot.

> FN1. As of this time, service has not been
> effected upon defendant Remington. The
> Attorney General of the State of Delaware,
> however, asserts that she will defend
> Remington on the same grounds as stated
> herein if and when he is properly served.

> FN2. On August 18, 2003, plaintiff filed a
> notice of subpoena with the court and served
> it on Patrick Carter ("Carter") of the
> Delaware State Division of Revenue to
> appear for a deposition. (D.I.11) Thereafter,
> plaintiff received a letter from Carter's
> counsel, Allison E. Reardon ("Reardon")
> indicating that he would not attend the
> deposition pending the court's decision on
> the defendants' **motion to dismiss**. (D.I.23)
> In response to this letter plaintiff filed a
> **motion** for sanctions against Reardon on
> September 29, 2003. (D.I.25) No
> **supporting** brief was filed in conjunction
> with this **motion**. The court does not require
> briefing to resolve this **motion** and denies it
> as being without merit.

## II. BACKGROUND

Plaintiff has been trying for many years to recover
the current value of common stock originally
purchased by his great-grandfather, Daniel Oldroyd
("Oldroyd"). (D.I.1) The stock certificate,
representing fifty shares of $1.00 par value stock,
was originally issued to Oldroyd on March 19, 1929
by E.L. Smith Oil Company, Inc. ("Smith Oil").(Id.)
Almost a decade later, in 1938, Smith Oil merged
with Lion Oil and Refining Company ("Lion
Oil").(Id. at ¶ 11) In 1955, Lion Oil merged with
Monsanto Company ("Monsanto").(Id.) Each of these
companies incorporated under the laws of the State of
Delaware.(Id. at ¶ 8, 11)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiff alleges that Monsanto is in possession of his "unexchanged" or "unclaimed" interest in the Smith Oil stock certificate. (*Id.* at ¶ 12) As a result of this belief, plaintiff initiated an action directly against Monsanto in an effort to recover the current value of this certificate. (*Id.* at ¶ 13) In September of 1999, plaintiff contacted the Office of the Attorney General and spoke with Hurley to request the State's assistance with his litigation.(*Id.*). The State decided not to intervene with plaintiff's litigation against Monsanto. (D.I.4).[FN3]

> FN3. The court held in its August 1st, 2003 order that because defendants relied upon an affidavit in **support** of their **motion** to **dismiss**, the averments of fact in the affidavit shall be accepted as true, pursuant to Fed.R.Civ.P. 56(e), for the purpose of deciding the **motion** to **dismiss** unless the plaintiff timely files a counter-affidavit or statement under penalty of perjury refuting said averments. (D.I.6) Plaintiff has not filed such a counter-affidavit.

### III. STANDARD OF REVIEW

By order dated August 1, 2003, the court held that because matters outside the pleadings were presented to the court in support of defendants' motion to dismiss, the court intended to review the motion as one for summary judgment pursuant to Fed.R.Civ.P. 12(b) and 56(b). (D.I.6) A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10 (1986).

**\*2** "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."*Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial." ' *Matsushita,* 475 U.S. at 587 (quoting

Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the **motion**." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in **support** of the nonmoving party, however, will not be sufficient for denial of a **motion** for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the nonmoving party **fails** to make a sufficient showing on an **essentialelement** of his case with respect to which he has the burden of proof, then the moving party is entitled to judgment as a matter of law. See*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

### IV. DISCUSSION

Section 1983 imposes liability on any person who, under color of state law, deprives another of any rights secured by the Constitution or the laws of the United States. See*42 U.S.C. § 1983 (1996).* To establish a § 1983 violation, a plaintiff must "demonstrate a violation of a right protected by the Constitution ... that was committed by a person acting under the color of state law."*Nicini v. Morra,* 212 F.3d 798, 806 (3d Cir.2000). The "first step in evaluating a Section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all."*Id.* Plaintiff at bar alleges that defendants, under color of state law, violated his rights to **dueprocess** and to equal protection as guaranteed by the Fourteenth Amendment by **failing** to file suit against Monsanto under Delaware escheat laws. (D.I. 1 at ¶¶ 40, 41)

Before addressing plaintiff's **dueprocess** and equal protection **claims**, the court recognizes that the Eleventh Amendment bars § 1983**claims** against state officials sued in their official capacities. See*Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). Therefore, the court **dismisses** plaintiff's § 1983**claims** against defendants in their official capacities. The court focuses the instant opinion on plaintiff's **claims** against defendants in their individual capacities.

### A. DueProcessClaim

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The court finds that plaintiff **fails** to state a **claim** for a violation of his **dueprocess** rights. A **dueprocessclaim** consists of three **elements**: (1) defendants must deprive plaintiff of an interest protected by law; (2) that deprivation must be the result of some governmental action; and (3) the deprivation must be without **dueprocess**. *SeeCospito v. Heckler,* 742 F.2d 72, 80 (3d Cir.1984). As to the first **element**, this court has recognized that "a plaintiff must **demonstrate** that he or she was deprived of a life, liberty or property interest."*SeeCunningham v. Becker,* 96 F.Supp.2d 369, 374 (D.Del.2000).

*\*3* While plaintiff **claims** that he has been deprived of a property interest, namely the unclaimed shares of stock, the United States District Court for the Southern District of New York ruled that he does not have a property interest in the shares of stock. *SeeSatterfield v. Monsanto Company and Solutia, Inc.,* 88 F.Supp.2d 288 (S.D.N.Y.2000), *aff'd,*238 F.3d 217 (2d. Cir.2001), *cert.denied,*533 U.S. 956 (2001). As a result of this decision, the court finds that plaintiff **fails** to show the first **element** requisite to a **dueprocessclaim**. The court, therefore, need not consider the remaining two **elements** and grants defendants' **motion** for summary judgment as to plaintiff's **dueprocessclaim**.

## B. Equal Protection **Claim**

The court also finds that plaintiff **fails** to state an equal protection **claim** against the defendants. "To prevail on an equal protection **claim**, a plaintiff must present evidence that s/he has been treated differently from persons who are similarly situated."*SeeWilliams v. Morton,* 343 F.3d 212, 221 (3d Cir.2003). In the present case, plaintiff does not present any evidence that he has been treated any differently from persons similarly situated.[FN4]Accordingly, the court finds that plaintiff fails to meet his burden with regard to his equal protection claim. The court grants defendants' motion for summary judgment as to plaintiff's equal protection claim.

> FN4. The essence of plaintiff's equal protection claim is that because the State of Delaware failed to exercise its power under the State's escheat law, plaintiff was not afforded the same treatment as other owners of unclaimed property. However, plaintiff points out in his own brief that he has found no evidence of Delaware's escheat law being applied to unclaimed stock allegedly in the hands of Delaware corporations. Therefore, by making the decision not to intervene in plaintiff's litigation or to initiate an escheat of unclaimed stock, the State of Delaware actually treated plaintiff in a manner consistent with the other owners of unclaimed stock.

