IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Christina R. Paoli<br>       Plaintiff | )<br>)<br>)<br>)   C. A. 06-462<br>)<br>) |
| The State of Delaware of Delaware and<br>Delaware Technical and Community<br>College<br>       Defendants | )<br>)<br>)<br>) |

**Response to Defendant's Motion To Reconsider**

    Plaintiff requests that the honorable judge uphold his original order that Delaware Technical and Community College violated Christina Paoli's due process rights. Plaintiff respectfully requests the judge does not reconsider his opinion. She desires that he dismisses the defendant's motion for reconsideration and upholds his previous decision for the reasons explained below.

    Delaware Technical and Community College (DTCC) suspended the plaintiff from 22 college credits and the college softball team without giving her due process and/or a hearing. She was never given a chance to answer any questions or present evidence. They continue to violate her due process rights, 2 years later, as of January 21, 2008, by not allowing her to continue her education. Furthermore, they never interviewed the plaintiff or plaintiff's witnesses after she initially reported the softball coaches and team's wrongdoing. Del Tech administration never interviewed the private investigator, the plaintiff's boyfriend, her family, friends, faculty or guests who attended the softball games and witnessed the threats, harassment and intimidation. The statements and "evidence" Del Tech came up with was very circumstantial, weak, biased and questionable, at best. After DTCC suspended her, plaintiff's due process rights have been continually violated. She was never given a chance to respond to the accusations from 2 years ago.

    The exhibits provided in the motion to reconsider have already been entered into evidence in previous motions. However, some of the information has not been entered

1

honestly or fairly. For example, the dates are very misleading. The appearance is that they were mailed to the plaintiff on the date or near the date that was typed on the document. In many situations, that was definitely not the case. At times, it was not mailed, or plaintiff did not receive the certified mail, for several weeks, or a MONTH from the date on the document. For example, she received Del Tech's **Document A1** informing her that she was accused of violating a conduct policy AFTER her two week suspension ended. It was a general letter, without specific time, date, location etc, which she never received. Please look at the official documentation, not the misleading date on it. Additionally, she was suspended from the team for two weeks "**pending further investigation of the charges**" as stated in the **A1 and A3** documents. Whatever happened to "**innocent until proven guilty**"? That is another violation of due process rights. Plaintiff feels outraged that she was automatically suspended for two weeks after she reported coach's wrongdoing, underage drinking and things that would negatively affect Del Tech College's reputation. Both "professionals" (Dean Goldstein and Athletic Director Ron Burgess) for lack of a better word, chose to suspend plaintiff for two weeks "until such time that a complete investigation has been completed." To further exacerbate the situation, they both were involved in the manipulation of the situation, the players, the lack of due process, the unfairness to the plaintiff, and the creation of evidence by pressuring students to sign questionable statements and promising them that they would remain anonymous. (**Exhibit P1** and **P1-1A**)

    The dean of students had the softball players meet a group of staff members including Rodney Reeves, Dennis Lafazia and Susan Pacheo as they were trying to get them to come up with evidence against the plaintiff. Susan took notes in a "disposition" not a deposition" **Exhibit P1.** Mr. Rodney Reeves announced that he was looking into a situation that Ms. Paoli has offered Percocet to team members. He said he wanted written statements and assured those who signed would remain anonymous. A few of the students were willing to sign a statement. I could not believe the way this was so called investigation was handled or better stated manipulated. Please read **Exhibit P1** and **P1-A.** This appears to be leading or manipulating the witness or a little coercion to me. On **Exhibit P2**, the wording states that "the Dean of students was "requiring" written .signed statements ..... and all who signed would remain anonymous." Also, doesn't the

2

plaintiff or the accused have the right to face her accusers? Rodney Reeves "assured those that signed would remain anonymous". The secretary even provided the typed statement for the girls to sign. What a conflict of interest. The school was gathering evidence against plaintiff after they already suspended her. They were supposed to be fairly investigating, the situation not creating evidence to cover their actions.