## V. CONCLUSION

For the reasons stated, the court grants defendants' motion to dismiss, denies defendants' motion to stay discovery as moot, and denies plaintiff's motion for sanctions as lacking merit. An appropriate order shall issue.

## ORDER

At Wilmington this 9th day of December, 2003, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that:

1. Defendants' motion to dismiss (D.I.3) is granted.

2. Defendants' motion to stay discovery (D.I.13) is denied as moot.

3. Plaintiff's motion for sanctions (D.I.25) is denied as being without merit.

D.Del.,2003.
Satterfield v. Brady
Not Reported in F.Supp.2d, 2003 WL 22953179 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Slip Copy                                                                                          Page 1
Slip Copy, 2007 WL 108385 (D.Del.)
**(Cite as: Slip Copy)**

**H**Collins v. Hunter
D.Del.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Harry T. COLLINS, Plaintiff,
v.
Linda HUNTER, Warden Raphael Williams,
Correctional Medical Systems, and Dr. Derosier,
Defendants.
**No. Civ.A. 05-624-SLR.**

Jan. 12, 2007.

Harry T. Collins, pro se Plaintiff.
Lisa Ann Barchi, Deputy Attorney General,
Delaware Department of Justice, Wilmington,
Delaware, for Defendant Warden Raphael Williams.
Kevin J. Connors, Wilmington, Delaware, for
Defendant Correctional Medical Systems.

MEMORANDUM OPINION
ROBINSON, Chief J.

I. INTRODUCTION

**\*1** Presently before the court are **motions** to dismiss
filed by defendant Warden Raphael Williams
("Warden Williams") and Correctional Medical
Services, Inc. ("CMS").[FN1] (D.I.24, 45) Also before
the court is plaintiff's letter/**motion** to amend/correct
the amended complaint. (D.I.43) For the reasons set
forth below, the court will grant the **motions** to
dismiss (D.I.24, 45), and will deny the **motion** to
amend (D.I.43). The court will give plaintiff leave to
amend the complaint.

FN1. Improperly named as Correctional
Medical Systems.

II. BACKGROUND

Plaintiff has filed several **pleadings**, the combination
of them forming his complaint. (D.I.2, 6, 26, 37, 40)
Plaintiff alleges he has a number of medical
conditions such as Hepatitis C, osteoarthritis,
gallstones, chronic hip and back pain, and mental
problems. (D.I.6) Plaintiff alleges that he is in
constant pain, and has placed sick call slips to no

avail. Id. Plaintiff also alleges that he sought, and was
refused, bottom bunk status and an overlay for his
mattress. Id. He alleges that on a number of
occasions, the nursing staff, under the direction of
Linda Hunter, failed to provide him with proper
medical treatment. He also alleges that he was denied
required medications and medical treatment. Plaintiff
alleges that he notified each defendant [FN2] in an
attempt to resolve the matter, but received no
response.

FN2. Service was unsuccessfully attempted
on defendants Linda Hunter and Dr.
Derosier. (D.I.18, 54)

III. DISCUSSION

A. Standard of Law

Rule 12(b)(6) permits a party to move to dismiss a
complaint for failure to state a claim upon which
relief may be granted. Fed.R.Civ.P. 12(b)(6). The
purpose of a motion to dismiss is to test the
sufficiency of a complaint, not to resolve disputed
facts or decide the merits of the case. Kost v.
Kozakiewicz, 1 F.3d 176, 183 (3d Cir.1993). To that
end, the court assumes that all factual allegations in
plaintiff's pleading are true, and draws all reasonable
factual inferences in the light most favorable to
plaintiff.Amiot v. Kemper Ins. Co., 122 Fed. Appx.
577, 579 (3d Cir.2004). However, the court should
reject "unsupported allegations," "bald assertions," or
"legal conclusions." Id. A Rule 12(b)(6)**motion**
should be granted to dismiss a *prose* complaint only
when "it appears beyond doubt that the plaintiff can
**prove** no set of facts in **support** of his **claim** which
would entitle him to relief."Estelle v. Gamble, 429
U.S. 97, 106 (1976) (quoting Conley v. Gibson, 355
U.S. 41, 45-46 (1957)). Warden Williams moves for
dismissal/summary **judgment** pursuant to Rules
12(b)(1), 12(b)(6), and 56(c)[FN3] on the bases that he
is entitled to **judgment** as a matter of law because 1)
there are no genuine issues of material fact in dispute,
and 2) plaintiff has not, and cannot, make a sufficient
showing of the **essentialelements** of his case.
(D.I.25) More particularly, Warden Williams argues
that the complaint **fails** to state a **claim** upon which
relief may be granted, the allegations against him do
not meet the standard for deliberate indifference

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 2
Slip Copy, 2007 WL 108385 (D.Del.)
**(Cite as: Slip Copy)**

under the Eighth Amendment, the complaint **fails** to allege his personal involvement, the Eleventh Amendment immunizes him from suit in his official capacity, and he is entitled to qualified immunity.

> FN3. The **motion** for summary **judgment** is premature. Plaintiff is "entitled to discovery before being put to [his burden of] proof."*Alston v. Parker,* 363 F.3d 229, 233 n. 6 (3d 2004). Therefore, the court will deny Warden Williams' **motion,** to the extent it should be construed as a **motion** for summary **judgment.**

**\*2** Defendant CMS moves for dismissal, pursuant to Fed.R.Civ.P. 12(b)(6), arguing that the complaint **fails** to state a **claim** upon which relief may be granted. (D.I.45, 46) Specifically, CMS argues that the complaint **fails** to allege any unconstitutional policy or custom against it and that the complaint **fails** to allege that the execution of such a policy or custom caused the constitutional tort at issue. CMS also argues that there is no factual **support** to plaintiff's contentions that it exhibited deliberate indifference to a serious medical need. Plaintiff did not respond to the **motion.**

Warden Williams and CMS submitted exhibits outside the **pleadings in support** of their **motions** to dismiss. The Federal Rules of Civil Procedure provide that when a **motion** to dismiss is filed pursuant to Rule 12(b)(6) and matters outside the **pleadings** are presented to and not excluded by the court, the matter shall be treated as one for summary **judgment** and disposed of as provided in Fed.R.Civ.P. 56. Fed.R.Civ.P. 12(b). The court will not consider the exhibits submitted and will treat both **motions** as **motions** to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

### B. Medical Needs **Claim**

Warden Williams argues that the amended complaint **fails** to allege his deliberate indifference to a serious medical need and he points to plaintiff's medical records. Similarly, CMS argues that, to the extent plaintiff states a **claim,** any contentions of deliberate indifference to a serious medical need lack factual **support.** It, too, points to plaintiff's medical records. As discussed, however, those records are not considered when ruling on a **motion** to dismiss. Warden Williams also argues that the allegations are

silent as to his actual knowledge of plaintiff's medical condition and, therefore, plaintiff **fails** to **demonstrate** deliberate indifference to a serious risk of harm. Plaintiff responded to the **motion** to dismiss by arguing that medical and the warden's staff were negligent in dealing with his health issues. (D.I.30)

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.*Estelle v. Gamble,* 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble,* 429 U.S. at 104;*Rouse v. Plantier,* 182 F .3d 192, 197 (3d Cir.1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care."*Estelle v. Gamble,* 429 U.S. at 104-05.

However, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley,* 219 F.3d 132, 138-140 (2d Cir.2000). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble,* 429 U.S. 97, 107 (1976). Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation. *White v. Napoleon,* 897 F.2d 103, 108-09 (3d Cir.1990) (citations omitted); *see also*Daniels v. Williams,* 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See*Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir.2004) (citations omitted).

**\*3** Even when reading the complaint in the most favorable light to plaintiff, he fails to state an actionable constitutional claim against defendants Warden Williams and CMS for deliberate indifference to a serious medical need. The amended complaint does not allege that either Warden Williams or CMS were aware that plaintiff faced a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

substantial risk of serious harm or that they failed to take reasonable steps to avoid the harm. Moreover, in plaintiff's response, his position was that medical and Warden Williams were negligent. Negligence, however, is not comparable to deliberate indifference, and does not rise to the level of a constitutional violation. Warden Williams and CMS are correct that the amended complaint does not adequately allege that they violated plaintiff's constitutional rights under the Eighth Amendment. Therefore, the court will grant the **motions** to dismiss on the issue of deliberate indifference to a serious medical need.[FN4]

> FN4. Because the complaint **fails** to allege deliberate indifference to a serious medical need, plaintiff's § 1983 **claim** must **fail**. Hence, the court will not address Warden Williams' qualified immunity defense.

### C. Personal Involvement/Failure to State a **Claim**

Warden Williams argues that neither the complaint nor the amended complaint specify what actual knowledge he had of plaintiff, and how he was deliberately indifferent to a risk of serious harm. The amended complaint (D.I.6) alleges that plaintiff's medical needs are not being met and that all attempts to resolve the issue were "unanswered with indifference and disrespect." *Id.* at 3. Warden Williams is named in the caption of the complaint and in the section listing defendants. The amended complaint contains one sentence that appears to be directed towards Warden Williams. It alleges that plaintiff has "notified each defendant of this problem and they have not responded."*Id.* at 3.

A civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (citing *Boykins v. Ambridge Area Sch. Dist.,* 621 F.2d 75, 80 (3d Cir.1980); *Hall v. Pennsylvania State Police,* 570 F.2d 86, 89 (3d Cir.1978)). Additionally, when bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

" 'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated

solely on the operation of respondeat superior." ' *Evancho v. Fisher,* 423 F.3d at 353 (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights. *Id.;see*Monell v. Department of Social Services, 436 U.S. 658, 694-95 (1978). Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff. *Sample v. Diecks,* 885 F.2d 1099, 1117-118 (3d Cir.1989); *seealso*City of Canton v. Harris, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women,* No. 04-1786, 128 Fed. Appx. 240 (3d. Cir.2005).

**\*4** The complaint does not adequately allege Warden Williams' personal involvement. It makes no direct reference to Warden Williams, but contains a general reference that plaintiff notified "each defendant" of his problem with no response. Notably, the complaint does not indicate when or how Warden Williams was notified and, hence, does not contain sufficient allegations to apprise Warden Williams of his alleged wrongdoing. Therefore, the court will grant Warden Williams' motion to dismiss on the issue of personal involvement.

### D. Eleventh Amendment Sovereign Immunity

Warden Williams correctly argues that the doctrine of sovereign immunity bars suits for monetary damages against state employees in their "official capacities," absent waiver or Congressional override. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985). There is no evidence that § 1983 intended to effect a Congressional override of state sovereign immunity. The statute has been held not to "provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."*Will v. Michigan Dep't of State Police,* 491 U.S. 58, 66 (1989). Section 1983 authorizes suits against "persons," and a suit against a state official is "no different than a suit against a state itself."*Id. at 71.*"The state itself [is not] a person that Congress intended to be subject to liability."*Id. at 68.*Also, there is no indication that the State of Delaware has waived or abrogated its sovereign immunity with respect to § 1983 **claims**. Therefore, the court will grant Warden Williams' **motion** to dismiss on the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 4
Slip Copy, 2007 WL 108385 (D.Del.)
**(Cite as: Slip Copy)**

issue of Eleventh Amendment immunity.

### E. **Claims** Against CMS

CMS argues that plaintiff cannot **prove** any set of facts to **demonstrate** that it had a policy or custom that led the medical staff to deprive plaintiff of necessary medical care. It also argues that in § 1983 **claims**, it cannot be held responsible for the acts of its employees under a respondeat superior theory.

As discussed above, the amended complaint alleges that plaintiff's medical needs are not being met and that all attempts to resolve the issue were "unanswered with indifference and disrepect." *Id.* at 3. Like Warden Williams, the amended complaint names CMS in the caption of the complaint and in the section listing defendants. Again, as with Warden Williams, the amended complaint contains one sentence that appears to be directed towards CMS, that plaintiff has "notified each defendant of this problem and they have not responded."*Id.* at 3.

As previously discussed, in order to state an inadequate medical treatment claim under the Eighth Amendment, an inmate must allege deliberate indifference to serious medical needs constituting "unnecessary and wanton infliction of pain."*Estelle v. Gamble,* 429 U.S. at 104. When a plaintiff relies on the theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that **demonstrates** such deliberate indifference. *Sample v. Diecks,* 885 F.2d 1099, 1110 (3d Cir.1989); *Miller v. Correctional Medical Systems, Inc.,* 802 F.Supp. 1126, 1132 (D.Del.1992). In doing so, plaintiff must identify a particular policy or practice that CMS failed to enforce and show that: (1) the existing policy or practice created an unreasonable risk of injury; (2) CMS was aware that the unreasonable risk existed; (3) CMS was indifferent to that risk; and (4) plaintiff's injury result from the policy.

**\*5** The complaint contains no allegations identifying a policy or practice of CMS that suggests deliberate indifference to plaintiff's serious medical needs. Therefore, the court will grant CMS' motion to dismiss on the issues of policy or practice and respondeat superior.

### IV. MOTION TO AMEND

Pending before the court is plaintiff's letter/motion to amend/correct. (D.I.43) The letter contains a litany of complaints regarding medical treatment. Most notably, plaintiff complains that he submits slips for medical treatment, to no avail. He also complains that he has difficulty standing for long periods of time and was reprimanded for "laying on the floor." Plaintiff specifically complains that he was made to stand in line by C/O Chaplain even after plaintiff informed him that he could not. Plaintiff states that he fears for his health and well-being and alleges that the C/O's do not like people with disabilities. Plaintiff alleges that were he housed at CVOP, he would be allowed to "lay down as much as [he] want[s]." He also alleges that there is constant retaliation over the current lawsuit.