Plaintiff never received a written copy of the specific allegations, the girls' written statements, the time or date of the alleged infraction, the circumstances, charges, probable cause as required. This also violated the due process procedures. When plaintiff walked into the meeting, she was informed that she was suspended. She was not given any paperwork or anything in writing. She was asked if the meeting could be recorded, her reply was "Yes, as long as I receive a copy." When plaintiff realized she was being railroaded, she walked out. She was entitled to a copy of that recording. She had requested the tape recording and other discovery, verbally and in writing, over 10 times. DTCC denied her the tape recording and other discovery each and every time.

**According to the Student Rights and Standards of Student Conduct, plaintiff was supposed to encourage the complaining party to meet with the accused in an effort to seek a resolution Exhibit A8 , that never happened. Step 2 was never followed. There was never any effort to resolve or meet to talk about the matter to date. Exhibit A9 states that "The Dean of Students, after reviewing the complaint to ensure that all required information has been provided and the RESOLUTION PROCESS HAS BEEN PROPERLY FOLLOWED, will forward a copy of the written complaint to the accused, who will be given an opportunity to respond in writing to the accusations against him or her within 5 working days. The resolution process was not properly followed and Delaware Technical and Community College did nothing about it because they were on a head hunting expedition. DTCC VIOLATED ITS OWN DUE PROCESS POLICY (approved 2/14/2006) AND SUSPENDED PLAINTIFF FROM ALL CLASSES, THE LIBRARY, COMPUTER USAGE, TUTORING CENTER, GYMNASIAUM, WORK OUT ROOM AND SOFTBALL FIELDS DUE TO AN UNSUBSTANTIATED RETALIATORY LETTER FROM STACIE BURRIS.** What adds insult to injury is that plaintiff had (and still has video tape footage) which will clarify this whole matter. Furthermore,

plaintiff was supposed to be protected from improper disclosure of confidential information. DTCC certainly did not follow these guidelines, or my due process rights.

After reviewing **Exhibit P2,** you will notice plaintiff was e-mailing Dean Goldstein and Ron Burgess asking why she still didn't receive anything official about why she was suspended. Plaintiff was told verbally on March 30, 2006. **Defendant's Exhibit A1** (Plaintiff walked out of the meeting because she felt devastated by DTCC accusations.) In another situation, a document was handed to plaintiff, three weeks after the typed date on the document. A witness was present when the document was accepted. If you review the e-mails entered into evidence, you will see that plaintiff didn't even know what she what allegedly did or what infractions they suspended her for until several weeks after the fact.

Furthermore, it's the plaintiff's understanding that a licensed private investigator may be submitting a statement that disproves some of the information Del Tech entered into evidence. He witnessed most of their "so called evidence" and allegations and videotaped some of it. Therefore, he knows that Delaware Technical and Community College did in fact violate Christina Paoli's due process rights. He will attest to the fact that some of the information in the exhibits are in fact "blatant untruths", including when Stacie Burris filed a false police report to Corporal Fox from Troop Six written about in **Exhibit A15.** Plaintiff is extremely frustrated and offended at the extremes Delaware Technical and Community College went through (and is continuing to go through) to cover up this atrocity.

**Exhibit A20** reads "This writer started interviewing **all** of the teammates and parents of the teammates that were witnesses to this incident in room A-117 (cafeteria) This interviewing was completed at approximately 2235hrs." **THIS WAS NOT TRUE!!!** THEY DID NOT INTERVIEW THE PLAINTIFF, PRIVATE INVESTIGATOR, THE UMPIRE, THE PLAINTIFF"S FAMILY OR OTHER NEUTRAL WITNESSES WHO SAW THE INCIDENT. DTCC HAND PICKED THEIR BIASED WITNESSES WHO THEY COULD MANIPULATE OR CONTROL. Moreover, on April 20, 2006, I was so afraid after Stacie Burris threatened me in front of many witnesses including Coach Matt that I feared for my life. Stacie and Lacy were allowed to repeatedly harass, intimidate and threaten me. The private investigator