If a proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend. *Harrison Beverage Co. v. Dribeck Importers, Inc.,* 133 F.R.D. 463, 469 (D.N.J.1990). The proposed amendment is legally insufficient on its face. The general allegations fail to apprise the reader when the alleged wrongdoing took place or who committed the acts. C/O Chaplain is named as a new defendant, but the allegations against him do not rise to the level of a constitutional violation. Therefore, the court will deny the letter/motion to amend/correct.

### V. CONCLUSION

For the reasons set forth above, the court will grant state defendant's motion to dismiss (D.I.24) and Correctional Medical Services, Inc.'s motion to dismiss (D.I.45). The court will deny plaintiff's letter/motion to amend/correct. (D.I.43) Because defendants Linda Hunter and Dr. Derosier were not timely served they will be dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m). Plaintiff will be given leave to amend his complaint. An appropriate order will be entered.

### ORDER

At Wilmington this *12th* day of January 2007, for the reasons set forth in the memorandum opinion issued this date;

IT IS HEREBY ORDERED that:

1. State defendant's motion to dismiss (D.I.24) is

Slip Copy
Slip Copy, 2007 WL 108385 (D.Del.)
**(Cite as: Slip Copy)**

granted.

2. Correctional Medical Systems' motion to dismiss (D.I.45) is granted.

3. Plaintiff's letter/motion to amend/correct (D.I.43) is denied.

4. Defendants Linda Hunter and Dr. Derosier are dismissed without prejudice pursuant to <u>Fed.R.Civ.P. 4(m)</u>.

5. Plaintiff is given leave to file an amended complaint. The amended complaint shall be filed within 30 days from the date of this order. Plaintiff is placed on notice that the case will be closed if an amended complaint is not filed within the 30 day time period.

D.Del.,2007.
Collins v. Hunter
Slip Copy, 2007 WL 108385 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2006 WL 141680 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**Marsh v. **Delaware State** University
D.Del.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Prince Allen **MARSH**, Plaintiff,
v.
**DELAWARE STATE** UNIVERSITY, Dr. Charles
Smith, Drexel Ball, Kay Moses, Lowan Pitt,
Defendants.
**No. Civ.A. 05-00087JJF.**

Jan. 19, 2006.

Prince Allen **Marsh**, Plaintiff, pro se.
Frank E. Noyes, II, of White & Williams,
Wilmington, Delaware, for Defendants.

*MEMORANDUM OPINION*
FARNAN, J.
*1 Pending before the Court is a Motion For A
Preliminary Injunction (D.I.6) filed by Plaintiff,
Prince Allen **Marsh**, requesting the Court to require
Defendants to honor his five year NCAA scholarship
and allow him to continue attending classes at
**Delaware State** University (the "University").
Plaintiff also requests the Court to enjoin Defendants
from submitting "derogatory statements" about
Plaintiff to prospective schools that Plaintiff may
seek to attend. The Court held a hearing on the
Motion on December 1, 2005, and heard testimony
from Plaintiff, who appeared *pro se,* and Defendants
Pitt and Moses, who were represented by counsel.
For the reasons discussed, the Court will deny
Plaintiff's Motion.

BACKGROUND

According to the Complaint, Plaintiff started college
at **Delaware State** University in September 2001 with
a five year NCAA scholarship. Plaintiff was an
accomplished Track and Field athlete during his high
school years. With respect to his scholarship, Plaintiff
testified that he believes he has two and a half years
left on his scholarship and that his eligibility under
the scholarship ends sometime in 2007. Tr. at 17:13-
20; 19:5-8.

Plaintiff testified at the hearing that, on January 20,
2004, he was arrested by Dover Police off-campus

and was charged with possession of marijuana and
possession of a handgun. Tr. 20:1-11. Plaintiff
testified that he admitted to drug paraphernalia
charges, which Plaintiff described as a misdemeanor.
Tr. 44:15-23; 45:2-11. Plaintiff also testified that he
completed a six month drug program and a year of
probation in connection with his conviction. Tr.
43:21-24; 44:46. Plaintiff further testified that it was
his understanding that as of January 2006, his record
will be expunged. Tr.37:1-38:10.

Pursuant to a warrant, Plaintiff's dormitory room on-
campus was searched by Dover Police, along with a
**Delaware State** Police detective and a security officer
from the University. A single 9mm round of
ammunition matching the caliber of the weapon
found in Plaintiff's possession was recovered among
Plaintiff's belongings, along with a small plastic bag
of marijuana. Tr.33:18-23; DX-4.

By letter dated January 23, 2004, Plaintiff was
notified that he was being charged by the University
with possession of illegal drugs, possession of drug
paraphernalia and possession of a weapon and
ammunition. Plaintiff was immediately suspended
indefinitely pending a hearing and notified of his
right to request a hearing. DX-1. By letter dated
January 27, 2004, Plaintiff requested a hearing as
soon as possible. By letter dated January 28, 2004,
Plaintiff was notified of the time, date and location of
his hearing before the Zero Tolerance Subcommittee.
Plaintiff was further informed that he had the right to
have a student, faculty, or staff member present to
advise him and that he had the right to request the
presence of his accuser and present witnesses to
testify on his behalf.

Following the hearing, the members of the Zero
Tolerance Subcommittee issued a Sanction
Recommendation Form finding Plaintiff not
responsible for the drugs and drug paraphernalia
charges, but responsible for the ammunition charge.
The fact findings related to this charge indicate that
Plaintiff "admitted to possession of bullet." Based on
the finding of responsibility for the ammunition, the
Subcommittee recommended expulsion from the
University. This decision was administratively
reviewed by Defendant Lowan Pitt, who modified the
decision to hold Plaintiff responsible for drug

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 141680 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

paraphernalia in his room and vehicle based on the University's guidelines regarding student responsibility for areas under the student's control. Defendant Pitt noted in parentheses that if the accused presented a letter from the party in the car admitting ownership of the drugs, he would be found not responsible. The record does not reflect that such a letter was submitted by Plaintiff.

*2 By letter dated February 9, 2005, Plaintiff was informed that he had violated the Zero Tolerance Policy and would be expelled, effective immediately. Plaintiff was informed of his right to appeal and instructed that an appeal would only be allowed for (1) lack of due process, i.e. when a student can show an error in the hearing, or arbitrariness in the finding, (2) lack of substantial evidence, and (3) evidence that was not considered or available that would subsequently change the nature of the case. Plaintiff requested an appeal by letter dated February 11, 2004, on the grounds that substantial evidence did not support the charges against him. Plaintiff stated that the charges against him were not brought by the school, but by the State of Delaware, and that the Zero Tolerance Policy related to on-campus activities only, while he was arrested off-campus.