4

witnessed it and videotaped it. That is why I did NOT ride the bus home from the Mercer game with the team due to the hostile, threatening environment. (I did ride the bus to Mercer with the team.) I received a ride back to Delaware with the private investigator.) The next day, I hand delivered **Exhibit P3** to Dean Goldstein, Ron Burgess and Coach Matt. At that point, administration called another meeting and selected witnesses for campus security to interview. Because of me, they could lose their scholarship and get arrested for underage drinking. **Again, I became the target and the scapegoat.**

Look at the timing... If the events in **A15** were true and were going on since March (which they weren't) why weren't they reported for the first complaint or any time previously?) Furthermore, **Exhibit P4** is a picture taken at the Southern Maryland tournament. It shows Stacie Burris laughing and rolling on the ground near me. This was the tournament in which I reported the fact Coach Emily Evans told Stacy Burris the pitcher to hit the batter in the f---king face with the f---king ball. The coach eventually got suspended to telling her to do so in front of the team and spectators. Apparently, the fact that the plaintiff reported this and the coaches buying and drinking alcohol for and with underage softball players provided the motive for the retaliation, lies, and vindictiveness towards to the plaintiff.

**Exhibit A15---17** was basically fabricated with parts of it plagiarized from MY LETTER THAT I PREVIOUSLY SUBMITTED TO THE COLLEGE. Look at the similarities to **P3** on Thursday, April 20, 2006 I rode the bus with the players after by suspension ended for my bogus infractions. I hired a private investigator to videotape the events that transpired. Most of the written statements were untrue, exaggerated, taken out of context or just plain lies.

**Exhibit A16** is filled with falsehoods. Stacie Burris didn't create letter until a month after our coach told her to throw the "F---in ball at the batters f---in face more than once" at the Southern Maryland tournament. I reported this to the umpires and the DTCC administration. The umpires were not upset with me; they were upset with our coach. I have witnesses to prove this. Stacie Burris reported her version of the events of the March 11 tournament on April 22, 2206, after she found out that I reported the team for drinking. Yet I have pictures of her sitting next to me laughing and kidding with me on the ground waiting for out team to get the dugout. **Exhibit 4** Therefore, her "story"

5

doesn't make sense. The pictures prove her wrong. If she was "afraid" of me, why was she sitting next to me, laughing and rolling on the ground? You would be surprised at the amount of falsehoods in the written statements in **A1 to A39**.

Stacie Lynn Burris signed a statement which in totally ludicrous. Her whole statement is basically **untrue.** She weighs over a hundred pounds more than me. She wrote that she was afraid of me. I have submitted several letters to Del Tech staff informing them that I was afraid of her and others due to their threats. She was one of the girls who was constantly picking on me and threatening me all year. Furthermore, I informed the athletic director and the head of the criminal justice department that several softball players I reported for drinking were threatening me and administration refused to do anything about it. Later, as the retaliations continued, Stacie said, I offered percocet as well as alcohol. In **Exhibit A19,** Stacie stated "Mrs. Paoli ran up tried to knock into her shoulder and missed." That's outrageous. Please refer back to Exhibit 3 as the size differential between the two of us and then make your decision about who is telling the truth. That never happened. The "missed shoulder incident" was used as "evidence" by their so called investigator on 4/24/06. How come he never interviewed plaintiff, plaintiff's witnesses or asked to see the video?

**More importantly, the information in page 6 of the motion for reconsideration is not accurate. It says plaintiff violated the drug free policy and the anti-violence policy. That's ludicrous. I never touched Stacie Burris. They are using the above mentioned incident when I allegedly almost knocked into her shoulder and missed. Accorder to Webster's 9th New Collegiate Dictionary, violence is defined as "exertion of physical force as to injure or abuse, an instance of violent treatment or procedure". How can there be violence when there was never any physical contact, plaintiff never even touched her? DTCC defined that incident as violence and suspended plaintiff indefinitely for it. Again, the college violated plaintiff's due process rights. On page six of their motion for reconsideration, DTCC tried to correlate this circumstance to the case with Williams.**