Plaintiff's request for an appeal was denied based on the "officer's report" and the lack of any new evidence to justify reconsideration of the sanction imposed. By letter dated February 24, 2004, Plaintiff was informed that his request for an appeal was denied. Thereafter, on March 3, 2004, Plaintiff's mother wrote to the University to express her disagreement with the decision to expel her son and to notify the University that her son would be filing a civil lawsuit.

Plaintiff then filed the instant civil action. Although Plaintiff's Complaint purports to recite three causes of action, it appears to the Court that Plaintiff is actually alleging four causes of action: (1) Defendants violated his due process rights under the Fifth and Fourteenth Amendments, (2) Defendants violated his right to a jury trial under the Seventh Amendment, (3) Defendants subjected him to cruel and unusual punishment under the Eighth Amendment, and (4) Defendants discriminated against him on the basis of his race under Title II of the Civil Rights Act, 42 U.S.C. § 2000a.

DISCUSSION

I. Legal Standard For Injunctive Relief

In determining whether to issue a preliminary injunction pursuant to Federal Rule of Civil Procedure 65, courts must consider (1) whether the movant has shown a reasonable probability of success on the merits, (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party, and (4) whether granting the preliminary relief will be in the public interest. *Allegheny Energy, Inc. v. DOE, Inc.,* 171 F.3d 153 (3d Cir.1999). The burden of establishing that injunctive relief is warranted rests on the party seeking the relief.

II. Whether Plaintiff Is Entitled To An Injunction

Balancing the factors for injunctive relief in light of the evidence adduced at the hearing and the circumstances in this case, the Court concludes that Plaintiff has not demonstrated that the extraordinary remedy of an injunctive is warranted. The Court supports its conclusion with the following analysis of each element required for injunctive relief.

A. *Likelihood Of Success On The Merits*

*3 Plaintiff alleges four possible causes of action in his Complaint. The Court will analyze each one in turn to determine whether Plaintiff is likely to succeed on his claims.

1. Eighth Amendment Claim

Plaintiff alleges that Defendants have subjected him to cruel and unusual punishment as a result of their decision to expel him. The Eighth Amendment prohibition against cruel and unusual punishment applies to the States through the Fourteenth Amendment. However, the Eighth Amendment is limited to those individuals who have been convicted of criminal offenses and are incarcerated. It does not apply to disciplinary measures meted out in public schools. *Ingraham v. Wright,* 430 U.S. 651, 664 (1977). Accordingly, the Court concludes that Plaintiff has no chance of success regarding his Eighth Amendment claim.

2. Seventh Amendment Claim

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 3
Not Reported in F.Supp.2d, 2006 WL 141680 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Plaintiff next alleges that Defendants violated his right to a jury trial under the Seventh Amendment. The constitutional right to a jury trial under the Seventh Amendment only applies to proceedings before a federal court. See e.g., *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 418 (1996). Accordingly, the Court likewise concludes that Plaintiff has no reasonable chance of succeeding on his claim that Defendants violated his Seventh Amendment rights during the University's disciplinary proceedings.

3. Due Process Clause

a. Procedural Due Process

Plaintiff next alleges that Defendants expelled him without due process by failing to provide him with certain procedural safeguards. Specifically, Plaintiff contends that he was denied his right to appeal the University's adverse decision.

There are two basic due process requirements: (1) notice, and (2) an opportunity to be heard. See e.g., *Goss v. Lopez,* 419 U.S. 565, 575 (1975). In the case of a ten-day suspension of a high school student, the Supreme Court concluded that oral notice was sufficient notice to satisfy due process requirements; however, the Supreme Court also recognized that longer suspensions or expulsions may require more formal notice. *Id.* at 581, 584. Courts reviewing due process claims in the context of expulsion have required written notice. *Dixon v. Alabama State Bd. of Education,* 294 F.2d 150 (5th Cir.1961). Depending on the particular circumstances, courts have required the written notice to inform the accused of the charge and provide the accused with information about the policies or regulations that the accused has allegedly violated, the possible penalties, and the evidence that may be presented against him. See e.g., *Flaim,* 418 F.3d at 638; *Dixon,* 294 F.2d at 158.

With respect to the hearing requirement, due process is satisfied if the accused is provided with the opportunity to respond, explain and defend himself or herself. *Flaim,* 418 F.3d at 633-636 (discussing details of due process requirements in higher education disciplinary proceedings and collecting cases). If the hearing is a "live" hearing, courts have recognized that the accused has a right to be present.

*Id.* at 635. Courts have also recognized that the hearing need not be open to the public and that counsel or a campus advocate need not generally be appointed, unless the procedures are overly complex or the student faces criminal charges stemming from the incident in question. *Id.* at 635-636. Courts have also concluded that due process is satisfied when the accused is given the right to make a statement and present evidence and witnesses at the hearing. *Id.* at 636. However, courts have also held that the right to appeal the school's decision is not required to satisfy the Due Process Clause. *Id.* at 636 (citing *Foo v. Ind. Univ.,* 88 F.Supp.2d 937, 952 (S.D.Ind.1999)).

**\*4** In this case, the Court concludes that Plaintiff has not demonstrated a reasonable likelihood of success on the merits of his due process claim.[FN1] Plaintiff was given written notice of the charges against him, informed of his right to present witnesses and to have a student or faculty advisor or representative present at his hearing. Plaintiff had a hearing at which he was given the opportunity to present evidence and make a statement. Plaintiff was also given the opportunity to appeal, if he could establish certain prerequisites, but his appeal was denied based upon the school's determination that he could not satisfy those requirements. Although there may have been room for more procedural safeguards, courts have uniformly recognized that the Due Process Clause only sets "a floor or lower limit on what is constitutionally adequate." *Flaim,* 418 F.3d at 629. As such, procedures that are not ideal, but nonetheless fundamentally fair, are sufficient to satisfy due process. *Id.* at 637. Accordingly, the Court cannot conclude that Plaintiff has demonstrated that he is reasonably likely to prevail on his due process claim.