Moreover, pertaining to **Defendants Exhibits A19-A24**, not one person, not even the coach or assistant coach, admitted that the softball players locked the plaintiff out of the van for 5-6 minutes? They were all laughing as plaintiff was banging on the door

6

attempting to gain entry. Coach Matt was in the driver's seat of the van as the banging continued. He just ignored plaintiff and kept talking to security out of the window. Eventually, the assistant coach, Christy Ganderton finally came over after five or six minutes and made the players unlock the door. They were ridiculing plaintiff and they had a few choice words. Plaintiff responded inappropriately. How come the softball players' actions or negative words weren't documented so called investigation? Christy Ganderton, who also the bought underage players alcohol, didn't admit they had locked the plaintiff out of the van or what they said to her.

Additionally, Emily Evans statement reeks of retaliation and has some inaccuracies in it. First of all. My curfew was waived because I had a night class in Georgetown, Delaware that ended at 9:30pm. I had received permission to come in past the curfew because I had class, was 43 years old and more mature than the other members of the team who averaged 18 to 20 years old. When I arrived to the hotel, seven of the players were awake, with lights on, or in the hall. There wasn't an enforced "lights out" policy. The athletic director did in fact give me permission to have a separate room next door because I had a biopsy on my breast for cancer, I didn't have to stay with the team if I paid for my own room which I did. Therefore, I did not break curfew. Again, there was a breakdown in communication between the coaches and the athletic director. I had started in the previous softball games up to this point. However, Emily didn't not play me in any of these games at this tournament because she was very upset because she thought I broke curfew. I did not feel comfortable sharing a room with 3 other softball players due to the fact that the coaches and team members were making fun of certain gay players on the team. For that reason and the fact that I had a biopsy, I didn't want to share a room with the other ladies. As I mentioned previously, I was given permission to stay in the room next door. Emily Evans statement was very negative and retaliatory because she was upset with me because she got suspended as a coach after I reported her for telling our pitcher, Stacey Burris, to hit the batter in the f---ing face with the f---ing ball. I, along with some spectators and teammates did not appreciate this conduct from our coach. Therefore, I feel her written statement on April 24, 2006 was done in retaliation of my criticism of her coaching decisions. It was not based on truth and facts.

7

Another discrepancy pertaining to **Exhibit A16** involves the bottom picture on **Exhibit P4**. It shows me in the dugout with the other team, in Georgetown on Thursday, April 13, 2006 at the Owens Campus. I played softball for them in 2005, received a softball scholarship and never had a problem with any softball player or coach there. That picture disproves the second sentence in third paragraph of **Exhibit A16**. Stacie Burris repeatedly made up falsehoods or greatly exaggerated the truth about me and Del Tech automatically punished me with out giving me any due process rights whatsoever.

Plaintiff has proof that **A20** is inaccurate. Yet, Del Tech violated plaintiff's due process rights again and did not even give her an opportunity to respond to allegations or show a videotape. The private investigator, spectators, family, umpires and other unbiased witnesses would have proven that the information especially "trying to cause physical injury to one of her team mates at an away game at Mercer" was false. Then after Stacie Burris realized that plaintiff had proof of coaches and underage players drinking alcohol, she fabricated the story that I allegedly brought alcohol on the bus on April 15, 2006. That doesn't make sense. **Plaintiff was the one that reported the underage drinking in the first place. When the college administration didn't believe her, she was the one that used her money to hire a private investigator. Plaintiff was diving an hour and forty five minutes to go to class and/or softball practice everyday. Plaintiff is far too intelligent to bring alcohol on the bus and risk everything she uncovered pertaining to DTCC for something that brainless.** Who would believe it? Apparently, DTCC administration believed her. Additionally, why did Stacie wait over a week to report this alleged infraction as opposed going to the coach or dean immediately? It was just another fabrication, that's why!