> FN1. Plaintiff made several claims at the hearing that the University misapplied its Zero Tolerance Policy because Plaintiff was arrested off-campus; he only admitted to a misdemeanor offense; and his state record can be expunged. However, it is evident from the testimony adduced at the hearing that the University primarily based its case on charges stemming from that which was recovered from Plaintiff's belonging on-campus, specifically a bullet which Plaintiff admitted possessing, and a bag of marijuana which Plaintiff was held responsible for based on his control of the area in which the drugs were found. Regardless of the drug charges, however, Plaintiff still faced

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 4
Not Reported in F.Supp.2d, 2006 WL 141680 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

expulsion for possession of the bullet which he admitted possessing. And, in any event, even if the University failed to adhere to its own policies in charging Plaintiff under the Zero Tolerance Policy, courts have concluded that such failures are insufficient to constitute due process violations. *See infra* Section II.A.3.b. of this Memorandum Opinion (discussing substantive due process violations); *see also Hill v. Bd. of Trustees of Mich. State Univ.,* 182 F.Supp.2d 621, 627 & n. 2 (W.D.Mich.2001) (recognizing that school's violation of its own rules does not rise to the level of a constitutional violation and collecting cases); *Hammock,* 93 F.Supp.2d at 1234 (noting that court's role in § 1983 actions does not involve the reinterpretation of school regulations).

b. Substantive Due Process

To the extent Plaintiff is alleging a violation of his substantive due process rights, the Court also concludes that Plaintiff has not demonstrated a likelihood of success on the merits. There are two inquiries used for purposes of the substantive due process analysis. Under the first test, the plaintiff need not prove a violation of a specific liberty or property interest, however, the state's conduct must "shock the conscience." *Rochin v. California,* 342 U.S. 165, 172-173 (1952). Under the second test, a plaintiff must demonstrate a violation of an identified liberty or property interest protected by the Due Process Clause. *See Nicholas v. Pennsylvania State University,* 227 F.3d 133, 139 (3d Cir.2000) (holding that property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are "arbitrary, irrational, or tainted by improper motive").

Courts that have concluded that the state has engaged in conscious shocking behavior have typically done so in cases involving extreme or intrusive physical conduct, such as that which occurs in the case of physical or sexual abuse. *See e.g., Gomes,* 304 F.Supp.2d at 124 (collecting cases). In contrast, courts considering suspension and expulsion for disciplinary violations have declined to find that such suspensions or expulsions rise to the level of conscious shocking behavior. *Flaim,* 418 F.3d at 643 (holding that medical school student's expulsion for conviction of felony drug crime did not shock the conscience); *Gomes,* 304 F.Supp. at 125 (requiring

extreme or intrusive physical conduct by state to rise to the level of conscience shocking behavior and concluding that suspension for alleged sexual assault did not violate substantive due process).

*5 In addition, the Supreme Court has recognized that the pursuit of an education is not a fundamental right for purposes of due process,[FN2] and courts that have found a property interest in continued enrollment in schools have assumed its existence. *Gomes,* 304 F.Supp.2d at 125-126 (collecting cases, including Supreme Court cases, in which the right to continued enrollment has been assumed to be a property or liberty interest). However, even if such a property or liberty interest were identified here, the Court would conclude that Plaintiff has little chance of successfully showing a substantive due process violation. Courts are reluctant to become embroiled in the wisdom of and the manner in which educational institutions apply their policies. *See Ratner v. Loudon County Public Schools,* 16 Fed. Appx. 140, 142 (4th Cir.2001) ("However harsh the result in this case, the federal courts are not properly called upon to judge the wisdom of a zero tolerance policy of the sort alleged to be in place at Blue Ridge Middle School or of its application to Ratner."); *Mitchell v. Bd. of Trustees of Oxford Mun. Separate Sch. Dist.,* 625 F.2d 660, 664-665 (5th Cir.1980). Rather, courts examining substantive due process violations in this context have only considered whether the punishment imposed is rationally related to a legitimate purpose. *Seal v. Morgan,* 229 F.3d 567, 575 (6th Cir.2000). Courts considering expulsions in the context of drugs and weapons charges have concluded that such punishment is rationally related to the legitimate goals of maintaining safe and drug-free schools.[FN3] *See e.g. Hammock v. Keys,* 93 F.Supp.2d 1222, 1231 (S.D.Ala.2000) (denying motion to enjoin expulsion and concluding that student failed to state a substantive or procedural due process claim); *Mitchell,* 625 F.2d at 664-665. Accordingly, in these circumstances, the Court is not persuaded that Plaintiff can demonstrate that his punishment was arbitrary, capricious or lacked a rational basis to a legitimate state purpose, and therefore, the Court concludes that Plaintiff has not demonstrated a reasonable likelihood of success on the merits of a substantive due process claim.

FN2. *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1 (1973); *see also Hill,* 182 F.Supp.2d at 626-627 (holding that right

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 5
Not Reported in F.Supp.2d, 2006 WL 141680 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

to public college education is not a fundamental right and assuming without deciding that continued enrollment in university is a protected property interest).

FN3. The Court acknowledges that in *Seal*, 229 F.3d at 575, the Sixth Circuit concluded that expulsion for possession of a weapon pursuant to a zero tolerance policy was not rationally related to any legitimate state interest where the student did not knowingly possess the weapon. In this case, however, Plaintiff has not made an argument regarding knowing possession and the evidence before the Court indicates that the University based its decision, at least in part, on the fact that Plaintiff admitted possessing the bullet recovered among his belongings. Accordingly, the Court is not persuaded that the circumstances of this case resemble *Seal*.

### 4. Title II of the Civil Right Act

Plaintiff also alleges a cause of action for discrimination under Title II of the Civil Rights Act. Section 2000a of Title II of the Civil Rights Act, creates a private cause of action to remedy discrimination in public accommodations affecting interstate commerce. *SeeNewman v. Piggie Park Enterprises*, 390 U.S. 400 (1968). As a threshold matter, a plaintiff bringing a suit under this section must show that the establishment is a place of public accommodation within the meaning of the statute. Once this showing is made, the Plaintiff must then show the elements of a *primafacie* case of discrimination: (1) that the plaintiff is a member of a protected class, (2) that the defendant intended to discriminate against the plaintiff on that basis; and (3) that the defendant's racially discriminatory conduct abridged a right recognized in the statute.

**\*6** In this case, the Court concludes that Plaintiff has not demonstrated a reasonable likelihood of success with respect to his Title II claim. Assuming, without deciding at this juncture, that Title II is applicable in this context,[FN4] Plaintiff has not demonstrated that the alleged discrimination in this case was the result of Plaintiff's membership in a protected class. Plaintiff alleges in his Complaint that he is African American, but Plaintiff has not tied his allegations against Defendants to his race. Stated another way, Plaintiff has not alleged that he was discriminated against because he was African American. In his Complaint

and at the hearing, Plaintiff referenced other alleged breaches by the University of NCAA policies, but membership or affiliation with the NCAA is not considered a protected class. Accordingly, the Court concludes that Plaintiff cannot demonstrate that he is likely to succeed on a Title II claim, if such a claim is cognizable in this context.

FN4. Although the Court has been unable to locate a case dealing with a university setting, the Court has found at least one case concluding that public schools are not places of public accommodation within the meaning of Title II because they are not open to the general public in the same way as other establishments covered by Title II. *See e.g.,Gilmore v. Amityville Union Free Sch. Dist.*, 305 F.Supp.2d 271, 278-279 (E.D.N.Y.2004); *Harless v. Darr*, 937 F.Supp. 1351, 1354 (S.D.Ind.1996). Thus, it is not clear to the Court at this juncture that Title II is even applicable to Plaintiff's case.