The lack of due process was exacerbated when Brian Shirey told me on the phone if there was a medical reason why I couldn't attend a hearing, then fax a note and he would postpone the hearing. I took him at his word because he was the Del Tech lawyer. He did not keep his word. Furthermore, I requested verbally and in writing that Mr. Shirey, esq. recluse himself due to a previous landlord tenant interaction, we had. He refused to do so.

As far as my being pressured to take the DELJIS final exam, Michael Terranova was going out of the country on vacation. If plaintiff didn't take the final she could have

8

received a zero. During the exam, she kept running into the restroom to get sick as can be verified by students, Dr Weiss and Mr. Terranova. It took her over four hours to take the exam because of medical issues. I only took the first part of the final exam and he waived the second part of the exam because I was so sick. When I went to the doctor later, I was told to stay home for the next ten days. If Del Tech had a question or concern, they should have called the number on the doctor's note. It stated, "Any questions, call 733-4540". Brian Shirey chose not to call or make any inquires. The typed information on Page 3 from **Relevant Facts Booklet** stated "Delaware Tech denied Plaintiffs request to continue the May 10th as a disingenuous attempt to delay the proceedings". My actions prove the opposite; I showed up to take the final exam, even though I had to run out the classroom many times to get sick. It took me twice as long to take half the exam. Dr. Weiss and Mike Trinova can verify that. More importantly, an attorney, Brian Shirey, put in writing, in an e-mail, if you have a medical reason why you can't be here then fax us the note and it will be postponed. He is an officer of the court. He should have kept his word. Instead, he made a unilateral decision to "assume" that I was being disingenuous, and he held the judicial committee meeting without me. DTCC kept using the terminology "physical inability". Obviously, they didn't call the number on the doctor's note because the nurse or doctor would have explained the head injury and the side effects of vomiting. Due to Del Tech's assumptions again, the plaintiff suffered, and never had an opportunity to defend herself, bring witnesses or submit evidence or her behalf.

    **Exhibit A37 and A38** show that security, teachers and administration knew that plaintiff was afraid for her well being and was being threatened. Plaintiff told several people, including security as shown in these two documents that plaintiff brought her dog for protection. However, she was still beaten up and denied due process and any kind of a hearing to present evidence or witnesses in her defense. Del Tech was doing everything to cover this up. Two years after the fact they are still violating plaintiff's due process rights by refusing to readmit her to classes

    **Exhibit A36** is misleading. It wasn't just a class. It was the final exam. Mr. Terranova was leaving to go out of the country. DELJIS isn't a regular final exam that anyone can administer. The students get into the criminal justice computer system that

9

police use when tracking crimes and criminals. Therefore, Mr. Terronava was one of only two teachers who were qualified to administer the final. One couldn't make up this final exam if it was missed because Mr. Terranova was going out of the country. The affidavits, and the typed statements of attorney Marc Casarino, are very misleading. Additionally, the attorney, changed the noun class, plural to classes. In his written information, he made it appear as if was attending several classes which was not true However, Michael Terranova, was honest and forthright and said he witnessed me in his class on May 4, 2006. That was the truth. However, I feel the attorney should have the fact that it was the FINAL EXAM, not just a class. I totally respect Michael Trinova, as a person and an outstanding criminal justice instructor.

In conclusion, Delaware Technical and Community College repeatedly violated plaintiff's due process rights. They used hearsay from vindictive softball players and didn't verify the accuracy of their castigatory falsehoods. Then the college ran with the inaccurate information and used it to discredit and blackball the plaintiff. Her life was (and is) devastated by their retaliatory and cruel actions. Plaintiff forgives DTCC but can't forget their malicious actions. Delaware Technical and Community College must be held accountable for violating the plaintiff's due process rights so this travesty doesn't happen to any one else. Del Tech wants the honorable judge to reconsider his previous decision and wants to continue to sweep this mockery of justice under the rug the way they have been doing for them past two years. Plaintiff would like justice to be served and respectfully requests the honorable judge does not reconsider his December 18, 2007 order.