### B. *Irreparable Harm*

Absent a showing of likelihood of success on the merits, courts have declined to consider irreparable harm. *See e.g.,The Pitt News v. Fisher*, 215 F.3d 354, 366 (3d Cir.2000); *Bowers v. National Collegiate Athletic Ass'n*, 974 F.Supp. 459, 467 n. 3 (D.N.J.1997). However, even if the Court considers the element of irreparable harm independently from Plaintiff's failure to establish a likelihood of success on the merits, the Court concludes that Plaintiff cannot demonstrate irreparable harm. Plaintiff alleges that his education is being delayed; however, the Court is not persuaded that any delay amounts to irreparable harm. The University has a policy of permitting Plaintiff to reapply to the school three years following an expulsion. Thus, Plaintiff has not demonstrated that he must be reinstated to the University at this time or he will be irreparably harmed.

Plaintiff also alleges that his NCAA scholarship is expiring; however, the Court has not received any evidence demonstrating that Plaintiff cannot pursue a scholarship or financial assistance at a later time. Accordingly, the Court is not persuaded that the potential expiration of Plaintiff's scholarship is sufficient to constitute irreparable harm.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 6
Not Reported in F.Supp.2d, 2006 WL 141680 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Plaintiff also alleges that the University sent letters disclosing his judicial record to schools he applied to for admission; however, the evidence indicates that these letters were sent at Plaintiff's request or with Plaintiff's express permission. For example, Defendants have submitted at least one letter sent by Plaintiff to the Office of Judicial Affairs in which Plaintiff expressly requests the University to send copies of his judicial record to the Directors of Admission at another university to which he had applied for admission.[FN5] DX-2. In these circumstances, the Court concludes that Plaintiff has failed to demonstrate that he will be irreparably harmed if the Court denies his request for injunctive relief.

> FN5. Another letter was sent by the University in response to an inquiry by State University of New York College at Cortland ("SUNY Cortland"); however, Plaintiff signed a release on the SUNY Cortland application authorizing the adjudicating authority, in this case the University, to provide verification or clarification to SUNY Cortland of information provided by Plaintiff regarding his disciplinary history. DX-3.

C. *Harm To Defendants And The Public Interest*

**\*7** As for the remaining factors, the Court concludes that the potential harm to the Defendants of granting injunctive relief neither weighs in favor of nor against injunctive relief, and the public interest is not served by granting an injunction where, as here, Plaintiff has not demonstrated the two requirements essential for injunctive relief, a likelihood of success on the merits and irreparable harm. Accordingly, the Court concludes that the remaining factors do not weigh in favor of granting injunctive relief.

CONCLUSION

In sum, the Court concludes that Plaintiff has not satisfied his burden of demonstrating the necessity of injunctive relief. Plaintiff has not demonstrated a reasonable likelihood of success on the merits or that he will be irreparably harmed if an injunction is denied. On balance, the Court concludes that the remaining factors also do not support injunctive relief. Accordingly, the Court will deny Plaintiff's Motion For A Preliminary Injunction.

An appropriate Order will be entered.

D.Del.,2006.
Marsh v. Delaware State University
Not Reported in F.Supp.2d, 2006 WL 141680 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2007 WL 329131 (S.D.Ill.)
**(Cite as: 2007 WL 329131 (S.D.Ill.))**

**H**Only the Westlaw citation is currently available.

United States District Court,
S.D. Illinois.
Monet WILLIAMS, et al., Plaintiffs,
v.
Walter WENDLER, et al., Defendants.
**No. 05-4157-JPG.**

Feb. 1, 2007.
Richard S. Fedder, Attorney at Law, Carbondale, IL,
for Plaintiffs.

Ellen E. Douglass, Donyelle L. Gray, Law Office of
Ellen E. Douglass, Chicago, IL, Mark A.
Brittingham, Southern Illinois University,
Carbondale, IL, for Defendants.

### MEMORANDUM AND ORDER

GILBERT, District Judge.

*1 Before the Court is plaintiffs' motion for
reconsideration, (Doc. 82), of the Order dated
October 18, 2006. (Doc. 78). Defendants have filed
responses, (Docs.83, 91), and plaintiffs have filed a
reply (Doc. 84).

 Plaintiffs request that this Court reconsider the
dismissal of the following Counts:
   Count I Denial of Equal Protection
   Count II Denial of Procedural Due Process
   Count III Denial of Substantive Due Process
   Count IV Violation of the First Amendment Right
   of Free Assembly

 In Count I, plaintiffs allege a violation of their Equal
Protection rights based on race, and defendants claim
they are entitled to qualified immunity. As the
previous Order noted, "To prove the presence of a
clearly established constitutional right, the plaintiff
must point to closely analogous cases decided prior
to the defendants' challenged actions." (Doc. 78, p. 7)
(quoting Kiddy-Brown v. Blagojevich, 408 F.3d 350,
346 (7th Cir.2005) (quoting Upton v. Thompson, 930
F.2d 1209, 1212 (7th Cir.1991))). However, to show
that a right is 'clearly established,' plaintiffs are not
required to produce a case that is 'directly on point.'

Kiddy-Brown, 408 F.3d at 356 (quoting Nabozny v.
Podlesny, 92 F.3d 446, 456 (7th Cir.1996)). "The
question is whether a reasonable state actor would
have known that his actions, viewed in the light of
the law at the time, were unlawful." Kiddy-Brown,
408 F.3d at 356 (citation omitted ). Upon
reconsideration, at the time of the alleged events, the
law was sufficiently clear that a reasonable official
would have known that plaintiffs could not be
discriminated against based on race by being
disciplined differently from white students. It has
been long been established that the Equal Protection
Clause prohibits a state-sponsored school from
invidiously discriminating among students based
upon race. McLaurin v. Oklahoma State Regents for
Higher Ed., 339 U.S. 637, 642 (1950) (holding that a
state-sponsored graduate school's disparate treatment
of an African-American student based on race
violated the Equal Protection Clause). Accordingly,
plaintiffs' motion to reconsider dismissal of Count I is
granted.