Respectfully submitted,

*Christina Paoli*

Dated: January 22, 2008

Christina Paoli
600 Third Street
Rehoboth, DE 19971


Note to the Honorable Judge,
I apologize if I included extra information which may not appear very relevant. I was **never** ever given the opportunity to explain myself to the college. I wanted to make sure you understood all of the facts from my point of view. I do have video dvds of some of this information.        Thank you.                    Sincerely, Christina Paoli

10

## CERTIFICATE OF SERVICE

I CERTIFY THAT I PLACED A COPY OF THE RESPONSE TO THE MOTION FOR RECONSIDERATION IN FIRST CLASS MAIL ON JANUARY 24, 2008 TO:

MARC CASARINO
824 NORTH MARKET STREET   SUITE 902
P.O. BOX 709
WILMINGTON, DE 19899-0709

PHONE (302) 467-4520
FACSIMILE (3020 467-4550

Dated: January 23, 2008

CHRISTINA PAOLI
(302) 260-1036

Disposition: Erica Basara, Lacy Vible, Robin Ganderton, Nicole Tiberi, Stacie Burris
(Each student was met with individually)
March 22, 2006
(Susan Pacheco's Notes)

Present: Students listed above and the Athletic Review Committee (comprised of: Rodney Reeves, Dennis LaFazia, Catt Houser, Susan Pacheco).

Rodney Reeves opened the meetings with each student by stating that the Athletic Review Committee was looking into situations that allegedly occurred during the College of Southern MD tournament and that during the course of that investigation, it was brought to our attention by one of the players that Ms. Paoli had offered Percocet to team members.

Mr. Reeves stated that this infraction was a serious offense that needed to be acted on. He stated that the Dean of Student Services wanted written/signed statements from those players who had heard the offer. He assured that those who signed would remain anonymous. Mr. Reeves stated that Susan Pacheco would provide the statement for signature prior to the start of softball practice later in the afternoon. All persons interviewed were asked to keep the nature of this investigation confidential.

Erica Basara:

Erica Basara confirmed that she had heard Ms. Paoli make the offer of Percocet to players.

Mr. Reeves asked if Ms. Basara was willing to sign a statement of confirmation. Ms. Basara agreed.

Lacy Vible:

Lacy Vible confirmed that she had heard Ms. Paoli make the offer of Percocet to players.

Mr. Reeves asked if Ms. Vible was willing to sign a statement of confirmation. Ms. Vible agreed.

Robin Ganderton:

Robin could not confirm that she heard the statement directly. She was told by another player about the situation.

Disposition: Erica Basara, Lacy Vible, Robin Ganderton, Nicole Tiberi, Stacie Burris
(Each student was met with individually)
March 22, 2006
(Susan Pacheco's Notes)

Stacie Burris:

Mr. Reeves explained to Ms. Burris that this was a follow-up to the original meeting and that the committee was investigating Ms. Paoli's offer of Percocet to players on 3/16/06. Mr. Reeves stated that the Dean of Student Services was requiring written/signed statements regarding this circumstance and that all who signed would remain anonymous.

Mr. Reeves asked Ms. Burris if she was willing to sign the statement and Ms. Burris agreed.

Nicole Tiberi

Nicole Tiberi did not have any knowledge of the incident of Chris Paoli/Percocet offer.

B12

Draft
Sent
Bulk    [Empty]
Trash   [Empty]
**My Folders**   [Hide]
Animal Pictures
Apples
dentist
fastdater
softball2007

**Search Shortcuts**
My Photos
My Attachments

See your credit score - free
Free People Search
Free People Search
Find Any Email Address

Date:    Fri, 21 Apr 2006 16:01:26 -0400
From:    regan@dtcc.edu  View Contact Details  Add Mobile Alert
To:      "Christina Paoli" <educationexperts@yahoo.com>
Subject: Re: fear and terroristic threats by "team"

P2

Hi Chris,

Thank-you for sharing your e-mail. I will share with the coaches tha you will not be at the game on Sunday. Considering what you are alleging in this e-mail, please meet with a Public Safety officer on Monday to document the incident.