 By way of clarification as to Count II, plaintiffs'
procedural due process claims were dismissed
because neither the United States Constitution nor the
State of Illinois has identified a property right in post-
secondary education. Galdikas v. Fagan, 342 F.3d
684, 692 (7th Cir.2003), abrogated on other grounds
by Spiegla v. Hull, 371 F.3d 928, 941-42 (7th
Cir.2004); see also Doe v. Board of Trustees of
University of Illinois, 429 F.Supp.2d 930, 942 (N.D
.Ill.2006) (citing Gladikas, 342 F.3d at 688-91)
(There is no fundamental right to, nor recognized
property interest in, post-secondary education); and
Cady v. South Suburban College, 310 F.Supp.2d 997,
1000 (N.D.Ill.2004) (citations omitted ) ("There is no
general constitutional right to higher education.... A
property interest may arise from rights created by
state statutes or by contracts with public entities, but
Illinois has not identified a property right in post-
secondary education."); but cf. Pugel v.Board of
Trustees of the University of Illinois, 378 F.3d 659,
662 n. 2 (7th Cir.2004)(citations omitted) (It is an
"open question" as to whether a college or university
student has a property interest in enrollment that is
protected by the Due Process Clause. The Court
assumed that a graduate student, who was also a
public employee via her teaching assistantship, and
who had been dismissed on charges of "academic
dishonesty" had a protectable interest in both her

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                          Page 2
Not Reported in F.Supp.2d, 2007 WL 329131 (S.D.Ill.)
(Cite as: 2007 WL 329131 (S.D.Ill.))

public employment as a teaching assistant, and in her good name and reputation, that was entitled to due process)). It is true that Illinois has recognized that payment of college tuition gives rise to an implied contract that the school will award a degree, *see e.g.,* *Galdikas,* 342 F.3d at 692 (citing *Johnson v. Lincoln Christian College,* 501 N.E.2d 1380, 1384 (Ill.App. 4th Dist.1986)). Here, however, the nature of plaintiffs' claims is not for breaches of contract, (i.e., the claims are not that they were denied a degree upon completion of the requirements), rather, plaintiffs' make entirely different claims that they were denied procedural due process during disciplinary hearings. Because there is no property right in post-secondary education, plaintiffs' procedural due process claims must fail. Count II remains dismissed.

*2 Similarly, plaintiffs' Count III substantive due process claims were dismissed because no court has recognized a substantive property or liberty interest in a college education. *See Bell v. Ohio State University,* 351 F.3d240, 251 n. 2 (6th Cir.2003). Although several courts have assumed *arguendo* that there is a constitutionally protected interest in higher education, no court has actually so held, and indeed, such courts have noted that concerns of federalism, judicial capacity, and academic freedom counsel against the recognition of such an interest. *See Galdikas,* 342 F.3d at 688-689;*see also Bell,* 351 F.3d at 251 n. 2 (citing *Regents of University of Michigan v. Ewing,* 474 U.S. 214, 226 (1985) (expressing "a reluctance to trench on the prerogatives of state and local educational institutions and our responsibility to safeguard their academic freedom"); and *Board of Curators of the Univ. of Missouri v. Horowitz,* 435 U.S. 78, 91-92 (1978) (noting that courts "are particularly ill-equipped to evaluate academic performance")). Assuming *arguendo* that there is a substantive due process right to higher education, plaintiffs must show that defendants' conduct was "arbitrary and capricious" and "shocks the conscience." *Galdikas,* 342 F.3d at 689*(citations omitted).* Here, plaintiffs allege two and three-year suspensions from school after being convicted of sorority hazing. In accord with relevant case law, however, plaintiffs' allegations simply do not rise to the level of arbitrary and capricious behavior that 'shocks the conscience' and that is required to support a substantive due process claim. *See e.g.,* **Marsh v. Delaware State University,** No. 05-00087, 2006 WL 141680 at *4 (D.Del.2006) (Courts considering suspension and expulsion for

disciplinary violations have declined to find that such suspensions or expulsions rise to the level of conscious-shocking behavior) (citing *Flaim v. Medical College of Ohio,* 418 F.3d 629, 643 (6th Cir.2005) (medical school student's expulsion for conviction of felony drug crime did not shock the conscience); and *Gomez v. University of Maine System,* 304 F.Supp.2d 117, 125 (D.Me.2004) (student's suspension for alleged sexual assault did not violate substantive due process, and to shock the conscience, extreme or intrusive physical conduct by the state is required). Accordingly, Count III remains dismissed.

Plaintiffs' First Amendment right of free assembly claims in Count IV were also dismissed. As noted in *Pi Lambda Phi Fraternity, Inc. v. University of Pittsburgh,* 58 F.Supp.2d 619 (W.D.Pa.1999), "There are two types of association protected by the Constitution: (1) intimate association, based on intimate human relationships; and (2) associations formed "for the purpose of engaging in those activities protected by the First Amendment-speech, assembly, petition for the redress of grievances, and the exercise of religion." *Pi Lambda Phi,* 58 F.Supp.2d at 623*(citing Roberts v. United States Jaycees,* 468 U.S. 609, 617-18 (1984)). Here, as noted in *Roberts* and *Pi Lambda Phi,* plaintiffs are not engaged in the sort of intimate relationships that are typically accorded First Amendment protection. *Pi Lambda Phi,* 58 F.Supp.2d at 623 ("The personal relationships protected by the right to intimate association are 'those that attend the creation and sustenance of a family-marriage, ... the raising and education of children, ... and cohabitation with one's relatives.' ") (citing *Roberts,* 468 U.S. at 619-20)). As noted, the second type of protected association is expressive association, which is for the purpose of engaging in activities protected by the First Amendment--"speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts,* 468 U.S. at 619. As noted in *Pi Lambda Phi,* however, the function of a college fraternity or sorority is primarily social. This Court agrees. *See Pi Lambda Phi,* 58 F.Supp.2d at 624 (citing *Cornelius v. Benevolent Protective Order of the Elks,* 382 F.Supp. 1182, 1195 (D.Conn.1974) ( "the associational activities of the Elks and Moose are purely social and not political and therefore do not come within the core protection of the right to associate."); *Sigma Chi Fraternity v. Regents of the Univ. of Colo.,* 258 F.Supp. 515, 526 (D.Colo.1966) (noting the lack of analogous Supreme Court precedent to "uphold the

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

right of association as applied to a social fraternity."); *Phinney v. Dougherty,* 307 F.2d 357, 361 (5th Cir.1962) (for purposes of the internal revenue code, "college fraternities are primarily social clubs.")). Even if plaintiffs' right to associate with Zeta sorority members were protected by the First Amendment, colleges and universities are entitled to regulate student groups with respect to the time, place, and manner in which the students conduct speech-related activities, and may even withdraw recognition of student groups who violate the institution's rules. *Healy v. James,* 408 U.S. 169, 192-93 n. 24 (1972). For these reasons, Count IV remains dismissed.

**\*3** For the above reasons, plaintiffs' motion to reconsider, (Doc. 82), is **GRANTED IN PART and DENIED IN PART.** Count I is **REINSTATED** against defendants Walter Wendler, Terry Huffman, Khamisi Grace, Nancy Hunter Pei, and Chuck Leonard. Plaintiffs' request for leave to amend the complaint is denied. Plaintiffs' request for interlocutory appeal under 28 U.S.C. § 1292(b) is denied. At this point in the litigation, Counts I and V remain pending.

**IT IS SO ORDERED.**

 Not Reported in F.Supp.2d, 2007 WL 329131 (S.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.