Take care.
Dean Goldstein Quoting Christina Paoli <educationexperts@yahoo.com>:

>
> Dear Dean Goldstein and Athletic Director Ron Burgess,
>
>       Recent intolerable events, threats of bodily
> injury, damage and theft of personal property, I do
> not feel safe to attend practice today or take the bus
> ride to the game tomorrow. The situation has escalated
> since Del Tech has done nothing to protect me and my
> property from harm.  It was exacerbated so much
> yesterday, in front of coaches, that I did not feel
> safe to ride home from Mercer College with my
> teammates yesterday.  I received permission from Emily
> to ride home in a car with a friend.  Coaches have
> repeatedly witnessed personal threats and have done
> nothing. Christy did make them unlock the van door
> yesterday after they locked me out for five minutes.
> Matt was inside the van and did not tell them to
> unlock the door. On the ride to Mercer, the players
> ridiculed me and bragged about drinking beer with the
> coach the night before. Therefore, until the school
> opens up on Monday and this situation is rectified, I
> have to protect myself physically and emotionally from
> further harm.
>
>       Unfortunately, a hostile environment has been
> created due to coaches' actions, or lack thereof,
> making it impossible for me to feel save, have well
> being and/or function as a team member, player or
> student. Due to Stacey's threats yesterday, I am
> further concerned about my safety outside the softball
> environment.
>
> Thank you for your attention to this matter.  Enjoy
> the rest of your spring vacation.
>
>
>
>
>
>       Sincerely,
>
>
>
>
>       Chris Paoli
>
>
>
> P..S.  I still haven't received anything official
> about why I was suspended on March 30,
>         2006.  (I did receive your e-mail.)  Do you
> have an idea of when the committee
>         will meet about my appeal of your
> suspension?
>
>
> cc    Head Coach Matt
>       Assistant Coach Emily
>       Assistant Coach Christy

P3

April 21, 2006

Dear Dean Goldstein and Athletic Director Ron Burgess,

Due to recent intolerable events, threats of bodily injury, damage and theft of personal property, I do not feel safe to attend practice today or take the bus ride to the game tomorrow. The situation has escalated since Del Tech has done nothing to protect me and my property from harm. It was exacerbated so much yesterday, in front of coaches, that I did not feel safe to ride home from Mercer College with my teammates. I received permission from Emily to ride home in a car with a friend. Coaches have repeatedly witnessed personal threats and have done nothing. Christy did make them unlock the van door yesterday after they locked me out for five minutes. Matt was inside the van and did not tell them to unlock the door. On the ride to Mercer, the players ridiculed me and bragged about drinking beer with the coach the night before. Therefore, until the school opens up on Monday and this situation is rectified, I have to protect myself physically and emotionally from further harm.

Unfortunately, a hostile environment has been created due to the coaches' actions, or lack thereof, making it impossible for me to feel safe, have well being and/or function as a team member, player or student. Due to Stacey's threats yesterday and Lacey's two days ago, I am further concerned about my safety outside the softball environment.

Thank you for your attention to this matter. Enjoy the rest of your spring vacation.

Sincerely,

Chris Paoli

Chris Paoli

P.S. I still haven't received anything official about why I was suspended on March 30, 2006. (I did receive your e-mail.) Do you have an idea of when the committee will meet about my appeal of your suspension?

cc  Head Coach Matt
    Assistant Coach Emily
    Assistant Coach Christy
    Ron Case

P4



March 11, 2006



April 13, 2006
Relates to Exhibit A16

In the United States District Court

06-462 GMS

I forgot to add this to the last page of the response to the motion for reconsideration filed a few days ago.

Please add P4-A.

Thank you.

Christina Park
1-24-08



FILED
JAN 29 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE



The bottom 2 pictures show that Stacie Burris



C. Poli
600 Third St.
Rehoboth DE 19971

United States District Ct
844 North King Street
Room 4209
Lock Box 18
Wilmington DE 19801